**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE APPLICATION OF BENJAMIN STEINMETZ FOR AN ORDER TO TAKE DISCOVERY FROM VALE S.A., VALE AMERICAS INC., RIO TINTO PLC, AND RIO TINTO LIMITED PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**APPLICATION OF BENJAMIN STEINMETZ FOR AN ORDER**
**TO TAKE DISCOVERY FROM VALE S.A., VALE AMERICAS INC.,**
**RIO TINTO PLC, AND RIO TINTO LIMITED PURSUANT TO 28 U.S.C. § 1782**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for Applicant*
*Benjamin Steinmetz*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 4

    I.     THE RELEVANT PARTIES ................................................................................ 4

          A.  The Respondent Vale Entities ................................................................... 4

          B.  BSGR: Vale's Contractual Counterpart ................................................... 5

          C.  Mr. Steinmetz: The Applicant ................................................................... 6

          D.  The Respondent Rio Tinto Entities ........................................................... 6

    II.    THE JV AGREEMENT BETWEEN VALE AND BSGR ........................................... 7

    III.   THE TERMINATION OF THE MINING RIGHTS ................................................. 8

    IV.  PROCEDURAL BACKGROUND ........................................................................ 8

    V.    THE CENTRAL TENETS OF VALE'S CASE IN THE UK PROCEEDINGS ARE
          FATALLY UNDERMINED .................................................................................. 10

    VI.  EVIDENCE OF VALE'S BAD ACTS ................................................................. 11

    VII.  EVIDENCE SOUGHT IN SOUTHERN DISTRICT OF NEW YORK ..................... 13

LEGAL STANDARD ........................................................................................................... 14

ARGUMENT ........................................................................................................................ 15

    I.     MR. STEINMETZ SATISFIES THE THREE STATUTORY REQUIREMENTS OF
          28 U.S.C. § 1782 ........................................................................................... 15

          A.  The Discovery Targets are Found in the Southern District of New York .............. 15

             1.  Vale S.A. and Vale Americas Inc. ............................................... 15

             2.  Rio Tinto plc and Rio Tinto Limited ........................................... 20

          B.  The Evidence Requested is "For Use" in a Foreign Proceeding ............................ 22

          C.  As a Defendant in the Foreign Proceedings, Mr. Steinmetz is an "Interested
             Person" under Section 1782 ..................................................................... 23

    II.    THE INTEL DISCRETIONARY FACTORS STRONGLY FAVOR GRANTING MR.
          STEINMETZ'S APPLICATION ......................................................................... 23

          A.  Vale's Document Destruction Policy and the Urgent Nature of the Foreign
             Proceedings Necessitate Obtaining Discovery Now, and Vale Americas, Rio Tinto
             plc, and Rio Tinto Limited are not Participants in the UK Proceedings ................. 23

          B.  The UK Courts Would be Receptive to the Requested Discovery, and the Character
             of the UK Proceedings Favors Granting the Application ..................................... 26

          C.  Mr. Steinmetz Is Not Circumventing Any UK Proof-Gathering Restrictions ........ 27

D.  Mr. Steinmetz's Discovery Requests Are Appropriately Tailored and Are Not Unduly Intrusive or Burdensome ........................................................................ 27

**CONCLUSION** ............................................................................................................ **28**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adam v. Saenger,*
  303 U.S. 59 (1938) ................................................................................................... 19

*Andros Compania Maritima, S.A. v. Intertanker Ltd.,*
  718 F. Supp. 1215 (S.D.N.Y. 1989) ......................................................................... 19

*Application for an Order Permitting Metallgesellschaft AG to take Discovery,*
  121 F.3d 77 (2d Cir. 1997) ....................................................................................... 23

*Application of Esses,*
  101 F.3d 873 (2d Cir. 1996) ..................................................................................... 23

*Application of Malev Hungarian Airlines,*
  964 F.2d 97 (2d Cir. 1992) ....................................................................................... 26

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
  673 F.3d 76 (2d Cir. 2012) ................................................................................. 14, 22

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,*
  137 S.Ct. 1773 (2017) ............................................................................................... 16

*Euromepa S.A. v. R. Esmerian, Inc.,*
  51 F.3d 1095 (2d Cir. 1992) ..................................................................................... 26

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,*
  No. 08-CIV-1533-BSJ-JCF, 2011 WL 13262163 (S.D.N.Y. May 4, 2011) ............ 19

*Gorsoan Ltd. v. Bullock,*
  652 F. App'x 7 (2d Cir. 2016) ................................................................................... 25

*In re Application of Chevron Corp.,*
  709 F. Supp. 2d 283 (S.D.N.Y. 2010) ...................................................................... 24

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
  No. CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...................... 25

*In re Application of Guy,*
  No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ................................... 26

*In re Application of Hornbeam Corp.,*
  No. 1:14-MC-00424 (P1), 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ................ 27

*In re Application of Sveaas,*
  249 F.R.D. 96 (S.D.N.Y. 2008) ........................................................................... 22, 25

iv

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) ................................................................ 16, 17, 19, 21

*In re Ex Parte Application of Kleimar N.V.*,
   220 F. Supp. 3d 517 (S.D.N.Y. 2016) ............................................................ 15, 21

*In re Servicio Pan Americano de Proteccion*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004) ............................................................ 23, 25

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ..................................................................................... passim

*Matter of Lufthansa Technick AG*,
   No. C17-1453-JCC, 2019 WL 331839 (W.D. Wash. Jan. 25, 2019) ...................... 25

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ...................................................................................... 16

**Statutes**

28 U.S.C. § 1782 ................................................................................................. passim

**Rules**

Fed. R. Civ. P. 12(h)(1) ............................................................................................. 19

Fed. R. Civ. P. 13 ....................................................................................................... 19

Benjamin (Beny) Steinmetz ("Mr. Steinmetz" or the "Applicant") respectfully seeks an Order pursuant to 28 U.S.C. § 1782 authorizing him to take discovery from (i) Vale S.A. ("Vale"); (ii) Vale Americas Inc. ("Vale Americas"); (iii) Rio Tinto plc; and (iv) Rio Tinto Limited (together, "Rio Tinto") (collectively, the "Discovery Targets") all of which are residents of or otherwise found in the Southern District of New York, for use in proceedings pending in the United Kingdom (specifically, the High Court of Justice in the London, in England & Wales) between Vale S.A., Vale Holdings B.V. ("Vale Holdings"), and Vale International S.A. ("Vale International") (collectively, the "Claimants") and Mr. Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, the Balda Foundation ("Balda"), and Nysco Management Corporation ("Nysco") (collectively, the "Defendants") (the "UK Proceedings"). Copies of the subpoenas that Mr. Steinmetz seeks to serve on the Discovery Targets are filed as Exhibits 2-5 to the supporting declaration of Josef M. Klazen.

## PRELIMINARY STATEMENT

This Application relates to a dispute arising out of an April 30, 2010, Joint Venture Agreement between BSG Resources Limited ("BSGR"), a company to whom Mr. Steinmetz was an adviser, and Vale S.A. (one of the largest mining companies in the world), through which Vale acquired a 51% stake in a venture that held mining rights in the Simandou Mountain range in Guinea (the "mining rights") in exchange for US $2.5 billion to be paid over time (the "JV Agreement"). This JV Agreement is the subject of a global, scorched-earth litigation campaign instituted by Vale against BSGR, Mr. Steinmetz, and numerous other parties. In essence, the government of Guinea at one point claimed that the mining rights had been acquired through corruption and Vale asserted that BSGR had fraudulently induced it to enter into the JV Agreement. The government of Guinea recently withdrew the accusations, but Vale had already given up its commercial rights by that point, and has since pursued Mr. Steinmetz and others to try to recover the losses it says it suffered.

Every component of Vale's campaign is premised on the allegation that Mr. Steinmetz and others fraudulently induced it to enter into the JV Agreement by misrepresenting that the mining rights were not acquired by corruption.  The most recent chapter of Vale's worldwide attack is the UK Proceedings in which Vale claims to be the victim of a supposed fraud perpetrated by Mr. Steinmetz and other entities/individuals.  According to Vale, the defendants in the UK Proceedings fraudulently induced Vale to enter into a multi-billion dollar JV Agreement by making misrepresentations about the lawfulness of how the mining rights had been procured, without which Vale supposedly would not have entered into the JV Agreement.

Mr. Steinmetz has recently learned of new evidence that undermines the narrative perpetuated by Vale and necessitates discovery.  That evidence contradicts the basis of Vale's claim in the UK Proceedings and its global litigation campaign.  Specifically, the evidence shows that (i) Vale already believed (albeit incorrectly) that BSGR had procured the mining rights through fraud, bribery, or other corrupt acts prior to Vale's decision to enter the JV Agreement, *see* Decl. of Dr. Avi Yanus ("Yanus Decl.") at ¶¶ 40–45; (ii) Vale nonetheless decided to enter the JV Agreement, in spite of recommendations to the contrary by trusted advisers, *see id.* at ¶¶ 44, 55–71; and (iii) Vale's decision to withdraw from the JV Agreement was not the result of (and in fact pre-dated) the government of Guinea's allegations of misconduct relating to BSGR's procurement of the mining rights and the subsequent revocation of said rights , *see id.* at ¶¶ 90–94.  Vale's claims in the UK Proceedings are unsustainable in light of this evidence.

Mr. Steinmetz recently filed his Defence in the UK Proceedings (akin to an "answer" in U.S. litigation), in which he denied Vale's allegations and asserted, among other defenses, that Vale's claims should be dismissed under the English illegality defense (*ex turpi causa non oritur actio*).[1]  *See* Decl. of

---

[1] The illegality defense in England is similar to the "unclean hands" defense in the U.S. and is predicated on the principle that a plaintiff should not be allowed to profit from his own wrongdoing.  The UK Court will consider a number of factors, including whether allowing a claim

Joseph M. Klazen ("Klazen Decl."), Ex. 7 (Defence of the First Defendant).  To further support his defenses, Mr. Steinmetz now seeks discovery from persons and entities found in this District who are believed to have information relevant to the UK Proceedings.  Additionally, discovery of these documents is needed because of Vale's aggressive document destruction policy, discussed *infra*, which risks the destruction of this additional supporting evidence, which is expected to be contained in board minutes, internal correspondence, and documents regarding the JV Agreement.

In particular, the proposed discovery targets are: (i) Vale S.A., a party to the JV Agreement at issue in the UK Proceedings, which is expected to have documents reflecting its knowledge of BSGR's mining rights, its motives for entering the JV Agreement, its risk assessment of the JV Agreement, its reasons for withdrawing from the JV Agreement, its document destruction policy, the timing of the destruction of documents from key custodians, information that formed the basis of its disclosures made to the U.S. Securities and Exchange Commission ("SEC") and other authorized bodies concerning its state of knowledge about the JV Agreement, and other pertinent issues related to the UK Proceedings; (ii) Vale Americas Inc., the authorized representative of Vale in the United States, which is expected to have information relating to the same topics as Vale; (iii) Rio Tinto plc, the former exclusive owner of the mining rights at issue, which filed a U.S. lawsuit (which was later dismissed) against Mr. Steinmetz, BSGR, and Vale, alleging that they conspired to steal the mining rights from Rio Tinto (No. 1:14-CV-03042 (RMB)), and is, accordingly, expected to have information about the mining rights and the JV Agreements; and (iv) Rio Tinto Limited, which, according to recently acquired evidence, informed Vale about the allegations that BSGR procured the mining rights by fraud prior to Vale's decision to enter into the JV Agreement.

---

tainted by illegality would be contrary to the public interest and harmful to the integrity of the legal system.

3

As explained below, granting Mr. Steinmetz's requested discovery is proper and appropriate. *First*, Mr. Steinmetz's Application satisfies each of the statutory requirements under 28 U.S.C. § 1782 ("Section 1782"), because the Discovery Targets are "found" in this District; the discovery is sought "for use" in foreign proceedings; and Mr. Steinmetz is an "interested person." *Second*, the relevant discretionary factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), strongly support granting Mr. Steinmetz's Application.

## BACKGROUND

### I.   THE RELEVANT PARTIES

#### A.  The Respondent Vale Entities

Vale S.A., one of the largest mining companies in the world, is a party to the JV Agreement at issue in the UK Proceedings.  For many years, in its numerous lawsuits over the JV Agreement, Vale has portrayed itself as an unsuspecting victim of fraud and a company that would never commit unlawful conduct itself.  The reality, however, is that Vale is a sophisticated mining behemoth that has been widely accused of being willing to engage in crimes to further its operations.  Indeed, Vale has recently come under intense criminal and civil scrutiny (including lawsuits in the U.S.).  Notably, over the past four years, two of Vale's dams, the Brumadinho dam and the Fundão mining dam, have collapsed, killing hundreds of people and devastating entire communities.[2]  With respect to the latest dam collapse, Vale has been accused of fabricating fraudulent technical safety reports to hide red flags regarding the safety of the Brumadinho dam.  Marta Nogueira, *Brazil police accuse Vale and TÜV SÜD of fraud before dam burst: document,* REUTERS (Sept. 20, 2019),  https://www.reuters.com/article/us-vale-sa-

---

[2] In January 2019, Vale's Brumadinho dam collapsed, killing over 250 people and devastating entire towns in Brazil, prompting an investigation into Vale employees, and resulting in homicide charges against one of its executives.  Three years prior, another of Vale's dams, the Fundão mining dam in Minas Gerais, collapsed, killing nineteen people, prompting an investigation in Brazil and litigation in the United States.

disaster/brazil-police-accuse-vale-and-tv-sd-of-fraud-before-dam-burst-document-idUSKBN1W51EW ("Federal police accused the companies of working with falsified documents attesting the stability of the dam in Brumadinho."). Vale's executives, including its former Chief Executive Officer, have recently been charged with homicide. Luciana Magalhaes and Samantha Pearson, *Brazil Prosecutors Charge Ex-Vale CEO Fabio Schvartsman with Homicide for Dam Collapse*, THE WALL ST. J. (Jan. 21, 2020), https://www.wsj.com/articles/brazil-prosecutors-file-charges-against-vale-tuv-sud-for-deadly-dam-collapse-11579622098.

Vale Americas is a wholly-owned subsidiary of Vale S.A., incorporated in the State of Delaware and registered to do business in New York. *See* Klazen Decl., Ex. 13 (New York Department of State Entity Information for Vale Americas). Vale Americas is noted as the "Authorized Representative of Vale S.A. in the United States" on Vale's SEC filings. Klazen Decl., Ex. 11 (Vale S.A.'s Form S-8), at 6. Vale Americas is not a party to the UK Proceedings. *See* Klazen Decl., Ex. 6 (Particulars of Claim). By virtue of its position as the U.S. representative of a foreign corporation listed on the New York Stock Exchange, Vale Americas is expected to have information about matters which Vale S.A. has filed or has considered filing with the SEC, including any information in connection with the JV Agreement. This likely includes information showing what Vale believed in relation to BSGR's procurement of the mining rights and how Vale chose to frame its legally required disclosures in the United States.

### B. BSGR: Vale's Contractual Counterpart

BSGR, a Guernsey-based international mining and natural resources company, through its subsidiary, held iron ore exploitation rights in the Simandou regions in Guinea. Klazen Decl., Ex. 6 (Particulars of Claim), ¶ 2. BSGR is the other party to the JV Agreement. *Id.* at ¶ 1.

### C.  Mr. Steinmetz: The Applicant

Mr. Steinmetz was a paid adviser to BSGR.  Contrary to Vale's allegations in the UK Proceedings, however, Mr. Steinmetz did not control BSGR.  *See* Defence of First Defendant at ¶¶ 4, 49.1(ii).  While BSGR is not a party to the UK Proceedings, Mr. Steinmetz is one of eight defendants therein.[3]  *See* Klazen Decl., Ex. 6 (Particulars of Claim).

### D.  The Respondent Rio Tinto Entities

Rio Tinto plc is a leading global mining group, which formerly had exclusive mining rights to the Simandou region, the underlying asset of the JV Agreement between Vale S.A. and BSGR.  The Guinean government revoked half of Rio Tinto plc's mining rights in 2008 and thereafter awarded those exploration rights to BSGR.  Klazen Decl., Ex. 6 (Particulars of Claim), at ¶¶ 37.1–37.9, 49.2.  There is evidence that during Vale's negotiations with BSGR over the JV Agreement, Rio Tinto Limited claimed to Vale that its investigation found that BSGR improperly procured the mining rights.  Yanus Decl. at ¶¶ 46–49.  Further, in August 2014, Rio Tinto plc filed an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") in the U.S. District Court for the Southern District of New York against Mr. Steinmetz, BSGR, and Vale S.A. (No. 1:14-CV-03042 (RMB)), alleging that Vale conspired with Mr. Steinmetz and BSGR to fraudulently steal Rio Tinto plc's mining rights (the "Rio Tinto RICO Action").  This lawsuit was dismissed as time-barred.  Importantly, on November 9, 2016, Rio Tinto plc announced in its SEC filings that it had become aware of communications dated from 2011 regarding suspicious payments in the millions made to a consultant of the company's Simandou

---

[3] The other seven defendants are: (i) Dag Lars Cramer (at relevant times, non-executive director of BSGR); (ii) Marcus Struik (at relevant times, CEO of BSGR's Mining & Metals Division); (iii) Asher Avidan (at relevant times, Director of Operations in Guinea for BSGR and affiliated entities); (iv) Joseph Tchelet (at relevant times, an accountant and finance manager for BSGR and affiliated entities); (v) David Clark (at relevant times, director of BSGR); (vi) Balda Foundation (a Liechtenstein foundation of which the Applicant is one of the discretionary beneficiaries); and (vii) Nysco Management Corporation (a BVI company that wholly-owns BSGR and is wholly-owned by the Balda Foundation).

project in Guinea.  A week later, on November 15, 2016, Rio Tinto plc announced the termination of two of its executives.  Following those disclosures, Rio Tinto plc was sued in this District on December 16, 2016, as part of a securities class action arising out of the same situation.  *See* Amended Compl., *Jeffrey P. Weiner Supplemental Trust v. Rio Tinto PLC et al*, No. 1:16-CV-09572 (ALC) (S.D.N.Y. May 30, 2017).  In light of its likely investigations into Vale and BSGR, Rio Tinto plc and Rio Tinto Limited likely have information pertaining to Vale's knowledge of any issues with the procurement of the mining rights, Vale's own wrongdoing with respect to the JV Agreement and/or mining rights, and other information pertinent to the UK Proceedings and Mr. Steinmetz's defenses.

## II.     THE JV AGREEMENT BETWEEN VALE AND BSGR

On April 30, 2010, Vale S.A. entered into the JV Agreement to secure the lucrative mining rights at Simandou.  Klazen Decl., Ex. 6 (Particulars of Claim), at ¶ 1.  Vale S.A. is a major (as of February 2020 the second – only to Rio Tinto – largest) iron ore producer.  *See, e.g.*, *id.* at ¶ 12.  Vale viewed the JV Agreement as an opportunity to control the largest undeveloped deposit of high-grade iron ore in the world.   Yanus Decl. at ¶ 38.  Vale considered the JV Agreement an extremely valuable, strategic, and necessary tool in maintaining its market share and its dominant position.  *Id.* at ¶ 39.  Vale also saw the JV Agreement as critical to preventing major Chinese mining companies, which account for 60%–70% of the global seaborne iron ore market, from acquiring the rights themselves.  *See* Klazen Decl., Ex. 7 (Defence of the First Defendant), at ¶ 195; Yanus Decl. at ¶ 53.

As discussed *infra*, Vale entered into the JV Agreement despite its firm belief at Board level that BSGR procured the mining rights through corruption and bribery.  *Id.* at ¶¶ 55–71.  In fact, Vale was advised by its internal team and independent advisors **not** to enter the agreement, but ignored the recommendations, managing to acquire Board approval of the pursuit of this key geostrategic mining asset at all costs.  *See id.* at ¶¶ 44, 53, 62, 102.  Through the JV Agreement, Vale obtained 51% of BSGR's interest in the entity that held the mining rights in exchange for US $2.5 billion, including an initial

7

payment of US $500 million and future investment payments.  Klazen Decl., Ex. 6 (Particulars of Claim), at ¶¶ 2–4.

## III.    THE TERMINATION OF THE MINING RIGHTS

Thereafter, in 2011, following a change in administration and for what appear to be political reasons, the Guinean government began a purported investigation into the methods used by BSGR in procuring the mining rights.  In April 2014, the Guinean Government withdrew BSGR's license citing allegations that the mining rights were procured through bribery and corruption.  *Id.* at ¶ 104.  BSGR filed for arbitration against the Government of Guinea, challenging the findings and the withdrawal of the mining rights. Ultimately, the parties entered into non-binding settlement terms and the Guinean Government waived all claims and allegations against BSGR subject to conditions that the parties to the settlement are engaged in fulfilling.  *See* Klazen Decl., Ex. 7 (Defence of the First Defendant), at ¶ 146.4.  Moreover, in a recent Guinean court decision, prosecutors withdrew criminal charges against a few individuals, including Mamadie Touré and Mahmoud Thiam – the very individuals whom Vale alleges BSGR bribed.  *See id.* at ¶ 24.

## IV.    PROCEDURAL BACKGROUND

The subsequent abandonment by the Guinean Government of its corruption accusations came too late for Vale.  Following the withdrawal of BSGR's mining rights, Vale began pursuing a massive worldwide litigation campaign in an effort to recoup some of its investment in the JV Agreement.  This campaign includes a London arbitration proceeding in which Vale obtained an award against BSGR and claimed to the Tribunal that it was an innocent fraud victim (the "LCIA Arbitration").

In the Rio Tinto RICO Action, Vale disclosed that it had destroyed the emails of its key executives, citing a curious and apparently unwritten document destruction policy which calls for the aggressive destruction of documents after key executives leave or are dismissed by the company.  *See* Klazen Decl., Ex. 7 (Defence of the First Defendant), at ¶¶ 2, 198.  Vale purports to have relied on such policy to

delete communications and materials from relevant parties, despite knowing that this litigation would take place and understanding that government investigations of these communications were inevitable. Mr. Steinmetz believes that these voluntarily and methodologically destroyed emails would have shown the truth of Vale's intentions and state of mind as portrayed by the evidence that has recently come to light, underscoring the importance and urgency of the discovery requested herein.

Vale bases its entire ongoing litigation campaign on the result of the arbitral proceedings. However, BSGR and its counsel were not present at the LCIA Arbitration hearing because of significant procedural irregularities.  For instance, the Arbitral Tribunal declined to reschedule the hearing despite BSGR's counsel having advised four months prior that he was unavailable on the scheduled dates.  In addition, the Division of the LCIA Court ultimately removed the Tribunal's Chairman because it found "justifiable doubts as to his independence or impartiality" to BSGR's detriment.  *See* Decl. of Jonathan I. Blackman, Ex. A (Final Arbitration Award, entered on April 4, 2019), at ¶ 82, *Vale S.A. v. BSG Resources Limited*, No. 1:19-CV-03619 (VSB) (S.D.N.Y. Apr. 24, 2019).  Although the arbitral award is not of concern in the instant proceedings, we note the above lest Vale seek to trumpet its significance.  Indeed, the new evidence detailed *infra* is likely to form a basis for BSGR to overturn the arbitral award.

The Arbitral Tribunal handed down its award against BSGR in April 2019, following which Vale instituted award-enforcement proceedings in London (Claim No. CL-2019-00269) and the U.S. District Court for the Southern District of New York (No. 1:19-CV-03619 (VSB)).  Most recently, Vale filed the UK Proceedings, in which it asserts essentially the same fraud claims as in the LCIA Arbitration, but against other parties, including Mr. Steinmetz.

## V.  THE CENTRAL TENETS OF VALE'S CASE IN THE UK PROCEEDINGS ARE FATALLY UNDERMINED

Throughout its filings, Vale portrays itself as an innocent victim of fraud at the hands of others when, in fact, new and credible evidence shows that the opposite is true: Vale **always** believed that there were corruption risks associated with entering into the JV Agreement – namely, that there were issues surrounding BSGR's procurement of the mining rights – and intentionally "turned a blind eye," because the mining rights were so imperative to Vale strategically.  Yanus Decl. ¶¶ 40–45.  Indeed, Vale was convinced at the Board level (albeit incorrectly) that BSGR had procured the mining rights by fraud.  *Id.* at ¶¶ 55–71.

In the UK Proceedings, filed on December 3, 2019, Vale alleges that the defendants, which include Mr. Steinmetz and various entities and individuals, made fraudulent misrepresentations regarding the validity of the procurement of the mining rights and entered into a conspiracy to fraudulently induce Vale to enter the JV Agreement with BSGR based on these false misrepresentations.  Klazen Decl., Ex. 6, (Particulars of Claim), ¶¶ 5, 8, 10.  According to Vale, all of the defendants financially benefited from the fraudulent misrepresentations.  *Id.* at ¶ 10.  Vale asserts (i) claims in deceit based on the alleged fraudulent misrepresentations to induce Vale to enter the JV Agreement, *id.* at ¶¶ 105-16 (inclusive of sub-parts); (ii) a claim in conspiracy regarding the alleged coordinated efforts to misrepresent Vale, *id.* at ¶ 117 (inclusive of sub-parts); and (iii) a proprietary claim seeking the traceable proceeds from the US $500 million Vale paid to BSGR pursuant to the JV Agreement, *id.* at ¶¶ 118-20 (inclusive of sub-parts).  Vale seeks over US $1.25 billion, plus interest, in the UK Proceedings.  *Id.* at ¶ 124.

Mr. Steinmetz recently filed his Defence in the UK Proceedings, denying all allegations of corruption, bribery, and fraudulent misrepresentations related thereto, and arguing, *inter alia*, that in addition to there being no underlying dishonest procurement of the mining rights, (i) Vale did not in any event rely on any of BSGR's representations to enter the JV Agreement; rather, Vale engaged in a "due

10

diligence exercise designed to create a false impression that Vale had met its regulatory and legal obligations but without Vale at any point caring whether the representations made were true"; (ii) Vale believed that the mining rights were procured improperly and "was willfully blind as to the suspicions which it had, and proceeded with the transaction regardless," in violation of U.S. law; and (iii) the claims are barred by the relevant statute of limitations.  Klazen Decl., Ex. 7 (Defence of the First Defendant), at ¶¶ 2–3.

Further, on May 18, 2020, two of the defendants in the UK Proceedings, Balda and Nysco, filed a motion for summary judgment as to the proprietary claim asserted in the UK Proceedings.  Balda and Nysco seek to strike out the proprietary claim, through which Vale seeks the traceable proceeds of its payments to BSGR and the defendants, based on legal arguments under UK law.  *See* Klazen Decl., Ex. 8 (Application Notice for Summary Judgment); Klazen Decl., Ex. 9 (First Witness Statement of Doron Levy).  That motion for summary judgment relates only to the proprietary claim and does not involve the deceit or conspiracy claims, which are subject to the defenses described above.

## VI.    EVIDENCE OF VALE'S BAD ACTS

Mr. Steinmetz's assertion of an illegality defense in the UK Proceedings is supported by recent discovery of bad acts committed by Vale in connection with the JV Agreement.  Through a private investigation commissioned and supervised by Mr. Steinmetz personally and conducted over the last several months, wherein investigators spoke to Vale employees with personal knowledge of the relevant events, Mr. Steinmetz has discovered facts that destroy Vale's central positions in the UK Proceedings— as well as in related litigation and its media campaign—and support Mr. Steinmetz's defenses.[4]  What has emerged from the new evidence is that Vale has cultivated a corporate culture which embraces

---

[4] The specific details of the investigation and the findings therefrom are set forth in the Declaration of Dr. Avi Yanus, director of B.C. Strategy UK Ltd., which conducted a private investigation on behalf of Mr. Steinmetz into the events in dispute in the UK Proceedings.  Dr. Yanus has personal knowledge of the investigation and the related investigative findings.  Yanus Decl. at ¶ 4.

unscrupulousness and board malfeasance, and that Vale's constructed image of innocence is a

façade.  These new facts include, among others, the following:

- Mr. Jose Carlos Martins ("Martins"), a former Vale Executive Director, head of Vale's Iron Ore division, and a central figure in facilitating and orchestrating the execution of the JV Agreement, volunteered that Vale was desperate to obtain the mining rights at Simandou, no matter the risks, *see* Yanus Decl. at ¶¶ 38-39.  Martins further offered that Vale believed, and indeed was told by other mining corporations (albeit incorrectly), that something was wrong with the way BSGR had obtained the mining rights in Simandou *prior* to entering into the JV Agreement, *see id.* at ¶¶ 40-50, but Vale's Board knowingly and willingly opted into the deal, nonetheless, *see id.* at ¶¶ 55-71.

- Martins also stated that, during the negotiations with BSGR, Rio Tinto Limited notified Vale that it hired a private intelligence company to look into BSGR's procurement of the mining rights, which supposedly found that the mining rights were procured improperly. *Id.* at ¶¶ 46-50.  Martins further disclosed that the information Rio Tinto provided was presented to Vale's Board of directors who, despite this evidence, still knowingly decided to enter the JV Agreement.  *Id.*

- Relatedly, Martins explained that Vale's Board wanted to enter the JV Agreement, no matter the risks.  For example, he said  he believed something was wrong with the way BSGR procured the mining rights and, in fact, told Vale's Board that "we are entering this business, but we are closing our eyes" to the potential issues, which the Board accepted because the deal "[w]as important for the company."  *Id.* at ¶ 42-43.  He reiterated this sentiment on multiple occasions, another time stating that "Everybody knows that there was something wrong" with the mining rights, including the CEO, "[b]ut it was so important not to let this [mine] to get [in] the competition['s] hands."  *Id.* at ¶ 57. Additionally, Martins volunteered that Vale intentionally kept these views out of their due diligence reports, and that Board members told him that they did not want to know about the potential issues.  *See id.* at ¶ 64.

- Mr. Denis Thirouin, an independent consultant for Vale in Guinea who assisted Vale from 2005 until at least 2010, confirmed that Vale had extensive knowledge regarding allegations concerning the procurement of the mining rights.  Thirouin attests that it was in Vale's best interest that nothing be found during the due diligence process so that the JV Agreement could proceed, *see id.* at ¶¶ 59-60.

- Martins further disclosed that Vale withdrew from JV Agreement for reasons separate and apart from BSGR's loss of the mining rights, *see id.* at ¶¶ 84-94.

- Mr. Alex Monteiro ("Monteiro"), a former Director of Mergers and Acquisitions at Vale who was heavily involved in the due diligence process for the JV Agreement, similarly disclosed that Vale executed the JV Agreement despite its belief, although false, that BSGR had procured the mining rights improperly and in spite of internal advice *not* to enter the JV Agreement, *see id.* at ¶¶ 44. Specifically, he explained that "[a] lot of people" tried (unsuccessfully) to

convince the CEO not to enter the JV Agreement, because, although "[a]ll the diligence [Vale] did was fine," there still existed "that smell of something that could have been done wrongly." Indeed, Monteiro's superior even resigned over the transaction. *Id.* at ¶¶ 44, 76.

- Both Monteiro and Martins volunteered that Vale did not, in fact, rely on BSGR's representations regarding how it had obtained the mining rights, as Vale did not view BSGR as reliable. *Id.* at ¶¶ 72-78.

This evidence plainly supports the defenses asserted by Mr. Steinmetz in the UK Proceedings, including, *inter alia*, (i) to rebut Vale's allegations that the deal was fraudulently misrepresented and that Vale was fraudulently induced into the JV Agreement; and (ii) to seek dismissal of Vale's claims under the illegality defence because Vale entered into the JV Agreement while believing the underlying asset was procured by fraud (*i.e.*, the principle of *ex turpi causa non oritur actio*). Mr. Steinmetz presently seeks discovery in this District to further support his defenses.

## VII.   EVIDENCE SOUGHT IN SOUTHERN DISTRICT OF NEW YORK

By this application, Mr. Steinmetz seeks evidence from Vale S.A., Vale Americas, Rio Tinto plc, and Rio Tinto Limited, to further support his defences in the UK Proceedings. Vale S.A. is a party to the JV Agreement and is expected to have documents regarding its decision to enter the JV Agreement, what the Vale Board knew regarding the mining rights, its due diligence efforts, among other aspects of the JV Agreement. Rio Tinto plc, which filed a lawsuit against Vale S.A., Mr. Steinmetz, and BSGR for conspiracy to allegedly steal the mining rights from Rio Tinto plc, is expected to have information regarding the mining rights and its investigation into BSGR's procurement thereof. Similarly, Rio Tinto Limited, which informed Vale S.A. that BSGR improperly procured the mining rights, *see* Yanus Decl. at ¶¶ 46–50, is expected to have evidence related to that discussion with Vale, as well as evidence of what it disclosed to Vale.

## LEGAL STANDARD

Section 1782 authorizes District Courts to order persons located in the United States to produce discovery for use in foreign legal proceedings.  28 U.S.C. § 1782(a).[5]  "[T]he statute has, over the years, been given increasingly broad applicability."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).  To obtain discovery under Section 1782, an applicant must show that: (i) the person from whom discovery is sought resides or is found within the District; (ii) the discovery is "for use" in a proceeding before a foreign or international tribunal; and (iii) the applicant is an interested person under the statute.  28 U.S.C. § 1782(a); *see also Brandi-Dohrn*, 673 F.3d at 80.

Once the statutory requirements are met, courts consider four discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is "unduly intrusive or burdensome[.]"  542 U.S. at 264-65.  In considering these factors, courts exercise their discretion liberally in favor of granting discovery.  *See Brandi-Dohrn*, 673 F.3d at 80.

---

[5] 28 U.S.C. § 1782(a) provides, in relevant part: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . .  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."

## ARGUMENT

The Court should grant Mr. Steinmetz's Application because (i) Mr. Steinmetz satisfies the statutory prerequisites for relief under Section 1782; and (ii) the four discretionary factors heavily favor granting Mr. Steinmetz's Application.

## I.    MR. STEINMETZ SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Mr. Steinmetz's Application should be granted because it satisfies each of the three statutory requirements of 28 U.S.C. § 1782.

### A.  The Discovery Targets are Found in the Southern District of New York

#### 1.  Vale S.A. and Vale Americas Inc.

In relation to Vale S.A., this Court has already explicitly held that "Vale has significant contacts with New York such that Vale resides or is found in New York for purposes of Section 1782." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016).  Indeed, as this Court in *Kleimar* found: (i) Vale S.A. trades American Depository Receipts ("ADRs") on the New York Stock Exchange ("NYSE"); (ii) Vale S.A. has significant ties to Vale Americas Inc., which is directly or indirectly wholly-owned by Vale S.A.; (iii) Vale Americas Inc. is currently registered to do business in New York; (iv) Vale Americas Inc. did not contest jurisdiction as a defendant in a recent action in this District; (v) Vale S.A. has designated Vale Americas Inc. as its agent for service in filings with the SEC; and (vi) Vale S.A., through Vale Americas Inc., conducts systematic and regular business in the United States and New York.  The Court found the foregoing sufficient to establish that "Vale has significant contacts with New York such that Vale resides or is found in New York for the purposes of Section 1782." *Id.* at 521.  Vale S.A.'s contacts that this Court found relevant in *Kleimar* continue to exist today.[6]  Based

---

[6] Thus:  (i) Vale S.A. continues to trade on the NYSE.  *See* Klazen Decl. at ¶ 15.  (ii) Vale S.A. recently submitted a Form S-8 with the SEC on February 21, 2020 in which Vale Americas is

on the same analysis, Vale Americas likewise has sufficient contacts with this District to be considered "found" here for purposes of Section 1782.

In addition to the relevant contacts already raised in *Kleimar*, Vale S.A. also has numerous contacts with this District that are specifically related to the dispute over the mining rights and JV Agreement, in relation to which Mr. Steinmetz is seeking discovery through this Application. Those additional contacts not only bolster this Court's conclusion in *Kleimar*, but they also demonstrate that Vale is subject to specific personal jurisdiction in New York insofar as that is necessary for it to be found in this District. *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (reaffirming the "flexible reading of the phrase 'resides or is found'" in Section 1782 and holding that this "language extends to the limits of personal jurisdiction consistent with due process.") (internal citations omitted). In *del Valle Ruiz*, the Second Circuit articulated how the framework for analyzing specific personal jurisdiction would apply in the context of a discovery application under Section 1782:

> In the liability context, "[t]he exercise of specific jurisdiction depends on in-state activity that gave rise to the episode-in-suit." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal quotation marks omitted); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1781 (holding that unrelated contacts cannot diminish the required showing of an affiliation between the forum and the underlying controversy). Translated to account for a § 1782 respondent's nonparty status, we thus hold that, where the discovery material sought proximately resulted from the respondent's forum contacts, that would be

---

listed as the "agent for service" and "Authorized Representative of Vale S.A. in the United States." Klazen Decl., Ex. 11 (Vale S.A.'s Form S-8), at 2, 8. (iii) Upon information and belief, Vale Americas continues to be a directly or indirectly wholly-owned by Vale S.A. *See* Klazen Decl., Ex. 15 (Vale Americas Inc.'s Rule 7.1 Corporate Disclosure Statement). (iv) Vale Americas is currently registered to do business in New York. *See* Klazen Decl., Ex. 13 (New York Department of State Entity Information for Vale Americas). (v) Vale did not contest jurisdiction as a defendant in the case of *Watchtower Bible and Tract Society of New York v. The Int'l Nickel Co., et al.*, 7:15-CV-04306 (S.D.N.Y.). (vi) Vale Americas continues to be an importer in North and South America for Vale's nickel product. *See* Klazen Decl., Ex. 16 (Safety Data Sheet), at 3. In addition, Vale has at least one other subsidiary that is registered to do business in New York (and is also incorporated there): Vale Limited. *See* Klazen Decl., Ex. 10 (Vale S.A.'s Form 20-F, Exhibit 8), at 4; Klazen Decl., Ex. 14 (New York Department of State Entity Information for Vale Limited).

> sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all. On the other hand, where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.

*Id.* at 530. In a footnote, the Court elaborated by explaining that, "[f]or instance, an applicant could target its discovery to all documents relating to *x* created during the course of respondent's engagement with forum entity *y*." *Id.* at 530 n.12.

Here, Vale's contacts with New York are very broad and significant, *see supra*, and the discovery sought would not be available but for Vale's forum contacts. For example, according to the complaint filed (in this Court) in the Rio Tinto RICO Action by Rio Tinto plc against Vale, BSGR and others, Vale attended numerous meetings in New York City in late 2008 and early 2009 to discuss a potential acquisition of the Simandou mining rights from Rio Tinto. Specifically, Rio Tinto alleges that representatives of Vale, together with its New York City-based lawyers at Clearly Gottlieb, attended meetings at Cleary Gottlieb's New York City office on November, 19, 2008, November 24, 2008, and several more times between December 2008 and February 2009 to conduct negotiations and review documents in Rio Tinto's U.S.-based data room. Amended Compl. at ¶¶ 58–62, Rio Tinto PLC v. Vale, S.A. et al., No. 1:14-CV-03042 (RMB) (S.D.N.Y. Aug. 15, 2014). According to Rio Tinto, Vale learned at the November 24 meeting of both the extraordinary value of Rio Tinto's concession over the Simandou mines and Mr. Steinmetz's and BSGR's efforts to misappropriate it. *Id.* at ¶ 78. According to Rio Tinto, Vale then began conspiring with BSGR and Mr. Steinmetz to steal the concession from Rio Tinto, but at the subsequent meetings in New York City feigned continued interest in pursuing a deal with Rio Tinto so that it could access confidential documents in the U.S. data room. *Id.* at ¶ 159.

17

While the Rio Tinto RICO Action was eventually dismissed as being time-barred,[7] to Mr. Steinmetz's knowledge the occurrence of the meetings between Vale and Rio Tinto in New York City has never been seriously contested.  Apparently those meetings not only were instrumental in causing Vale to become interested in the Simandou mining rights but, according to Rio Tinto, they also alerted Vale to a supposed effort by Mr. Steinmetz to "steal" those rights (an allegation Mr. Steinmetz vigorously denies).  Because Mr. Steinmetz is seeking discovery about what Vale believed about BSGR's acquisition of the mining rights, without those meetings in New York City at least some of the relevant discovery sought would not be available.

Vale also, in connection with its being listed on the NYSE, filed reports with the SEC in which it made certain disclosures about the JV Agreement with BSGR.  *See* Klazen Decl., Ex. 12 (Vale S.A.'s Form 6-K), at 5.  ("Vale S.A. (Vale) announces it has acquired from BSG Resources Ltd. (BSGR), a 51% interest on BSG Resources (Guinea) Ltd., which indirectly holds iron ore concession rights in Guinea, in Simandou South (Zogota), and iron ore exploration permits in Simandou North and Blocks 1 & 2."); *see also* Klazen Decl. at ¶ 14.  Those reports did not, however, disclose what Vale actually believed about BSGR and how it had obtained the mining rights.  In drafting those reports to the SEC filings, internal deliberations must have been conducted and perhaps even written records made at Vale about what should and should not be publicly disclosed.  Vale may also have included Vale Americas in such deliberations, as Vale Americas is Vale's authorized representative in the United States.  Evidence of those internal deliberations, which Mr. Steinmetz seeks in the present discovery application, would not have even existed if it

---

[7] Notably, Vale moved to dismiss Rio Tinto's complaint on several grounds, but lack of personal jurisdiction was not one of them.  *See* Mem. of Law in Supp. of Mot. to Dismiss, *Rio Tinto PLC v. Vale, S.A. et al.*, No. 1:14-CV-03042 (RMB) (S.D.N.Y. Feb. 06, 2015).

were not for Vale's having been required to file reports with the SEC as a condition of having its ADRs traded on the NYSE.

Thus, Vale is "found" in this district for purposes of the instant Section 1782 application also under the specific personal jurisdiction analysis set forth in *Valle Ruiz*.

Finally, it would be odd for Vale to argue that is not an appropriate respondent here when, at this very moment, Vale itself has come into this District both to seek discovery through Section 1782 for use in the UK Proceedings and to enforce its award in the LCIA Arbitration.[8]  *See e.g.*, *Andros Compania Maritima, S.A. v. Intertanker Ltd.*, 718 F. Supp. 1215, 1217 (S.D.N.Y. 1989) ("It is a fundamental tenet of jurisdictional law that a party may waive a challenge to the Court's in personam jurisdiction, e.g., Fed. R. Civ. P. 12(h)(1), and appearing and seeking affirmative relief from the Court is the paradigm of such a waiver.") (citing *Adam v. Saenger,* 303 U.S. 59, 67–68 (1938)). Just as one party in a civil action opens itself up to a potential counterclaim or crossclaim if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, *see* Fed. R. Civ. P. 13, so too should a party to a foreign proceeding who seeks discovery under Section 1782 expect that another party to the same foreign proceeding will likewise avail itself of Section 1782 to seek discovery from it. *See, e.g., Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,* No. 08-CIV-1533-BSJ-JCF, 2011 WL 13262163, at *2 (S.D.N.Y. May 4, 2011) ("A plaintiff may not object that the court lacks personal jurisdiction or that venue is improper for purposes of adjudicating a compulsory counterclaim that defendant has interposed.").

---

[8] In its Section 1782 application, Vale is seeking to support its proprietary claim in the UK Proceedings by seeking discovery from various New York-based real estate companies that Vale believes will show where the money that Vale paid to BSGR when it entered the JV Agreement has ended up. *See Ex Parte* Appl., *In re Application of Vale International S.A. et al*, No. 1:20-MC-00199 (JGK) (S.D.N.Y. Apr. 24, 2020).  Vale also is enforcing its award from the LCIA Arbitration against BSGR in this District.  *See* Pet. to Recognize and Enforce Arbitration Award, *Vale S.A. v. BSG Resources Limited*, No. 1:19-CV-03619 (VSB) (S.D.N.Y. Apr. 23, 2019).

2.   Rio Tinto plc and Rio Tinto Limited

Much like Vale S.A., Rio Tinto has significant and continuing contacts with the United States and New York such that Rio Tinto also resides or is found in New York for the purposes of Section 1782.  For instance, (i) Rio Tinto plc trades ADRs on the NYSE, *see* Klazen Decl. at ¶ 23; (ii) Rio Tinto plc has significant ties to Rio Tinto Services Inc., Rio Tinto America Holdings Inc., and Rio Tinto America Inc., all of which are indirect wholly-owned subsidiaries of Rio Tinto plc and are registered to do business in New York, *see id.*; Klazen Decl., Ex. 17 (Rio Tinto plc and Rio Tinto Limited's Form 20-F, Exhibit 8.1), at 4; Ex. 18 (Rio Tinto plc's Form S-8), at 2; Ex. 19; Ex. 20; Ex. 21; Ex. 22 (Rio Tinto Minerals Inc. and Rio Tinto Services Inc.'s Rule 7.1 Corporate Disclosure Statement), at 3; Ex. 23 (Rio Tinto America Inc.'s Rule 7.1 Corporate Disclosure Statement), at 2; (iii) Rio Tinto plc did not contest jurisdiction as a defendant in a recent securities action filed in this District, *see, e.g.*, Mem. of Law in Support of Mot. to Dismiss, *Jeffrey P. Weiner Supplemental Trust v. Rio Tinto PLC et al*, No. 1:16-CV-09572 (ALC) (S.D.N.Y. Sept. 11, 2017); Mem. of Law in Support of Mot. to Dismiss, *Colbert v. Rio Tinto PLC et al*, No. 1:17-CV-08169 (AT) (S.D.N.Y. Sept. 7, 2018); (iv) Rio Tinto plc has designated Cheree Finan, an employee of Rio Tinto Services Inc. as its "authorized representative" in the United States (Klazen Decl., Ex. 18 (Rio Tinto plc's Form S-8), at 2); and (v) Rio Tinto plc conducts systematic and regular business in the United States, including operating at least two mining facilities (one of which has been operating since 1903), *see Rio Tinto US Operations*, Rio Tinto, https://www.riotinto.com/operations/us (last visited May 21, 2020).

Further, in the Rio Tinto RICO Action, Rio Tinto plc acknowledged that it "has a subsidiary . . . which maintains an office at 28 West 44th Street, Level 16, New York, NY 10036.  Rio Tinto plc also has billions of dollars of assets in the United States, earns billions of dollars in annual revenue from operations in the United States, and employs thousands of individuals in the United States."  Amended Compl. at ¶¶

18, *Rio Tinto PLC v. Vale, S.A. et al.*, No. 1:14-CV-03042 (RMB) (S.D.N.Y. Aug. 15, 2014).

Thus, under the analysis set forth in *Kleimar*, Rio Tinto plc is an appropriate discovery target here.

The same is true under an analysis of specific personal jurisdiction. *See Valle Ruiz*, 939 F.3d at 530. As described above, Rio Tinto plc attended numerous meetings with Vale in New York City between November 2008 and February 2009 to negotiate a sale of the mining rights to Vale. Among the discovery that Mr. Steinmetz seeks from Rio Tinto plc is information it had and shared with Vale about BSGR and Mr. Steinmetz and which may help prove that Vale, contrary to what it has always maintained, did not believe that Mr. Steinmetz would have acquired the mining rights properly. That discovery may include records of information shared orally, written documents shared with Vale through Rio Tinto's U.S.-based data room, or other forms of discovery. Further, as discussed above, Rio Tinto plc brought an action in this District claiming that Vale and BSGR conspired to steal the mining rights from Rio Tinto. In advance of and during the litigation, Rio Tinto plc undoubtedly had internal discussions and likely prepared written records about what the events surrounding the acquisition of the mining rights by BSGR and what Rio Tinto told Vale about BSGR and Mr. Steinmetz. Those types of discovery, which Mr. Steinmetz seeks in this application, would not be available but for those meetings in New York City and Rio Tinto's litigation before this Court. Accordingly, Rio Tinto plc is a proper discovery target in this District.

Likewise, Rio Tinto Limited, by virtue of Rio Tinto plc's contacts with New York, is also found in New York. Rio Tinto plc and Rio Tinto Limited operate under a dual listed companies structure. This means that both entities are managed together, by the same board of directors and in which shareholders have a common economic interest. As explained on Rio Tinto's website, Rio Tinto's structure is "designed to place the shareholders of Rio Tinto plc and Rio Tinto Limited in substantially the same position as if they held shares in a single entity owning all of the assets

of both companies." *See Dual Listed Companies Structure*, RIO TINTO, https://www.riotinto.com/en/invest/shareholder-information/dual-listed-companies-structure (last visited May 21, 2020). Indeed, in its SEC filings, Rio Tinto informs shareholders of both Rio Tinto plc and Rio Tinto Limited, and shares of both companies are held in part by U.S.-addressed persons. Thus, Rio Tinto Limited is a proper discovery target here as well.

### B. The Evidence Requested is "For Use" in a Foreign Proceeding

The "for use" condition requires that the requested discovery has some relevance to the foreign proceeding. *See In re Application of Sveaas*, 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008). Relevance "is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Id.* District Courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable or admissible in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82 (noting unanimity among the Circuits who have ruled on the issue). Where relevance is in doubt, a court applying Section 1782 should be "broadly permissive" of discovery. *Sveaas*, 249 F.R.D. at 107.

Here, the requested discovery is relevant to the UK Proceedings, wherein Vale asserts that BSGR and the defendants made fraudulent misrepresentations to Vale to fraudulently induce Vale into entering the JV Agreement. The evidence sought is specifically relevant to and in support of the Mr. Steinmetz's defenses raised in the UK Proceedings, which deny Vale's allegations entirely, claim that Vale did not rely on any of BSGR's assertions, which it did not believe, and went forward with the deal as a "business decision" despite the red flags and in spite of advice, and that Vale opted into a deal that it believed was based on corruption and bribery.

### C. As a Defendant in the Foreign Proceedings, Mr. Steinmetz is an "Interested Person" under Section 1782

As a Defendant in the UK Proceedings, Mr. Steinmetz is an "interested person" under Section 1782. *See Intel*, 542 U.S. at 256, 258 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"); *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (a party to the underlying foreign proceedings "is an 'interested person' within the meaning of the statute"); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (as a party to the foreign proceeding, the applicant qualifies as an interested person).

## II.    THE INTEL DISCRETIONARY FACTORS STRONGLY FAVOR GRANTING MR. STEINMETZ'S APPLICATION

As a matter of discretion, under the Supreme Court's decision in *Intel*, discovery should also be granted.

### A. Vale's Document Destruction Policy and the Urgent Nature of the Foreign Proceedings Necessitate Obtaining Discovery Now, and Vale Americas, Rio Tinto plc, and Rio Tinto Limited are not Participants in the UK Proceedings

One of the four discretionary factors is whether the person from whom discovery is sought is a party to the foreign proceeding. Here, it is undisputed that one of the targets from whom discovery is sought (Vale, S.A.) is a claimant in the UK Proceedings. That does not, however, mean that discovery under Section 1782 is inappropriate. *See, e.g.*, *Intel*, 542 U.S. at 264, 266 (noting that Intel was a party to the foreign proceeding but not finding that discovery was foreclosed); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (granting discovery directed to a party to the foreign proceedings).

In *Intel*, the Supreme Court explained that where the person from whom discovery is sought is a participant in the foreign proceeding, "the need for §1782(a) aid generally is not as apparent" because the "foreign tribunal has jurisdiction over those appearing before it, and can itself order

them to produce evidence." *Intel*, 542 U.S. at 244.  However, Mr. Steinmetz likely would not be able to obtain in the UK Proceeding all the discovery he seeks here, for two reasons:  First, Vale revealed in the LCIA Arbitration that it adheres to a document destruction policy through which relevant documents have already been destroyed despite knowledge of (or rather because of) impending investigations/litigation.  Klazen Decl., Ex. 7 (Defence of the First Defendant) ("When Vale was asked to disclose specific classes of internal emails in the LCIA proceedings, Vale responded that it had destroyed the emails of several centrally relevant custodians involved in the due diligence process in potential breach of its FCPA duties.").  Because the discovery phase in the UK Proceeding will not commence until at least five months from now (or perhaps longer in the future), Mr. Steinmetz is concerned that if he cannot secure the relevant documents from Vale through the instant proceeding, critical evidence that support his defenses would be destroyed by the time the London court might order their disclosure in the UK Proceedings.

Second, in light of recently uncovered facts that undermine Vale's positions in the UK Proceedings, it is important to the administration of justice in the UK Proceedings that Mr. Steinmetz be able to take discovery.  As part of the UK Proceedings, Vale sought and obtained the freezing of Mr. Steinmetz's assets based on, as evidence shows, false assertions.  That freeze continues to cause Mr. Steinmetz substantial harm.  Seeking discovery relief in this court, as opposed to waiting until the UK Proceedings advance to a discovery stage, is therefore critical, given that the evidence sought could allow the English courts to re-evaluate provisional relief it has granted based on Vale's assertions.

Accordingly, the first *Intel* factor weighs in favor of Mr. Steinmetz's request for discovery from Vale.  *See, e.g.*, *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) (holding that given the urgent nature of the foreign proceedings for which discovery was sought,

discovery assistance may well be needed); *In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (finding the first Intel factor weighed in favor of discovery against a party to the foreign proceeding where "the apparent limitations of [the foreign court's] discovery rules suggest that the exercise of jurisdiction by this Court may be necessary to provide [the party] with the documents it seeks"); *Matter of Lufthansa Technick AG*, No. C17-1453-JCC, 2019 WL 331839, at *1 (W.D. Wash. Jan. 25, 2019) (reasoning that although the discovery target was also a participant in the pending foreign proceedings, "the discovery procedures available [to the applicant] in the pending proceedings [were] insufficient to procure the requested discovery" and "[t]herefore, the first *Intel* factor weighs in [the applicant's] favor").

In any event, whether the discovery target is a party to the foreign proceeding is but one of four discretionary factors under Section 1782 and an applicant is not required to satisfy every discretionary factor for discovery to be appropriate. *See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. CIV.M19-88 BSJ, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) (granting an application under Section 1782 where three out of four discretionary factors weighed in the applicant's favor and the fourth factor was "at most a neutral consideration"); *see also Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) ("[P]articipation in the foreign proceedings does not automatically foreclose § 1782 aid.").

As for Rio Tinto plc, Rio Tinto Limited, and Vale Americas, they are not parties to the UK Proceedings.   The first *Intel* factor therefore weighs in favor of granting discovery requests aimed at Rio Tinto and Vale Americas. *See Intel*, 542 U.S. at 264; *Sveaas*, 249 F.R.D. at 107 ("status as a non-party in the foreign actions weighs in favor of granting [Applicant's] application.").[9]

---

[9] Even if the Discovery Targets were amenable to subjecting themselves to discovery in the UK, Mr. Steinmetz need not first seek discovery in the foreign tribunal.  As the Second Circuit has

### B. The UK Courts Would be Receptive to the Requested Discovery, and the Character of the UK Proceedings Favors Granting the Application

The UK Court would be receptive to the requested discovery.  In examining the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would ***reject*** evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1100 (emphasis added).  Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]" *Id.*

Here, the UK Courts have not issued any such statement or order.  Additionally, there is no indication, let alone authoritative proof, that the UK Courts would reject any of the documents or information gathered pursuant to the Application.  Indeed, U.S. courts routinely grant Section 1782 applications seeking discovery for use in UK courts.  *See, e.g.*, *In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) ("Here, the English Action is pending in the High Court of Justice, Chancery Division, a trial court which . . . hears the testimony of witnesses and receives documents in evidence, very much as American courts do.  And the nature of the English Action suggests that discovery is appropriate to obtain relevant testimony and documents.").  Indeed, as mentioned *supra*, Vale itself is currently seeking discovery under Section 1782 for use in the UK Proceedings.

---

explained, there is no "'quasi-exhaustion requirement' . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (internal quotations omitted); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement").

### C.  Mr. Steinmetz Is Not Circumventing Any UK Proof-Gathering Restrictions

Mr. Steinmetz seeks this discovery in good faith and is not attempting to circumvent the foreign tribunal's proof gathering restrictions.  The UK Courts have issued no orders limiting Steinmetz from seeking discovery from third parties.

Notably, the discovery sought by Mr. Steinmetz will be relevant to the UK Proceedings even if defendants Balda and Nysco prevail on their pending motion for summary judgment on Vale's proprietary (tracing) claim.  In the UK, discovery follows a motion for summary judgment. In any case, upon dismissal of the proprietary claim – through which Vale seeks to recover the specific funds that Vale paid to BSGR under the JV Agreement – Vale's other claims, and Mr. Steinmetz's defenses, would continue to be litigated.  Accordingly, this factor also weighs in favor of granting the Application.

### D.  Mr. Steinmetz's Discovery Requests Are Appropriately Tailored and Are Not Unduly Intrusive or Burdensome

Mr. Steinmetz's proposed subpoenas are appropriately tailored and not "unduly intrusive or burdensome."  *Intel,* 542 U.S. at 265.  Mr. Steinmetz has propounded targeted document requests, which seeks a discrete universe of documents relating to the mining rights, the Applicant, BSGR, Vale, BSGR and Vale's joint venture, Simandou, and any alleged wrongdoings on behalf of either Vale, the Applicant, or BSGR.  Mr. Steinmetz has also limited the requested deposition testimony to the same topic.  Thus, the potential burden and expense of compliance would be minimal, certainly in light of the importance of the request information to Mr. Steinmetz's defenses in the UK Proceedings. *See In re Application of Hornbeam Corp.*, No. 1:14-MC-00424 (P1), 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014) (granting Section 1782 application where discovery sought is specific and discrete and thus not unduly intrusive or burdensome).

27

Furthermore, on information and belief, at least some of the relevant discovery materials already has been gathered by Vale and Rio Tinto in the course of the Rio Tinto RICO Action, where preliminary discovery was conducted before the case was dismissed.  Indeed, in that case the court in 2015 directed both Vale and Rio Tinto to undertake discovery regarding evidence of potential BSGR bribery and corruption.  *See* Tr. of Conference Held on August 19, 2015 at 9:6–12, *Rio Tinto PLC v. Vale, S.A. et al.*, No. 1:14-CV-03042 (RMB) (S.D.N.Y, Sept. 30, 2015).  Prior efforts to collect such evidence would further reduce any burden on Vale S.A. and Rio Tinto to respond to Mr. Steinmetz's discovery requests.

## **CONCLUSION**

Based on the foregoing, Mr. Steinmetz respectfully petitions the Court to enter the proposed Order attached to the Declaration of Josef M. Klazen as Exhibit 1, authorizing issuance of the subpoenas attached to the Declaration of Josef M. Klazen as Exhibits 2-5 and directing the Discovery Targets to respond to the subpoenas in accordance with such Order.

Dated:          New York, New York
                May 21, 2020

                                    Respectfully submitted,

                                    /s/ Michael S. Kim

                                    KOBRE & KIM LLP
                                    800 Third Avenue
                                    New York, New York 10022

                                    Michael S. Kim
                                    +1 212 488 1201
                                    michael.kim@kobrekim.com

                                    Josef M. Klazen
                                    +1 212 488 1216
                                    josef.klazen@kobrekim.com

                                    Robin Rathmell
                                    +1 202 664 1941
                                    robin.rathmell@kobrekim.com

Victoria R. Morris (motion for
admission *pro hac vice* pending)
+1 305 967 6131
victoria.morris@kobrekim.com

Carolina Leung
+1 212 488 4948
carolina.leung@kobrekim.com

*Attorneys for Applicant*
*Benjamin Steinmetz*