# EXHIBIT 9

1. 7-8th Defendant<br>
2. D Levy<br>
3. First<br>
4. DL1<br>
5. 18 May 2020

| | |
|---|---|
| IN THE HIGH COURT OF JUSTICE<br>BUSINESS AND PROPERTY COURTS<br>OF ENGLAND AND WALES<br>COMMERCIAL COURT (QBD) | CLAIM NO. CL-2019-000723 |

**B E T W E E N:-**

(1) VALE S.A.
(2) VALE HOLDINGS B.V.
(3) VALE INTERNATIONAL S.A.

<u>Claimants/Applicants</u>

- AND -

(1) BENJAMIN STEINMETZ
(2) DAG LARS CRAMER
(3) MARCUS STRUIK
(4) ASHER AVIDAN
(5) JOSEPH TCHELET
(6) DAVID CLARK
(7) BALDA FOUNDATION
(8) NYSCO MANAGEMENT CORPORATION

<u>Defendants/Respondents</u>

---

**WITNESS STATEMENT OF DORON LEVY**

---

I, Doron Menashe Levy, of APM House, 18 Raoul Wallenberg St, Building D, Tel Aviv, Israel 6971915, **SAY AS FOLLOWS**:

1. I am an Israeli attorney and have served as special advisor to the council of the Balda Foundation and the board of Nysco Management Corporation since 2009. I manage this litigation on behalf of the Balda Foundation ("Balda") and Nysco Management Corporation ("Nysco"), respectively the 7th and 8th Defendants to these proceedings. I am duly authorised to make this witness statement on behalf of Balda and Nysco.

*D.L* (signature)

1. 7-8th Defendant<br>
2. D Levy<br>
3. First<br>
4. DL1<br>
5. 18 May 2020

2. This statement is made in support of Balda and Nysco's application for summary judgment in relation to the proprietary claim asserted by the Claimants. The facts and matters in this statement are within my knowledge unless otherwise stated and I believe them to be true. Where information has been provided to me or is based on documents then I identify its source and it is true to the best of my knowledge and belief. My involvement with the council of Balda and Nysco's Board of directors in 2010 and the years immediately following did not extend to operational matters and accordingly I have had to rely on information gathered from documents and provided to me by service providers.

3. There is now produced and shown to me a paginated bundle of documents marked "DL1" exhibited to this witness statement, to which I refer by page number in the format **[DL1/page]**.

4. This claim arises from a joint venture (embodied in a joint venture agreement and a shareholders' agreement: the JVA and SHA, together the "Investment Agreements") by which the First Claimant ("Vale") participated with a company called BSGR in iron ore concessions in Guinea. Nysco and Balda are, respectively, the parent company of BSGR and a Liechtenstein foundation (Balda) which wholly owns Nysco.

5. Vale alleges that its decision to enter into those agreements was procured by fraudulent misrepresentations made or adopted by the Defendants including Balda and Nysco. Balda and Nysco deny making or adopting any such fraudulent misrepresentations.

6. Vale asserts that it was entitled to rescind the JVA because it was voidable for fraudulent misrepresentation, and seeks to trace the proceeds of the initial payment made on behalf of Vale of USD 500 million ("the Vale Proceeds"). Vale asserts that the Vale Proceeds and its traceable proceeds are held on constructive trust for Vale.

7. While the tracing exercise being conducted by Balda and Nysco has not yet been completed, the initial review indicates that at least $371 million of the Vale Proceeds were paid to Nysco, in repayment of loans made by Nysco to BSGR.

8. In this application Balda and Nysco contend that as a matter of law, even assuming that the Claimants were able to establish the fraudulent misrepresentations that they allege, they would not have a good arguable case that they have proprietary rights in relation to the Vale

*D.L*

1. 7-8th Defendant<br>
2. D Levy<br>
3. First<br>
4. DL1<br>
5. 18 May 2020

Proceeds, because of the terms of the Share and Purchase Deed through which Vale terminated the Investment Agreements and transferred the shares obtained under the Investment Agreements to BSGR.

No good proprietary claim

9. On 28 April 2014, Vale gave notice of arbitration to BSGR [**DL1/1-27**]. Paragraph 49 of that Notice contained a prayer for relief, in which Vale claimed rescission and damages:

    *a. Rescission of the Framework Agreement and the Shareholders' Agreement;*

    *b. Damages in the sum of approximately $1.25 billion for fraudulent misrepresentation ... in an amount to be determined in the course of this arbitration, as well as interest on such sum at an appropriate rate* [**DL1/24**].

10. On 13 March 2015, Vale and BSGR entered into the Share Purchase Deed [**DL1/28-59**]. The Share Purchase Deed was prepared, over a period of several months by Cleary Gottlieb on behalf of Vale and Mishcon De Reya on behalf of BSGR.

11. I understand from Asher Avidan, who was a senior executive of BSGR and personally managed the relationship and the dispute with Vale at that time, that BSGR wanted VBG to institute proceedings against the Government of Guinea in ICSID for the illegal expropriation of the mining rights.

12. Vale were not willing to be involved in a claim against Guinea, preferring to maintain their relationship with the Government of Guinea. The perception of BSGR at the time was that Vale wished to pursue their relationship with Guinea without the involvement of BSGR.

13. Vale agreed to procure the sale to BSGR of their 51% holding in VBG for $1, thereby allowing BSGR control of the company.

14. The sale ended Vale's ongoing or future obligations under the Investment Agreements, including a liability to pay BSGR circa $180 million for rights established in relation to the Zogota area. Further, since Vale was no longer a shareholder in the Joint Venture it was free to pursue interests in Guinea precluded by non-compete terms in the Joint Venture

1. 7-8th Defendant<br>
2. D Levy<br>
3. First<br>
4. DL1<br>
5. 18 May 2020

Agreement. This was perceived by BSGR as being a major reason for Vale to enter into the agreement.

15. By that deed, Vale agreed to sell and BSGR agreed to purchase Vale's 51 percent shareholding in the project company for USD 1. In addition, the parties agreed that the JVA and the SHA (which were defined as the "Vale Investment Agreements") would "terminate":

> *Subject to Clause 6.2 and 6.3, the Vale Investment Agreements (and all rights and obligations thereunder, including, for the avoidance of doubt, any rights which are stated as surviving termination) shall terminate with immediate effect upon Completion; provided, however, that (as contemplated by Section 6.2) nothing in this Section 6.1 shall be deemed to affect any claims between Vale and BSGR that have been or may be brought in the LCIA Arbitration in relation to events that occurred prior to the completion date* [**DL1/37**].

16. As can be seen, that termination was expressly subject to (but only to) clauses 6.2 and 6.3. Those provided as follows:

> *6.2 The provisions of the Vale Exit Agreements shall not affect, shall be without prejudice to and shall be without restriction on the assertion or prosecution of any claims or counter-claims that have been or may in the future be made in the LCIA Arbitration between Vale and BSGR and in particular, shall not preclude Vale from making any claim in the LCIA Arbitration, including but not limited to any claim based on:*
>
> *(a) the VBG Debt (including any claim for damages based on the loss caused by the non-repayment of VBG Debt and interest thereon that has accrued through 29 April 2014 or that would have, notwithstanding the Vale Debt Amendment Agreement, accrued thereafter);*
>
> *(b) the Vale Expenditures; and*
>
> *(c) the payment made by Vale to BSGR pursuant to the Vale Investment Agreements* [**DL1/37**].

1. 7-8th Defendant<br>
2. D Levy<br>
3. First<br>
4. DL1<br>
5. 18 May 2020

> *6.3 For the avoidance of doubt, following Completion: (i) none of the fact or content of the parties' negotiations, nor the transactions contemplated by the Vale Exit Agreements shall be used as a defence (whether by way of an alleged affirmation, waiver, release or otherwise) by BSGR to any claim against BSGR and its Affiliates in the LCIA Arbitration or to bar, limit or affect in any way any such claim in the LCIA Arbitration (including, without limitation any claim for damages, rescission of the Vale Investment Agreements or any other claim whatsoever); and (ii) Vale and its Affiliates shall not be entitled to make any claim whatsoever against BSGR and/or any of its Affiliates in respect of the VBG Debt other than as part of the LCIA Arbitration, in which case the reservation of rights set forth in Clause 6.2 shall be applicable, or based on the terms of the Vale Debt Amendment Agreement* **[DL1/38]**.

17. Completion under the Share Purchase Deed took place immediately following execution of the deed.

18. As a matter of English law, and as will be more fully developed in Balda and Nysco's skeleton argument, the effect of the termination of the Agreements and the transfer of the shares, pursuant to the Share Purchase Deed, was that Vale lost any proprietary interest in the Vale Proceeds that it might have had. The Share Purchase Deed did not provide an exception that would maintain its proprietary claim in relation to claims against third parties or any outside the arbitration and accordingly any such claims have been lost.

Arbitration Award

19. Vale did pursue its claim for rescission in the arbitration and its reply, served in March 2016, alleged[1], incorrectly, that the Vale Proceeds were "funnelled directly from BSGR to Balda".

---

[1] para 572 : [...] Further, after Vale paid BSGR US$500 million under the Transaction Documents, the entirety of that payment was funnelled directly from BSGR to Balda, providing Balda with "subsequent substantial liquidity." Steinmetz also used Balda as his personal ATM, regularly taking out dozens of multi-million dollar payments from Balda for use by

D.L

1. 7-8th Defendant<br>
2. D Levy<br>
3. First<br>
4. DL1<br>
5. 18 May 2020

20. The Tribunal issued its award on 4 April 2019 [**DL1/564-844**]. In that Award, the Tribunal considered the rescission claim at paras 896–924 [**DL1/813-822**].

21. The reasons why Vale was seeking rescission were slightly unclear (see the quotation at page 254 of the Award, which seem to suggest that the prime concern was with obligations *de futuro*). Nevertheless, the Tribunal ruled on it. It held:

    a) Vale was seeking equitable rescission, i.e. rescission by judicial (or arbitral) act, and not "self-help" rescission at law: see para 907 [**DL1/818**].

    b) Vale was entitled to rescission, because there was no applicable bar to it: see paras 910–919 [**DL1/819-821**]. (As the Tribunal noted, the Share Purchase Agreement could not be asserted as a bar by Vale, because of the terms of clause 6.2, set out above: see para 906 [**DL1/818**].)

    c) Vale was not entitled, as part of or a consequence of that rescission, to repayment of the Initial Consideration (see paras 921–922 [**DL1/822**]).

    d) Accordingly, the Initial Consideration was dealt with only as part of the damages calculation: see paras 925, 932–933 [**DL1/822**], [**DL1/823-824**].

22. Nothing in the Award gave Vale any proprietary interest in the Vale Proceeds. On the contrary, as I have explained, the Tribunal held expressly that Vale was not entitled to repayment of the Initial Consideration.

23. Thus, the effect of the Share Purchase Deed and the Arbitration Award is to preclude the Claimants' alleged proprietary claim. This argument will be further developed in Balda and Nysco' skeleton argument.

---

himself, his family, and his businesses. It need not be belabored that these decisions, except as a matter of corporate formality, were not being made by the ubiquitous M. Bonnant, Steinmetz's lawyer, as the Chairman of Balda, but by Steinmetz himself [**DL1/343-344**].

*D.*

1. 7-8th Defendant  
2. D Levy  
3. First  
4. DL1  
5. 18 May 2020

**STATEMENT OF TRUTH**

I believe that the facts set out in this Witness Statement are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

…………………………………………........................

Signed: Doron Levy

Dated: 18th May 2020

1. 7-8th Defendant
2. D Levy
3. First
4. DL1
5. 18 May 2020

CLAIM NO. CL-2019-000723

IN THE HIGH COURT OF JUSTICE
BUSINESS AND PROPERTY COURTS
OF ENGLAND AND WALES
COMMERCIAL COURT (QBD)

B E T W E E N:

(1) VALE S.A.
(2) VALE HOLDINGS B.V.
(3) VALE INTERNATIONAL S.A.

<u>Claimants/Applicants</u>

- and -

(1) BENJAMIN STEINMETZ
(2) DAG LARS CRAMER
(3) MARCUS STRUIK
(4) ASHER AVIDAN
(5) JOSEPH TCHELET
(6) DAVID CLARK
(7) BALDA FOUNDATION
(8) NYSCO MANAGEMENT CORPORATION

<u>Defendants/Respondents</u>

## WITNESS STATEMENT

## OF DORON LEVY

Byrne and Partners LLP
Solicitors for 7th & 8th Defendants
1 Plough Place
London
EC4A 1DE

Tel: 020 7842 1616
Fax: 0207 842 1617

Ref: NJB/EAS/A10056-0001

8

692651_1