UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of Benjamin Steinmetz for
an Order to Take Discovery from Vale S.A.
Vale Americas Inc., Rio Tinto plc, and Rio
Tinto Limited Pursuant to 28 U.S.C. § 1782

Case No. 1:20-mc-00212-AJN

## MEMORANDUM OF LAW IN OPPOSITION TO
## THE APPLICATION OF BENJAMIN STEINMETZ
## FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A. and Vale Americas Inc.*

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................4

    I.      The BSGR/Steinmetz Bribery and Corruption Scheme.........................................4

    II.     The English Proceedings...........................................................................................6

ARGUMENT ...........................................................................................................................8

    I.      The Application Fails to Meet § 1782's Statutory Prerequisites and Alternatively
          Should Be Rejected Under the Court's Discretion ..................................................8

    II.     Steinmetz Fails to Satisfy the Statutory Requirements for § 1782 Discovery.........9

          A.     Vale Neither Resides Nor Is Found in the Southern District of New York.9

                i.      Vale Is Not Subject to General Jurisdiction in the Southern District
                          of New York ...................................................................................10

                ii.     Vale Does Not Have Sufficient Contacts with the Southern District
                          of New York for Purposes of this Application ..............................10

                iii.    Considerations of Fair Play, Substantial Justice, and International
                          Comity Support Dismissal ..............................................................13

                iv.    Vale's Independent § 1782 Application Has No Bearing on the
                          Court's Jurisdictional Analysis ......................................................14

           B.     The Requested Discovery Is Not "For Use" in the Underlying Foreign
                 Proceeding...........................................................................................................15

    III.    Discretionary Factors Weigh in Favor of Denying Steinmetz's Application ........17

          A.     Steinmetz Seeks Documents from a Party to the English Proceedings .....17

           B.     Intel's Second Discretionary Factor Favors Vale By the Same Logic ......20

           C.     The Requests Are Designed to Circumvent Foreign Proof-Gathering
                 Restrictions .............................................................................................20

           D.     Steinmetz's Petition Is Unduly Intrusive and Burdensome ......................21

           E.     Steinmetz's Application Should Be Denied Because It Lacks Any
                 Evidentiary Basis And Is Based on Black Cube's Unlawful Activity.......25

CONCLUSION.......................................................................................................................28

**TABLE OF AUTHORITIES**

Page(s)

**Rules and Statutes**

28 U.S.C. § 1782................................................................................................ passim

**Cases**

Advanced Micro Devices, Inc. v. Intel Corp.,
No. C 01-7033, 2004 WL 2282320 (N.D. Cal. Oct. 4, 2004)............................................ 18

Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.,
480 U.S. 102 (1987)........................................................................................ 14

Ayyash v. Crowe Horwath LLP,
17-mc-482 (AJN), 2018 WL 1871087 (S.D.N.Y. Apr. 17, 2018).................................. 16, 17, 24

Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,
137 S. Ct. 1773 (2017)..................................................................................... 9

Brown v. Lockheed Martin Corp.,
814 F.3d 619 (2d Cir. 2016).............................................................................. 10

Daimler AG v. Bauman,
571 U.S. 117 (2014)........................................................................................ 10, 14

Denizbank, A.S. v. ATA Freight Line, Ltd.,
No. 7-cv-5060 (NGG)(SMG), 2008 WL 11438316 (E.D.N.Y. Mar. 26, 2008)................. 17, 20

Euromepa S.A. v. R. Esmerian, Inc.,
51 F.3d 1095 (2d Cir. 1995).............................................................................. 25

Frigerio v. United States,
No. 10 Civ. 9086 (SAS), 2011 WL 3477135 (S.D.N.Y. Aug. 5, 2011) ............................ 16

In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use
in Foreign Proceedings,
773 F.3d 456 (2d Cir. 2014).............................................................................. 23-24

In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,
No. CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .............................. 24

In re Asia Mar. Pac. Ltd.,
253 F. Supp. 3d 701 (S.D.N.Y. 2015)...................................................................... 24

In re Berlamont,
No. 14-MC-00190 JSR, 2014 WL 3893953 (S.D.N.Y. Aug. 4, 2014).............................. 23

In re Cathode Ray Tube (CRT) Antitrust Litigation,
No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013)........................................ 21

In re Del Valle,
342 F. Supp. 3d 448 (S.D.N.Y. 2018)...................................................................... 13

In re Del Valle Ruiz,
939 F.3d 520 (2d Cir. 2019).............................................................................. passim

In re Elvis Presley Enters. LLC,
No. 15-MC-386 (DLC), 2016 WL 843380 (S.D.N.Y. Mar. 1, 2016) ............................... 17, 25

In re Gorsoan Ltd.,
No. 18-MC-431 (RA), 2020 WL 409729 (S.D.N.Y. Jan. 24, 2020) ................................. 24

In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions,
No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015)........................................ 17, 21

In re Kleimar N.V.,
220 F. Supp. 3d 517 (S.D.N.Y. 2016)...................................................................... 12, 13

In re Mare Shipping Inc.,
No. 13 MISC. 238, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013) .................................... 21

In re Microsoft,
428 F. Supp. 2d 188 (S.D.N.Y. 2006)...................................................................... 21

In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG,
No. 15 MISC. 319 LTS, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ............................... 24

In re Petrobras Sec. Litig.,
393 F. Supp. 3d 376 (S.D.N.Y. 2019)............................................................... 8, 12, 16

In re Postalis,
No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018)............................... 15, 16

In re XPO Logistics, Inc.,
No. 15-MC-205 (LGS) (SN), 2017 WL 2226593 (S.D.N.Y. May 22, 2017).................... 24

Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,
475 F. Supp. 2d 456 (S.D.N.Y. 2007).................................................................. 14-15

Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004)............................................................................................ passim

Inv. Vehicles v. KPMG, L.L.P.,
798 F.3d 113 (2d Cir. 2015)................................................................................ 15

Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,
895 F.3d 238 (2d Cir. 2018)................................................................... 8-9, 26, 28

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,
732 F.3d 161 (2d Cir. 2013)................................................................................ 14

Mare Shipping Inc. v. Squire Sanders (US) LLP,
574 F. App'x 6 (2d Cir. 2014) ............................................................................ 21

Mees v. Buiter,
793 F.3d 291 (2d Cir. 2015)................................................................................ 23, 25

Nat'l Broad. Co. v. Bear Stearns & Co.,
165 F.3d 184 (2d Cir. 1999)................................................................................ 16

New York v. Mountain Tobacco Co.,
55 F. Supp. 3d 301 (E.D.N.Y. 2014) .................................................................. 15

Rush v. Savchuk,
444 U.S. 320 (1980)............................................................................................ 9

Schmitz v. Bernstein Liebhard & Lifshitz, LLP,
376 F.3d 79 (2d Cir. 2004).................................................................................. 8, 17

Sonera Holding B.V. v. Cukurova Holding A.Ş,
750 F.3d 221 (2d Cir. 2014)................................................................................ 10

Walden v. Fiore,
571 U.S. 277 (2014)............................................................................................ 10, 11

## PRELIMINARY STATEMENT

The Application[1] is a transparent publicity stunt by Steinmetz to use this Court's resources to deflect attention from the numerous defeats he and his company, BSG Resources Limited ("BSGR"), have sustained during the past year before a distinguished arbitral tribunal (the "Tribunal") of the London Court of International Arbitration ("LCIA"), and in the courts of England and the United States.  BSGR was found liable in fraud for $2 billion.  Steinmetz and his associates are themselves the subject of personal fraud claims for $1.85 billion, and they have had all their global assets frozen by the English courts.  That the Application is a gimmick is readily apparent from Steinmetz's extraordinary decision to submit an utterly irrelevant 38-page declaration from the notorious Black Cube purporting to describe illegally-obtained secret recordings in breathless, sensationalist and selective terms, when it would have sufficed for § 1782 purposes for Steinmetz to have simply annexed his defense (the "Defence") in the fraud proceedings brought by Vale S.A. ("Vale") in the English High Court of Justice (the "High Court") against Steinmetz and others (the "English Proceedings").

That Defence rehashes a tired and hopeless Steinmetz defense ("Vale deserved to be defrauded because it knew Steinmetz was corrupt") that the Tribunal emphatically rejected in 2019.  Why did Steinmetz go to the lengths of hiring Black Cube, having it deceive former Vale employees and a consultant and secretly and illegally record their conversations (in which they told Black Cube's agents with the gloss of conversational idiom precisely what Vale told the Tribunal when it rejected this very defense) on issues that are entirely immaterial to this Application, and further break the law by submitting the transcripts to this Court?  It is because

---

[1]   The "Application" refers to the Application of Benjamin Steinmetz for an Order under 28 U.S.C. § 1782 to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited for Use in Foreign Proceedings.  The "MOL" refers to the Memorandum of Law filed in support of the Application, ECF No. 3.

Steinmetz wants to use this Court to garner press attention to his "new" allegations in the hope of changing the public narrative about his role in defrauding Vale and the hundreds of millions of dollars he pocketed as a result. In doing so he demonstrates a remarkable lack of candor with this Court in failing to reveal that he *already* has access in England to nearly all the documents that are the purported object of his Application (more than a quarter million pages).

Unsurprisingly, Steinmetz does not come close to satisfying either the statutory requirements under § 1782 or the discretionary Intel factors.

Steinmetz fails to meet two of the three statutory requirements under § 1782. *First*, Vale is a Brazilian corporation that does not reside and is not found in this district. Under Second Circuit precedent, which applies the same familiar tests for general and specific jurisdiction in the context of § 1782, Vale is plainly not subject to the Court's jurisdiction with regard to its conduct and interactions with Steinmetz and his company that took place exclusively overseas. See In re Del Valle Ruiz, 939 F.3d 520, 528-531 (2d Cir. 2019). *Second*, far from seeking discovery "for use" in the English Proceedings, Steinmetz's Application and public comments reveal an ulterior, non-cognizable motive for the discovery he seeks: purportedly challenging Vale's final and enforceable $2 billion arbitration award rendered in Vale's LCIA arbitration in England against Steinmetz's company BSGR (the "LCIA arbitration"). See Ex. 3 Vale S.A. v. BSG Resources Ltd., LCIA Arb. No. 142683, ¶¶ 1004-1005 (Apr. 4, 2019) (the "Award").

Likewise, all four of § 1782's discretionary factors favor rejecting the Application, and additional discretionary considerations militate the same result. *First*, unlike traditional § 1782 applications directed toward discovery from non-parties, Vale and Steinmetz are already adversaries in the English Proceedings. A case management conference has been scheduled for October 2020, discovery will soon commence under the supervision of the High Court, and

Steinmetz will have his opportunity to seek discovery from Vale there. *Second*, this same analysis dictates that the second discretionary factor – the nature of the foreign tribunal – favors rejecting Steinmetz's application. *Third*, Steinmetz is attempting to use a more favorable forum to circumvent the rules of the High Court.

*Fourth*, Steinmetz already has the very documents he claims to need so urgently that he cannot wait for English discovery. Steinmetz and BSGR have requested and obtained substantial discovery on the subpoena topics in the LCIA arbitration and the civil RICO suit filed in 2014 in the Southern District of New York by Rio Tinto plc. ("Rio Tinto") against Vale, Steinmetz, and others (the "*Rio Tinto* Litigation"). In the English Proceedings, Steinmetz's counsel requested – and Vale consented to – access to all of these documents.

In any event, Steinmetz's subpoena is grossly overbroad: he seeks every document Vale has in its possession, custody or control over a 14-year period about BSGR, Guinea, Steinmetz, Rio Tinto, and all communications of certain Vale executives. See, e.g., Subpoena to Testify At A Deposition in A Civil Action To Vale S.A., May 21, 2020, ECF No. 5-2, 6-9 (the "Requests"). The suggestion that his proposed subpoena is narrowly tailored is risible.

*Fifth*, even were the Black Cube tapes relevant to this Court's consideration (as Steinmetz claims), they should not serve as the basis for a U.S. court to grant §1782 discovery. Quite the reverse: putting aside that the Black Cube declarant, Dr. Avi Yanus, has no personal knowledge regarding virtually any aspect of his declaration, Yanus describes conduct by Black Cube's agents that is not only unethical, but also *illegal* under at least English, French and Brazilian law.

*Finally*, as set forth in Vale's accompanying Conditional Cross-Application for Reciprocal Discovery, while this Court should deny the Application in its entirety, if it grants any discovery of Vale in favor of Steinmetz, Vale should be permitted to take reciprocal discovery of Steinmetz

including deposing Steinmetz and his Black Cube declarant Yanus in this proceeding.

## BACKGROUND

### I.      The BSGR/Steinmetz Bribery and Corruption Scheme

In 2008, BSGR obtained rights from the Guinean government to develop iron ore mining concessions in Guinea's Simandou region. Ex. 3, Award ¶¶ 239-42. BSGR then approached Vale to sell it an interest in these concessions as BSGR needed a partner that could both invest capital and offer technical expertise for their development. Id. ¶ 6. Vale conducted substantial due diligence, led by international law firm Clifford Chance and its specialist Foreign Corrupt Practices Act ("FCPA") team, to understand how BSGR obtained its mining concessions and assure itself that BSGR had not engaged in any corrupt activities. Id. ¶¶ 267-70. During due diligence, BSGR and Steinmetz repeatedly represented and warranted to Vale that BSGR had lawfully obtained its mining rights in Guinea and had not engaged in bribery or corruption. Id. ¶¶ 268, 676. As it turned out, even while Vale was conducting its due diligence, Steinmetz's company was engaged in a secret internal reorganization to conceal the affiliate that was instrumental in the payment of bribes. Id. ¶¶ 252-56, 682.4.

Only after due diligence was completed and written certifications as to the absence of bribery and corruption were obtained from Steinmetz personally and his company, on April 30, 2010, Vale entered into a joint venture agreement and shareholders' agreement with BSGR whereby Vale obtained 51% of BSGR's interest in the entity that held the Guinean mining licenses in exchange for $500 million up front and future milestone payments (the "VBG Joint Venture"). Ex. 4, Vale S.A. & Ors v. Steinmetz & Ors, No. CL-2019-000723, Particulars of Claim ¶¶ 2-4 (Jan. 15, 2020) (the "Particulars of Claim"). Vale subsequently invested more than an additional $746 million in connection with the VBG Joint Venture. Id. ¶ 4.

In late 2012, the Guinean Technical Committee for the Review of Mining Titles and Agreements (the "Technical Committee") initiated an investigation into the means by which BSGR acquired its mining licenses, id. ¶ 104, based on credible allegations that BSGR had acquired its rights to Simandou Blocks 1 and 2 through bribery of Guinean government officials, both directly and through intermediaries, Ex. 3, Award ¶¶ 286-87.  Following a hearing in December 2013, the Technical Committee published a report finding that the licenses had been procured by bribery, and the Government of Guinea withdrew BSGR's mining licenses in April 2014.  Ex. 4, Particulars of Claim ¶ 104.  Vale was cleared of any involvement in BSGR's corrupt activities.  Ex. 5, Recommendation Concerning the Titles and Mining Agreement Held by the Company VBG, Republic of Guinea Technical Committee Report ¶ 139.

Following this withdrawal, on April 28, 2014, Vale commenced the LCIA arbitration, claiming damages for fraudulent misrepresentation, breach of warranty, and frustration.  Ex. 3, Award ¶¶ 1-15.  In the LCIA arbitration, BSGR requested and received Vale's due diligence files and multiple Vale witnesses who participated in the due diligence – including Alex Monteiro, one of the former Vale employees deceived and secretly recorded by Black Cube, and Clifford Chance FCPA partner George Kleinfeld – testified at the merits hearing.  In April 2019, the Tribunal unanimously found BSGR liable for the fraudulent misrepresentations that had been made during the joint venture negotiation process and awarded Vale more than $2 billion in damages, interest, and costs.  Id. ¶¶ 1004-05.  After considering all of the evidence, the Tribunal resoundingly rejected BSGR's "Vale knew Steinmetz was corrupt" defense – the same defense Steinmetz now asserts – on the basis that "Vale made substantial efforts in the due diligence and the Joint Venture Agreements to ensure that its investment in the joint venture was compliant with the FCPA as well as other anti-bribery laws."  Id. ¶ 978.2.  In particular, the Tribunal found that "Vale relied on the

representations made during the FCPA due diligence process and would not have entered into the

VBG Joint Venture had it not been satisfied as to the outcome of this process," id. ¶ 739, stating:

> The Tribunal is satisfied that Vale undertook a thorough and complete FCPA due diligence exercise. Vale engaged FCPA specialists from Clifford Chance to undertake the due diligence.  It required a personal anti-corruption affidavit from Steinmetz and Clark on behalf of BSGR.  It asked follow-up due diligence questions and investigated further into issues that had – at times – been narrowed by BSGR.

Id. ¶ 738.

Vale promptly applied in the High Court under the UK Arbitration Act for recognition

and enforcement of the Award, and filed similar proceedings in the United States under the

Federal Arbitration Act.  After the High Court called BSGR's challenge "hopeless" and assessed

indemnity costs against it, the Award was recognized in both jurisdictions in judgments that are

final and not subject to appeal.  See Ex. 6, High Court Judgment, Vale S.A. v. BSG Resources

Ltd., Claim No. CL-2019-00269 (May 9, 2019); Ex. 7, Judgment, Vale S.A. v. BSG Resources

Ltd., No. 19-cv-3619-VSB (S.D.N.Y. Mar. 5, 2020), ECF No. 51.  Vale is presently seeking to

enforce its judgments.

## II.    The English Proceedings

On November 22, 2019, in anticipation of the formal commencement of the English

Proceedings that are the subject of Steinmetz's § 1782 petition, Vale filed an application in the

High Court for a worldwide freezing order against Steinmetz and other defendants (the "WFO").

On December 3, 2019, the High Court granted the WFO, finding that there was a real risk that

Steinmetz and others would dissipate their assets so that a judgment against them would go

unsatisfied.  Ex. 8, Vale S.A. & Ors v. Steinmetz & Ors, No. CL-2019-000723, Freezing Order

(Dec. 3, 2019).  Not one defendant, including Steinmetz himself despite his newly-minted claim

of "substantial harm" being caused by the WFO, filed an application to challenge the jurisdiction

of the High Court or discharge the WFO by the February 7, 2020 deadline.  Ex. 9, <u>Vale S.A. &</u>
<u>Ors v. Steinmetz & Ors</u>, No. CL-2019-000723, Freezing Order (Dec. 16, 2019).

Among other claims, in the English Proceedings, Vale alleges that Steinmetz made
fraudulent misrepresentations and conspired to induce Vale to enter into the VBG Joint Venture.
Steinmetz, the founder, principal, ultimate beneficial owner, and namesake of BSGR, was the
principal beneficiary of Vale's initial $500 million payment to BSGR, which BSGR was
adjudicated to have obtained based on its fraudulent misrepresentations, including an anti-bribery
certificate signed personally by Steinmetz.  Ex. 4, Particulars of Claim ¶¶ 7, 15-25, 108.  Vale
alleges that Steinmetz personally made fraudulent misrepresentations in connection with BSGR's
procurement of the mining concessions over iron ore reserves in the Simandou region of the
Republic of Guinea; conspired to conceal from Vale the fact that BSGR and its agents had paid or
promised to pay bribes in order to procure Vale to enter into the VBG Joint Venture; made
fraudulent misrepresentations in furtherance of the conspiracy; induced Vale to enter into the VBG
Joint Venture, and as a result, caused Vale to incur substantial losses in the form of $500 million
paid to BSGR under the Joint Venture Agreement on April 30, 2010 and approximately $746
million paid into or for the benefit of the VBG Joint Venture thereafter.  <u>Id.</u> ¶¶ 105-24.  As a result,
Vale is seeking $1.264 billion in damages plus interest for deceit and unlawful means conspiracy,
and is also pursuing a proprietary claim for the return of the $500 million paid to BSGR or its
traceable proceeds.  <u>Id.</u> ¶¶ 121-24.

On May 1, 2020, Steinmetz filed his Defence to Vale's Particulars of Claim in the English
Proceedings.  <u>See</u> Ex. 10, <u>Vale S.A. & Ors v. Steinmetz & Ors</u>, CL-2019-000723, Defence of
Steinmetz (May 1, 2020).  The High Court has since scheduled a Case Management Conference
for October 22, 2020, on which date it will issue orders granting or denying the parties' discovery

requests.  The parties are to commence the discovery process in August 2020, around the same time Steinmetz's Application here will be fully briefed.

Four months after declining to challenge the WFO, and three weeks after filing his Defence, Steinmetz filed the present § 1782 Application seeking discovery from Vale S.A., Vale Americas Inc., Rio Tinto, and Rio Tinto Limited for use in the English Proceedings.  ECF No. 3. Steinmetz's Application was supported by a 38-page Declaration of Avi Yanus of Black Cube (the "Yanus Declaration"), including cherry-picked excerpts – that materially misstate the substance – of secretly recorded conversations with Black Cube operatives operating under false pretenses. ECF No. 4.

**ARGUMENT**

**I.    The Application Fails to Meet § 1782's Statutory Prerequisites and Alternatively Should Be Rejected Under the Court's Discretion**

Section 1782(a) "authorizes, but does not require," a federal district court to exercise its discretion to order discovery "for use in a proceeding in a foreign or international tribunal."  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); 28 U.S.C. § 1782(a).  A court may order discovery if three statutory requirements are met: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or any interested person."  Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (citation omitted).  "Only after finding that the motion satisfies the[] three [statutory] requirements may the court proceed to its discretionary analysis," In re Petrobras Sec. Litig., 393 F. Supp. 3d 376, 380 (S.D.N.Y. 2019), and even where the petitioner meets the statutory requirements for relief, the Court has considerable discretion to deny the petition, and need not grant discovery.  Kiobel by Samkalden v. Cravath,

8

Swaine & Moore LLP, 895 F.3d 238, 242 (2d Cir. 2018) ("Section 1782 states that a court 'may order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary.").

The Supreme Court has "suggest[ed] guides for the exercise of district-court discretion" by identifying several "factors that bear consideration in ruling on a § 1782(a) request." Intel, 542 U.S. at 263-65 & n.15.  These non-exhaustive factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" and whether "their evidence may be unobtainable absent § 1782(a) aid," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance," (3) "whether the 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." Id. at 264-65.

Because the Application fails to meet two of the three statutory requirements, and the discretionary factors weigh heavily against Steinmetz, the Application should be denied.

**II.     Steinmetz Fails to Satisfy the Statutory Requirements for § 1782 Discovery**

    A.    Vale Neither Resides Nor Is Found in the Southern District of New York

A § 1782 petition must be rejected unless "the person from whom discovery is sought resides or is found in the district of the district court to which the application is made." Kiobel, 895 F.3d at 244.  The Second Circuit recently held that § 1782's "resides or is found" language is cabined by "the limits of personal jurisdiction consistent with due process." Del Valle, 939 F.3d at 528.  To comport with due process, there must be either general (all-purpose) or specific (case-linked) jurisdiction over each respondent. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1780 (2017).  The inquiry is defendant-specific, Rush v. Savchuk, 444 U.S. 320, 332

(1980), and focuses on the contacts "that the 'defendant himself' creates with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  Steinmetz fails to satisfy his burden.

> i.      Vale Is Not Subject to General Jurisdiction in the Southern
>          District of New York

A party is subject to general jurisdiction in a forum "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State."  Daimler AG v. Bauman, 571 U.S. 117, 122 (2014).  For a corporate defendant, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  Id. at 137.  The Second Circuit has held that a corporation is "essentially at home" only in its place of incorporation and principal place of business "except in a truly 'exceptional' case."  Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016); Sonera Holding B.V. v. Cukurova Holding A.Ş, 750 F.3d 221, 226 (2d Cir. 2014) (holding that "even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum") (quoting Daimler, 571 U.S. at 138).

In the present case, it is undisputed that Vale S.A. is incorporated in Brazil, and that Vale Americas, Inc. is incorporated in Delaware.  Steinmetz does not allege (nor could he) that either Vale S.A. or Vale Americas has its headquarters or principal place of business in New York.  Nor do any of Steinmetz's other jurisdictional allegations (addressed below) come anywhere close to the "exceptional case" that could otherwise support general jurisdiction.  Daimler, 571 U.S. at 139.

> ii.      Vale Does Not Have Sufficient Contacts with the Southern
>          District of New York for Purposes of this Application

Steinmetz's claim of a specific jurisdictional link between the Application and Vale S.A.'s or Vale Americas' in-forum contacts is baseless.  Specific jurisdiction over a nonresident "focuses

on the relationship among the defendant, the forum, *and the litigation*." <u>Del Valle</u>, 939 F.3d at 528 (quoting <u>Walden v. Fiore</u>, 571 U.S. 277, 283-84 (2014) (emphasis added)). "Specific jurisdiction permits adjudicatory authority only over issues that 'arise out of or relate to the entity's contacts with the forum.'" <u>Id.</u> at 529 (quoting <u>Gucci Am., Inc. v. Li</u>, 768 F.3d 122, 134 (2d Cir. 2014)). In the context of § 1782, "the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all," or, where the respondent has substantial in-forum contacts relevant to the dispute, "that the evidence sought would not be available but for the respondent's forum contacts." <u>Id.</u> at 530.

Steinmetz does not come close to meeting the Second Circuit's standard. Steinmetz is Israeli and French, and the English Proceedings concern the VBG Joint Venture, an agreement between Brazilian and Guernsey corporations, that was negotiated primarily in England and concerned a Guinean mining concession. It did not touch upon the United States, let alone New York. None of the eleven parties in the English Proceedings is American.

In the face of this reality, Steinmetz argues that certain unrelated meetings between Vale and Rio Tinto in New York in late 2008 and early 2009 and Vale's SEC disclosures in 2010 form the basis for specific jurisdiction. MOL at 17-19. But Steinmetz's own allegations about these meetings and disclosures demonstrate how threadbare his claim of specific jurisdiction is. With respect to the Rio Tinto meetings in 2008 and early 2009 (about a transaction having nothing to do with Steinmetz or BSGR), Steinmetz merely alleges that they formed the genesis of Vale's interest in an entirely separate transaction with BSGR, and that Rio Tinto alleged that *thereafter* Vale and BSGR conspired together against Rio Tinto. Other than that, Steinmetz merely speculates that these meetings "alerted Vale to a supposed effort by Mr. Steinmetz to 'steal'" Rio Tinto's mining rights, MOL at 18, an allegation for which Steinmetz cites no evidence despite

11

already having received complete discovery concerning these meetings (as discussed below).  Del Valle denied a § 1782 application in nearly identical circumstances, pointing out that "[t]his in-forum conduct relates only to BPE's preresolution effort to seek a buyer.  But the Petitioners' claim here (and likewise the bulk of the discovery sought) arises from a separate financial transaction: the forced sale of BPE."  939 F.3d at 531.  Compare Ex. 11, Letter Motion to Dismiss at *3 (Sept. 3, 2014), Rio Tinto plc v. Vale S.A., et al., Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.), ECF No. 84 (New York meetings between Vale and Rio Tinto concerned a potential transaction between the parties unrelated to the Vale-BSGR transaction).[2]

As to Vale's SEC reports, Steinmetz alleges nothing more than that Vale made ordinary, public "disclosures about the JV Agreement with BSGR."  MOL at 18.  Not only does Steinmetz not draw any connection between Vale's SEC reports and the English Proceedings, he does not seek any discovery related to Vale's SEC disclosures or allege any wrongdoing by Vale related to its SEC disclosures.  Courts in this Circuit have decidedly rejected a similar effort to allege personal jurisdiction arising out of SEC filings.  See Petrobras, 393 F. Supp. 3d at 383 ("[E]ven if th[e] Court has personal jurisdiction over Petrobras vis-à-vis the U.S. class action (alleging fraud in connection with securities sold on the NYSE), this Court does *not* necessarily have personal jurisdiction over Petrobras vis-à-vis the § 1782 motion (which arises out of the CAM arbitration, alleging fraud in connection with securities sold in Brazil).").

In support of his argument that Vale S.A. is "found" in New York, Steinmetz relies almost exclusively on In re Kleimar N.V., 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016).  But the district

---

[2]     Even were Vale's meetings with Rio Tinto sufficient to confer specific jurisdiction in New York with respect to the Vale-BSGR transaction more than a year later despite the latter having no connection to the United States, the Second Circuit in Del Valle found that the applicant must describe the jurisdictional link between each document request and the forum with specificity. 939 F.3d at 530, n.12. Steinmetz never makes any effort to do so (and may not do so for the first time on reply).  It is clear on their face that few of the proposed document requests and deposition topics have anything to do with the Vale-Rio Tinto meetings.

court's cursory analysis of personal jurisdiction there (in a single paragraph that cites no authority) cannot stand under the Second Circuit's subsequent decision in Del Valle.  Kleimar based its jurisdictional decision on Vale's issuance of U.S. securities, Vale's subsidiary's registration to do business in New York, and Vale's unidentified "systematic and regular business" in the state of New York.  Under later Second Circuit precedent, not one of the three factors cited by Kleimar can support a finding of either general jurisdiction or specific jurisdiction with respect to any action not expressly arising out of those contacts.  Kleimar thus is of no assistance to Steinmetz here. Indeed, the district court in Del Valle explicitly criticized the analytical failures of the Kleimar court.  See In re Del Valle, 342 F. Supp. 3d 448, 456-58 (S.D.N.Y. 2018), aff'd sub nom. In re Del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019) (stating that the Kleimar court failed to "distinguish the myriad Second Circuit and district court opinions that reached opposite conclusions with similar levels of business activity" and finding allegations relating to defendant's maintenance of a New York branch, listing on the NYSE, and appointment of a process agent irrelevant for purposes of § 1782 personal jurisdiction).

Lastly, Steinmetz makes no specific allegations about Vale Americas' forum contacts other than the speculative statement that "Vale *may* also have included Vale Americas in such deliberations [related to Vale S.A.'s SEC filings], as Vale Americas is Vale's authorized representative in the United States."  MOL at 18 (emphasis added).  These conclusory allegations are plainly insufficient to form the basis for specific jurisdiction.

### iii.    Considerations of Fair Play, Substantial Justice, and International Comity Support Dismissal

Even if the forum contacts Steinmetz identifies could establish personal jurisdiction (and as discussed above, they do not), he must also establish that "the assertion of personal jurisdiction would comport with fair play and substantial justice."  Del Valle, 939 F.3d at 529.  Relevant factors

include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief," <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 170 (2d Cir. 2013) (quoting <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir. 1996)), and whether exercising jurisdiction would threaten "international rapport," <u>Daimler</u>, 571 U.S. at 142.

Steinmetz, an Israeli and French citizen, seeks discovery from Vale, a Brazilian company, about a Guinean joint venture governed by English law and negotiated in the UK for use in English Proceedings. All three factors thus favor Vale. The Supreme Court has recognized "unique burdens placed upon one who must defend oneself in a foreign legal system," and that the court's interest in adjudicating matters is "slight" where all parties are based outside the forum. <u>Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.</u>, 480 U.S. 102, 114 (1987). And, because both Steinmetz and Vale are parties to the English Proceedings, Steinmetz's interests in having this Court supervise substantial discovery in this district are minimal.

*iv.    Vale's Independent § 1782 Application Has No Bearing on
the Court's Jurisdictional Analysis*

Finally, Steinmetz asserts – with no citation to authority – that Vale should be deemed "found" in New York for jurisdictional purposes because it filed an independent § 1782 application properly seeking discovery from several non-parties to the English Proceedings who indisputably reside in New York.[3] This argument flies in the face of well-settled law that personal jurisdiction must be determined on a case-by-case and claim-by-claim basis. <u>See</u> <u>Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.</u>, 475 F. Supp. 2d 456, 460 (S.D.N.Y. 2007) ("personal

---

[3] <u>See</u> <u>In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings</u>, No. 20-mc-199-JGK-OTWECF, ECF Nos. 1-6.

14

jurisdiction must be determined on a claim-by-claim basis"); New York v. Mountain Tobacco Co., 55 F. Supp. 3d 301, 311 (E.D.N.Y. 2014) ("personal jurisdiction . . . must be analyzed individually for each cause of action."). Vale's requested discovery of certain suspected business partners of Steinmetz is a classic use of § 1782:  from non-party New York residents for documents not otherwise available on issues undeniably pertinent to the English Proceedings.  This case is the opposite.

> B.  The Requested Discovery Is Not "For Use" in the Underlying
> Foreign Proceeding

Steinmetz also fails to satisfy the second statutory requirement that the discovery he seeks is "for use" in the English Proceeding.  See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015) (finding applicant must establish that the evidence sought "will be employed with some advantage or serve some use in the [foreign] proceeding").  As Judge Koeltl recently held, discovery is not "for use" where the § 1782 Applicant has publicly stated an improper motive to use the evidence for purposes other than a "foreign proceeding" within the meaning of § 1782.  See In re Postalis, No. 18-mc-497 (JGK), 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018) (finding applicant's assertion that requested discovery was for use in underlying foreign proceeding was "not credible" given "applicant's public statements that th[e] application [was] an attempt to gain pre-litigation discovery for a prospective lawsuit in the United States").

This is precisely the case here; Steinmetz has publicly declared his intent to use discovery obtained through § 1782 to challenge Vale's Award  against his namesake company, BSGR.  In an aptly titled Financial Times article reporting on Steinmetz's filing of the Application – Beny Steinmetz Seeks to Reverse $2bn Arbitration Award to Vale – Steinmetz revealed his intention to use the evidence to try to "reopen the case [i.e., Vale's LCIA arbitration award against BSGR],"

explaining that he hired Black Cube to gather information for this purpose.[4]  Indeed, Steinmetz

admits to this aim in the Application itself, asserting that "the new evidence . . . is likely to form a

basis for BSGR to overturn the arbitral award."  MOL at 9.

 While it is not clear precisely *how* Steinmetz could go about "reopening" the Award against

his company given that it has now been recognized as a final judgment in England and the United

States, the use of § 1782 is plainly improper for that purpose.[5]  Because "[s]eeking discovery under

§ 1782 for an improper purpose, namely for pre-litigation discovery otherwise not permitted

under the Federal Rules of Civil Procedure, is bad faith," it "counsel[s] against granting the

discovery request."  In re Postalis, 2018 WL 6725406, at *5.

 Indeed, denial of the Application is warranted here even if the Court finds that Steinmetz's

improper purpose in bringing the § 1782 petition is coupled with an ostensibly legitimate one.

Ayyash v. Crowe Horwath LLP, No. 17-mc-482(AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June

13, 2018) (denying § 1782 application where "[the applicant] [wa]s using the § 1782 petition as a

fishing expedition to determine if it should pursue litigation against [the discovery target]"

notwithstanding that the discovery could be understood as for use in a foreign proceeding); see

also In re Postalis, 2018 WL 6725406, at *4 (noting that courts may deny § 1782 discovery even

where "it [is] possible for the discovery material to be construed as for use in a foreign

---

[4]       See Ex. 12, Neil Hume, Beny Steinmetz Seeks to Reverse $2bn Arbitration Award to Vale, Financial Times
(May 24, 2020).
[5]       Insofar as Steinmetz seeks to initiate additional proceedings in the name of BSGR before the LCIA, a private
arbitral organization, § 1782 discovery is plainly unavailable as private arbitral organizations such as the LCIA are
not "foreign or international tribunals" within the meaning of § 1782. Nat'l Broad. Co. v. Bear Stearns & Co. ("NBC"),
165 F.3d 184, 186 (2d Cir. 1999) (holding that "an arbitral body established by private parties" is not a "foreign
tribunal" for purposes of 1782); In re Petrobras, 393 F. Supp. at 385 (denying § 1782 discovery and explaining that
"NBC remains good law and that the statutory term 'foreign or international tribunal' does not include an arbitration
chamber created by private parties"). To the extent Steinmetz seeks to challenge the Award through a collateral attack
of the U.S. judgment, Steinmetz may not use § 1782 to sidestep the Federal Rules of Civil Procedure.  There is no
such action pending, and the Federal Rules do not contemplate pre-litigation discovery. See, e.g., Frigerio v. United
States, No. 10 Civ. 9086 (SAS), 2011 WL 3477135, at *1 (S.D.N.Y. Aug. 5, 2011) ("The American legal system does
not permit pre-action discovery.").

proceeding"); In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions, No. 15-MC-127, 2015 WL 4040420, at *6-8 (S.D.N.Y. June 29, 2015) (denying § 1782 petition on discretionary grounds even though discovery was "theoretically usable in [foreign proceeding]").

### III.   Discretionary Factors Weigh in Favor of Denying Steinmetz's Application

Even if Steinmetz satisfied all three statutory requirements, the Application should still be denied because the discretionary factors weigh heavily against him.

####   A.   Steinmetz Seeks Documents from a Party to the English Proceedings

Vale is a party to the English Proceedings and subject to the jurisdictional reach of the High Court, and accordingly the first Intel factor strongly supports denying the Petition.[6] Section 1782 provides aid to respondents where discovery would be unavailable in the foreign tribunal. Intel, 542 U.S. at 264. Where, as here, the evidence is sought from a party to the underlying foreign proceeding, there is no need to grant § 1782 relief because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order [participants in the foreign proceeding] to produce evidence." 542 U.S. at 264.[7] Indeed, Vale's party status renders the Requests redundant and unnecessary. See, e.g., Advanced Micro Devices, Inc. v. Intel Corp., No. C 01-7033, 2004

---

[6]      Steinmetz's inclusion of Vale Americas (Vale's wholly-owned subsidiary) as a respondent is mere pretext. Steinmetz does not articulate Vale Americas' role in the underlying dispute or what documents Steinmetz believes it independently possesses, but baldly asserts without citation or explanation that Vale Americas "is expected to have information relating to the same topics as Vale." MOL at 3. Under Second Circuit precedent, repackaging § 1782 discovery requests to Vale S.A.'s wholly-owned subsidiary that "for all intents and purposes" are directed at Vale S.A. is improper. See Schmitz, 376 F.3d at 85 (affirming denial of § 1782 application where "technically" respondent in the district court was Cravath, counsel for DT, but "for all intents and purposes" petitioners were seeking discovery from DT, petitioner's opponent in the foreign litigation); In re Elvis Presley Enters. LLC, No. 15-MC-386 (DLC), 2016 WL 843380, at *3 (S.D.N.Y. Mar. 1, 2016) (denying request to take discovery from a parent company whose subsidiary was a party to the foreign proceeding, noting that the first factor weighs against applicants who for all intents and purposes seek discovery from their opponent in the foreign proceeding, and stating that the parent had access to the documents and information held by its subsidiary).

[7]      See also, e.g., Ayyash, 2018 WL 2976017, at *2 ("In deciding whether to grant a discovery order, courts consider . . . whether the party from whom discovery is sought is a participant in the foreign proceeding, in which case there is little need for § 1782(a) aid."); Denizbank, A.S. v. ATA Freight Line, Ltd., No. 7-cv-5060 (NGG)(SMG), 2008 WL 11438316, at *3 (E.D.N.Y. Mar. 26, 2008) (denying § 1782 application where respondent was the plaintiff in foreign proceeding and petitioner was the defendant, finding the need for § 1782(a) aid was "not as apparent" as if [respondent] were a nonparticipant) (quoting Intel, 542 U.S. at 264).

WL 2282320, at *2 (N.D. Cal. Oct. 4, 2004) (denying § 1782 application on remand from the Supreme Court, specifically noting Intel's "participant-status" in the foreign proceeding).

To avoid the obvious consequence of the fact that Vale is a party to the English Proceedings, Steinmetz manufactures two false (and legally irrelevant) claims of "urgency" to explain why he "likely would not be able to obtain in the UK Proceeding all the discovery he seeks." MOL at 24.

*First*, Steinmetz professes a "concern[]" that "critical evidence that supports his defenses would be destroyed by the time the London court might order their disclosure in the UK proceedings." Id. This "concern" is preposterous on its face given that the Requests date back to 2006 and Steinmetz has articulated no reason to believe that documents that have been preserved for up to 14 years until now may suddenly be destroyed on the eve of the commencement of English discovery if not ordered to be produced by this Court. In fact, as Steinmetz is aware, Vale *confirmed* in the English Proceedings that it was preserving documents. Ex. 13, Letter from Cleary Gottlieb Steen & Hamilton, dated Jan. 15, 2020.[8]

*Second*, Steinmetz claims that he cannot wait even two months for discovery in the English Proceedings because of the alleged "substantial harm" caused by the WFO. This is absurd; the WFO was entered in early December 2019, and Steinmetz's deadline to challenge the WFO passed in February 2020. For six months, Steinmetz neither advised the High Court of any need for discovery to challenge the WFO (or sought an extension of his deadline) nor applied to this Court under § 1782.[9] Moreover, Steinmetz does not offer any evidence (not even a declaration from

---

[8]   Steinmetz's insinuation that Vale might destroy documents presumably refers to Vale's disclosure in the *Rio Tinto* Litigation that certain documents from former Vale employees had been deleted years ago in the ordinary course of business when they left Vale's employ *before* the Vale-BSGR dispute ever arose and a litigation hold put in place. Ex. 14, Rio Tinto plc v. Vale S.A., No. 14-cv-3042 (RMB) (AJP), Apr. 8, 2015 Hr'g Tr. 4:9-7:15. Steinmetz has no basis to suggest that Vale has destroyed or would destroy documents after its litigation hold.
[9]   None of the cases relied upon by Steinmetz support his claim that purported "urgency" is relevant to the court's analysis of the first Intel factor. Rather, those cases merely demonstrate that § 1782 discovery may be

himself) that the WFO is having any impact on him, let alone "substantial harm" that needs to be addressed urgently.  In fact he cannot have suffered any harm at all.  Although Steinmetz is regularly ranked among the richest people in the world, has access to luxury yachts and a private jet, lives in a ███████████████ and is described as a billionaire (including by himself),[10] his asset disclosure in the English Proceedings ████████████████████████████



_____

appropriate from a participant in the foreign proceedings where the foreign court lacked the ability to order the requested discovery.  For example, in In re Servicio Pan Americano de Proteccion, the court found § 1782 discovery from a party to the underlying foreign proceeding was warranted where the foreign tribunal was precluded from ordering the discovery itself due to a "technical peculiarity of Venezuelan civil procedure."  354 F. Supp. 2d 269, 272 (S.D.N.Y. 2004).  Similarly, in Matter of Lufthansa Technick AG, where the petitioner specifically alleged, _inter alia_, that under Section 810 BGB of the German Civil Code, the relevant discovery provisions were "simply not applicable to documents located outside Germany" and that there was "no mechanism for [Petitioner] in France to discover documents and other records located in the United States," Brief for Petitioner at Ex. 1 ¶ 31, Ex. 3 at ¶ 11, No. C17-1453-JCC, 2019 WL 331839 (W.D. Wash. Jan. 25, 2019), ECF No. 54-1, ECF No. 54-3, the court explained that "although [respondent] is a participant in the pending proceedings, the lack of effective discovery mechanisms" in Germany, France, and the U.K. "weigh[ed] in favor" of granting petitioner's application.  No. 2:17-cv-1453-JCC, 2019 WL 331839, at *2 (W.D. Wash. Jan. 25, 2019).  Here, Steinmetz has identified no such barrier on the English court's ability to order discovery in its discretion.

     Likewise, in In re Application of Chevron Corp., relied on by Steinmetz, the petitioner sought to obtain discovery for use in a foreign proceeding in which the plaintiffs were "pushing the Ecuadorian court to close the evidentiary phase of that litigation" and "thus preventing [petitioner] from placing before that court the likely relevant evidence" contained in the materials sought in its request.  709 F. Supp. 2d 283, 309 (S.D.N.Y. 2010), as corrected (May 10, 2010), aff'd sub nom. Chevron Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011).  But even setting aside the fact that in Chevron, the § 1782 respondent _was not a party to the underlying foreign litigation_, this case is entirely distinguishable.  Here, discovery has yet to even _begin_ in the English Proceedings.  The Case Management Conference is scheduled for October 22, 2020, at which time the English court will order disclosure.  Steinmetz will be entirely free to serve Vale with as broad discovery requests as permitted by the English courts at that time.

[10]    Ex. 15, Danny Fortson, Beny Steinmetz Gets Rough Over Guinea Deal, The Sunday Times (June 20, 2020).

[11]    Ex. A, Letter from Asserson enclosing Asset Disclosure of the First Respondent (Dec. 30, 2019), p. 3.

████████████████████████████  Steinmetz is also required to tell Vale where the money is to

come from before he is permitted to spend any money on his legal fees or living expenses.[12] █

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Under these circumstances, there is no need, "urgent" or otherwise, for this Court to replace

the English court in overseeing the massive party-discovery Steinmetz seeks.

> B.   Intel's Second Discretionary Factor Favors Vale By the Same
>      Logic

Intel's second discretionary factor takes into account "the character of the proceedings

underway abroad." Intel, 542 U.S. at 264.  This factor favors denial because Steinmetz has every

opportunity to seek discovery from Vale directly in the English Proceedings. See, e.g., Denizbank,

2008 WL 11438316, at *3 (finding second factor to favor denial "given that the Turkish courts

would appear to offer Petitioner every opportunity to obtain discovery").

> C.   The Requests Are Designed to Circumvent Foreign Proof-
>      Gathering Restrictions

The Application should also be denied because it "conceals" – though not very well – "an

attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

the United States." Intel, 542 U.S. at 244-45.  There can be no doubt that, to the extent Steinmetz

has any genuine interest in the production he is requesting, he is seeking to use a more favorable

forum to circumvent the rules of the English court.  Other than his transparent effort to use this

Court to publicize through the media his "new" "blockbuster" allegations against Vale that were,

in fact, considered and resoundingly rejected by the Tribunal,[13] the only explanation for the

---

[12]   Ex. 8, Vale S.A. & Ors v. Steinmetz & Ors, No. CL-2019-000723, Freezing Order (Dec. 3, 2019), 13(1).

[13]   See, e.g., Ex. 16, Caroline Simson, Billionaire Claims Vale Knew Guinea Mining Deal Was Corrupt, Law
360 (Jun. 1, 2020) (Steinmetz "says that this new evidence is 'likely to form a basis' on which BSG Resources could
try to overturn the arbitral award. BSG Resources lost a challenge it had lodged against the award in England last

Application is that Steinmetz hopes to obtain a favorable ruling from the U.S. court before the

Requests can be denied in the English Proceedings. Under these circumstances, the timing of

Steinmetz's application is "highly suspect" and provides further grounds for denying the

Petition. See In re Harbour Victoria, 2015 WL 4040420, at *7-8 (denying § 1782 petition based

on the circumvention factor where § 1782 petition was filed after court indicated discovery request

would not be granted). "Although courts need not determine if an applicant has exhausted its

discovery attempts abroad, a perception that an applicant has side-stepped less-than-favorable

discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." In re

Cathode Ray Tube (CRT) Antitrust Litigation, No. C-07-5944-SC, 2013 WL 183944, at * 3 (N.D.

Cal. Jan. 17, 2013); see also In re Mare Shipping Inc., No. 13 MISC. 238, 2013 WL 5761104, at

*5 (S.D.N.Y. Oct. 23, 2013), aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP, 574

F. App'x 6 (2d Cir. 2014) (denying § 1782 request where petitioner could have, but failed to make

any effort to get the same information in the foreign proceeding).[14]

D.   Steinmetz's Petition Is Unduly Intrusive and Burdensome

The Petition should also be denied because the requested discovery is "unduly intrusive or

burdensome." Intel, 542 U.S. at 265.

*First*, there is perhaps no stronger evidence that the Application is a publicity stunt by

Steinmetz than the fact that Vale has already produced to him virtually all of the documents he

seeks. The Requests virtually duplicate the discovery requests made in the LCIA arbitration and/or

---

year"); Ex. 17, Zandi Shabalala and Helen Reid, Steinmetz's BSGR Seeks to Reopen $1.25 Billion Guinea Ruling, Reuters (May 22, 2020) ("Beny Steinmetz's BSG Resources Ltd (BSGR) is seeking to reopen an arbitration case that ordered it to pay $1.25 billion to Brazilian minder [sic] Vale SA . . . [by filing documents] with a U.S. court which it said shows that Vale was aware of potential bribery . . . [Vale] denied BSGR's accusation").

[14]     Further, if the English court denies that request – which Vale submits that it will based on its own laws of admissibility and policy – and this Court were to grant a nearly identical one, it would "pit[] this Court against the [English court], rather than fostering cooperation between them, and would violate established principles of comity, under which United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries." In re Microsoft, 428 F. Supp. 2d 188, 195-96 (S.D.N.Y. 2006) (citations omitted).

21

the *Rio Tinto* Litigation supervised by then-Magistrate Judge Peck.  Indeed, in many instances the

Requests are copied nearly verbatim from requests in these prior proceedings, which include the

only two subjects even mentioned by Steinmetz in his Application:

- Steinmetz Req. No. 17, ECF No. 5-2 ("All documents and communications concerning Vale's due diligence related to VBG.").  Compare Ex. 18, LCIA Redfern Req. Nos. 18-20 (requesting documents "[i]n relation to the due diligence carried out by or on behalf of Vale in advance of and in contemplation of the [VBG joint venture agreements]" and "[the] 'extensive due diligence process' undertaken by Vale"), and Ex. 19, Rio Tinto's First Request for Production, Req. No. 21 (requesting "[a]ll Documents and Communications concerning internal and external communications" concerning "the Documents reviewed in the course of considering, evaluating, negotiating, and performing due diligence on a joint venture, partnership, investment agreement, or other arrangement with BSGR, Steinmetz, or both, regarding Simandou") and Req. No. 23 (requesting "[a]ll Documents and Communications concerning any due diligence conducted by Clifford Chance LLP in connection with the Vale-BSGR Transaction").

- Steinmetz Req. Nos. 23-24, ECF No. 5-2 at 7 ("All documents and communications concerning Vale's document destruction policy or policies" and "[a]ll documents and communications concerning the destruction of documents of [certain] Vale executives").  Compare Ex. 18, LCIA Redfern Req. No. 3 ("All documents relating to the alleged destruction of documents from key custodians, including Vale's former CEO, former CFO and other Vale personnel who forged the partnership with BSGR.") and Ex. 19, Rio Tinto's First Request for Production, Req. No. 43 (requesting documents "regarding the destruction of documents").[15]

In response to the document requests in the *Rio Tinto* Litigation and LCIA arbitration, Vale

produced more than 250,000 pages of documents – including documents specifically related to the

Vale-Rio Tinto meetings that is the only issue highlighted in the entire Application that allegedly

touched upon New York[16] – and all of those documents have been turned over to Steinmetz.[17]

---

[15]    The "LCIA Redfern" requests are requests for document disclosure made by BSGR in the LCIA arbitration. *See* Ex. 18. "Rio Tinto's First Requests for Production" and "Rio Tinto's Second Requests for Production" are plaintiff Rio Tinto plc's requests to Vale for production of documents in the Rio Tinto Litigation. *See* Exs. 20, 21.

[16]    See Del Valle, 939 F.3d at 530 ("[T]he respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all.").

[17]    Steinmetz received a copy of all of Vale's productions in the *Rio Tinto* Litigation, amounting to nearly 200,000 pages.  Not only did Vale produce more than additional 50,000 pages of documents in the LCIA arbitration against Steinmetz's namesake company, BSGR, but by agreement of the parties, BSGR was permitted to retain and use all of the documents that Vale produced in the *Rio Tinto* Litigation in the LCIA arbitration.  See Ex. 22, February 16, 2016 Email from J. Terceno to Mishcon de Reya.

Before the Application was filed, Vale expressly consented to Steinmetz using all documents produced in the LCIA arbitration in the English Proceedings. See Ex. 21, Letter from Cleary Gottlieb Steen & Hamilton, dated Mar. 24, 2020. His duplicative Requests are thus exposed as nothing more than an attempt to garner press attention and harass Vale. Mees v. Buiter, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (opining that the fact that a § 1782 petitioner "already possesses the materials sought . . . support[s] a determination that the application has 'the purpose of harassment' or 'seeks cumulative . . . materials.'"). At a minimum, even were Steinmetz to identify any new requests buried in his subpoena but not discussed in his Application, he has not been candid with this Court in failing to disclose that any documents he seeks through this Court have already been made available to him in England.

*Second*, regardless of whether they are duplicative, the Requests are grossly overbroad. Steinmetz's first request seeks "[a]ll documents and communications concerning Vale's activities in Guinea from June 1, 2005 until December 31, 2014." Ex. 2 at 7. Essentially, this request is asking for every single document – over the course of nearly a decade[18] – relating to all of Vale's business in Guinea. This is a far cry from a request for "a specific, discrete set of documents that are easily identifiable and not unduly burdensome," as is appropriate under § 1782. In re Berlamont, No. 14-MC-00190 JSR, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014), aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings, 773 F.3d 456 (2d Cir. 2014).[19] Courts in this district have repeatedly rejected

---

[18]   Incredibly, this is the only request that asks for documents within a date range of less than fourteen years even though the VBG Joint Venture survived less than five years.

[19]   The overbroad Requests "bear[] little resemblance to those cases in which such [§ 1782] applications were routinely approved—cases requesting a single document or report, or even those documents relating to a single transaction or event." See In re Application of OOO Promnefstroy, Misc. No. M 19-99(RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009); cf. In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. CIV M19-88 BSJ, 2006 WL 3844464, at *3, *8 (S.D.N.Y. Dec. 29, 2006) (granting § 1782 application seeking documents relating to the creation of one single report prepared by consulting firm).

similarly sweeping requests.  Compare Request No. 10, Ex. 2 at 7 (seeking "[a]ll documents and

communications concerning Jose Carlos Martins, Alex Monteiro, and/or Denis Thirouin"), with

In re Gorsoan Ltd., No. 18-MC-431 (RA), 2020 WL 409729, at *9 (S.D.N.Y. Jan. 24, 2020)

(finding request for "[a]ll documents concerning [individual respondent in foreign proceeding],

including without limitation any communications with [respondent]" to be overly broad); compare

Request No. 16 (seeking "[a]ll documents and communications concerning a potential deal

between Vale and BSGR in Simandou"), with In re XPO Logistics, Inc., No. 15-MC-205 (LGS)

(SN), 2017 WL 2226593, at *11 (S.D.N.Y. May 22, 2017), aff'd, No. 15 MISC. 205 (LGS), 2017

WL 6343689 (S.D.N.Y. Dec. 11, 2017) (rejecting petitioner's "omnibus request" for "all

documents and communications").  These are precisely the types of requests that courts in this

Circuit have found to be overbroad and that impose "too great a burden" on a § 1782 respondent.[20]

The Requests are similarly overbroad, fishing expeditions in seeking "all" documents relating to

all-consuming subjects such as "Simandou," Request No. 9, "Vale's activities in Guinea," Request

No. 1, and "BSGR and/or Beny Steinmetz," Request No. 2.

   "[I]f the district court determines that a party's discovery application under section 1782 is

made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant

materials, the court is free to deny the application in toto just as it can if discovery was sought in

bad faith in domestic litigation."  See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 n.6

---

[20]   See Ayyash v. Crowe Horwath LLP, 17-mc-482 (AJN), 2018 WL 1871087, at *3 (S.D.N.Y. Apr. 17, 2018)
(denying § 1782 application finding "some of the requests are likely to be unduly burdensome, such as the request for
records of all electronic communications for the last 15 years between the management of Crowe Horwath LLP or
Crowe Horwath International and Crowe Horwath Professional Auditors.").  Thus, this Court should use its discretion
to deny the petition as an "archetypal fishing expedition" that "would not be keeping in the ultimate purpose of 1782."
In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG, No. 15 MISC. 319 LTS, 2015 WL
5824505, at *3 (S.D.N.Y. Oct. 6, 2015); In re Asia Mar. Pac. Ltd., 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015) (opining
that even if the statutory requirements had been satisfied, the court would nevertheless have denied the petition its
exercise of discretion because it was "an overly broad fishing expedition" that did "nothing to further the twin aims
of the statute").

(2d Cir. 1995); <u>see also</u> <u>Elvis Presley Enters. LLC</u>, 2016 WL 843380 at *6 (court may deny rather than limit discovery sought through § 1782 "where a narrowly tailored discovery order is not possible"). Where there are concerns for overbreadth, "such concerns cannot always be cured through a limited discovery order." <u>Mees</u>, 793 F.3d at 302 n.19. The Court should accordingly deny the Application in its entirety.

E.    <u>Steinmetz's Application Should Be Denied Because It Lacks Any Evidentiary Basis And Is Based on Black Cube's Unlawful Activity</u>

While Vale believes that the Yanus Declaration is an irrelevant media side show, to the extent that Steinmetz contends that it is an appropriate element of his Application, the Application should be denied because that declaration is wholly incompetent. As detailed further in Vale's Conditional Cross-Application, the Yanus Declaration describes events completely outside of the declarant's personal knowledge, contains no exhibits, not even the transcripts that he purportedly quotes from, and is filled with selective quotations that are highly misleading to the point of outright misrepresentation. <u>See</u> <u>Cross App.</u> at 4-5.

It is only through the second-hand advocacy of Yanus, rather than the actual witnesses to virtually everything he claims to describe (which we understand to be Black Cube's modus operandi), that Steinmetz attempts to pass off such blatant misrepresentations to this Court. The actual conversations tell a far different story than Yanus claims; they reveal that despite the Black Cube agents' deceptive conduct and repeated efforts to put words and phrases in the mouths of the former Vale employees and consultant (while plying them with alcohol), those individuals consistently and repeatedly told Black Cube that (i) Vale did extensive due diligence led by leading FCPA experts, (ii) Vale's due diligence could not confirm any of the vague, unsubstantiated rumors Vale had heard about BSGR's procurement of the mining concessions, (iii) Vale only

25

transacted with BSGR after satisfying itself that there was no evidence of corruption, (iv) Vale relied on BSGR's and Steinmetz's extensive representations concerning the procurement process, and (v) Vale would not have done the deal without the representations and results of its diligence. And that is precisely what the Tribunal found after receiving numerous written submissions from the parties, extensive document discovery and live witness testimony from people directly involved in the due diligence.  Ex. 3, Award ¶¶ 996-1003.  In offering only second-hand testimony that presents a very distorted picture, Black Cube may have served Steinmetz's public relations purposes, but it offers nothing upon which this Court can base a decision.

Even more troubling, if the Application is granted, it would effectively sanction the illegal and unethical conduct by Black Cube's agents in a manner that is the antithesis of the policies underlying § 1782 and Rule 26 discovery.  See Kiobel, 895 F.3d at 245 (stating that the Intel factors are "non-exclusive" and that district courts "should also take into account any other pertinent issues arising from the facts of the particular dispute").

It is indisputable that Black Cube's operatives recorded the former Vale employees and a consultant through deceptive and unethical means.  Black Cube set up fictitious websites and created false identities to deceive the former Vale employees and consultant and, in one case, flew a former employee to New York under the pretense of a consulting engagement to remove him from a jurisdiction where Black Cube presumably believed the law posed an obstacle to their operations.

A U.S. court should pause before granting § 1782 discovery based on such unscrupulous methods.  Here, circumspection is even more merited because Black Cube's actions were not just deceitful, but actually violated the law of at least three jurisdictions, including England, where the underlying action for which Steinmetz purports to need the documents is based:

- ***Violation of the English Fraud Act.*** Pursuant to Section 2 of the English Fraud Act 2006 (the "Fraud Act"), it is an offence for a person to make a false representation with intent to (i) gain for himself or another, or (ii) cause loss to another or to expose another to a risk of loss. Ex. 23, Fraud Act 2006, c. 35, § 2 (Eng.).  Here, Black Cube's misrepresentations to Martins, Monteiro and Thirouin – including falsely claiming to be recruiters when conducting meetings with the three individuals – for the purpose of collecting a fee were in clear violation of the Fraud Act Section 2.  Id.

- ***Violation of the French Blocking Statute.*** The French Blocking Statute and Articles 226-1 and 226-2 of the French Penal Code, French law No. 68-678 of 26 July 1968 (the "French Blocking Statute")[21] criminalize the recording of a phone call without a participant's consent and the use of such evidence in court.  Thus, Black Cube's use of false statements to obtain information from Thirouin – a French citizen located in France during the calls in question, Yanus Decl. ¶¶ 33-36 – were made in violation of the French Blocking Statute.  See Ex. 26, Cour de cassation [Cass.] [supreme court for judicial matters] crim., Dec. 12, 2007, Bull. crim., No. 309 (Fr.) ("In re Advocate Christopher X") (false statements made to obtain evidence from a witness located in France for use in U.S. proceedings violated the French Blocking Statute, and resulted in a criminal conviction and €10,000 fine).  The Thirouin transcripts were further prepared and submitted to this Court in violation of the French Penal Code, which criminalizes the recording of a phone call without the participant's consent and the use of such evidence in court. Ex. 25, Section 1 : De l'atteinte à la vie privée [C. PÉN.] [Invasion of Privacy] Articles 226-1 and 226-2 (Fr.).

- ***Violation of Brazilian Law.*** Black Cube agents misrepresented themselves to Martins and Monteiro, Brazilian citizens located in Brazil, to induce them to make statements that Steinmetz would later decontextualize and distort, violating Brazilian laws against assuming a false identity under Article 307 of the Brazilian Criminal Code.  Brazilian Criminal Code, art. 307 (stating it is a punishable crime to misrepresent oneself or another using a false identity to obtain an advantage, personal or of another, to cause harm). [22]

Thus, because the Application purports to be premised on secretly recorded evidence that has been procured through illegal means including by fraud, and that may well be rejected by the English court, granting it would fly in the face of the comity § 1782 is intended to encourage.  See Intel, 542 U.S. at 261 ("comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases").  To do so would be tantamount to endorsing

---

[21]    Ex. 24, Loi No. 68-678 du 26 juillet 1968 relative à la communication de documents et renseignements d'ordre économique, commercial, industriel, financier ou technique à des personnes physiques ou morales étrangères [Law No. 68-678 of July 26, 1968 relating to the communication of documents and information of an economic, commercial, industrial, financial or technical nature to foreign natural persons or legal entities], Légifrance.gouv.fr.
[22]    Ex. 27, Decreto-Lei No 2.848, de 7 de Dezembro 1940 (Braz.).

Black Cube's illegal actions under foreign law, which would hardly promote comity or "encourage[e] . . . by example" the sort of mutual assistance § 1782 was intended to embody. Kiobel, 895 F.3d at 244.  If any court is to consider whether Black Cube's actions support discovery requests, it should be the English court to whom the fruits of such discovery will ultimately be presented.

Accordingly, even if this Court otherwise has the authority to grant the Application, the Court should decline in its discretion to do so.

### CONCLUSION

For the foregoing reasons, Vale respectfully requests that this Court deny the Application in toto.

Dated: June 26, 2020
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Jeffrey A. Rosenthal

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

Attorneys for Vale S.A and Vale Americas Inc.