UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Benjamin Steinmetz for an Order to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited pursuant to 28 U.S.C. § 1782 | Case No. 20-mc-212-AJN |

**MEMORANDUM OF LAW IN SUPPORT OF
VALE S.A.'S CONDITIONAL CROSS-APPLICATION TO
COMPEL RECIPROCAL DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A.*

# TABLE OF CONTENTS

**Page(s)**

BACKGROUND ........................................................................................................................... 3

    I.     The Illegal Black Cube Investigation ................................................................... 3

    II.    Steinmetz's Efforts to Conceal Evidence Related to the Black Cube Investigation ........................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

    I.     Any Obligation of Vale to Provide Discovery Should Be Conditioned upon Reciprocal Discovery from Steinmetz ................................................................... 6

CONCLUSION .............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1782............................................................................................................. passim

**Cases**

Application of Consorcio Minero, S.A. v. Renco Grp., Inc.,
No. 11 MC 354, 2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012) ........................................ 7, 8, 9

Application of Esses,
101 F.3d 873 (2d Cir. 1996)............................................................................................... 7

Cornell Research Found., Inc. v. Hewlett–Packard Co.,
No. 5:01CV1974, 2006 WL 5097357 (N.D.N.Y. Nov. 13, 2006), order clarified, 2007
WL 4324094 (N.D.N.Y. May 16, 2007), aff'd sub nom., Cornell Univ. v. Hewlett–
Packard Co., 2007 WL 4302778 (N.D.N.Y. July 23, 2007)............................................... 6

Euromepa S.A. v. R. Esmerian, Inc.,
51 F.3d 1095 (2d Cir. 1995)................................................................................... 1, 7, 8-9

In re Edelman,
295 F.3d 171 (2d Cir. 2002)............................................................................................... 6

Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004)............................................................................................................ 6

Minatec Fin. S.A.R.L. v. SI Grp. Inc.,
No. CIV1:08CV269LEK/RFT, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)................ 7, 8

United States v. Smith,
985 F. Supp. 2d 506 (S.D.N.Y. 2013)................................................................................ 6

**PRELIMINARY STATEMENT**

For the reasons set forth in detail in Vale S.A.'s ("Vale") and Vale Americas Inc.'s Memorandum of Law in Opposition to the Application of Benjamin Steinmetz for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "Opposition" or "Opp."),[1] the Court should deny in full the Application of Benjamin Steinmetz for an Order under 28 U.S.C. § 1782 to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited for Use in Foreign Proceedings, ECF No. 1 (the "Application") as against them, as they do not meet two of the three statutory requirements for discovery under § 1782, and the discretionary factors weigh heavily against granting such discovery. However, if this Court grants the Application to any extent, Vale respectfully requests that consistent with principles of fairness and parity, Steinmetz be ordered to provide reciprocal discovery to Vale. The Second Circuit has advised courts to level the playing field by granting reciprocal discovery to ensure "procedural parity" among the parties to a foreign proceeding. Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995). Without reciprocity, Steinmetz would be able to use broad U.S.-style discovery against his adversary in the English Proceedings, while Vale would be subject to the more restrictive English rules in obtaining disclosure from Steinmetz.

These principles of fairness and equity are especially pertinent here, where Steinmetz has predicated his application on a 38-page declaration, which contained no exhibits or supporting documentation, from the notorious Black Cube purporting to describe illegally-obtained secret recordings with former Vale employees and a consultant that Steinmetz allegedly intends to use in his defense (the "Yanus Declaration," ECF No. 4). Dr. Avi Yanus, the sole director for Black Cube, describes alleged conversations between unidentified Black Cube agents and former Vale

---

[1] Unless otherwise indicated, capitalized terms not defined herein have the meaning ascribed to them in the Opposition.

1

employees and a consultant, but does not claim to have participated in those conversations, or to have recorded any of the conversations he purports to present to the Court. His presentation of those purported conversations does not identify any person with first-hand knowledge. Thus, while he mouths the necessary words "[t]he information contained in this statement is based upon my own knowledge and/or belief, except where stated otherwise," Yanus Decl. ¶ 4, they are in fact untrue; the entire declaration describes events that are completely outside his personal knowledge.

Contrary to parties that actually seek to persuade a court of the truth of their affiants' statements – as opposed to seeking to litigate through the press – by annexing supporting documentary evidence to their affidavits, Steinmetz has actively sought to conceal the evidence cited by Yanus. The Yanus Declaration contained no exhibits, not even the transcripts that he purportedly quoted. When Vale demanded the documentary evidence referenced by Yanus, Steinmetz produced and, inexplicably, filed transcripts (contrary to both the law and rules of civil procedure). See Letter to Jeffrey A. Rosenthal, May 26, 2020, ECF No. 13-1 ("Black Cube Transcripts"). It is unclear why Steinmetz filed them in response to Vale's private request; they were neither submitted in further support of the Application nor accompanied by any declaration establishing fundamental prerequisites to the Court's consideration, such as what they are, who prepared them, their completeness, and the accuracy of the transcription.

Press reports suggest that Black Cube "had a team of more than 20 agents working on the investigation."[2] But tellingly, from this massive operation, the Yanus Declaration only discloses conversations with three individuals. The clear implication is that the efforts of all of these

---

[2] Ex. 28, Thomas Biesheuvel, Mining Billionaire Gets Help From Ex-Spies in Bitter Legal Fight, Bloomberg (May 22, 2020), https://www.bloomberg.com/news/articles/2020-05-22/mining-billionaire-gets-help-from-ex-spies-in-bitter-legal-fight.

undercover agents were able to unearth nothing favorable to Steinmetz other than the distorted, out-of-context conversations with these three persons.

While Steinmetz seeks to use this Court's valuable judicial resources for a media stunt, given the probative value Steinmetz contends that the Yanus Declaration should have both with this Court and the English court, Steinmetz should therefore be subject to discovery about the Yanus Declaration and the underlying "evidence" to which he refers. Steinmetz should also be subject to the same categories of disclosure as he seeks from Vale, as well as other discovery set forth in the proposed subpoenas annexed as Exhibit 1 and Exhibit 2 to the Declaration of Jeffrey A. Rosenthal.

## BACKGROUND

### I. The Illegal Black Cube Investigation

The facts of the underlying dispute between Vale and Steinmetz are well-documented and Vale respectfully refers the Court to Vale's Opposition rather than repeat those facts herein. See Opp. at 4-6. However, while Vale provided broad discovery in both the Rio Tinto litigation and the LCIA arbitration, Steinmetz personally has produced only limited documents in connection with these disputes. Steinmetz, moreover, has made every effort to conceal the "new" evidence he has since purportedly obtained through Black Cube.

On December 29, 2019, Steinmetz claims to have "commissioned" B.C. Strategy UK Ltd. ("Black Cube") to "investigate the events leading up to the dispute, focusing on Vale's knowledge of BSGR's alleged misconduct in obtaining the Mining Rights." Yanus Decl. ¶ 19. Black Cube purports to be a "business intelligence firm" with over 120 employees, comprised of a "select group of veterans of special units in the Israeli intelligence community and skilled intelligence officers with a background in law and finance." Id. ¶ 5-6. The firm has offices in London, Tel Aviv, and Madrid. Id. ¶ 6.

3

Black Cube operates primarily through a form of deception called "pretexting," impersonating people to obtain private information from investigation "objects," or persons being targeted.[3] To that end, Black Cube employees create sham companies with fake business websites and other promotional materials in an attempt to trick persons being targeted into believing they are working with a legitimate company.[4] Black Cube then lures targets to certain cities to meet with undercover agents that are equipped with hidden cameras and microphones.[5] Black Cube's illicit tactics have included surveillance of target homes, chasing targets on foot and by car, tracking target's phones, and monitoring social media accounts, all of which were used by Black Cube on behalf of its client Harvey Weinstein.[6]

On May 21, 2020, Steinmetz filed the present § 1782 Application, supported by the 38-page Declaration of Avi Yanus, the sole director of Black Cube. Yanus Decl. ¶ 2. In paragraph 20 of the Declaration, Yanus described Black Cube's "comprehensive research across multiple sources," and in paragraph 21, Yanus testified that "during the investigation Black Cube also contacted a *number of individuals* who are familiar with the case and the relevant parties." Id. ¶¶ 20-21 (emphasis added). Further, Yanus reported that there are recordings (video and/or audio) of the conversations Yanus claimed that "Black Cube preserves." Id. ¶ 23. The Yanus Declaration, however, contained no exhibits, no recordings, nor even the transcripts that he purportedly quoted.

---

[3] See Ex. 29, Bradley Hope & Jacquie McNish, Black Cube: The Bumbling Spies of the 'Private Mossad', Wall St. J. (June 18, 2019), https://www.wsj.com/articles/black-cube-the-bumbling-spies-of-the-private-mossad-11560793198 ("Such deceptions are critical to how Black Cube operates. After its analysts research targets, case managers bring in field agents, who are given a phone, fake names, a script and sometimes wigs or other disguises to deceive targets – 'objects' in the firm's internal parlance – according to people familiar with the firm.").
[4]  Id.
[5]  Id.
[6] See Ex. 30, Ronan Farrow, The Black Cube Chronicles: The Private Investigators, New Yorker (Oct. 7, 2019), https://www.newyorker.com/news/annals-of-espionage/the-black-cube-chronicles-the-private-investigators.

### II.  Steinmetz's Efforts to Conceal Evidence Related to the Black Cube Investigation

Steinmetz has actively sought to conceal from Vale the evidence Yanus cites to this Court. On May 22, 2020, Vale demanded the documentary evidence cited in the Declaration. See Ex. 31, Letter to Kobre & Kim, May 22, 2020.  On May 23, Vale reiterated its request for "full and complete copies of all recordings made by Black Cube or any other representative of Mr. Steinmetz of conversations with any present or former Vale employees." See Ex. 32, Letter to Kobre & Kim, May 23, 2020.  In response, Steinmetz produced and filed publicly purported transcripts of clandestinely recorded interviews with the three individuals. See Letter to Jeffrey A. Rosenthal, May 26, 2020, ECF No. 13-1.  Steinmetz also represented to the Court that he had produced to Vale the "materials referenced in Dr. Yanus' Declaration" and had "shared the full recordings of the conversations described in the Declaration of Dr. Yanus with Vale." Id.; Letter to Jeffrey A. Rosenthal, May 26, 2020, ECF No. 13.  As discussed below, it appears those representations were untrue.

Immediately after Steinmetz made his representations to the Court that he had produced all "materials referenced in Dr. Yanus' Declaration" and had "shared the full recordings of the conversations described in the Yanus Declaration," Vale requested confirmation that the transcripts and audio recordings Steinmetz produced were indeed "the entire universe of transcripts and recordings" referenced by Yanus, and noted that Steinmetz had not produced any of the "comprehensive research" Yanus described of the investigation in paragraph 20 of his Declaration. See Ex. 33, Letter to Josef M. Klazen, May 27, 2020.  After all, it is undeniable that the Yanus Declaration "referenced" far more materials than the three transcripts and "described" the Black Cube agents as having conversations beyond the three that were disclosed.

5

Notwithstanding Yanus' description of the work Black Cube performed (and presumably the documents it generated) and Steinmetz's unequivocal representations to the Court, Steinmetz refused to produce any more materials, stating only that he "might choose to do so later." See Ex. 34, Letter to Jeffrey A. Rosenthal, May 28, 2020.

**ARGUMENT**

I. **Any Obligation of Vale to Provide Discovery Should Be Conditioned upon Reciprocal Discovery from Steinmetz**

The fundamental principle of parity between the parties to a litigation guides the adjudication of discovery requests. The purpose of the discovery rules is "to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field." United States v. Smith, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013); see In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) (instructing that "the district court should consider the effect of its decision [to grant 1782 discovery] on the 'procedural parity' of the parties"); Cornell Research Found., Inc. v. Hewlett–Packard Co., No. 5:01CV1974, 2006 WL 5097357, at *8 (N.D.N.Y. Nov. 13, 2006), order clarified, 2007 WL 4324094 (N.D.N.Y. May 16, 2007), aff'd sub nom., Cornell Univ. v. Hewlett–Packard Co., 2007 WL 4302778 (N.D.N.Y. July 23, 2007) ("The court has consistently reminded the parties that one of its goals, in carrying out its discovery oversight responsibilities, has been to ensure a level playing field for both sides.").

In the context of § 1782, the Supreme Court has instructed that "[w]hen information is sought by an 'interested person,' a district court could condition relief upon that person's reciprocal exchange of information." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 262 (2004). Reciprocal discovery ensures "parity among adversaries in litigation," preventing one party from having an unjust advantage in the foreign proceeding, simply because it, but not its adversary, was able to avail itself of § 1782 aid. Id. As such, it is well accepted that courts have the discretion to

6

order reciprocal discovery from a § 1782 applicant when doing so would further these interests. See Application of Esses, 101 F.3d 873, 876 (2d Cir. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems. . . . Indeed, in carefully crafting an order for reciprocal discovery between [applicant] and [respondent] in light of the underlying dispute between them, Judge Baer acted well within his discretion in ordering discovery.").[7]

These considerations of fairness and parity are particularly acute here where both the § 1782 applicant and respondent are parties to the underlying foreign proceeding. See Application of Consorcio Minero, S.A. v. Renco Grp., Inc., No. 11 MC 354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012) (concluding movant had a "substantial interest" in the foreign proceedings as it was "party to one of the actions and each of the other parties adverse to [petitioner] is a wholly owned direct or indirect subsidiary of [movant]").

In the English Proceedings, Steinmetz and Vale will be entitled to seek document disclosure (the English equivalent of discovery) from each other just two months after the Application before this Court is fully briefed. As described in the Opposition, this fact weighs heavily against Steinmetz obtaining § 1782 relief because the High Court "has jurisdiction over those appearing before it, and can itself order [participants in the foreign proceeding] to produce evidence." Opp. at 17 (quoting Intel, 542 U.S. at 264). However, to the extent that this Court grants Steinmetz the right to jump the gun on party discovery from Vale, and take advantage of

---

[7] See also Euromepa S.A., v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995) (reading "section 1782's investment of broad discretion in the district courts as an invitation for district judges to fashion creative means of implementing the statute's double goal: promoting efficiency in international litigation and persuading other nations, by example, to do the same"); Application of Consorcio Minero, S.A. v. Renco Grp., Inc., No. 11 MC 354, 2012 WL 1059916, at *3 (S.D.N.Y. Mar. 29, 2012) ("A district court retains wide discretion to impose conditions that it deems appropriate in granting discovery in connection with a foreign proceeding under 28 U.S.C. § 1782."); Minatec Fin. S.A.R.L. v. SI Grp. Inc., No. CIV1:08CV269LEK/RFT, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("Consistently, the Second Circuit and the Supreme Court, have suggested that a district court could condition relief upon a reciprocal exchange of information, as such would lend parity to the disclosure mix.").

the broader U.S. discovery rules pursuant to § 1782 (including taking depositions, as Steinmetz requests), it should grant Vale the same opportunity to do so from Steinmetz.

Courts have held that reciprocal discovery is particularly appropriate under circumstances such as these where a § 1782 respondent would not be able to seek and obtain documents from a § 1782 applicant in the foreign proceedings "in the manner in which discovery may proceed in the U.S. under 28 U.S.C. § 1782." Application of Consorcio Minero, S.A. v. Renco Grp., Inc., No. 11 MC 354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012); see also Euromepa S.A., v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995) (noting that if the district court was concerned, "and if so, quite correctly, that [petitioner] MEPA could obtain discovery against [respondent] Esmerian in the United States, while [respondent] Esmerian would be unable to gain access to analogous [petitioner] MEPA documents or testimony in Europe," the court could have "conditioned relief upon the parties' reciprocal exchange of information" to insure procedural parity).

Steinmetz, a defendant in the English Proceedings, should not be able to gain access to a wide range of discovery without his adversary Vale being entitled to seek discovery under the same set of rules.  Reciprocal discovery is precisely the remedy for such imbalance where one party may unfairly use one-sided U.S. discovery to its own advantage.  See Minatec Fin. S.A.R.L. v. SI Grp. Inc., No. CIV1:08CV269LEK/RFT, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) (granting reciprocal discovery where movant claimed that discovery scheme was a "one-way street" and it had no similar recourse available in the foreign proceeding).

Finally, Vale's reciprocal discovery requests are appropriately tailored.  Vale seeks from Steinmetz essentially the same categories of documents that Steinmetz seeks from Vale, as well as very narrow categories related to the Yanus Declaration and Steinmetz's assets.  Steinmetz himself

8

claims that the categories of documents he seeks from Vale are relevant. MOL at 22, 27-28.[8] With respect to the requests directed to Steinmetz's assets, they are relevant to multiple issues in the English Proceedings, including without limitation Vale's proprietary claim (akin to a constructive trust) over the proceeds of BSGR's fraud that were upstreamed to Steinmetz and later invested in his other ventures, the worldwide freezing order and enforcement of any judgment.

As to the Black Cube documents, Steinmetz argues that the "new" evidence deriving from the Black Cube investigation is "relevant to and in support of" Steinmetz's defenses in the English Proceedings, evidence he claims "deny Vale's allegations entirely." MOL at 22. It therefore is a ripe subject for reciprocal discovery should this Court order Vale to provide discovery to Steinmetz. See Euromepa S.A., 51 F.3d at 1102 (reciprocal discovery should allow "access to analogous . . . documents or testimony"); Consorcio Minero, S.A., No. 11 MC 354, 2012 WL 1059916, at *3 (noting movant's discovery requests were "closely related to the Peruvian Actions").

## CONCLUSION

For the foregoing reasons, Vale respectfully requests that if the Court grants Steinmetz's Application in any respect pursuant to 28 U.S.C. § 1782, such Order requires Steinmetz to provide reciprocal discovery as set forth in the proposed subpoenas attached as Exhibits 1 and 2 to the Declaration of Jeffrey A. Rosenthal.

---

[8] It is Vale's position that Steinmetz's categories are overbroad, unduly burdensome and duplicative of discovery already produced by Vale, but Steinmetz categorizes his requests as "appropriately tailored" and seeking only "a discrete universe of documents." Memorandum of Law in Support of the Application of Benjamin Steinmetz for an Order to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited Pursuant to 28 U.S.C. § 1782, ECF No. 3, at 27 ("MOL"). To the extent the Court agrees with Steinmetz, then these same categories would be appropriate subjects for discovery of Steinmetz.

9

Dated: June 26, 2020
New York, New York

                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

                    */s/ Jeffrey A. Rosenthal*

                    Jeffrey A. Rosenthal
                    Lisa M. Schweitzer
                    Lisa Vicens
                    One Liberty Plaza
                    New York, New York 10006
                    Telephone: (212) 225-2000

                    *Attorneys for Vale S.A.*