# Exhibit 1

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Souther District of New York

| In re Application of Benjamin Steinmetz | ) |
| *Plaintiff* | ) |
| v. | ) | Civil Action No.   20-mc-212-AJN |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                               Benjamin Steinmetz

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Cleary Gottlieb Steen & Hamilton LLP | Date and Time: | |
| | One Liberty Plaza | | |
| | New York, NY 10006 | | To be determined |

The deposition will be recorded by this method:   video and stenographic means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   See Schedule A hereto.

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

                *CLERK OF COURT*
                                                              OR

_____                    _____
        *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
Vale S.A.                                                                         , who issues or requests this subpoena, are:
Jeffrey A. Rosenthal (jrosenthal@cgsh.com), Lisa M. Schweitzer (lschweitzer@cgsh.com), and Lisa Vicens
(evicens@cgsh.com)

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 20-mc-212-AJN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
　**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
　**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
　　**(i)** is a party or a party's officer; or
　　**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
　**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
　**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
　**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
　　**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

　**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

　　**(i)** fails to allow a reasonable time to comply;
　　**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
　　**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　**(iv)** subjects a person to undue burden.
　**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

　　**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
　　**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
　**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
　**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
　**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
　**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　**(i)** expressly make the claim; and
　　**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A TO SUBPOENA TO BENJAMIN STEINMETZ

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Civil Procedure 34 and 45, Vale S.A. ("Vale" or the "Cross-Applicant") hereby requests that Benjamin (Beny) Steinmetz ("Steinmetz") produce the following documents responsive to this subpoena.  Vale reserves the right to serve supplemental and additional discovery requests.

## DEFINITIONS

1.      The Cross-Applicant incorporates by reference herein the Uniform Definitions in Discovery Requests set out in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules").

2.      The term **"all"** means "all," "every," and "each" as necessary to make the request inclusive rather than exclusive and means every document, whenever created, within Your possession, custody, or control.

3.      The term **"affiliate"** means a person or corporate entity that is related to another person or corporate entity, directly or indirectly, by shareholdings, interests, or other means of control, including but not limited to subsidiaries, parents, or sibling corporate entities.

4.      The term **"Arsuf Trust"** means Arsful Trust Assets Holding Company Limited (reg. no. 5155314870).

5.      The terms **"associate**," **"associated**," or **"association"** mean a person or corporate entity that has an existing or past relationship with another person or corporate entity, including but not limited to direct and indirect relationships as owners, employees, officers, agents, colleagues, partners, members, directors, family, corporate family, principals, stakeholders, representatives, shareholders, advisors, beneficiaries, trustees, lienholders, creditors, debtors, customers, and suppliers.

6.      The term **"Balda"** means the Balda Foundation, the direct parent company of Nysco Management Corp. and indirect parent of BSGR and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Marc Bonnant, Brian Padgett, Jesus Cortés, Rothschild Trust (Guernsey) Limited, and any other members of its Foundation Council.

7.      The term **"Black Cube"** means BC Strategy Ltd. and any of its current of former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

8.      The term **"BSGR"** means BSG Resources Limited and any of its current or former divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

9.      The term **"BSG Real Estate"** means BSG Real Estate Limited and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Chestergate Investments Corp. and Highstreet Real Estate (Netherlands) BV.

10.     The term **"concerning"** means relating to, referring to, describing, evidencing, or constituting.

11.     The term **"document(s)"** is used in its broadest sense and includes, without limitation, all writings in any form, notes, memoranda, manuals, reports, agreements, contracts, communications (including information transmitted in the form of facts, ideas, inquiries, or otherwise), contracts, deeds, memoranda of understanding, invoices, receipts, records, correspondence, drawings, graphs, charts (including personnel charts, structure charts, or organograms), corporate registries, corporate records, photographs, telephone records, payment records, bank statements, data compilations of whatever nature (including those from which information can be obtained or translated if necessary), audio recordings (including any transcripts of such recordings), video recordings (including any transcripts of such recordings), electronic mail messages, and electronic data (including any exchange of information between computers and all information stored in an electronic form or computer database).  A draft or non-identical copy is a separate document within the meaning of this term.

12.     The term **"GSOL"** means Global Special Opportunities Limited, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Star West, Americano Nickel Limited, Euronickel Limited, Sabby Mionis and Marcos Camhis.

13.     The term **"ICSID Claims"** refers to arbitral claims asserted by BSGR against the Republic of Guinea in the ICSID arbitration *BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL v. Republic of Guinea*, ICSID Case No. ARB/14/22.

14.     The terms **"identify"** and **"identity"** each mean

    a.   When used with reference to a natural person, to state specifically for each person his or her full name, address, and telephone number.

    b.   When used with reference to an entity, such as a partnership (either general or limited), joint venture, trust, corporation, or other business entity, to state for each entity the full legal name of the entity, each name under which the entity does business, and the entity's telephone number.

    c.   When used with reference to documents:

        i.   to state and describe specifically for each document, the title or heading, form (e.g., letter, interoffice memorandum, etc.), date, preparer or drafter, signer, and addressee, title or the heading, and approximate number of pages of the document;

        ii.   and identify each custodian and person in possession of the document, and the present or last known location of the document.

15.     The term "**Infinite Diam**" means Infinite Diam Limited and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

16.     The term **"interest,"** unless otherwise specified, means any past, present, prospective, or contingent interest (whether held directly or indirectly through subsidiaries, holding structures, and other entities and/or persons), including, without limitation, economic interests, financial interests, ownership interests, material interests, beneficial interests, licenses,

and concessions.  For the avoidance of doubt, a partially or jointly-held financial, beneficial, or material interest is an interest within the meaning of this term.

17.     The term **"Laurelton Diamonds"** means Laurelton Diamonds, Inc. and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

18.     The term **"LSL"** means Litigation Solutions Limited, including but not limited to any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Sabby Mionis and Stavros Papastavrou.

19.     The term **"Niron"** means Niron Metals, Plc, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Sir Michael "Mick" Davis, Varda Shine and Marcos Camhis.

20.     The terms **"Nysco Management Corp."** or **"Nysco"** mean the direct parent of BSGR, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or

purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Marc Bonnant and David Barnett.

21.     The term **"Octea"** means Octea Limited, a wholly-owned subsidiary of BSGR, and all subsidiaries and affiliated entities and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

22.     The term **"Onyx"** means Onyx Financial Advisors Limited and Onyx Financial Advisors S.A., and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Dag Cramer and Sandra Merloni-Horemans.

23.     The term "**Penford**" means Penford (Israel) Limited and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

24.     The term "**Rio Tinto's Concession**" means the iron ore mining concession granted by the Republic of Guinea to Rio Tinto on March 30, 2006 covering Blocks 1, 2, 3, and 4 of Simandou.

25.     The term **"Roslindale"** means Roslindale PTE Limited, the corporate entity in which BSGR holds a number of redeemable preference shares, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Doron Levy.

26.     The term "**Simandou**" means the Simandou Mounrain range in the southeastern region of Guinea.

27.     The term "**Simandou Blocks 1 and/or 2**" means the northern half of the Simandou Mountain range in the Nzerekoré region of southeastern Guinea which Rio Tinto was ordered to relinquish in December 2008.

28.     The term **"Star West"** means Star West Limited and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Marcos Camhis and Ioannis Prokopis (also spelled Yannis Prokopis).

29.     The term "**Steinmetz**" means Benjamin "Beny" Steinmetz.

30.     The term **"Steinmetz's relatives"** means any spouse, former spouse, child, stepchild, parent, stepparent, grandparent, grandchild, niece, nephew, cousin, aunt, uncle, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother, sister, brother-in-law, or sister-in-law, including adoptive relations, of Benjamin "Beny" Steinmetz.  For the avoidance of doubt, for the purposes of this definition, Steinmetz's relatives include, without limitation,

Steinmetz's wife Agnes Steinmetz; Steinmetz's brother Daniel Steinmetz; Steinmetz's brother-in-law Patrick Saada; Steinmetz's children Merav Steinmetz, Avner Steinmetz, Michal Steinmetz, and Nadav Steinmetz; and Steinmetz's sons-in-law Shimon Menahem and Ohad Schwartz.

31.    The term "**Vale**" refers to Vale S.A. and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

32.    The term "**Vessna**" means the Vessna Foundation and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

33.    The term "**West African Power**" means West African Power Limited, a wholly-owned subsidiary of BSGR, the power generation operation in which BSGR holds a minority interest, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, beneficiaries, trustees, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

34.    The terms "**You**" and "**Your**" refer to Steinmetz, Steinmetz's relatives, BSGR, Nysco, Balda, Vessna, Arsuf Trust and any entity beneficially or actually, directly or indirectly, in trust or otherwise, owned by any of the foregoing, as well as any of their present or former

agents, associates, beneficiaries, trustees, managers, attorneys, assigns, representatives, consultants, employees, officers or directors and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including without limitation Black Cube.

35.    The term "**Zogota Mining Concession**" means the iron ore mining concession granted by the Republic of Guinea to BSGR on March 19, 2010, covering an area of 1,024 kilometers near the village of Zogota, in Guinea.

## INSTRUCTIONS

1.    Any non-capitalized words, terms, and phrases not specifically defined in these document requests shall be given their normal and customary meaning in the context in which they are used in these requests.

2.    Each request for production shall be responded to completely, separately, and fully.

3.    Documents referred to herein are to include all portions or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations, or electronic information), drafts, working papers, routing slips, and similar materials.

4.    A document is deemed in Your actual or constructive possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other person and You (a) own such document in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy

such document when You sought to do so.  For the avoidance of doubt, a document is deemed in Your actual or constructive possession, custody, or control if it is accessible on a network or server that You maintain or to which you have access.

5.      The specifications of these document requests are to be construed as being inclusive rather than exclusive.  Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the document request inclusive.

6.      In producing responsive documents, You should furnish all documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or by Your agents, employees, or representatives, including Your attorneys or their agents, employees, or representatives.

7.      You are to produce all drafts and copies of each document that is responsive to any specification of these document requests and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

8.      With respect to Electronically Stored Information ("ESI"):

        a.   All Microsoft Excel files, PowerPoint files, and/or audio and video files responsive to these document requests that are maintained in the usual course of business in electronic format are to be produced in their native format, along with the software necessary to interpret such files if such software is not readily available.  Any native files that are produced shall also be produced with a

10

one-page Bates-numbered TIFF image slip-sheet stating "Document has been produced in native format."

b.   All other documents responsive to these document requests that are maintained in the usual course of business in electronic format are to be produced in properly unitized, single-page TIFF Group IV format complete with full text extracts and all associated metadata.  Documents produced in TIFF format shall be produced with Bates numbers stamped on each page.  Bates numbers shall be of constant length, be sequential across a document and its attachments, be unique across the entire production, and contain no special characters except dashes. Documents produced in the Group IV TIFF format shall be produced such that comments, notes, speaker notes, track changes, hidden rows, hidden columns, and any other hidden or invisible text are displayed.  For good cause, the requesting party may request that documents originally produced in TIFF format be re-produced in native format, which request shall not unreasonably be denied. The requesting party shall identify documents for re-production by Bates number and provide an explanation of the need for native files.

c.   All documents responsive to these document requests are to be produced with the metadata contained in Appendix A, and the necessary Concordance-compatible load files.  If such metadata is not available, each document is to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

d.   Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use.  ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.  Databases or underlying data should not be produced without first discussing production format issues with Vale's counsel.  If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost You claim is associated with the search or production of such ESI.

9.      All documents that are physically attached to each other when located for production are to be left so attached when produced.  Documents that are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or any other method, are to be left so segregated or separated when produced.  Documents are to be produced in the order in which they were maintained and in the files in which they were found.

10.     Where a claim of privilege is asserted in objecting to any document request, identify the nature of the privilege (including work product) that is being claimed and the privilege rule being invoked, and for each document withheld provide the following information:

a.   the type of document;

b.   the date of the document;

c. the author(s), addressee(s), and recipient(s) of the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to one another;

d. the number of pages;

e. the identity of any enclosure(s) or attachment(s);

f. the subject matter of the document;

g. the basis of the privilege claim; and

h. the type of privilege(s) asserted.

11.    The documents responsive to these requests are to be produced as they were kept in the ordinary course of business and are to be labeled in such a way as to show which files they came from.

12.    If any document, or any part of a document, called for by these document requests has been destroyed, discarded, lost, or otherwise disposed of or placed beyond Your custody or control, You are to furnish a list identifying each such document by: (i) date, (ii) author; (iii) recipient(s); (iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter; (vi) the document's present or last-known location or custodian; (vii) the date of the document's destruction or other disposition; (viii) the reason for such destruction or other disposition; and (ix) the person authorizing such destruction or other disposition.

13.    Each specification of these document requests requires production in full, without abbreviation, redaction, or expurgation of any responsive documents.  If any responsive document is not or cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document is being withheld, and the reason(s) it is being withheld.

Any redactions applied to documents shall contain text indicating the basis for redaction (e.g., "Privileged").

14.     Documents not otherwise responsive to specifications of these document requests are to be produced if such documents mention, discuss, refer to, or explain the documents which are responsive to these document requests, or if such documents are attached to documents responsive to these document requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

15.     If, in responding to these document requests, You encounter any ambiguity in construing them or any definitions and instructions relevant to them, set forth the matter or term deemed "ambiguous" and the construction used in responding to the document requests.

## DOCUMENTS TO BE PRODUCED

A.     Categories of Documents Set Forth in or Substantially Similar to Steinmetz's Proposed Subpoena of Vale

1.     All documents concerning Your activities in Guinea from June 1, 2005 until December 31, 2014.

2.     All documents concerning Vale.

3.     All documents concerning the award of exploration rights in Simandou North and/or South to You.

4.     All documents concerning Your role in the decision to cancel Rio Tinto's Concession and/or to enforce a retrocession of Simandou Blocks 1 and/or 2.

5.     All documents concerning the award of exploration rights in Simandou Blocks 1 and/or 2 to You.

6.     All documents concerning the award of the Zogota Mining Concession to You.

7.     All documents concerning Simandou.

8.      All documents concerning suspicions of Your wrongdoings in Guinea.

9.      All documents concerning Vale's due diligence related to You.

10.     All documents concerning any potential reattribution of the cancelled mining rights in Simandou, including without limitation all documents concerning Niron or negotiations with the Government of Guinea.

11.     All documents concerning Your document destruction policy or policies.

12.     All documents concerning the destruction of Your documents.

13.     All documents concerning an actual or potential deal between Vale and You concerning Simandou.

B.      <u>Categories of Documents Concerning Black Cube</u>

14.     All documents concerning any investigation by You related to Vale, including without limitation any investigation by Black Cube related to any current or former employees, consultants, agents, officers, directors, associates, managers, representatives or attorneys of Vale. For the avoidance of doubt, this request includes all documents concerning or referenced in the Declaration of Avi Yanus dated May 21, 2020, including with respect to communications with individuals not identified to the Court.

15.     All documents concerning payments to Black Cube and Kobre & Kim LLP, including without limitation the source of such payments.

C.      <u>Categories of Documents Concerning Your Assets</u>

16.     All documents concerning the transfer of Your assets between January 1, 2010 and today (whether between entities within the definition of "You" or to third parties).

17.     All bank records reflecting the transfer of funds to, from, or between Your bank accounts and monthly bank statement balances for such bank accounts between January 1, 2010 and today.

18.     All documents concerning Your assets, including but not limited to real estate and chattel property valued at over $100,000, and the current market or estimated value of those assets.

19.     All documents concerning bank accounts in which You have had any interest between January 1, 2010 and today, including without limitation all documents reflecting transactions to or from, or balances in such bank accounts.

20.     All documents concerning direct or indirect loans, investments or transfers of assets and/or funds between January 1, 2010 and today (a) from BSGR to Nysco, Balda, Steinmetz or Steinmetz's relatives, including but not limited to the $500 million payment from Vale to BSGR; or (b) from Nysco, Balda, Steinmetz or Steinmetz's relatives to BSGR.

21.     All documents concerning Your interests in or association with any of Roslindale, Wandering Star Limited, Nammax Oil & Gas Limited, the Ishai (also spelled "Yishai") oil field, GSOL, LSL, Star West, Onyx and West African Power between January 1, 2010 and today.

22.     All documents concerning Your direct or indirect association and/or business relationship with Femi Otedola and/or any entities in which Femi Otedola has or had an interest, including but not limited to Forte Oil Plc and Calvados Global Limited, between January 1, 2010 and today.

23.     All documents concerning the negotiation and/or proposed or actual settlement of Your ICSID Claims against the Republic of Guinea between January 1, 2018 and today, including without limitation all binding or non-binding agreements, term sheets and/or any other

16

contractual or other arrangements, including drafts and unexecuted versions, among any of

BSGR or its affiliates, Steinmetz, Niron and/or the Republic of Guinea concerning the ICSID

Claims, including but not limited to any agreements (whether final or otherwise).

24.     All documents concerning Your role in the direct or indirect sale of diamonds

from Octea and/or any of its subsidiaries to any third parties, including but not limited to

Penford, Laurelton Diamonds, Infinite Diam or Patrick Saada between January 1, 2010 and

today.

25.     All loans extended to or by You between January 1, 2010 and today.

26.     Documents sufficient to show Your status as a beneficiary, associate or affiliate of

any trust or foundation, including but not limited to his status as a beneficiary of Balda, the

Vessna, and/or Arsuf Trust, and documents sufficient to show the other beneficiaries of those

trusts or foundations.

27.     All documents concerning the transfer of Your interest in the property located at

Mul HaYam Street 21, Arsuf, Israel, to the Arsuf Trust.

28.     All documents concerning any entities or persons who have interests in any of

Your residence(s) or the plots of land upon which such residence(s) are situated.

29.     All documents, including but not limited to organizational charts, corporate

registers, and/or other similar official records reflecting Your interests in and/or affiliations with

any corporate entities, including but not limited to entities and trusts for which You are a

beneficial owner or beneficiary.

30.     All documents reflecting the transfer of funds in and out of the Agnes and Beny

Steinmetz Foundation's bank accounts and monthly bank statement balances for such bank

accounts between January 1, 2010 and today.

31.     All Balda and Vessna board meeting minutes dated between January 1, 2010 and today.

32.     All documents approving the transfer of funds and/or assets from Balda or Vessna to or for the benefit of Steinmetz and Steinmetz's relatives between January 1, 2010 and today.

33.     All documents concerning:

- o   76 Eleventh Avenue Property Owner, LLC;

- o   Belnord Partners LLC (including Belnord Realty Associates LP, Belnord Management Corp., SB Belnord and GCE Belnord Corp.);

- o   BSG Real Estate;

- o   Chatsworth Realty Corp. (including Chatsworth Realty 344 LLC and Chatsworth 72nd Street Corp.);

- o   Chestergate Investments Corporation;

- o   HFZ Capital Group LLC;

- o   Invel Real Estate JV (including Invel Real Estate Partners, Invel Real Estate Partners Lennon S.a.r.l., and Invel Real Estate Partners Lennon 2 S.a.r.l.);

- o   NBG Pangea Real Estate Investment Company;

- o   Perfectus Real Estate Corp (f/k/a Tarpley Belnord Corp.);

- o   76 Eleventh Avenue (New York), located at 76 11th Avenue New York, NY 10011;

- o   the Belnord (New York), located at 225 West 86th Street, New York, NY 10024;

- o   the Chatsworth (New York), located at 344 West 72nd Street, New York, NY 10023;

- o   the Chrysler Building (New York), located at 405 Lexington Avenue New York, NY, 10174; and

- o   Lighthouse Vltava Waterfront Towers (Prague) located at Jankovcova 1566, 170 00 Praha 7-Holešovice, Czechia.

34.     All documents concerning Your interests located in the Ivory Coast, including but not limited to Nickel de l'Ouest de Côte d'Ivoire, Compagnie Minière du Bafing, and/or the mining projects and other assets owned by these entities.

**APPENDIX A**

| Metadata Field | Description | Examples |
|---|---|---|
| **Production Metadata Fields for All Documents** | | |
| BegBates | Bates number for the first page of the document | [Bates Prefix]-00000001 |
| EndBates | Bates number for the last page of the document | [Bates Prefix]-00000010 |
| BegBatesAtt | Bates number for the first page of the parent document (i.e., an email or other document containing attachments) | [Bates Prefix]-00000001 |
| EndBatesAtt | Bates number of the last page of the last attachment to the parent document | [Bates Prefix]-00000015 |
| Custodians_All | Name of the custodian or custodians who possessed this item or exact duplicates thereof. | Jones, Barbara |
| RecordType | Type of item being produced | Email, Email Attachment, Electronic Document, Hardcopy Document |
| FilePath | Original location of the file when collected from the source custodian or system | C:\My Documents\Deal Documents |
| FileSize | Size of the native file document/email in KB | 3,547 |
| Prod_Native | File path to the native file on the production media if applicable (a.k.a. production file path) | Prefix001\NATIVES\000\ Prefix00000001.msg |
| Prod_Text | File path to the extracted text file on the production media | Prefix001\TEXT\000\ Prefix00000001.msg |
| MD5Hash | The MD5 hash value for the item | |
| SHA1Hash | The SHA-1 hash value for the item | |
| Designation | The confidentiality designation of the document, if any | Confidential, Highly Confidential |
| Redaction | For documents containing redactions, the basis for such redactions | Privileged, Personal, Proprietary |
| **Additional Document Metadata Fields for Electronic Documents and Attachments** | | |
| FileName | Original name of the file when collected from the source custodian or system | exampledoc.doc, file.xls |
| FileExt | File type extension of native file | xls, doc, ppt, mp3 |
| FileType | File type or application used to create the underlying native file | Excel, Word, PowerPoint, MP3 |
| Title | Title of the document | Purchase Agreement |
| Author | Author of the document | Barbara Jones |
| TimeZone | The time zone in which electronic documents were standardized during conversion. | GMT |
| MasterDate | For emails and their attachments, the sent date of the parent email | MM/DD/YYYY |

| Metadata Field | Description | Examples |
|---|---|---|
| MasterTime | For emails and their attachments, the sent time of the parent email, using a 24-hour clock | HH:MM:SS |
| DateCreated | Date the item was created | MM/DD/YYYY |
| TimeCreated | Time the item was created, using a 24-hour clock | HH:MM:SS |
| DateLastModified | Date the item was last modified | MM/DD/YYYY |
| TimeLastModified | Time the item was last modified, using a 24-hour clock | HH:MM:SS |
| **Additional Document Metadata Fields for Email and Other Electronic Communications** | | |
| DateSent | Date the email message was sent, using a 24-hour clock | MM/DD/YYYY |
| TimeSent | Time the email message was sent, using a 24-hour clock | HH:MM:SS |
| Date Received | Date the email message was received, using a 24-hour clock, in Greenwich Mean Time (GMT) | MM/DD/YYYY |
| TimeReceived | Time the email message was received, using a 24-hour clock | HH:MM:SS |
| To | Addressee(s) of the email message | Barbara Jones barbarajones@co.com |
| From | Name and email address of the person who sent the email message | Barbara Jones barbarajones@co.com |
| CC | Recipient(s) included in the "cc" line of the email message | Barbara Jones barbarajones@co.com |
| BCC | Recipient(s) included in the "bcc" line of the email message | Barbara Jones barbarajones@co.com |
| Subject | Subject line of the email message | FW: your message |
| EmailPath | The original location of email | Personal Folders\Sent Items\ |
| Conversation Index | A field indicating whether an email message is part of a conversation thread with other email messages. | |