# Exhibit 8



CL-2019-000723

IN THE HIGH COURT OF JUSTICE

BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

COMMERCIAL COURT (QBD)

Before Sir Michael Burton GBE (sitting as a Judge of the High Court)

Dated 3 December 2019

In private

B E T W E E N:

(1) VALE S.A.

(2) VALE HOLDINGS B.V.

(3) VALE INTERNATIONAL S.A.

**Claimants/Applicants**

and

(1) BENJAMIN STEINMETZ
(2) DAG LARS CRAMER
(3) MARCUS STRUIK
(4) ASHER AVIDAN
(5) JOSEPH TCHELET
(6) DAVID CLARK
(7) BALDA FOUNDATION
(8) NYSCO MANAGEMENT CORPORATION

**Defendants/Respondents**

**FREEZING ORDER**

**Penal Notice**

**If you, Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, Balda Foundation or NYSCO Management Corporation disobey this order you may be held to be in contempt of Court and may be imprisoned, fined or have your assets seized. Any other person who knows of this Order and does anything which helps or permits any Respondent to breach the terms of this Order may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

1

000226

**THIS ORDER**

1. This is a Freezing Injunction made against Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, Balda Foundation and NYSCO Management Corporation (the "**Respondent**") on 3 December 2019 by Sir Michael Burton (sitting as a Judge of the High Court) on the application of Vale S.A., Vale Holdings B.V. and Vale International S.A. (the "**Applicant**"). The Judge read the Affidavits listed in Schedule A and accepted the undertakings set out in Schedule B at the end of this Order.

2. This Order was made at a hearing without notice to the Respondent. The Respondent has a right to apply to the Court to vary or discharge the Order—see paragraph 15 below.

3. There will be a further hearing in respect of this Order on 16 December 2019 at 2.00pm (the "**return date**").

4. If there is more than one Respondent –

    a) unless otherwise stated, references in this Order to "the Respondent" means any or all of them; and

    b) the "First Respondent" means Benjamin (Beny) Steinmetz, the "Second Respondent" means Dag Lars Cramer, the "Third Respondent" means Marcus Struik, the "Fourth Respondent" means Asher Avidan, the "Fifth Respondent" means Joseph (Yossie) Tchelet, the "Sixth Respondent" means David Clark, the "Seventh Respondent" means Balda Foundation, and the "Eighth Respondent" means NYSCO Management Corporation; and

    c) this Order is effective against any Respondent on whom it is served or who is given notice of it.

**FREEZING INJUNCTION**

5. Until the return date or further order of the Court, the Respondent must not –

(1) remove from England and Wales any of his assets which are in England and Wales up to the value of US$1.85 billion; or

(2) in any way dispose of, deal with or diminish the value of any of his assets whether they are in or outside England and Wales up to the value of US$1.85 billion; or

(3) in any way dispose of, deal with or diminish the value of any of his assets outside of England and Wales unless the total unencumbered value (as defined in paragraph 8 below) of all his assets in England and Wales exceeds US$1.85 billion.

6. Paragraph 5 applies to all the Respondent's assets whether or not they are in his own name, whether they are solely or jointly owned, and whether the Respondent is interested in them legally, beneficially or otherwise. For the purpose of this Order the Respondent's assets include any asset which he has the power, directly or indirectly, to dispose of or deal with as if it were his own. The Respondent is to be regarded as having such power if a third party holds or controls the asset in accordance with its or his direct or indirect instructions. For the avoidance of doubt, and without limitation, the term asset shall include any chose in action and any digital currency (including but not limited to BitCoin, Ethereum and Litecoin).

7. This prohibition includes the following assets in particular –

(1) in relation to all Respondents, any interest under any trust, foundation or similar entity including any interest which can arise by virtue of the exercise of any power of appointment, discretion or otherwise howsoever.

(2) the following assets of the First Respondent in particular –

a) Any interest in the property known as Mul HaY am Street 21, Arsuf, Israel or the net sale money after payment of any mortgages if it has been sold; and
b) Any remaining funds or proceeds paid to the First Respondent by the Seventh Respondent after April 2010.

(3) the following assets of the Second Respondent in particular –

a) Any interest in the property known as 8 Well Road, London, NW3 1LH;

    b) Any remaining funds or proceeds relating to the:
        i. US$10 million bonus promised to the Second Respondent by BSG Resources Limited ("**BSGR**") in about April 2010;
        ii. the US$2.5 million bonus payment promised to Onyx Financial Advisors Ltd (of which the Second Respondent was the ultimate beneficial owner) by the Seventh Respondent at about the same time;
    c) The shares held by the Second Respondent in Norn Verdandi Limited, and any remaining shareholding in the Onyx Financial Advisors group of companies, or the sale money if any of them have been sold;
    d) Any interest in Manerhorn Holdings S.A. (the company which received a payment of US$3 million from BSGR on or about 6 July 2010) or the funds received by or assets held by Manerhorn Holdings S.A. for and on behalf of the Second Respondent; and
    e) Any money in accounts held in the name of the Second Respondent (whether solely or jointly) with the State Bank of Mauritius, or with any other Mauritian financial institution.

(4) the following assets of the Third Respondent in particular –

    a) Any interest in the property known as 7 Sunset Acres, Johannesburg, South Africa or the net sale money after payment of any mortgages if it has been sold;
    b) Any remaining funds or proceeds relating to the US$3 million bonus promised to the Third Respondent by BSGR in about April 2010; and
    c) Any interest in Ennismore Consultants Ltd (the company which received a payment of US$2 million from BSGR on or about 6 July 2010) or the funds received by or assets held by Ennismore Consultants Ltd for and on behalf of the Third Respondent.

(5) the following assets of the Fourth Respondent in particular –

    a) Any interest in the property known as Flat 9, 54 Pinkas Street, Tel Aviv, Israel or the net sale money after payment of any mortgages if it has been sold; and
    b) Any remaining funds or proceeds relating to the US$3.75 million bonus promised to the Fourth Respondent by BSGR in about April 2010.

(6) the following assets of the Fifth Respondent in particular –

a) Any interest in the property known as 1C Hochit St., Yad Binyamin Town, Israel or the net sale money after payment of any mortgages if it has been sold;

b) Any interest in Evergreen Valley Production Ltd (the company which received a payment of US$800,000 from BSGR on or about 6 July 2010) or the funds received by or assets held by Evergreen Valley Production Ltd for and on behalf of the Fifth Respondent;

c) The shares in Tchelet Advisory Services Ltd., or the sale money if they have been sold; and

d) Any remaining funds or proceeds relating to the US$1.2 million bonus promised to the Fifth Respondent by BSGR in about April 2010.

(7) the following assets of the Sixth Respondent in particular –

a) Any interest in the property known as Valparisso, Avenue du Manoir, Ville Au Roi, St. Peter Port, Guernsey, GY1 1PE or the net sale money after payment of any mortgages if it has been sold; and

b) Any remaining funds or proceeds relating to the US$250,000 bonus promised to the Sixth Respondent by BSGR in about April 2010.

(8) the following assets of the Seventh Respondent in particular –

a) Any remaining funds from the US$500 million initial consideration paid by the Third Claimant to BSGR pursuant to the joint venture agreement between the First Claimant and BSGR dated 30 April 2010 (the "**JVA**"); and

b) The shares in the Eighth Respondent.

(9) the following assets of the Eighth Respondent in particular –

a) The shareholdings in the Eighth Respondent's businesses known respectively as BSGR, BSG Real Estate Ltd and Chestergate Investments Limited or the sale money if any of them have been sold.

b) any interest in a Benetti motor yacht and two Bombardier aircraft (models CL-600-2B16 and BD 700-1A11); and

c) Any remaining funds from the US$500 million initial consideration paid by the Third Claimant to BSGR on 30 April 2010 pursuant to the JVA and transferred to the Eighth Respondent.

5

8. If the total value free of charges or other securities ("**unencumbered value**") of the Respondent's assets in England and Wales exceeds US$1.85 billion, the Respondent may remove any of those assets from England and Wales or may dispose of or deal with them so long as the total unencumbered value of that Respondent's assets still in England and Wales remains above US$1.85 billion.

9. If any Respondent has assets outside England and Wales, he may dispose of or deal with those assets so long as the total unencumbered value of his assets in England and Wales exceeds US$1.85 billion.

**NOTIFICATION INJUNCTION**

10. Until the return date or further order, the Respondent must give the Applicant's solicitors 2 clear working days' notice of any transaction (or series of connected transactions) exceeding £25,000 in value relating to the assets of any company which holds or controls its assets in accordance with the Respondent's direct or indirect instructions. Such notice shall (a) state the amount and currency of the transaction (or series of transactions) and (b) give a brief description of the purpose of the transaction.

**PROVISION OF INFORMATION**

11.

(1) Unless sub-paragraph (4) applies, the Respondent must by 4pm London time on the 7TH day after service of this Order, and to the best of his ability having made all reasonable enquiries, inform the Applicant's solicitors in writing of all of his assets worldwide as at 00:01am on the date of this Order exceeding: (i) £25,000 in value for the First, Seventh and Eighth Respondents; and (ii) £10,000 in value for the Second to Sixth Respondents, giving the value, location and details of all such assets.

(2) For the purposes of sub-paragraphs (1) and (3), value, location, and details of the following asset classes shall mean:

a) A bank account: the name(s) in which the account is held, the number of the account (including sort code), the branch of the bank at which the account is held and the balance.
b) Real property: the address and estimated value of the property.

c) Personal property: the nature and estimated value of the property, and the address or location at which it is to be found.

d) Shares in a company: the name and jurisdiction of incorporation of the company and the number and type of shares held. Further, if the company is trading, the nature of the company's business and the approximate value of its shares. If the company is non-trading, and holds one or more assets with a value of more than £25,000/£10,000, the value, location and details of such asset(s).

e) Shares at the top of a corporate chain ("**TopCo**") holding (whether directly or indirectly) a trading company or a non-trading company holding an asset with a value of more than £25,000/£10,000: the information referred to in (d) together with the structure by which the trading company or asset is held and the estimated value of the shares in TopCo.

f) An interest in a trust, foundation or similar entity: the name of the trust, the names and addresses of the trustees, the nature of the interest and the nature, estimated value and location of trust assets worth in excess of £25,000/£10,000.

g) Encumbered property: the fact that property is encumbered, the nature of the encumbrance and the effect of the encumbrance on the value of the property.

(3) Unless paragraph (4) applies, the Respondent must by 4pm London time on the 7th day after service of this Order, and to the best of his ability having made all reasonable enquiries, inform the Applicant's solicitors in writing of the following information in relation to the US$500 million paid into the account maintained by BSGR with JP Morgan Chase, London (Account ID GB76 CHAS 6092 4240) (the "**Account**") by the Third Claimant on 30 April 2010 (the "**Monies**")

  a. the date(s) on which the Monies or any part of them left the Account, where the Monies or any part of them were transferred to, and for what purpose (the "**Initial Transfers**");

  b. the current value, location and details of all assets that represent the traceable proceeds of the Monies (the "**Final Destination**s");

  c. details of all intermediate transfers of the traceable proceeds of the Monies between the Initial Transfers and the Final Destinations; and

7

    d. (without limitation to (a)-(c) above) the following Respondents must give the current value, location and details of all assets that represent the traceable proceeds of the following:

        i. Second Respondent: the US$10 million bonus promised to the Second Respondent in around April 2010 (of which at least US$3 million was paid to the Second Respondent or for his benefit in about late June 2010 / early July 2010).

        ii. Third Respondent: the US$3 million bonus promised to the Third Respondent in around April 2010 (of which at least US$2 million was paid to the Third Respondent or for his benefit in about late June 2010 / early July 2010).

        iii. Fourth Respondent: the US$3.75 million bonus promised to the Fourth Respondent in around April 2010 (of which at least US$2.5 million was paid to the Fourth Respondent or for his benefit in about late June 2010 / early July 2010).

        iv. Fifth Respondent: the US$1.2 million bonus promised to the Fifth Respondent in around April 2010 (of which at least US$800,000 was paid to the Fifth Respondent or for his benefit in about late June 2010 / early July 2010).

        v. Sixth Respondent: the US$250,000 bonus promised to the Sixth Respondent in around April 2010 (of which at least US$180,000 was paid to the Sixth Respondent or for his benefit in about late June 2010 / early July 2010).

    e. Provided that no Respondent is required by this sub-paragraph (3) to provide information about assets or transfers which have a value of less than £10,000.

(4) If the provision of any of this information is likely to incriminate the Respondent in any jurisdiction, he may be entitled to refuse to provide it, but is recommended to take legal advice before refusing to provide the information. Wrongful refusal to provide the information is contempt of Court and may render the Respondent liable to be imprisoned, fined or have his assets seized.

12. By 4pm on the 14th day after service of this Order, the Respondent must swear and serve on the Applicant's solicitors an affidavit confirming (and if necessary, updating) the information to be provided pursuant to paragraph 11 above.

**EXCEPTIONS TO THIS ORDER**

13.

(1) This Order does not prohibit: (i) the First Respondent from spending £25,000; and (ii) the Second, Third, Fourth, Fifth, and Sixth Respondents from each spending £10,000 a week towards each of their ordinary living expenses and does not prohibit any Respondent from spending a reasonable sum on his legal advice and representation in these or any other proceedings (anywhere). Further, this Order does not prevent the Eighth Respondent from paying a reasonable sum towards the reasonably incurred fees and expenses of the joint administrators in connection with BSGR's administration in Guernsey (provided that this shall be without prejudice to the Applicant's ability to apply for variation of this order on the return date). But before spending any money, the Respondent must tell the Applicant's legal representatives where the money is to come from.

(2) This Order does not prohibit the Respondent from dealing with or disposing of any of his assets in the ordinary or proper course of business, but the Respondent must give the Applicant's solicitors 2 clear working days' notice of his intention of so doing in respect of any transactions exceeding £25,000 in value.

(3) The Respondent may agree with the Applicant's legal representatives that the above spending limits should be increased or that this Order should be varied in any other respect, but any agreement must be in writing.

(4) The Order will cease to have effect if the Respondent –

  a) provides security by paying the sum of US$1.85 billion into Court, to be held to the order of the Court; or
  b) makes provision for security in that sum by another method agreed with the Applicant's legal representatives.

000234

**COSTS**

14. The costs of this application are reserved to the Judge hearing the application on the return date.

**VARIATION OR DISCHARGE OF THIS ORDER**

15. Anyone served with or notified of this Order may apply to the Court at any time to vary or discharge this Order (or so much of it as affects that person), but they must first inform the Applicant's solicitors. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's solicitors in advance.

**INTERPRETATION OF THIS ORDER**

16. A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or his instructions or with his encouragement.

17. A Respondent which is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

18. A working day shall mean a weekday that is not a bank holiday in England and Wales.

**PARTIES OTHER THAN THE APPLICANT AND RESPONDENT**

**19. Effect of this Order**

It is a contempt of Court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned, fined, or have their assets seized.

**20. Set off by banks**

This injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the Respondent before it was notified of this Order.

**21. Withdrawals by the Respondent**

No bank need enquire as to the application or proposed application of any money withdrawn by the Respondent if the withdrawal appears to be permitted by this Order.

**22. Persons outside England and Wales**

(1) Except as provided in paragraph (2) below, the terms of this Order do not affect or concern anyone outside the jurisdiction of this Court.

(2) The terms of this Order will affect the following persons in a country or state outside the jurisdiction of this Court –

   a) The Respondent or its officer or his agent appointed by power of attorney;
   b) Any person who –
      i. Is subject to the jurisdiction of this Court;
      ii. Has been given written notice of this Order at his residence or place of business within the jurisdiction of this Court; and
      iii. Is able to prevent acts or omissions outside the jurisdiction of this Court which constitute or assist in a breach of the terms of this Order; and
   c) Any other person, only to the extent that this Order is declared enforceable by or is enforced by a Court in that country or state.

**23. Assets located outside England and Wales**

Nothing in this Order shall, in respect of assets located outside England and Wales, prevent any third party from complying with –

11

(1) what it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the country or state in which those assets are situated or under the proper law of any contract between itself and the Respondent; and

(2) any orders of the Courts of that country or state, provided that reasonable notice of any application for such an order is given to the Applicant's solicitors.

**COMMUNICATIONS WITH THE COURT**

All communications to the Court about this Order should be sent to the Admiralty and Commercial Court Listing Office, 7 Rolls Building, Fetter Lane, EC4A 1NL, quoting the case number. The telephone number is 02079476826

The offices are open between 10 a.m. and 4.30 p.m. Monday to Friday.

**SCHEDULE A – AFFIDAVITS**

The Applicant relied on the following affidavits –

(1) The First Affidavit of James Brady dated 22 November 2019.
(2) The First Affidavit of George Kleinfeld dated 28 November 2019.

**SCHEDULE B – UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT**

(1) If the Court later finds that this Order has caused loss to the Respondent or any third party, and decides that the Respondent or third party should be compensated for that loss, the Applicant will comply with any order the Court may make. For the avoidance of doubt, this undertaking covers a purported beneficiary of any trust, foundation or similar entity whose assets are frozen by this Order in the event that this Order is subsequently varied or discharged in respect of such assets.

(2) The Applicant will –

a) On or before 10 days from the date of this Order cause a written guarantee in the sum of $20 million to be issued from a bank with a place of business within England or Wales, in respect of any order the Court may make pursuant to paragraph (1) above and paragraph (7) below; and

    b) Immediately upon issue of the guarantee, cause a copy of it to be served on the Respondent.

(3) As soon as practicable after service of this Order, the Applicant will issue and serve on the Respondents a claim form substantially in the form of the draft produced to the Court.

(4) The Applicant will serve upon the Respondent as soon as practicable after service of this Order –

    a) Copies of the affidavits and exhibits containing the evidence relied upon by the Applicant, and any other documents provided to the Court on the making of the application.  The exhibits may be served in electronic format on USBs with instructions for requesting hard copies from the Claimants' solicitors should the Respondent require the same;

    b) A transcript of the hearing at which this Order was made; and

    c) An application for continuation of the Order.

(5) The Applicant undertakes that it will effect service of this Order in accordance with the Court's directions as soon as reasonably practicable.

(6) Anyone notified of this Order will be given a copy of it by the Applicant's legal representatives.

(7) The Applicant will pay the reasonable costs of anyone other than the Respondent which have been incurred as a result of this Order including the costs of finding out whether that person holds any of the Respondent's assets and if the Court later finds that this Order has caused such person loss, and decides that such person should be compensated for that loss, the Applicant will comply with any order the Court may make.

(8) If this Order ceases to have effect (for example, if the Respondent provides security), the Applicant will immediately take all reasonable steps to inform in writing anyone to whom he has given notice of this Order, that it has ceased to have effect.

000238

(9) The Applicant will not without the permission of the Court use any information obtained as a result of this Order for the purpose of any civil or criminal proceedings, either in England and Wales or in any other jurisdiction, other than this claim.

(10) The Applicant will not without the permission of the Court seek to enforce this Order in any country outside England and Wales or seek an order of a similar nature including orders conferring a charge or other security against the Respondent or the Respondent's assets.

**NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES**

The Applicant's legal representatives are –
Cleary Gottlieb Steen & Hamilton LLP
2 London Wall Place
London EC2Y 5AU, England
T: +44 20 7614 2364 | F: +44 20 7600 1698
jbrady@cgsh.com