# Exhibit 18

**IN THE MATTER OF AN ARBITRATION UNDER THE LCIA RULES**

**(LCIA CASE NO. 142683)**

**BETWEEN**

**VALE SA ("Vale") AND BSG RESOURCES LIMITED ("BSGR")**

---

**RESPONDENT'S REQUEST TO PRODUCE**

**29 JULY 2015**

---

This Request to Produce is made pursuant to Paragraph 12(b) of Procedural Order No 2, and the Tribunal's determination that it will use the IBA Rules on the Taking of Evidence in International Arbitration 2010 (the "**IBA Rules**") as guidelines.  This Request to Produce is made in accordance with Article 3 of the IBA Rules.

References to "*document*" in this Request to Produce have the same meaning as in the definition of "*Document*" in the preamble to the IBA Rules and therefore means a writing, communication, picture, drawing, programme or data of any kind, whether recorded or maintained on paper or by electronic, audio, visual or any other means, and therefore includes (but is not limited to) memoranda, communications, emails, minutes of meetings, presentations, attendance notes, reports, economic workings, calculations and agreements.

BSGR confirms that, as far as it is aware, the documents requested are not in its possession, custody or control.  BSGR assumes that the documents requested are in Vale's possession, custody or control because they will have been created or received in the ordinary course of its business and/or because Vale's submissions suggest that Vale may have possession, custody or control of such documents.

For the avoidance of any doubt, where BSGR has requested documents relevant to assertions made by Vale in its submissions, no admission is made as to the relevance or accuracy of those assertions.

**Definitions:**

- **BSGR Guernsey**      BSG Resources (Guinea) Limited

- **BSGR Guinea**      BSG Resources (Guinea) Sàrl

- **CPDM**      Guinean Centre for Mining Promotion and Development

- **Framework Agreement**      Joint Venture Framework Agreement between Vale and BSGR dated 30 April 2010

- **Shareholders' Agreement**      Shareholders' Agreement between Vale, BSGR and BSGR Guernsey dated 30 April 2010

- **SoC**      Statement of Case in these LCIA proceedings between Vale and BSGR

- **SoD**      Statement of Defence in these LCIA proceedings between Vale and BSGR

- **Technical Committee**      Technical Committee for the Review of Mining Titles and Agreements

- **VBG Guernsey**      VBG Vale-BSGR Guernsey Limited

- **VBG Guinea**      VBG Vale-BSGR Guinea Sàrl

- **RICO Proceedings**      Proceedings in the United States District Court of the Southern District of New York brought by Rio Tinto against *inter alia* Vale under the Racketeer Influence and Corrupt Organisations Act

**VALE'S GENERAL OBJECTIONS DATED 26 AUGUST 2015**
**PURSUANT TO PARAGRAPH 12(b) OF PROCEDURAL ORDER NO. 2, AS AMENDED**

Besides the specific responses and objections to BSGR's Requests to Produce Documents in the following Redfern Schedule, there are general objections that apply to almost all of BSGR's Requests that are best addressed at the outset.  Where applicable, these objections are incorporated by reference in the following Redfern Schedule alongside Vale's specific responses and objections.  Vale's general objections are as follows:

1.    **The Requests are overbroad and non-specific.**  BSGR's Requests are classic English or U.S.-style discovery demands that are inappropriate in an international arbitration.  Indeed, even in a U.S. civil lawsuit, which this arbitration most certainly is not, many of BSGR's Requests would be excessive.  BSGR's Requests are almost all overbroad and unspecific, incorporating expansive formulations:  for example, BSGR seeks "all documents" in 90 separate instances and also repeatedly fails to specify any timeframes (let alone a reasonably specific and limited timeframe).  The Requests are overbroad on their face and are not the kind of focused requests for specific documents or narrowly-defined categories of documents permitted by international arbitration norms or contemplated by the IBA Rules, which, pursuant to paragraph 12 of Procedural Order No. 2, govern the Requests to Produce in this Proceeding.  The IBA Rules are designed to prevent the type of broad "fishing expedition" that BSGR has engaged in here.[1]  For example, IBA Rule 3(3)(a) requires that a request should contain a description of each requested document sufficient to identify it or should describe a "narrow and specific" category of documents in sufficient detail.  BSGR's Requests almost uniformly fail to satisfy this standard.

2.    **The Requests are neither relevant to the case nor material to its outcome.**  Most of BSGR's Requests do not properly relate to any claim, counterclaim, defence or other point at issue in this arbitration but are an apparent attempt to confuse the relevant issues or obtain information for use outside of this proceeding.  For example, BSGR asserts, as the purported reason for its Requests regarding the extent to which Vale "relied on statements made by or on behalf of BSGR" in deciding to enter into the joint venture, that "even if any of its representations were false (which is denied), Vale would still have entered into the joint venture had the misrepresentation(s) not been made."[2]  In other words, BSGR now claims that Vale was indifferent to the truth of BSGR's answers to Vale's extensive due diligence and that Vale would have invested even if it had known that it was being lied to and exposing itself and its officers to inevitable criminal and other sanctions under FCPA and related law or regulation.  On that rationale, and putting to one side for these purposes the extraordinary case that BSGR now advances,[3] BSGR seeks documents – potentially numbering in the tens of thousands – related to Vale's due diligence conducted in connection with the joint venture agreement with

---

[1]      Commentary on the revised text of the 2010 IBA Rules on the Taking of Evidence in International Arbitration ("IBA Commentary"), p. 8.

[2]      *See* Respondent's Request to Produce, 29 July 2015, Request 1.

[3]      SoD ¶ 251 (alleging that "even if the representations were shown to be false, which is denied . . . it is apparent that Vale would have gone ahead with the joint venture anyway").

BSGR, as well as Vale's internal consideration of that transaction.  But that rationale is defective, and cannot begin to justify the sweeping discovery that BSGR seeks to base upon it; as a matter of English law, the quality of Vale's due diligence is not at issue in this proceeding and is irrelevant to its claims for breach of warranty or fraud, nor is Vale's "strategy and motivation" for entering into its joint venture with BSGR.[4]

The entire point of a warranty in a contract is to relieve the party for whose benefit it is given of the need to investigate the warranted fact, by turning it into a binding contractual commitment by its counterparty.  Similarly, in the case of fraud, whether a party induced to enter into a transaction on the basis of a fraudulent misrepresentation exercised care or was negligent in acting on that representation is legally irrelevant.[5]  Finally, under black-letter English law, when there is a misrepresentation of material fact, which BSGR's representations that it did not engage in bribery or other corrupt actions certainly were, reliance is "*presumed.*"[6]  It is open to the fraudster to try to rebut that presumption, but the theoretical possibility of its doing so cannot justify the sweeping discovery about Vale's "strategy and motivation" that BSGR seeks.  Still less can it justify an inquiry into Vale's "due diligence"; as a New York Stock Exchange listed corporation, Vale was legally obligated to comply with the U.S. Foreign Corrupt Practices Act (FCPA), which included conducting diligence regarding its prospective transaction with BSGR (a fact that is not in dispute), but how well it did so has no bearing on an English law fraud or breach of warranty claim.  In any event, there can be no question of knowledge on the part of Vale being relevant here.  BSGR itself has not only denied any improper activity for its part but, in the RICO case being brought by Rio Tinto, BSGR has also denied any such activity or knowledge thereof on both its own and Vale's part.  BSGR cannot now say that Vale had knowledge of something that BSGR says never happened, still less that it needs disclosure of documents relating to Vale's non-existent knowledge.

The way in which BSGR has addressed the bulk of its disclosure Requests to legally irrelevant issues is perhaps most graphically illustrated by the fact that it overtly bases many of its Requests on citations to the Amended Complaint in the civil RICO lawsuit in the United States brought by Rio Tinto against both Vale and BSGR, in which Rio Tinto claims (without any basis) that Vale and BSGR conspired to "steal" Rio Tinto's concession for their joint benefit.  *Both* Vale *and* BSGR deny that allegation, and the claims and allegations that Rio Tinto has made around it are irrelevant to the present arbitration, to the extent that they involve matters other than BSGR's conduct.  In particular, BSGR, quite understandably, has *not* alleged in the present arbitration that it conspired with Vale against Rio Tinto, or that Vale was complicit in BSGR's bribery and corruption, the existence of which BSGR vehemently denies.  The fact that BSGR nonetheless indiscriminately utilizes Rio Tinto's Amended Complaint in the RICO case as a basis for its disclosure Requests in this arbitration highlights that BSGR's Requests are a "fishing expedition," whether for this case or the RICO case, and

---

[4]      Respondent's Request 16.

[5]      *See Clerk and Lindsell on Torts*, 20th ed. (2010), Chapter 18 (Deceit) ¶¶ 18-49, 18-37 ("[I]t is no answer to an action for deceit that the claimant might have discovered the falsity by the exercise of ordinary care: it does not lie in the mouth of a liar to argue that the claimant was foolish to take him at his word.") (Ex. CL-6).

[6]      *See Chitty on Contracts* ¶ 6-039 (Ex. CL-5).

are not a serious attempt to pursue focused discovery in accordance with the IBA Rules.  (*See also* General Objection 5).

3. **The Requests are for documents related to BSGR's unpleaded potential counterclaims.**  Many of BSGR's requests are addressed to claims not actually brought in this proceeding, but rather to unpleaded potential counterclaims that BSGR has not asserted.  BSGR should not be allowed to exploit document production in this arbitration to fish for potential claims in the hope that something may turn up that will support an unasserted claim or to obtain information about Vale generally, for potential future use.

4. **The Requests impose an unreasonable burden on Vale.**  The IBA Rules provide for carefully tailored requests for limited production of identifiable documents which are reasonably believed to exist.[7]  The IBA Rules do not permit a "fishing expedition" for all documents "relevant" to a broadly expressed issue.[8]  Under IBA Rules Art. 3(3)(a)(ii), document requests must therefore be for "narrow and specific" categories of documents, so that the search and discovery obligations placed upon the opposing party are proportionate and do not impose an unreasonable burden.[9]  *See also* IBA Rules Art. 9(2)(c), (g).  Almost all of BSGR's Requests ignore this requirement.  If Vale had to search for all of the documents requested, the resulting burden would be unreasonable, disproportionate and unfair, and in fact could not be completed in the time allotted for document production in this proceeding (which indeed may account in part for the approach taken by BSGR).

5. **Many of the Requests are for documents produced in the RICO Proceedings.**  There has already been voluminous document production in the RICO Proceedings – which, unlike the present arbitration, are taking place under broad U.S. discovery rules.  While many of the documents produced in the RICO Proceedings are subject to confidentiality restrictions prohibiting their use in the arbitration, the parties have had the unique opportunity to review each other's productions to identify specific documents that each would like to use in the arbitration.  Accordingly, in its own Redfern Schedule, Vale has requested certain documents produced in the RICO Proceedings, and did so through narrow and specific requests for documents in BSGR's possession, so as to comply with the procedural rules applicable in this arbitration.  In sharp contrast, BSGR's Requests for documents produced in the RICO Proceedings are overbroad and non-specific, copied, sometimes nearly *verbatim*, from Rio Tinto's document requests in the RICO Proceedings, which were in many instances ruled by the U.S. court to be too broad even under the expansive U.S. rules, or limited by agreement of the parties because of such overbreadth.  Such a "fishing expedition" is not only the antithesis of the "narrow and specific" category of documents required by IBA Rules Art. 3(3)(a)(ii), but also is inexplicable given that BSGR was uniquely able to identify, as Vale did, specific documents relevant to the arbitration based on the document productions already made in the RICO Proceedings, but failed to do so.

---

[7]        IBA Commentary, p. 7.
[8]        IBA Commentary, p. 8.
[9]        IBA Rules Art. 9(2)(c), 9(2)(g).

6. **BSGR has made no attempt to narrow its Requests to take account of the materials already in its possession or otherwise publicly available.**  BSGR's statement in the Introduction to their Requests that the documents sought are not in their "possession, custody or control" (pursuant to IBA Rules Art. 3(3)(c)(i)) is demonstrably false, given that many of the Requests seek documents created by or exchanged with BSGR or one of its affiliated corporate entities, which are by definition in BSGR's "possession, custody, or control."  In particular, many of BSGR's Requests seek documents created or exchanged by VBG Guinea and/or VBG Guernsey, ignoring the fact that the Shareholders' Agreement – which governed the relationship between BSGR, Vale, and the joint venture – is express that BSGR would be provided with all board materials, copies of annual accounts or equivalent documents, quarterly updates on the progress of the Feasibility Study, and "*all such materials as BSGR . . . may reasonably request*" (Exhibit C-2, Shareholders' Agreement, Section 6.1), and that accordingly these documents are in BSGR's "possession, custody, or control."  It is obviously not permissible under the IBA Rules for a party to demand that its adversary collect, review, and reproduce documents to which the requesting party already has access.  BSGR's demands that Vale do this are improper on their face, and are unreasonably burdensome.  *See* IBA Rules Art. 9(2)(c).

7. **The Requests call for production of privileged documents.**  Vale objects to each Request to Produce Documents to the extent that it purports to request documents reflecting legally privileged communications with legal counsel, including drafts of documents that were prepared with the assistance of legal counsel, as such documents are protected by legal privilege.  *See* IBA Rules Art. 9(2)(b).  Vale has not waived legal privilege – unlike BSGR, which has expressly referred in its SoD to legal advice it received from various sets of lawyers (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52) – and has no intention of doing so.  To the extent BSGR's Requests would encompass privileged documents, Vale will not produce such documents.

## *BSGR's replies to Vale's responses and objections*

*BSGR does not propose to respond to each and every point made by Vale in its general objections.  As the Tribunal will note from the Redfern Schedule below, many of the points made by Vale in its General Objections arise in the context of specific requests, and in many cases, BSGR responds to those objections in the appropriate column of the table which follows.  BSGR anticipates that the Tribunal will find it easier to review and determine the various requests without having constantly having to refer back to the opening pages of this Request to Produce. That said, BSGR makes some general comments at this stage by way of introduction.*

1. **Vale's agreement to produce certain documents has been caveated in such a way as to render that agreement virtually meaningless.**

*Vale's so called General Objections cover the usual range of arguments one would expect to see in arbitration where the Tribunal is asked to apply the IBA Rules.  In other words, Vale objects to various of BSGR's requests on grounds of specificity, relevance, scope and privilege.  BSGR does not take issue with that approach per se, but in respect of no fewer than 27 requests, Vale agrees to produce "reasonably responsive, non-privileged documents", whatever that may mean, "subject to its General Objections".  In other words, Vale appears to have agreed to provide responsive documents, but subject always to its objections on grounds of specificity, relevance, scope and privilege.*

*In other words, Vale apparently reserves the right to limit production on the basis that it believes that the requested documents should not in fact be produced.  The logic of Vale's position, such as there is any identifiable logic, is entirely circular. As currently formulated, even Vale's positive responses to BSGR's requests are opaque and difficult to follow.  Vale should provide the documents that it has agreed to provide without the broad and unjustifiable conditions by which it seeks to reserve to itself a final decision as to whether to produce or not. For that reason, in each instance where Vale has agreed to provide the documents, BSGR maintains that the form of order should be as sought by BSGR and not the caveated-version that Vale proffers. Should it transpire that Vale's production is compromised in the manner outlined in this paragraph, BSGR reserves the right to seek further orders for document production from the Tribunal.*

2. **Vale has on several occasions reformulated BSGR's requests in a manner that changes the nature of the request**

*In other instances, set out in more detail below, Vale appears to have agreed to the production of responsive documents, but has done so in such a way as to change the nature of the request, and in some instances, change a specific focussed request into one that is sufficiently vague that it would be almost impossible to measure compliance.*

*For example, in response to Request no 19, in which BSGR seeks the production of documents prepared by Ernst & Young, Nardello & Co and similar reports prepared by third parties in the course of Vale's due diligence investigations, Vale responds by agreeing to produce "reasonably responsive, non-privileged documents relating to its due diligence of BSGR between February and April 2010 subject to its General Objections, and to the extent such documents exist".  The same, or virtually the same, form of words is used by way of response to Request nos 18 and 20, which relate to different documents.  Putting aside the fact for a moment that neither Ernst & Young nor Nardello were the providers of legal advice, and so no legal advice*

*privilege can be said to have arisen, much less litigation privilege, Vale has once again agreed to produce various documents, but in response to a different, self-serving and entirely unspecified parameters, as opposed to the specific requests made by BSGR. In relation to those, BSGR requests that Vale produce the documents in accordance with the wording put forward by BSGR, and not in a different form which does not answer the request.  Should Vale's production be deficient, BSGR reserves the right to make an appropriate application.*

### 3.    Vale has objected indiscriminately to requests on grounds of relevance and on grounds that requests are unduly burdensome

*Vale appears, almost instinctively, to object to a substantial proportion of BSGR's requests on the basis that they are "irrelevant to this proceeding and not material to its outcome".  It is to be borne in mind that each and every one of BSGR's requests relates back to a matter put in issue in Vale's <u>own</u> submissions and/or witness statements.*

*For example, Request no 22 relates to documents arising from Vale's joint visit to Conakry some two weeks before the Framework Agreement was signed. That visit is referred to at paragraph 28 of Mr Etchart's witness statement.  Self-evidently, information acquired by Vale prior to entering into the Framework Agreement goes directly to the extent to which it relied on statements made by or on behalf of BSGR (and so referable to the claim in fraudulent misrepresentation).  Similarly, the same information goes directly to the extent to which BSGR can be said to have caused the loss allegedly suffered by Vale.  Those documents, in the period February to April 2010, are plainly relevant and, BSGR submits, must be produced.*

*On a related theme, Vale is too quick to object to requests on grounds that they are unduly burdensome, or to use Vale's preferred terminology "non-specific, vastly overbroad and unduly burdensome" (a phrase used no fewer than 23 times by Vale in its objections).  In some cases, Vale is reduced to mere posturing.  Vale states in the pre-amble to its objections that BSGR's requests are "almost all overbroad and unspecific".  BSGR disagrees.  Vale also objects to BSGR's requests for "all documents" in relation to certain matters, as if BSGR should limit itself to certain categories of relevant documents but not others (not always knowing, of course, in what form information was stored by Vale).  It is for precisely that reason that the word "document" is so broadly defined in the IBA Rules. As the outset of this document makes clear, the reference to "documents" means as defined in the IBA Rules and there can be no sensible objection to using that definition.*

*In response to Request no 27 – a request relating to a specific category of documents – Vale claims that the request is unduly burdensome, which would "conceivably require the review of thousands of documents spanning dozens of individuals over an undefined time period".  A few lines below, one learns that Vale appears to have agreed to provide the requested documents, although as ever and as explained above, Vale's agreement is heavily caveated and unclear as to its true intentions.  Either a request is unduly burdensome, and so cannot sensibly be satisfied, or it is not; Vale's ostensible agreement to*

*provide the requested documents makes it quite clear that the objection made has no validity. This is the case for many of the requests (and in the few instances where the objection has any substance, BSGR has reviewed the relevant request and agreed to narrow it).*

**4.    Vale misunderstands the position as regards documents generated by VBG Guernsey and/or VBG Guinea; those documents are not in the possession, custody or control of BSGR**

*Several of BSGR's requests in relation to the period following the parties' entry into the Framework Agreement and the Shareholders' Agreement seek the production of documents held or generated by Vale and/or VBG Guernsey and/or VBG Guinea. Vale objects to those requests on the basis that, in light of BSGR's repurchase of the shares in VBG Guernsey previously held by Vale, those documents are now in the possession, custody or control of BSGR. Vale's objection is misconceived.*

*True it is that BSGR now owns all of the shares in VBG Guernsey/BSGR Guernsey, but Vale fails to appreciate two essential points. Firstly, BSGR was not privy to the day to day management of VBG Guernsey and VBG Guinea during the life of the joint venture, and so does not hold all relevant documents generated in the period between the parties' entry into the Framework Agreement on 30 April 2010 and BSGR's repurchase of the shares on 13 March 2015. Secondly, BSGR has not simply inherited perfectly kept records from the five year period in which it relinquished management responsibility for the joint venture. Some of those records, whether in electronic or paper form, are inaccessible to BSGR, not least because of the relationship which currently exists between BSGR and the Government of Guinea (and indeed between Vale itself and BSGR). Given that BSGR only has access to some, but not all, of the documents generated by VBG Guernsey and VBG Guinea, the only way in which to ensure that the record is complete, is for Vale to provide those responsive documents which it holds. BSGR respectfully requests that the Tribunal bear that in mind when arriving at its determination on the document requests.*

**5.    BSGR rejects Vale's assertion that its state of knowledge on entering into the Framework Agreement and the Shareholders' Agreement is irrelevant**

*Vale objects to many of BSGR's requests in relation to the period prior to 30 April 2010 on the basis that "there can be no question of knowledge on the part of Vale being relevant here". BSGR does not propose, in this request to produce, to engage in detailed legal argument. There is ample opportunity in the written submissions and at the forthcoming hearing to make submissions of that nature. However, given the way in which Vale has dealt with this issue, BSGR makes a few very short points (and will happily defend those points at the appropriate time by reference to legal authority).*

*Vale's primary claim in this arbitration is framed in terms of fraudulent misrepresentation. It is trite law that in any claim in misrepresentation, the reliance placed by the claimant on the alleged misstatements of the respondent and the extent to which those alleged misstatements induced the claimant to enter*

*into the underlying contract will always be relevant.  Vale also advances a breach of warranty claim.  The Framework Agreement is the same as any other; not only must a warranty be understood in the context on what was known, or should have been known, by the party seeking to rely on that warranty, but the claimant's state of knowledge will also inevitably impact on the extent to which the respondent's actions can be said to have caused the alleged loss. To dismiss as irrelevant, as Vale seeks to do, knowledge acquired by it in advance of entering into the Framework Agreement is absurd.*

*In light of the foregoing, BSGR's detailed replies to Vale's responses and objections are set out below.*

| No | Documents or Category of Documents Requested | Relevance and Materiality According to Requesting Party | | Responses/ Objections to Document Requests | Replies to Objections to Document Requests | Tribunal's Decisions |
| | | Reference to Pleadings, Exhibits, Witness Statements or Expert Reports | Comments | | | |
| --- | --- | --- | --- | --- | --- | --- |
| 1. | All shareholder presentations, minutes of shareholder meetings, board papers, board packs and minutes of board meetings of Vale and relevant subsidiary companies, created in or after January 2006 containing references to any of the following:<br><br>(a) Vale's strategy generally in relation to investment in Guinea;<br><br>(b) iron ore and/or bauxite deposits in Guinea; | SoC, paras 47-102, 108-109, 116, 130-134, and 242-265<br><br>SoD, paras 16-20, 95-108, 118-123, 138-189 | Documents prepared for, and decisions taken by, Vale's shareholders and directors will evidence its reasons for wishing to invest in Guinea generally (which BSGR has put in issue at paras 7, 95 and 251 of the SoD) and the attitude taken towards the investment in BSGR Guernsey (which BSGR has put in issue at paras 16-20, 174-189 and 251 of the SoD).<br><br>As regards requests (a) to (e), Vale is, in its SoC, silent on why it was interested in a joint venture with BSGR.  It is BSGR's case that Vale was extremely keen to invest in BSGR Guernsey because Vale saw having an interest in the region as a key strategic objective (SoD paras 7 | Vale objects to this Request as non-specific, overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request seeking broad categories of documents would conceivably require the review of thousands of documents spanning dozens of individuals over a 9-year time period, regardless of whether those documents related to Simandou, BSGR, or the Joint Venture.  It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and | BSGR denies that this request is lacking in specificity, excessively broad or unduly burdensome.  BSGR seeks documents arising from board/shareholder meetings, and in relation only to the key issues arising in this arbitration.  This request would not, as suggested by Vale, necessitate the review of "*thousands of documents spanning dozens of individuals*".<br><br>Self-evidently, decisions taken at the meetings of Vale's board and shareholders are of critical relevance in this arbitration. | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed "to produce reasonably responsive, non-privileged documents, related to (i) any contacts between Vale and representatives of BSGR between August 2006 and |

| | | | | |
|---|---|---|---|---|
| (c) potential exploitation of those deposits;<br><br>(d) contacts between representatives of Vale and representatives of BSGR;<br><br>(e) the decision to enter into a joint venture with BSGR;<br><br>(f) due diligence carried out in advance of entering into the Framework Agreement and the Shareholders' Agreement;<br><br>(g) management and control of the joint venture;<br><br>(h) proceedings of the Technical Committee;<br><br>(i) the withdrawal of rights belonging to BSGR or BSGR Guernsey or BSGR Guinea;<br><br>(j) the Liberian Transport Solution; and<br><br>(k) the tender process or any other procedure whereby the Government of Guinea | | and 95).<br><br>BSGR alleges that, even if any of its representations were false (which is denied), Vale would still have entered into the joint venture had the misrepresentation(s) not been made (SoD, para 251). The documents sought will evidence the commercial reasoning behind Vale's decision to invest in BSGR Guernsey, and the extent to which it relied on statements made by or on behalf of BSGR.<br><br>Request (f) is relevant to Vale's knowledge upon entering into the Framework Agreement and the Shareholders' Agreement which is in issue by virtue of SoC, paras 60(h) and 62 and SoD, para 237. Further, Vale's case is that it carried out "*especially rigorous*" due diligence in respect of the deal (SoC, para 55), whereas BSGR's case is that the due diligence was no more rigorous than normal for this type of deal (SoD, paras 8 and 104-108). Documents falling within request (f) are relevant to this issue.<br><br>As regards requests (g) to (k), it is Vale's case that it proceeded with the project in a diligent and timely fashion (SoC paras 99-129). BSGR's case is that, in breach of contract, Vale facilitated the expropriation of rights belonging to BSGR or BSGR Guernsey or BSGR Guinea because, by this time, it sought an exit from the joint venture (SoD, paras 174- | would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a). Rather, it is a "fishing expedition" undertaken in the speculative hope that something may turn up to support BSGR's unfounded counterclaims.<br><br>Vale also objects as to parts (a), (e), (f) and (k), as well as to parts (b) and (c) to the extent they relate to bauxite deposits, because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.<br><br>As to parts (a) and (e), Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or "extremely keen," is irrelevant to Vale's claims or BSGR's counterclaims and provides no plausible basis for BSGR's Request. BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it | Contrary to the impression given by Vale in its response, BSGR is entitled to see documents evidencing the commercial reasoning behind Vale's investment in Simandou, and Guinea more generally, for at least the following reasons.<br><br>Firstly, in respect of Vale's claim in fraudulent misrepresentation, Vale must show that it relied on the alleged misrepresentation; insofar as Vale would have invested in Guinea in any event, including to the extent it knew (or should have known) of the risks that it was undertaking by investing in Guinea, Vale cannot make good a claim in misrepresentation, much less fraudulent misrepresentation.<br><br>Secondly, in respect of Vale's claim for breach of warranty, Vale must demonstrate that the alleged breach caused Vale to suffer the losses now claimed. As above, if Vale would have made the investment in any event, Vale cannot make good its claim.<br><br>As regards Vale's submissions on the due diligence exercise, it is BSGR's position that it cannot be liable in respect of matters that Vale became | February 2010, (ii) Vale's due diligence of BSGR between February 2010 and 30 April 2010, (iii) the proceedings of the Technical Committee between 30 October 2012 and 2 April 2014, and (iv) the withdrawal of rights belonging to BSGR or BSGR Guernsey or BSGR Guinea in April 2014, subject to its General Objections, and to the extent such documents exist."<br><br>As for any remaining aspects concerning BSGR's Request, the Tribunal rules as follows: Requests 1(d)-(i) are **GRANTED**. Requests 1(a)-(c) and (j)-(k) are **DENIED** as overly broad. |

| | | | | |
|---|---|---|---|---|
| proposes to reallocate the rights previously held by BSGR or BSGR Guernsey or BSGR Guinea. | | 177). This facilitation had at least two limbs: the withdrawal from negotiations regarding the Liberian Transport Solution (SoD, paras 178-184) and the failure to contest the Technical Committee's investigation into BSGR's or BSGR Guernsey's or BSGR Guinea's rights (SoD, paras 185-189). Evidence of Vale's decision making in respect of both of these limbs is relevant to BSGR's counterclaim for failure to promote the best interests of the joint venture companies (SoD, paras 327-329(i) and 344-348).<br><br>These requests are therefore relevant and material to proving or disproving the parties' positions in their respective memorials. | would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed. Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request. BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions."<br><br>The *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. *See* General Objection 2.<br><br>As to part (f), as set forth in General Objection 2, Vale's | aware of, or should have become aware of, as a result of that due diligence exercise. BSGR denies Vale's suggestion that the due diligence – a subject covered in details in both parties' respective memorials – is irrelevant as a matter of English law. Insofar as certain material facts, for example, the existence of Pentler's historic shareholding in BSGR Guinea BVI, were known or should have been known to Vale as a result of the due diligence exercise, Vale cannot now argue that those material facts were withheld by BSGR. On that basis, BSGR is entitled to all those documents evidencing that due diligence exercise.<br><br>Vale's suggestion that the documents relating to its due diligence are irrelevant is belied by the fact that it pleads at length to the content of that due diligence process (including its own research and involvement of external advisors) and relies on that process in asserting what it did and did not know. Having put that so centrally in issue, BSGR is entitled to see the documents that stand behind the due diligence process to examine them for itself as to what Vale did and did not | |

| | | | | due diligence is irrelevant as a matter of the applicable English *lex causae*, and it was necessary for Vale as a public company and a U.S. issuer to obtain BSGR's representations before entering into the joint venture.  (SoC ¶ 96). Documents related to the *quality* of Vale's diligence, or BSGR's response that Vale was "rigorous" but not "especially rigorous" (which smacks of taking issue for no purpose or benefit), therefore, have no bearing on Vale's claims or BSGR's counterclaims.

As to part (k), Vale objects to this Request, which is based on the false premise that a new tender for Simandou Blocks 1 and 2 and/or Zogota has occurred, and because any preparation for any future tender constitutes highly sensitive commercial information whose disclosure in advance of any such tender would create severe commercial prejudice to Vale. *See* IBA Rules Art. 9(2)(e). Further, and in any event, even accepting BSGR's unfounded position that evidence of Vale's decision-making in respect of its purported failure to contest the Technical | know.

In respect of Request no 1(k), it is BSGR's understanding that a tender process has been or will be conducted by the Government of Guinea (based on public reports of the same).  Moreover, Vale's objection on the grounds of commercial sensitivity is misconceived.  This arbitration is governed by duties of confidentiality, and no particular commercial sensitivity arises in this context.  Insofar as Vale relies on the date on which responsive documents were created, it matters not when documents were created. Documents evidencing Vale's failure to comply with its contractual duties, insofar as such documents exist, should be disclosed.

The Tribunal will note Vale's agreement to provide certain responsive documents, but without clear reference to the itemised categories in BSGR's request and caveated by its General Objections by which it apparently seeks unilateral veto over what should be searched for and disclosed. For the reasons stated above, BSGR seeks an order from the Tribunal that Vale produce all documents responsive to this | |

| | | | | Committee's investigation is relevant to BSGR's counterclaim for failure to promote the best interest of the joint venture (and the same document production would be required of BSGR in BSGR's case), documents pertaining to the Government of Guinea's tender process commenced *after* the Government of Guinea found that BSGR obtained the Mining Rights through corrupt practices that invalidated those rights are irrelevant to that claim. | request, in addition to those documents which Vale has voluntarily agreed to produce. | |
| | | | | **Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged documents, related to (i) any contacts between Vale and representatives of BSGR between August 2006 and February 2010, (ii) Vale's due diligence of BSGR between February 2010 and 30 April 2010, (iii) the proceedings of the Technical Committee between 30 October 2012 and 2 April 2014, and (iv) the withdrawal of rights belonging to BSGR or BSGR Guernsey or BSGR Guinea in April 2014,** | For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | |

| | | | | subject to its General Objections, and to the extent such documents exist. | | |
|---|---|---|---|---|---|---|
| 2. | In relation to discussions between Vale and Rio Tinto in 2008 and 2009 regarding a potential deal over Rio Tinto's Simandou rights:<br><br>(a) all documents recording the discussions at the meeting between Vale and Rio Tinto on 19 November 2008 (Amended RICO Complaint, para 59);<br><br>(b) all documents containing Vale's analysis of the meeting on 19 November 2008;<br><br>(c) all documents recording the discussions at the meeting between Vale and Rio Tinto on 24 November 2008 (Amended RICO Complaint, para 63);<br><br>(d) all documents containing Vale's | SoD, paras 251(ii) and 364 to 369<br><br>Amended Complaint in the RICO Proceedings, paras 53 to 83, 96 | BSGR is aware, although it did not know this at the time, that Vale had previously been in talks with Rio Tinto regarding a deal in relation to Rio Tinto's rights in Simandou. This was not disclosed to BSGR at the time that it and Vale were engaged in the negotiations which led to the entering into of the Framework Agreement and the Shareholders' Agreement.<br><br>The documents requested will evidence Vale's state of knowledge as regards the Simandou asset prior to entering into negotiations with BSGR.  This, in turn, is relevant to Vale's reliance on statements made by or on behalf of BSGR. BSGR's case is that Vale would have entered into the joint venture agreement in order to counter Rio Tinto's holdings in the Simandou region, regardless of any misrepresentations by BSGR (SoD, para 251(ii)).<br><br>In addition, Vale warranted at section 5.3 of Schedule 6 to the Framework Agreement that it had not taken any action, directly or indirectly, that had resulted in a violation of the FCPA or any similar laws.  Rio Tinto has alleged in the RICO Proceedings that Vale stole geological data in relation to Simandou and information on the rail | Vale objects to this Request because it is on its face irrelevant and not material to the outcome of this case:  it is not related to any claims actually brought in this proceeding, but seemingly only to Rio Tinto's U.S. claims or at best what BSGR itself expects to be an unpleaded *potential* counterclaim for breach of warranty that BSGR may wish to assert at some future date.  *See* General Objection 3.  Indeed, in connection with the RICO Proceedings, BSGR has explicitly *denied* that it "utilized and implemented Rio Tinto's Liberian railway and Didia port plans" that Rio Tinto allegedly provided to Vale during its negotiations and denied knowledge and information concerning Rio Tinto's allegations that Vale misappropriated this information in its Protective Answer to Rio Tinto's Complaint.  (*See  Rio Tinto PLC v. Vale, S.A., et. al*, Protective Answer, Dkt. No. 241) (Ex. C-223).  In short, this Request is a "fishing expedition" in the guise of disclosure and as such | BSGR denies that the documents requested are irrelevant and immaterial to the outcome of this arbitration.<br><br>Implicit in Vale's objection is an acceptance on the part of Vale that the documents requested are relevant to BSGR's potential counterclaim.  Having reserved its position in the SoD, BSGR is entitled to the production of documents which support that counterclaim.<br><br>Vale's objections framed on the basis of submissions made in the RICO proceedings are irrelevant for the purposes of this document production exercise.  In the context of these proceedings, BSGR seeks the production of a number of specific documents and/or categories of documents, all of which evidence Vale's knowledge of Simandou and the extent to which it relied on representations and warranties subsequently made by BSGR.<br><br>On that basis, BSGR seeks an | The Request is **GRANTED**. |

| | | | | | |
|---|---|---|---|---|---|
| | analysis of the meeting on 24 November 2008;<br><br>(e) the Simandou geological data presentation given by Rio Tinto to Vale at the 24 November 2008 meeting (Amended RICO Complaint, para 68);<br><br>(f) the Simandou Concession geological presentation, which included rail transport and port options, given by Rio Tinto to Vale at the 24 November 2008 meeting (Amended RICO Complaint, para 71);<br><br>(g) the briefing paper provided by Rio Tinto to Vale at the 24 November 2008 meeting about the status of the Simandou Concession and the involvement of BSGR (Amended RICO Complaint, para 76); | | transport and port options (SoD, para 366). If this is true, BSGR has reserved the right to seek a declaration and damages for breach of warranty (SoD, paras 364-369). This request is therefore relevant to BSGR's potential counterclaim for breach of warranty. | is clearly improper. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. The other purported justification that BSGR has given for this Request – that the documents requested will "evidence Vale's state of knowledge as regards the Simandou asset prior to negotiations with BSGR" – likewise fails to support the Request, since the abstract question of Vale's knowledge of Simandou has no bearing whatsoever on Vale's reliance on BSGR's specific and detailed representations of material fact. | order from the Tribunal that Vale produce all documents responsive to this request. | |

| | | | | | |
|---|---|---|---|---|---|
| | (h) all documents recording the discussions at the meetings between Vale and Rio Tinto on 21-22 December 2008, 15-16 January 2009, 28-29 January 2009 and 4 February 2009 (Amended RICO Complaint, para 96); and<br><br>(i) all documents containing Vale's analysis of the meetings referred to at (h) above. | | | | |
| 3. | All documents relating to the alleged destruction of documents from key custodians, including Vale's former CEO, former CFO and other Vale personnel who forged the partnership with BSGR. | SoD, paras 364-369<br><br>Letter from Quinn Emanuel to the Honourable Richard M Berman dated 17 June 2015 (Exhibit R-112) | Vale warranted at section 5.3 of Schedule 6 to the Framework Agreement that it had not taken any action, directly or indirectly, that had resulted in a violation of the FCPA or any similar laws.  Rio Tinto has alleged in the RICO Proceedings that Vale has destroyed documents from some of its key custodians who forged the partnership with BSGR.  If this is true, BSGR has reserved the right to seek a declaration and damages for breach of warranty (SoD, paras 364-369).  This request is therefore relevant to BSGR's potential counterclaim for breach of warranty. | Vale objects to this Request because it is on its face irrelevant and not material to the outcome of this case:  it is not related to any claims actually brought in this proceeding but seemingly only to Rio Tinto's U.S. claims or at best an unpleaded *potential* counterclaim for breach of warranty that BSGR may wish to assert at some future date. *See* General Objection 3.  Its presence suggests an attempt by BSGR to seek to divert attention from the issues actually in the case, as it does not relate to these issues.  This Request is a "fishing | As explained above, in relation to Request no 2, insofar as the documents requested relate to BSGR's potential counterclaim for breach of warranty, BSGR is entitled to the production of those documents.<br><br>Furthermore, it is of grave concern that Vale has been accused in the letter from Quinn Emanuel of destroying key documents that relate to the negotiations with BSGR, including documents from Vale's most senior personnel. Vale should produce documents regarding this issue | The Request is **GRANTED**. |

| | | | | expedition" in the guise of disclosure and as such is clearly improper.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a). | so that BSGR and this Tribunal are able to see what documents (if the allegation is correct) have been destroyed and how that impacts on the documents that Vale is able to provide to this Tribunal. Otherwise, any gaps in Vale's disclosure (especially in relation to senior personnel) caused by the destruction of documents may go hidden and/or unexplained. It is telling that Vale does not deny that documents were destroyed from key players in the negotiations with BSGR. There can be (or at least ought not to be) no sensible objection to providing documents which relate to the destruction of relevant evidence.<br><br>On that basis, BSGR seeks an order from the Tribunal that Vale produce all documents responsive to this request. | |
|---|---|---|---|---|---|---|
| 4. | All of Vale's internal plans and strategy documents regarding its planning in relation to Simandou/mining in Guinea. | SoD, paras 17-20, 95, 174-189, 325, 329, 344-348<br><br>DB I, para 37<br><br>AA I, para 64<br><br>Exhibit C-41<br><br>Exhibit R-96 | Vale is silent on why it was interested in a joint venture with BSGR, although BSGR is aware from a subsequent interview with Vale's former CEO, Mr Agnelli, that Vale considered it "*strategically important for Vale not to leave Rio Tinto alone with all that ore*" (Exhibit R-96, p. 8). In addition, documents exhibited to Vale's SoC show that positioning itself in the region was "*Vale's goal*" | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request would conceivably require the review of thousands of documents spanning dozens of individuals over an undefined time period.  It is the | BSGR denies that the request lacks specificity, is excessively broad or is unduly burdensome.  Without prejudice to that position, BSGR is content to refine its request as follows:<br><br>*All of Vale's strategy documents regarding its planning in relation to Simandou Blocks 1 and 2* | The refined Request set forth in BSGR's Reply column is **GRANTED**. For the avoidance of doubt, the original Request is **DENIED** as overly broad. |

(Exhibit C-41).

BSGR's position is that Vale set up the deal with BSGR as an option (SoD, paras 175, 177) which, reduced to its essence, enabled it to keep the asset out of the hands of its competitors, including Rio Tinto, for a period of time.

BSGR also believes that Vale's behaviour following the entering into of the Framework Agreement and the Shareholders' Agreement was consistent with this position, and that, following a change of management, Vale lost interest in pursuing the deal at all, pulled out of the Liberian Transport Solution negotiations and effectively acquiesed in the Government of Guinea's expropriation through the Technical Committee process, which it saw as an opportunity for an exit at minimal cost and a claim against BSGR or a re-engagement with the Government of Guinea on more favourable commercial terms (SoD, para 177).

This request is therefore relevant to Vale's true motivation both at the time of the deal with BSGR and subsequently; the extent to which it relied on statements by or on behalf of BSGR; whether Vale would have entered the deal in any event; and whether as submitted by BSGR in its counterclaim, Vale did not act in the best interests of VBG Guernsey and/or VBG Guinea (SoD, para 326

antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a). BSGR has also failed to define or limit in any meaningful way Vale's "planning in relation to Simandou/mining in Guinea" and thus has failed to sufficiently delineate the scope of this Request.

Vale also objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.

BSGR's introduction to its justifications for this Request notes portentously that Vale is allegedly silent on why it was interested in the BSGR joint venture. First, that is not the case (see SoC ¶ 49; Etchart WS ¶¶ 23-24). Second, and in any event, the reason is perfectly obvious and does not require document production: Vale mined iron ore and wished to invest in one of the largest untapped iron ore deposits in the world.

*and Simandou South, created between 2006 and 2010 (inclusive).*

As explained above, it is BSGR's position that the commercial rationale for Vale's investment in BSGR Guernsey is critical in the context of this arbitration. It is BSGR's position that Vale would have entered into the joint venture in any event because it saw this as a strategic asset to hold; on that basis, BSGR cannot be liable in fraudulent misrepresentation.

Having taken Vale's concerns as to the breadth of BSGR's original request into account, BSGR now respectfully seek an order for the production of documents responsive to the amended request.

| | | | et seq) by acquiescing in the Technical Committee process and refusing to pursue the Liberian Transport Solution. | Vale's "true motivation" for entering into "the deal with BSGR" is in any event irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the deal in any event" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance.  BSGR's other purported justification for this Request, that "Vale did not act in the best interest of VBG Guernsey and/or VBG Guinea" likewise fails to support the Request, since Vale's internal plans and strategy are irrelevant to whether the actions it *did* take were consistent with the best interests of the joint venture.<br><br>Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The Parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional | | |
|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas." (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price.").  The language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not. This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality. | | |
| 5. | In relation to Vale's expressions of interest in bauxite and iron ore resources to the Government of Guinea in 2005/2006 (EE 1, para 6):<br><br>(a) the expression of interest submitted to the Government of Guinea in September 2005;<br><br>(b) all documents passing between Vale and the Government of Guinea of the same; and<br><br>(c) all documents containing Vale's internal consideration of the same. | SoC, para 47<br><br>EE 1, para 6 | These documents are relevant to Vale's eagerness to and reasons for investing in Guinea generally (which BSGR has put in issue at paras 7, 95 and 251 of the SoD) and its attitude towards the investment in BSGR Guernsey (which BSGR has put in issue at paras 16-20, 174-189 and 251 of the SoD).<br><br>Vale is, in its SoC, silent on why it was interested in a joint venture with BSGR.  It is BSGR's case that Vale was extremely keen to invest in BSGR Guernsey because Vale saw having an interest in the Simandou region as a key strategic objective (SoD, paras 7 and 95).  BSGR alleges that, even if any of its representations were false (which is denied), Vale would have entered into the joint venture had the misrepresentation(s) not been made | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Whether Vale was "extremely keen to invest in BSGR Guernsey" is irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a | In the interests of proportionality, BSGR no longer pursues this request insofar as it pertains to expressions of interest in bauxite.<br><br>In relation to Vale's expressions of interest in relation to iron ore resources, BSGR maintains this request. For the reasons explained above, it is BSGR's position that the commercial background to Vale's investment in BSGR Guernsey is crucial to an understanding of the extent to which Vale relied on statements made by or on behalf of BSGR and the extent to which it can be said that those statements caused the alleged loss now claimed | The refined Request set forth in BSGR's reply column is **GRANTED**. For the avoidance of doubt, the original Request is **DENIED** as overly broad. |

| | | | (SoD, para 251). The documents sought will evidence the commercial reasoning behind Vale's decision to invest in BSGR Guernsey, and the extent to which it relied on statements made by or on behalf of BSGR. | public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. Finally, Vale's "expressions of interest" in bauxite resources are even more irrelevant to the issues in this arbitration, which deals with BSGR's breaches of warranty and fraud in connection with Vale's investment in BSGR's Simandou iron ore concession. | by Vale in this arbitration. BSGR respectfully seeks an order from the Tribunal that documents responsive to the amended (and narrowed) request be produced. | |
|---|---|---|---|---|---|---|
| 6. | In relation to Mr Etchart's discussions and meeting with Mr Struik and Mr Cilins in Conakry in August 2006 (SoC, para 47 and EE I, para 14):<br><br>(a) all documents generated in anticipation of that meeting;<br><br>(b) all documents containing analysis of that meeting;<br><br>(c) all documents to and from Mr Etchart reporting to his colleagues on the meeting; and<br><br>(d) all documents relating to meetings with the | SoC, paras 47 and 62<br><br>EE I, para 12-14 | Vale claims in its SoC that, prior to entering into the Framework Agreement, BSGR withheld the names Messrs Cilins, Lev Ran and Noy (amongst others) in response to questions about whether it had used any intermediaries to obtain licences or permits from the Government of Guinea. It is claimed by Vale that Messrs Cilins, Lev Ran and Noy "*had in fact acted as such intermediaries*" (SoC, para 62). Vale claims that it would not have entered into the joint venture without this assurance from BSGR regarding its use of intermediaries (SoC, paras 96 and 284). BSGR's case is that Vale cannot establish reliance on this representation because, inter alia, it knew about the involvement of Mr Cilins (SoD, para 251(i)).<br><br>It is clear from the SoC and the witness statement of Mr Etchart that | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. To the extent BSGR purports to rely on the requested documents to refute Vale's reliance claim, this Request is irrelevant, as whether Vale thought that Mr. Cilins was BSGR's intermediary based on a meeting *in 2006*, two years before BSGR obtained rights to Simandou Blocks 1 and 2, has no bearing on Vale's reliance on BSGR's representation in 2010 that this was in fact not the case and that it did not use intermediaries to obtain | BSGR rejects Vale's submission that the documents requested are irrelevant and/or immaterial. For the reasons set out above, it is BSGR's position that Vale's state of mind upon entering into the Framework Agreement and the Shareholders' Agreement is both relevant and material in the context of these proceedings. Documents evidencing that state of mind will show, amongst other matters, the extent to which Vale relied on statements made by or on behalf of BSGR and the extent to which those statements caused the alleged losses now claimed by Vale.<br><br>BSGR notes Vale's agreement to produce documents | **NO DECISION** is required in relation to at least part of this Request. The Tribunal notes that Vale has agreed "to produce reasonably responsive, non-privileged, internal documents from August 2006 discussing Mr. Etchart's brief meeting with Messrs. Struik and Cilins in Conakry in August 2006 and any meeting with the Minister of Mines in 2006, |

| | | | | | |
|---|---|---|---|---|---|
| | Minister of Mines in 2006. | | Mr Etchart admits that he met Mr Cilins in 2006 and that Mr Cilins told him he was working with BSGR (EE I, para 14). These requests relate, in part, to that meeting, its content and what Mr Etchart subsequently relayed to other personnel in Vale about the discussions at the meeting and the involvement of Mr Cilins.<br><br>On that basis, the documents requested will evidence the extent to which and when Vale became aware of Pentler and its connections to BSGR, and consequently the reliance placed by Vale on BSGR's representation that it had not used any intermediaries in obtaining the Mining Rights. | licenses or permits from the Government of Guinea *in 2008*. Further, even accepting BSGR's strained position that any relevant inference can be drawn from Mr. Etchart's brief meeting with Mr. Cilins in 2006, the documents requested relating to meetings with the Minister of Mines in 2006 are irrelevant.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents from August 2006 discussing Mr. Etchart's brief meeting with Messrs. Struik and Cilins in Conakry in August 2006 and any meeting with the Minister of Mines in 2006, subject to its General Objections, and to the extent such documents exist.** | responsive to this request, although Vale's agreement relates only to documents "*from August 2006*". For the avoidance of doubt, BSGR requires Vale to produce all documents responsive to this request, whether created in August 2006 or in the months before and/or after the meeting in August 2006. This relates to specific meetings pleaded <u>by Vale</u> and there may well have been notes and other communications in the months leading up to and following those meetings; it ought not to be difficult to search for documents which relate to those specific meetings. Once again, Vale's purported formulation refers to its General Objections rendering the obligation to produce effectively meaningless because it is apparently subject to Vale's unilateral reservations. BSGR respectfully seeks an order from the Tribunal in the form of the request made by BSGR.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as lacking sufficient relevance. |
| 7. | All documents passing between | EE I, para 14 | Please see comments in relation to | Vale objects to this Request | As explained in BSGR's | **NO DECISION** |

| | | | | | |
|---|---|---|---|---|---|
| Messrs Etchart and Cilins and all internal Vale documents making reference to Mr Cilins and/or Pentler. | | Request 6.<br><br>It is clear from the SoC and the witness statement of Mr Etchart that Mr Etchart met Mr Cilins in 2006. These requests relate to that meeting, its content and what Mr Etchart subsequently relayed to other personnel in Vale about those discussions.<br><br>On that basis, the documents requested will evidence the extent to which and when Vale became aware of Pentler and its connections to BSGR, as well as the role played specifically by Mr Cilins as BSGR established its presence in Guinea in 2005 and 2006. | because it is duplicative, as any arguably relevant documents would be included under Request 6.<br><br>Vale also objects to this Request because to the extent any relevant documents were exchanged between Mr. Cilins, BSGR's agent and/or "intermediary" who has submitted a witness statement on BSGR's behalf, and Mr. Etchart, by definition they would be in BSGR's possession. *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged documents exchanged between Messrs. Cilins and Etchart relating to BSGR and any internal Vale documents making reference to Mr. Cilins and/or Pentler between 2006 and 2009, subject to its General Objections, and to the extent such documents exist.** | Responses and Objections to Vale's Request to Produce, BSGR denies that documents held by Mr Cilins are in the possession, custody or control of BSGR.  Mr Cilins is not, and has never been, an agent or employee of BSGR.<br><br>BSGR notes Vale's agreement to produce documents responsive to this request, although Vale's agreement relates only to documents exchanged *between 2006 and 2009*. Vale's cut-off date in 2009 is arbitrary and, more importantly, omits the critical period between 1 January and 30 April 2010 when the negotiations between Vale and BSGR were taking place in advance of the parties entering into the Framework Agreement and the Shareholders' Agreement.  As explained above, it is BSGR's position that Vale's state of knowledge upon entering into the joint venture is relevant and material in the context of this arbitration.<br><br>Once again, Vale's proposal is subject to a general carve out by reference to its General Objections, which is not acceptable.<br><br>On that basis, BSGR requires Vale to produce all documents | is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed "to produce reasonably responsive, non-privileged documents exchanged between Messrs. Cilins and Etchart relating to BSGR and any internal Vale documents making reference to Mr. Cilins and/or Pentler between 2006 and 2009, subject to its General Objections, and to the extent such documents exist."<br><br>The Tribunal **GRANTS** the Request to the extent that it directs Vale to use its best efforts to search for and produce documents dated from 1 January 2006 up to and |

| | | | | | responsive to this request created from 1 January 2006 up to and including 30 April 2010, and is prepared to limit its request on that basis.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | including 30 April 2010.  The remainder of the Request is **DENIED** as duplicative. |
|---|---|---|---|---|---|---|
| 8. | All documents prepared for the purpose of or referring to any and all of the "*handful of minor contacts*" between Vale and BSGR between 2006 and 2009 (SoC, para 47). | SoC, para 47<br><br>EE1, para 11 | Vale says in its SoC that "*there were a handful of minor contacts between Vale and BSGR between 2006 and 2009*" (SoC, para 47).<br><br>This request is therefore relevant and material to what Vale knew about BSGR during this period, how BSGR fitted into Vale's strategy in Guinea, and the extent to which Vale relied on statements made by or on behalf of BSGR prior to entering into the Framework Agreement and the Shareholders' Agreement. | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  To the extent BSGR purports to rely on the requested documents to refute Vale's reliance claim, this Request is irrelevant as what Vale "knew" about BSGR based on its "handful of minor contacts" between 2006 and 2009 has no bearing on Vale's reliance on BSGR's contractual representations and assurances that it obtained its Mining Rights in a proper and lawful manner.<br><br>Vale also objects to this Request because to the extent any relevant documents were exchanged with BSGR relating to the "handful of minor contacts," by definition they | For the reasons outlined above, BSGR denies that the requested documents are irrelevant and/or immaterial, or within BSGR's possession, custody or control.<br><br>BSGR notes Vale's agreement to produce documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents from 2006 through 2009 referring to the 'handful of minor contacts' between Vale and BSGR referenced in SoC ¶ 47 and Etchart WS ¶ 11-21, subject to its General Objections, and to the extent such documents |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | would be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>Further, Vale objects to this Request because it is duplicative, as any arguably relevant documents would be included under Requests 6-7 & 10-11.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents from 2006 through 2009 referring to the "handful of minor contacts" between Vale and BSGR referenced in SoC ¶ 47 and Etchart WS ¶ 11-21, subject to its General Objections, and to the extent such documents exist.** | | exist."<br>The remainder of this Request is **DENIED** as lacking sufficient relevance or materiality. |
| 9. | In relation to the exploration permits granted to Vale by the Government of Guinea in April/May 2008:<br><br>(a)  all application documents submitted to the Government of Guinea;<br><br>(b)  all documents passing | EE I, para 8 | Mr Etchart explains in his witness statement that, in relation to licenses applied for in April/May 2008, "*Vale performed substantial geological works in this area*" (EE I, para 8).  It is apparent, therefore, that by this time, Vale had carried out a great deal of work and had accumulated a substantial amount of knowledge in respect of iron ore deposits in Guinea.  It follows that by the time that Vale entered into negotiations | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request for "all application documents," "all documents" and "all internal documents" is the antithesis of a "narrow and specific" category of documents, see IBA Rules Art. 3(3)(a)(ii), and | BSGR rejects Vale's suggestion that this request is "*non-specific, vastly overbroad and unduly burdensome*".  At the risk of stating the obvious, this request relates to a specific category of documents, created during a defined period, and in relation to a narrow subject matter.  This appears to be an objection for | The Request is **DENIED** as overly broad, unduly burdensome and lacking sufficient relevance. |

| | | | | | |
|---|---|---|---|---|---|
| | between Vale and the Government of Guinea in relation to those permits; and<br><br>(c) all internal Vale documents in relation to those permits. | | with BSGR in 2010, it already had a good understanding of the issues associated with mining and exploration in the region.<br><br>The documents requested will evidence Vale's state of knowledge prior to entering into negotiations with BSGR, the challenges associated with exploration and exploitation of resources in Simandou and the extent to which it subsequently relied on statements made by or on behalf of BSGR. | would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Vale also objects to this Request because the requested documents are irrelevant and not material to this proceeding and its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Vale's "state of knowledge" concerning Simandou prior to entering into the joint venture with BSGR has no bearing whatsoever on Vale's claims or BSGR's counterclaims, and specifically has no relevance to whether Vale relied on BSGR's detailed and specific representations that it had not engaged in bribery and corruption to obtain Simandou.  Further, as Mr. Etchart explains in his witness statement, the licenses that Vale applied for in April-May 2008 were for three areas that "*were distinct from, and did not overlap with, Simandou Blocks 1, 2, 3, and 4.*"  (Etchart WS ¶ 8).  Accordingly, even accepting BSGR's non-sequitur position that evidence of Vale's state of knowledge regarding "the issues associated with mining and exploration in the region" – | the sake of an objection.<br><br>BSGR also rejects Vale's suggestion that the documents are irrelevant and immaterial. It is clear from Mr Etchart's witness statement that Vale had explored the possibility of mining for iron ore in Guinea long before it subsequently entered into a joint venture with BSGR.  For the reasons outlined above, it is BSGR's position that knowledge acquired by Vale prior to 30 April 2010 in relevant both to the extent to which it relied on statements made by or on behalf of BSGR – an essential element in any claim in misrepresentation – and the extent to which BSGR can be said to have caused the alleged losses now claimed by Vale in this arbitration.<br><br>Even if the licences applied for by Vale in 2008 were, as Mr Etchart suggests, distinct from Vale's subsequent interest in Simandou Blocks 1, 2, 3 and 4, it is also apparent from Mr Etchart's witness statement that the licences applied for in 2008 were in the same region. Documents relating to that episode will shed light on the commercial motivation behind Vale's investment in Simandou. As explained in its requests, it is BSGR's position that Vale's | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | and specifically "the challenges associated with exploration and exploitation of resources in Simandou" – is relevant to whether Vale relied on BSGR's statements, documents pertaining to these licenses are irrelevant to that claim. | commercial rationale for the deal, and its failure to act in the best interests of the joint venture, relate directly to the issues arising in BSGR's counterclaim.<br><br>On that basis, BSGR respectfully seeks an order from the Tribunal that Vale produce the requested documents. | |
| 10. | In relation to Mr Antaki's meeting with Mr Struik in or around July 2009 (SoC, para 48 and SoD, para 96):<br><br>(a) all documents generated in anticipation and for the purpose of that meeting;<br><br>(b) all documents created at the meeting;<br><br>(c) all documents containing analysis of that meeting;<br><br>(d) all documents to and from Mr Antaki reporting to his colleagues on the meeting, other than those disclosed at Exhibits C-37 to C-40. | SoC, para 48<br><br>SoD, para 96<br><br>EE I, paras 17-21 | It is BSGR's case that Vale was very keen to do a deal with BSGR and pursued BSGR as its preferred joint venture partner (SoD, paras 7 and 97).  Vale states in its SoC that it "*did not consider it fruitful to pursue any relationship because Rio Tinto still publicly contended that it lawfully held rights to Simandou Blocks 1 and 2…Vale was also concerned about the security of BSGR's rights given the volatile political situation in Guinea*" (SoC, para 48). Vale further claims that it did not actively seek out a relationship with BSGR at this time (EE I, para 20). The documents requested are relevant to this factual dispute.<br><br>It is clear from footnote 4 of EE I, para 17 that further emails regarding the meeting between Mr Antaki and Mr Struik exist.  BSGR is entitled to see the entirety of those internal exchanges, and not merely those emails selected by Vale and exhibited to its SoC. | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Vale's "eagerness" and whether Vale was "very keen to do a deal with BSGR" are irrelevant to Vale's claims and BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture in any event" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure | BSGR denies that the requested documents are irrelevant and immaterial.<br><br>BSGR notes that Vale has agreed to produce "*internal documents discussing Mr. Antaki's meeting with Mr. Struik in July 2009*" without reference to the specifics of BSGR's request.  BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents discussing  Mr. Antaki's meeting with Mr. Struik in July 2009, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as lacking sufficient |

| | | | The documents requested are also relevant to the issue of Vale's reliance on representations made by BSGR. It is BSGR's case that Vale would have entered into the joint venture in any event because of its eagerness to establish itself in the region and counteract Rio Tinto's holdings (SoD, para 251(ii)). | FCPA compliance.<br><br>Vale also objects to this Request because it is duplicative, as any arguably relevant documents would be included under Request 8.<br><br>Further, Vale objects to this Request because to the extent any relevant documents were exchanged with BSGR relating to Mr. Antaki's meeting with Mr. Struik in July 2009, by definition they would be in BSGR's possession. *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents discussing Mr. Antaki's meeting with Mr. Struik in July 2009, subject to its General Objections, and to the extent such documents exist.** | | relevance or materiality. |
| 11. | In relation to Mr Alves's visit to BSGR Guinea's offices in late July 2009 (SoD, para 97):<br><br>(a) all documents generated in anticipation and for the purposes of that visit; | SoD, paras 97, 98.<br><br>AA I, para 139<br><br>Exhibit C-39 | Please see the comments in relation to Request 10 above.<br><br>Vale's position in its SoC (para 48) that it was hesitant about any deal with BSGR at this time is belied by the fact of its interest in contacting or meeting with BSGR in July and October 2009 (AA I, para 139), as well as the speed with which the | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Vale's motivation for entering into a | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the requested documents are | **NO DECISION** is required in relation to at least part of this Request. The Tribunal notes that Vale has agreed to "produce |

| | | | | | |
|---|---|---|---|---|---|
| | (b) all documents containing analysis of that visit;<br><br>(c) all documents to and from Mr Alves reporting to his managers on the visit; and<br><br>(d) all documents prepared for the purposes of, or referring to, subsequent discussions in October 2009 (SoD, para 98). | | eventual joint venture deal was negotiated and agreed.<br><br>The requests are relevant to evidencing or disproving each party's position in relation to Vale's alleged approach to BSGR and Vale's interest (or lack of) in a joint venture with BSGR at that time (SoD, para 95-99).<br><br>The documents requested also go to Vale's overall strategy as regards Simandou, its state of knowledge at that time and upon entering into the Framework Agreement and the Shareholders' Agreement, as well as the extent to which it relied upon statements made by or on behalf of BSGR. | joint venture with BSGR, and whether Vale "was hesitant about any deal with BSGR" in July and October 2009, has no bearing whatsoever on Vale's reliance on BSGR's detailed and specific representations and assurances that it obtained its Mining Rights in a proper and lawful manner. Further, even accepting BSGR's unfounded position that evidence of Vale's alleged interest in a joint venture with BSGR is relevant to whether Vale relied on BSGR's statements, Vale does not dispute that it was interested in exploring a joint venture with BSGR in February 2010 when Mr. Struik informed Mr. Etchart that BSGR had legally acquired the Mining Rights and that it had received the Government's permission to transport iron ore through Liberia (SoC ¶ 49), and documents pertaining to Vale's interest in July and October 2009 are irrelevant to any issue of reliance on BSGR's representations and warranties that it did not engage in bribery or other corrupt actions in obtaining its Mining Rights.  BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint | irrelevant and immaterial. BSGR also denies that the requested documents are in its possession, custody or control.<br><br>BSGR notes that Vale has agreed to produce "*internal documents discussing Mr. Alves's meeting with Ms. Rakitina in July 2009 or any subsequent discussion in October 2009*" without reference to the specifics of BSGR's request. BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | reasonably responsive, non-privileged, internal documents discussing  Mr. Alves's meeting with Ms. Rakitina in July 2009 or any subsequent discussion in October 2009, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as lacking sufficient relevance or materiality. |

| | | | | venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.  Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions." | | |
| | | | | Vale also objects to this Request because it is duplicative, as any arguably relevant documents would be included under Request 8. | | |
| | | | | Further, Vale objects to this Request because to the extent any relevant documents were exchanged with BSGR relating to Mr. Alves's meeting with Ms. Tatiana Rakitina in July 2009 or to any subsequent discussion in October 2009, by definition they would be in | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents discussing  Mr. Alves's meeting with Ms. Rakitina in July 2009 or any subsequent discussion in October 2009, subject to its General Objections, and to the extent such documents exist.** | | |
| 12. | All documents sent to or from Mr Ledsham, including documents created by or for him, regarding Simandou. | EE 1, para 17 (footnote 4)<br><br>AM 1, paras 7 and 8<br><br>Exhibits C-38 and C-41 | Vale makes clear in its SoC that Mr Ledsham was a key decision maker in relation to Vale's activity in Guinea.  For example, in an email dated 28 July 2009 (Exhibit C-38), Mr Alves says that he had discussed BSGR with Mr Ledsham and that Mr Ledsham had requested a meeting to be scheduled between him and Mr Steinmetz in London "*to address the Simandou North matter*".<br><br>This indicates that: (a) Mr Ledsham was well informed of the discussions or potential discussion with BSGR about its rights; (b) there was correspondence or other documents created around this time relating to this matter; and (c) Mr Alves, Mr Antaki and/or Mr Ledsham had been in touch, or had planned to make contact with BSGR.  In spite of that, | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request would conceivably require the review of tens of thousands of documents over an undefined time period, including all documents pertaining to Mr. Ledsham related in any way to Simandou.  It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>**Notwithstanding these** | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the request is unduly burdensome.<br><br>BSGR notes that Vale has agreed to produce "*internal documents relating to Mr. Ledsham's negotiations with BSGR between February and April 2010*" without reference to the specifics of BSGR's request.  The scope of Vale's proposed production is different from, and falls far short of, BSGR's request. | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents relating to Mr. Ledsham's negotiations with BSGR between February and April 2010 (which is the only |

| | | | no witness statement has been provided in this arbitration from Mr Ledsham.

The documents requested are relevant to evidencing (or otherwise) Vale's position that it was not interested in pursuing BSGR during this period, as well as its overall strategy as regards Simandou. The documents requested also evidence Vale's state of knowledge at the time of entering into the Framework Agreement and the Shareholders' Agreement, and the extent to which it relied on statements made by or on behalf of BSGR. | **objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents relating to Mr. Ledsham's negotiations with BSGR between February and April 2010 (which is the only relevant issue), subject to its General Objections, and to the extent such documents exist.** | Whilst BSGR would accept that the timescale referred to by Vale corresponds to the period in which Vale and BSGR were engaged in formal negotiations, for the reasons described above, it is BSGR's position that knowledge acquired by Vale prior to those negotiations is relevant in the context of this arbitration. It is also BSGR's position that Vale's commercial rationale for its investment is also relevant.

It is abundantly clear that Mr Ledsham was a key figure in the context of Vale's involvement in Guinea, yet Vale's failure to rely on a witness statement from Mr Ledsham creates an evidential vacuum that can only be filled by appropriate production of documents.

On that basis, BSGR respectfully seeks an order that Vale be required to produce all documents responsive to this request.

For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | relevant issue), subject to its General Objections, and to the extent such documents exist."

The remainder of the Request is **DENIED** as overly broad and unduly burdensome. |
| 13. | In relation to the discussions | SoC, para 49 | It is BSGR's case that Vale was | Vale objects to this Request | In light of Vale's eventual | **NO DECISION** |

| | | | | | |
|---|---|---|---|---|---|
| and meeting between Messrs Etchart and Struik at the INDABA conference in February 2010 (SoC, para 49 and SoD, para 99):<br><br>(a) all documents generated in anticipation and for the purposes of that meeting;<br><br>(b) all documents created at that meeting;<br><br>(c) all documents containing analysis of that meeting; and<br><br>(d) all documents to and from Mr Etchart reporting to his colleagues on the meeting. | SoD, para 99<br><br>EE I, paras 23, 24<br><br>AM I, para 6<br><br>MS I, paras 141-143 | extremely keen to invest in BSGR Guernsey because Vale saw having an interest in the Simandou region as a key strategic objective (SoD, paras 7 and 95). For this reason, amongst others, BSGR alleges that, even if any of its representations were false (which is denied), Vale would have entered into the joint venture had the misrepresentation(s) not been made (SoD, para 251). The documents sought are relevant to the commercial reasoning behind Vale's eagerness and decision to invest in BSGR Guernsey, and consequently, the extent to which it relied on statements made by or on behalf of BSGR. | because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Whether Vale was "extremely keen to invest in BSGR Guernsey" is irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. Further, BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in | agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the documents requested are irrelevant and immaterial; nor is the request unduly burdensome; further, the documents requested are not in the possession, custody or control of BSGR.<br><br>BSGR notes that Vale has agreed to produce "*intenal documents discussing Mr Etchart's meeting with Mr Struik in February 2010 during the INDABA Mining Conference*" without reference to the specifics of BSGR's request. BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | is required in relation to at least part of this Request. The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents discussing Mr. Etchart's meeting with Mr. Struik in February 2010 during the INDABA Mining Conference, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad. |

| | | | | inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.  Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions." | | |
| | | | | Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See IBA Rules* Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  It is the antithesis of a "narrow and specific" category of documents, *see IBA Rules* Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see IBA Rules* Art. 9(2)(a). | | |
| | | | | Further, Vale objects to this Request because to the extent any relevant documents were exchanged with BSGR relating to Mr. Etchart's meeting with Mr. Struik in February 2010 during the INDABA Mining Conference, by definition they would be in BSGR's | | |

| | | | | possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents discussing  Mr. Etchart's meeting with Mr. Struik in February 2010 during the INDABA Mining Conference, subject to its General Objections, and to the extent such documents exist.** | | |
|---|---|---|---|---|---|---|
| 14. | In relation to the three meetings between Vale and BSGR at Vale's offices in Rio de Janeiro in March 2010 (SoC, para 52 and SoD, para 101(i)):<br><br>(a)  all documents generated in anticipation and for the purposes of those meetings;<br><br>(b)  all documents created at those meetings; and<br><br>(c)  all documents containing analysis of those meetings. | SoC, paras 52 and 53<br><br>SoD, paras 101 and 175<br><br>AM I, paras 9 – 11<br><br>DB I, para 37<br><br>Exhibit R-96, p. 8 | Please see the comments above in relation to Request 13.<br><br>In addition, it is BSGR's case that Vale effectively treated the deal with BSGR as an option (which it later decided not to pursue) over the exploration and mining rights and a way of preventing Rio Tinto from achieving a foothold in Guinea, and in particular, in respect of Simandou Blocks 1 and 2 (SoD, paras 175, 177).  Mr Agnelli confirmed in an interview dated March 2014 that "*it was recorded in the minutes and all the shareholders were aware that we would pay the 500 million dollars to have the option to buy 51% of Simandou….*" (Exhibit R-96, p. 8).<br><br>These requests are therefore | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Vale's "motivation" and whether Vale was "extremely keen to invest in BSGR Guernsey" are irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the documents requested are irrelevant and immaterial; nor is the request unduly burdensome; further, the documents requested are not in the possession, custody or control of BSGR.<br><br>BSGR notes that Vale has agreed to produce "*internal documents discussing Mr Etchart's meeting with Mr Struik* | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents discussing meetings between Vale and BSGR at Vale's offices in Rio de Janeiro in March 2010, |

| | | | | | |
|---|---|---|---|---|---|
| | | | relevant to Vale's apparent disinterest in a deal with BSGR in 2009, and subsequent change of heart.  They are also relevant to understanding Vale's strategy and motivation in the negotiations culminating in the Framework Agreement and the Shareholders' Agreement in 2010.<br><br>The documents requested also evidence Vale's state of knowledge at the time of entering into the Framework Agreement and the Shareholders' Agreement, and the extent to which it relied on statements made by or on behalf of BSGR. | BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance.  Further, BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.  Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions." | *in February 2010 during the INDABA Mining Conference*" without reference to the specifics of BSGR's request.  BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad. |

| | | | | Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.*  It is the antithesis of a "narrow and specific" category of documents, *see IBA Rules Art. 3(3)(a)(ii),* and would impose an "unreasonable burden" on Vale, *see IBA Rules Art. 9(2)(a).*<br><br>Further, Vale objects to this Request because to the extent any relevant documents were exchanged with BSGR relating to any meetings between Vale and BSGR at Vale's offices in Rio de Janeiro in March 2010, by definition they would be in BSGR's possession.  *See IBA Rules Art. 3(3)(c)(i); General Objection 6.*<br><br>Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas."  (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price.").  The | | |

| | | | | language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not. This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents discussing meetings between Vale and BSGR at Vale's offices in Rio de Janeiro in March 2010, subject to its General Objections, and to the extent such documents exist.** | |
|---|---|---|---|---|---|
| 15. | All documents arising from and relating to Vale's internal consideration of:<br><br>(a) the award of rights to BSGR in relation to Simandou Blocks 1 and 2;<br><br>(b) Vale's decision to acquire an interest in those rights. | SoD, para 175<br><br>EE I, paras 21 and 22<br><br>DB I, para 37 and 38<br><br>Exhibit C-41, p. 1<br><br>Exhibit R-96, p. 8 | Please see the comments above in relation to Request 13.<br><br>It is BSGR's case that Vale effectively treated the deal with BSGR as an option over the exploration and mining rights and a way of preventing Rio Tinto from achieving a foothold in Guinea, and in particular, in respect of Simandou Blocks 1 and 2 (SoD, paras 175, 177 and Exhibit R-96, p. 8).<br><br>These requests are therefore relevant to Vale's apparent | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Vale's "motivation" and whether Vale was "extremely keen to invest in BSGR Guernsey" are irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the documents requested are irrelevant and immaterial; nor is the request unduly burdensome.<br><br>BSGR notes that Vale has | **NO DECISION** is required in relation to at least part of this Request. The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents, |

| | | | | | |
|---|---|---|---|---|---|
| | | | disinterest in a deal with BSGR in 2009, and subsequent change of heart.  They are also relevant to understanding Vale's strategy and motivation in the negotiations culminating in the Framework Agreement and the Shareholders' Agreement in 2010, and the due diligence carried out prior to that and the consideration of that due diligence by Vale's management.

The documents requested also evidence Vale's state of knowledge at the time of entering into the Framework Agreement and the Shareholders' Agreement, and the extent to which it relied on statements made by or on behalf of BSGR. | would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance.  Moreover, documents related to the *quality* of Vale's diligence have no bearing on Vale's claims or BSGR's counterclaims, for the reasons set forth in General Objection 2.  Further, BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.  Vale indisputably had an interest in | agreed to produce "*internal documents, relating to its joint venture negotiations with BSGR between February and April 2010*" without reference to the specifics of BSGR's request.  Vale is, in effect, agreeing to produce documents in response to a different (unasked) request.  As explained above, it is Vale's position that documents evidencing Vale's internal decision making processes are relevant both to the issues of reliance and causation.  It is plainly inappropriate for Vale to rephrase BSGR's document requests and then decide which documents to produce in response to that request.  The range of documents that Vale has agreed to produce is sufficiently vague to make it impossible to judge at this stage to what extent Vale proposes to comply with the request at all.

The date range chosen by Vale is both arbitrary and unhelpful.  Even if the negotiation regarding the joint venture were indeed limited to the period February to April 2010, Vale would have made a decision to enter into those negotiations in advance of that period.

BSGR is also entitled to know | relating to its joint venture negotiations with BSGR between February and April 2010 (which is the only relevant issue), subject to its General Objections, and to the extent such documents exist."

For the avoidance of doubt, Request 15(b) is **GRANTED**, and Request 15(a) is **DENIED** as overly broad. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions."<br><br>Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections I & 4.  It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas."  (SoC ¶¶ 97-98; Exhibit C I, Section 3: "Purchase Price.").  The | what considerations were taken into account by Vale prior to engaging with BSGR in relation to Simandou.<br><br>BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph I of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not. This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents, relating to its joint venture negotiations with BSGR between February and April 2010 (which is the only relevant issue), subject to its General Objections, and to the extent such documents exist.** | | |
| 16. | All documents evidencing Vale's internal management, board discussions and approvals in connection with its investment in BSGR Guernsey. | SoC, paras 49 and 55<br><br>SoD, para 175<br><br>DB 1, para 37 and 38<br><br>Exhibit R-96, p. 8 | Please see the comments above in relation to Request 13.<br><br>It is BSGR's case that Vale effectively treated the deal with BSGR as an option over the exploration and mining rights and a way of preventing Rio Tinto from achieving a foothold in Guinea, and in particular, in respect of Simandou Blocks 1 and 2 (SoD, paras 175, 177 and Exhibit R-96, p. 8).<br><br>In addition, Vale submits that it | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Vale's "motivation" and whether Vale was "extremely keen to invest in BSGR Guernsey" are irrelevant to Vale's claims or BSGR's counterclaims, and the | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the documents requested are irrelevant and immaterial; nor is the request unduly burdensome. | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal |

| | | | carried out very extensive and "*rigorous*" (SoC, para 55) due diligence on BSGR and its business before making the decision to invest in the joint venture.  Any relevant concerns that this process created were likely to have been reported to and considered by Vale's management and by its board before the decision to enter into the joint venture was made.

Vale has provided no internal working papers in relation to its approach to the deal or to its consideration of the due diligence.

These requests are therefore relevant to Vale's position as to why it was not interested in a deal with BSGR in 2009, but its position had changed by February 2010.  They are also relevant to understanding Vale's strategy and motivation in the negotiations culminating in the Framework Agreement and the Shareholders' Agreement in 2010.

The documents requested also evidence what issues or information was considered as a result of the due diligence process, what Vale would have known before entering into the Framework Agreement and the Shareholders' Agreement, and to what extent it relied upon statements made by or on behalf of BSGR. | *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. Moreover, documents related to the *quality* of Vale's diligence have no bearing on Vale's claims or BSGR's counterclaims, for the reasons set forth in General Objection 2.  Further, BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.   Vale | BSGR notes that Vale has agreed to produce "*internal documents, relating to its joint venture negotiations with BSGR between February and April 2010*" without reference to the specifics of BSGR's request.  Vale is, in effect, agreeing to produce documents in response to a different (unasked) request. As explained above, it is Vale's position that documents evidencing Vale's internal decision making processes are relevant both to the issues of reliance and causation.  It is plainly inappropriate for Vale to rephrase BSGR's document requests and then decide which documents to produce in response to that request. The range of documents that Vale has agreed to produce is sufficiently vague to make it impossible to judge at this stage to what extent Vale proposes to comply with the request at all.

The date range chosen by Vale is both arbitrary and unhelpful. Even if the negotiation regarding the joint venture were indeed limited to the period February to April 2010, Vale would have made a decision to enter into those negotiations in advance of that period. | documents, relating to its joint venture negotiations with BSGR between February and April 2010 (which is the only relevant issue), subject to its General Objections, and to the extent such documents exist."

The remainder of the Request is **DENIED**, as overly broad and unduly burdensome. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions."<br><br>Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Further, Vale objects to this Request because it is duplicative, as any arguably relevant documents would be included under Request 1.<br><br>Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The parties' contract expressly provides that following Vale's payment of US$500 million, | BSGR is also entitled to know what considerations were taken into account by Vale prior to engaging with BSGR in relation to Simandou.<br><br>For those reasons, BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | |

| | | | | Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas."  (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price.").  The language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not.  This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality. | | |
| | | | | **Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents, relating to its joint venture negotiations with BSGR between February and April 2010 (which is the only relevant issue), subject to its General Objections, and to the extent such documents exist.** | | |
| 17. | All documents in Vale's possession, including internal communications prior to 30 April 2010 discussing Vale's concerns regarding links between BSGR and either | SoC, para 55, 58<br><br>SoD, para 106<br><br>AM 1, para 36–38 | Vale submits that its employees had heard rumours about BSGR's reputation in Africa, "*including general, but unsubstantiated, rumours of corruption*" (SoC, para 55, AM 1, para 36 to 38).  It is claimed that | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  BSGR has failed to define | BSGR denies that the request is unduly burdensome.  The request relates to a specific issue and includes a defined timescale.<br><br>In light of Vale's eventual | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes |

| # | | | | | | |
|---|---|---|---|---|---|---|
| | corruption or "blood diamonds" whether in Sierra Leone, the Democratic Republic of Congo or elsewhere. | GK I, para 10<br><br>BS I, para 75<br><br>DC I, paras 29, 30<br><br>DB I, para 47 | these rumours were put to the BSGR team and denied (SoC, para 58, AM I, para 38, GK I, para 10).<br><br>BSGR's position is that the alleged rumours that Vale refers to were false and were not in any event put to it.<br><br>The documents requested are relevant to what exactly these rumours entailed and what information Vale had in relation to them that might have caused Vale to be suspicious.  The documents requested are also relevant to and evidence Vale's state of knowledge at the time when it entered into the Framework Agreement and the Shareholders' Agreement. | or limit in any meaningful way Vale's "concerns" and thus has failed to sufficiently delineate the scope of this Request.<br><br>Further, Vale does not dispute – and indeed expressly stated – that the rumours about BSGR at issue in this request were "unsubstantiated."  (SoC ¶ 55; Monteiro WS ¶ 36).<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged internal communications made between February and April 2010, referencing a connection between BSGR and either corruption or "blood diamonds" in Sierra Leone and the Democratic Republic of Congo, subject to its General Objections, and to the extent such documents exist.** | agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail, and awaits production of responsive documents (which should be ordered without reference to the general caveats that Vale seeks to impose upon the terms of the request, including reference to its General Objections). | that Vale has agreed to "produce reasonably responsive, non-privileged internal communications made between February and April 2010, referencing a connection between BSGR and either corruption or 'blood diamonds' in Sierra Leone and the Democratic Republic of Congo, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad. |
| 18. | In relation to the Project Hills negotiations entered into by Vale and BSGR between February and April 2010, all internal Vale documents prepared for the purposes of, or referring to: | SoC, para 51 et seq, paras 88-92<br><br>AM I, paras 20-30, 36-39<br><br>GK I, paras 5, 10 et seq | This request is relevant to Vale's knowledge upon entering into the Framework Agreement and the Shareholders' Agreement, especially in relation to the existence of Pentler, Mr Touré and Mr Cilins (SoC, paras 60(h) and 62 and SoD, para 237). | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Whether Vale | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to |

| | | EE 1, para 29 | | | |
|---|---|---|---|---|---|
| (a) | commercial due diligence; | Exhibits C-3 and C-4 | Vale's case is that it carried out "*especially rigorous*" due diligence in respect of the deal (SoC, para 55), whereas BSGR's case is that Vale has exaggerated the importance of the FCPA/ABL due diligence (SoD, paras 8 and 104-108). The requested documents are relevant to this issue. They are also relevant to the dispute over whether Vale (1) had concerns about BSGR's reputation and (2) raised those concerns with anyone at BSGR during the due diligence process (SoC, para 55, SoD, paras 105-106 and AM 1, para 37). | was "extremely keen to invest in BSGR Guernsey" is irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance.  Moreover, documents related to the *quality* of Vale's diligence have no bearing on Vale's claims or BSGR's counterclaims, for the reasons set forth in General Objection 2. **Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents, relating to its due diligence of BSGR between February and April 2010 subject to its General Objections, and to the extent such documents exist.** | documents requested are irrelevant and immaterial; nor is the request unduly burdensome. | "produce reasonably responsive, non-privileged, internal documents, relating to its due diligence of BSGR between February and April 2010 subject to its General Objections, and to the extent such documents exist." |
| (b) | financial due diligence; | | | | BSGR notes that Vale has agreed to produce "*internal documents, relating to its joint venture negotiations with BSGR between February and April 2010*" without reference to the specifics of BSGR's request.  Vale is, in effect, agreeing to produce documents in response to a different (unasked) request.  As explained above, it is Vale's position that documents evidencing Vale's internal decision making processes are relevant both to the issues of reliance and causation.  It is plainly inappropriate for Vale to rephrase BSGR's document requests and then decide which documents to produce in response to that request.  The range of documents that Vale has agreed to produce is sufficiently vague to make it impossible to judge at this stage to what extent Vale proposes to comply with the request at all. | The remainder of the Request is **GRANTED**. |
| (c) | technical due diligence; | | | | |
| (d) | legal due diligence; | | | | |
| (e) | BSGR's or BSGR Guernsey's or BSGR Guinea's acquisition of its exploration and mining rights in Zogota and Simandou Blocks 1 and 2; | | | | |
| (f) | the revocation of Rio Tinto's mining rights in Simandou Blocks 1 and 2; | | Further, it is BSGR's case that Vale was extremely keen to invest in BSGR Guernsey because Vale saw having an interest in the Simandou region as a key strategic objective (SoD, paras 7 and 95).  For this reason, amongst others, BSGR alleges that, even if any of its representations were false (which is denied), Vale would have entered into the joint venture had the misrepresentation(s) not been made (SoD, para 251).  The documents sought are relevant to the commercial reasoning behind Vale's eagerness and decision to invest in BSGR Guernsey, and, consequently, the extent to which it relied on statements made by or on behalf of BSGR. | | | |
| (g) | compliance with anti-bribery and corruption legislation; | | | | |
| (h) | the anti-bribery certifications given by Messrs Steinmetz and Clark; | | | | |
| (i) | the internal process whereby Vale resolved to enter into the Framework Agreement and the Shareholders' Agreement; and | | | The date range chosen by Vale is both arbitrary and unhelpful. Even if the negotiation regarding the joint venture were indeed limited to the period February to April 2010, | | |

| | | | | | Vale would have made a decision to enter into those negotiations in advance of that period.<br><br>BSGR is also entitled to know what considerations were taken into account by Vale prior to engaging with BSGR in relation to Simandou.<br><br>BSGR requires Vale to produce all documents responsive to this request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | |
|---|---|---|---|---|---|---|
| | (j)  suspicions, rumours or allegations regarding BSGR's business practices. | | | | | |
| 19. | In relation to the due diligence carried out by or on behalf of Vale in advance of and in contemplation of the Framework Agreement and the Shareholders' Agreement:<br><br>(a)  all documents, including reports/memoranda prepared by Ernst & Young (SoD, para 101(ix) and YT I, para 87);<br><br>(b)  all documents, including reports/memoranda | SoC, para 54 and 57(b)<br><br>AM I, para 19<br><br>EE I, para 31<br><br>YT I, para 87<br><br>Letters from Quinn Emanuel to the Honourable Andrew J Peck in the RICO Proceedings dated 26 May 2015, 10 June 2015 and 13 July 2015 | Vale states that it conducted "*an independent review of the principal entities and persons connected with Project Hills*" and that this included "*on-the-ground inquiries in Guinea and Liberia*". It provides no further details, however of what this "*independent review*" consisted of or what information it uncovered (SoC, para 57).<br><br>The only due diligence reports provided by Vale with its SoC are those due diligence questionnaires containing information provided to Vale by BSGR itself.  No reports prepared by third party advisers have been disclosed to date.<br><br>Vale is also silent on what steps it | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Vale also objects to this Request to the extent it purports to request documents protected by legal privilege.  *See* IBA Rules Art. 9(2)(b); General Objection 7. | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the documents requested are irrelevant and immaterial; nor is the request unduly burdensome.<br><br>BSGR notes that Vale has agreed to produce "*documents, relating to its due diligence between February and April 2010*" without reference to the specifics of BSGR's | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged documents, relating to its due diligence of BSGR between February and April 2010 subject to its General |

| | | | | |
|---|---|---|---|---|
| | prepared by Nardello & Co (referred to in letters from Quinn Emanuel to the Honourable Andrew J Peck dated 26 May 2015, 10 June 2015 and 13 July 2015); and<br><br>(c) any and all other documents, including reports/memoranda, whether commercial, financial, technical, or legal in nature, prepared by or on behalf of Vale by any third party. | | took to verify the information that BSGR had given it.  Disclosure on this issue is relevant to Vale's contention (which BSGR denies) that its due diligence process was "*especially rigorous*" (SoC, paras 55 and 56, SoD, paras 8 and 104).<br><br>BSGR is aware that, at a very minimum, Vale instructed Ernst & Young to conduct a review of the Guinean project payments (see SoD, para 101(ix) and YT I, para 87), and that it instructed Nardello & Co (a firm of investigators based in New York) to produce a report on BSGR (see letters from Quinn Emanuel dated 26 May 2015, 10 June 2015 and 13 July 2015).  Vale has not provided any documents or detail in relation to either of these investigations, nor in relation to any other investigation that it may have carried out.<br><br>These requests are therefore relevant and material to what Vale knew and/or discovered about BSGR and its business prior to entering into the Framework Agreement and the Shareholders' Agreement, the basis upon which Vale made the decision to enter into those agreements, as well as the extent to which Vale relied on statements made by or on behalf of BSGR (SoC, paras 96 and 284; SoD, para 251). | Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so.<br><br>Further, Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  What Vale "knew and/or discovered about BSGR" fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance.  Moreover, documents related to the *quality* of Vale's diligence have no bearing on Vale's claims or BSGR's counterclaims, for the reasons set forth in General Objection 2.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce** | request.  Vale is, in effect, agreeing to produce documents in response to a different (unasked) request.  As explained above, it is BSGR's position that documents evidencing Vale's internal consideration of the investment in BSGR Guernsey, prior to entering into the Framework Agreement, are relevant both to the issues of reliance and causation.  It is plainly inappropriate for Vale to rephrase BSGR's document requests and then decide which documents to produce in response to that request.  The range of documents that Vale has agreed to produce is sufficiently vague to make it impossible to judge at this stage to what extent Vale proposes to comply with the request, if at all.<br><br>The date range chosen by Vale is both arbitrary and unhelpful.  Even if the formal due diligence was limited to the same period as the negotiation regarding the joint venture, Vale would have carried out its own preliminary due diligence in advance of that period.<br><br>BSGR requires Vale to produce all documents responsive to this request. | Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **GRANTED**, subject to legal privilege. |

| | | | | reasonably responsive, non-privileged documents, relating to its due diligence of BSGR between February and April 2010 subject to its General Objections, and to the extent such documents exist. | In particular, BSGR is aware that Vale has, in the RICO Proceedings, resisted production of the Ernst & Young Report and the Nardello Report, ostensibly on grounds of privilege. Neither report was prepared by Vale's legal advisers, nor were those reports prepared in contemplation of litigation or arbitration.<br><br>In addition, although Vale has asserted that it "*has not waived privilege*" (see Vale's General Objection no 7), Vale relies extensively, in its Statement of Case, on its due diligence carried out in 2010 (including adducing a witness statement from the lawyer at Clifford Chance engaged in that due diligence), yet it now seeks to "cherry pick" those aspects of due diligence over which it intends to assert privilege. Such an approach is plainly inappropriate.<br><br>There is no basis upon which Vale is entitled to assert privilege over those reports; should those reports not be produced voluntarily, BSGR reserves the right to seek an order for specific disclosure of those reports and any documents created in connection with those | |

|  |  |  |  |  | reports.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. |  |
|---|---|---|---|---|---|---|
| 20. | In relation to "*extensive due diligence process*" undertaken by Vale, and by reference to the specific documents referred to at paragraph 57 of the SoC:<br><br>(a) all documents prepared for the purpose of, or referring to, the review of documents of potential interest provided by BSGR in an electronic data room;<br><br>(b) all documents prepared for the purposes of, or referring to, the review of principal entities and persons connected with Project Hills using online corporate and reputational databases, as well as on the ground enquiries in Guinea and Liberia; and | SoC, para 57. | Please see the comments above in relation to Requests 18 and 19.<br><br>Disclosure on this issue is relevant to Vale's contention (which BSGR denies) that its due diligence process was "*especially rigorous*" (SoC, paras 55 and 56; SoD, paras 8 and 104).<br><br>These requests are therefore relevant and material to what Vale knew and/or discovered about BSGR and its business prior to entering into the Framework Agreement and the Shareholders' Agreement, the basis upon which Vale made the decision to enter into those agreements, and the extent to which Vale relied on statements made by or on behalf of BSGR (SoC, paras 96 and 284; SoD, para 251). | Vale objects to this Request to the extent it purports to request documents protected by legal privilege.  *See* IBA Rules Art. 9(2)(b); General Objection 7.  Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so.<br><br>Vale also objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  Whether Vale was "extremely keen to invest in BSGR Guernsey" is irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to | In light of Vale's eventual agreement to provide documents responsive to this request, in the interests of proportionality, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the documents requested are irrelevant and immaterial.<br><br>BSGR notes that Vale has agreed to produce "*documents, relating to its due diligence between February and April 2010*" without reference to the specifics of BSGR's request.  Vale is, in effect, agreeing to produce documents in response to a different (unasked) request.  As explained above, it is BSGR's position that documents evidencing Vale's internal consideration of the investment in BSGR Guernsey, prior to entering into the Framework Agreement, are relevant both to the issues of reliance and causation.  It is plainly inappropriate for Vale | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents, relating to its due diligence of BSGR between February and April 2010 subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** on the basis of legal privilege. |

| | | | | | |
|---|---|---|---|---|---|
| | (c) all documents prepared for the purpose of, or referring to, advice from local counsel in Guinea regarding compliance with local law. | | | raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance.  Moreover, documents related to the *quality* of Vale's diligence have no bearing on Vale's claims or BSGR's counterclaims, for the reasons set forth in General Objection 2.<br><br>Further, Vale objects to this Request because it is duplicative, as any arguably relevant documents would be included under Request 18.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents, relating to its due diligence of BSGR between February and April 2010 subject to its General Objections, and to the extent such documents exist.** | to rephrase BSGR's document requests and then decide which documents to produce in response to that request. The range of documents that Vale has agreed to produce is sufficiently vague to make it impossible to judge at this stage to what extent Vale proposes to comply with the request, if at all.<br><br>The date range chosen by Vale is both arbitrary and unhelpful. Even if the formal due diligence was limited to the same period as the negotiation regarding the joint venture, Vale would have carried out its own preliminary due diligence in advance of that period.<br><br>In addition, although Vale has asserted that it "*has not waived privilege*" (see Vale's General Objection no 7), Vale relies extensively, in its Statement of Case, on its due diligence carried out in 2010, yet it now seeks to "cherry pick" those aspects of due diligence over which it intends to assert privilege.  Such an approach is plainly inappropriate.  Should responsive documents not be produced voluntarily, BSGR reserves the right to seek an order for specific disclosure of those documents. | |

|  |  |  |  |  | BSGR requires Vale to produce all documents responsive to this request.

For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. |  |
|---|---|---|---|---|---|---|
| 21. | Report prepared by Messrs Etchart, Alves, Henning and others following Vale's site visit on 11 March 2010 (see EE I, para 27), and all other documents referring to that report. | EE I, para 27 | Etchart para 27 states that following a visit to the Simandou site on 11 March 2010, he and his colleagues prepared a report "*to assist the economic valuation of the project*". This report apparently "*recommended proceeding with commercial discussions*". Vale does not provide the report, in spite of a reference to it in the witness statement of Mr Etchart, or any documents referring to it.

It is BSGR's case that Vale was extremely keen to invest in BSGR Guernsey because Vale saw having an interest in the Simandou region as a key strategic objective (SoD, paras 7 and 95). For this reason, amongst others, BSGR alleges that, even if any of its representations were false (which is denied), Vale would have entered into the joint venture had the misrepresentation(s) not been made (SoD, para 251). The documents sought are relevant to the commercial reasoning behind Vale's eagerness and decision to invest in BSGR Guernsey, and consequently the extent to which it | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Whether Vale was "extremely keen to invest in BSGR Guernsey" is irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. Further, BSGR, in this as in other | BSGR notes Vale's eventual agreement to produce the requested document. In light of that agreement, and in the interests of proportionality, BSGR does not propose to respond to Vale's objections to this request. | **NO DECISION** is required. The Tribunal notes that Vale has agreed to "produce the requested report," and BSGR "does not propose to respond to Vale's objections to this request." |

| | | | relied on statements made by or on behalf of BSGR. | Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.  Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions." **Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce the requested report.** | | |
| --- | --- | --- | --- | --- | --- | --- |
| 22. | All documents prepared for the purpose of, or referring to, Vale's joint visit to Conakry with BSGR and Guinean | EE 1, para 28 | Mr Etchart states (para 28) that Vale and BSGR executives met with Guinean government officials and the Guinean President on 15 and 16 | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not | BSGR denies that the requested documents are irrelevant and immaterial for the purposes of this | The request is **GRANTED**. |

| | | | | |
|---|---|---|---|---|
| government officials on 15 and 16 April 2010 (EE I, para 28). | | April 2010.<br><br>The documents requested are relevant and material to what information Vale gleaned from this meeting and how this contributed to Vale's evaluation of the deal. The documents are, consequently, relevant and material to the extent to which Vale relied on statements made by or on behalf of BSGR in deciding to enter into the joint venture (SoC, paras 96 and 284; SoD, para 251). | material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. What Vale "gleaned" from its joint visit to Conakry with BSGR and Guinean government officials, and Vale's evaluation of the deal on that basis, fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. | arbitration.<br><br>The meetings referred to by Mr Etchart in his witness statement took place almost immediately prior to the signing of the Framework Agreement and the Shareholders' Agreement, and so form an essential element in the narrative. As explained above, it is BSGR's position that information gleaned by Vale prior to entering into the Framework Agreement evidences the extent to which Vale relied on statements made by or on behalf of BSGR and the extent to which statements made by or on behalf of BSGR caused Vale's alleged loss.<br><br>In addition, having agreed to produce documents relating to its internal consideration of the joint venture and due diligence as regards the joint venture, Vale should not be allowed to "cherry pick" those aspects of its information gathering exercise disclosed in this arbitration.<br><br>BSGR respectfully seeks an order that Vale produce the requested documents. | |
| 23. | All of Vale's anti-bribery and corruption policies in force as at the date of the Framework | SoC, para 55<br><br>AM I, para 19 | Vale's case is that it carried out "*especially rigorous*" due diligence in respect of the deal because of | Vale objects to this Request because the requested documents are irrelevant to | BSGR denies that the requested documents are irrelevant and immaterial for | **NO DECISION** is required in relation to at |

| | Agreement and the Shareholders' Agreement. | GK I, para 5 | concerns about BSGR's reputation (SoC, para 55), whereas BSGR's case is that the due diligence was no more rigorous than normal for this type of deal and the FCPA investigation conducted by Vale was in line with standard practice, as it was listed on the New York Stock Exchange (SoD, paras 8 and 104-108).<br><br>The documents requested are relevant to determining whether Vale's FCPA due diligence went beyond the requirements of its standard anti-bribery and corruption policies. | this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  As set forth in General Objection 2, Vale's due diligence is irrelevant as a matter of English law, and it was necessary for Vale as a public company and a U.S. issuer to obtain BSGR's representations before entering into the joint venture.  (SoC ¶ 96). Documents related to the *quality* of Vale's diligence, therefore, have no bearing on Vale's claims or BSGR's counterclaims.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce any anti-bribery and corruption policies in force as at the date of the Framework Agreement and the Shareholders' Agreement, subject to its General Objections, and to the extent such documents exist.** | the purposes of this arbitration.<br><br>BSGR notes Vale's eventual agreement to produce the requested documents, and on that basis, BSGR does not propose to respond to Vale's objections any further, save that, for the reasons set out earlier, the caveats in Vale's proposed formulation should not form part of the final order. | least part of this Request.  The Tribunal notes that Vale has agreed to "produce any anti-bribery and corruption policies in force as at the date of the Framework Agreement and the Shareholders' Agreement, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **GRANTED**. |
| 24. | In relation to the interviews with Messrs Avidan, Struik, Tchelet and Cramer in April 2010 (see SoC para 69, SoD para 101(v)): | SoC, para 68 et seq.<br><br>AM I, para 20 - 50 | Vale refers to these meetings/interviews in some detail in its SoC and places great significance upon them.  Vale does not, however, provide any documents in relation to them other than generic emails | Vale objects to this Request to the extent it purports to request documents protected by legal privilege.  *See* IBA Rules Art. 9(2)(b); General Objection 7.  Unlike BSGR, | BSGR notes Vale's eventual agreement to produce the requested documents, and on that basis, BSGR does not propose to respond to Vale's objections in detail.  As above, | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes |

| | | | | | |
|---|---|---|---|---|---|
| | (a) all documents recording the discussions at those meetings; and<br><br>(b) all documents prepared for the purposes of, or referring to those interviews. | | regarding the administrative arrangements for the meetings.<br><br>On Vale's own case, these interviews were a significant component of the due diligence process. It is, therefore, incumbent upon Vale to disclose documents evidencing its internal considerations and analysis both before and after the meetings.<br><br>The documents requested are relevant to the dispute over whether Vale (1) had concerns about BSGR's reputation and (2) raised those concerns with anyone at BSGR during the due diligence process (SoC, para 55; SoD, paras 105-106 and AM I, para 37).<br><br>Further, it is BSGR's case that Vale was extremely keen to invest in BSGR Guernsey because Vale saw having an interest in the Simandou region as a key strategic objective (SoD, paras 7 and 95). For this reason, amongst others, BSGR alleges that, even if any of its representations were false (which is denied), Vale would have entered into the joint venture had the misrepresentation(s) not been made (SoD, para 251).<br><br>The documents sought are relevant to the commercial reasoning behind Vale's eagerness and decision to invest in BSGR Guernsey, and, consequently, the extent to which it relied on statements made during the interviews with Messrs Avidan, | which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so.<br><br>Whether Vale was "extremely keen to invest in BSGR Guernsey" is irrelevant to Vale's claims or BSGR's counterclaims, and the *ipse dixit* assertion – that "Vale would have entered into the joint venture had the misrepresentation(s) not been made" – likewise fails both to raise any issue regarding the presumption of reliance on BSGR's material representations that it had not engaged in any corrupt activity, or the fact that as a public company and a U.S. issuer, it was necessary for Vale to obtain these representations to ensure FCPA compliance. Moreover, documents related to the quality of Vale's diligence have no bearing on Vale's claims or BSGR's counterclaims, for the reasons set forth in General Objection 2. Further, BSGR, in this as in other Requests related to Vale's reliance, essentially posits that any interest of Vale in Simandou or in a joint venture with | the caveats in Vale's proposed formulation should not form part of the final order. | that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents discussing the interview of Messrs. Avidan, Struik, Tchelet and Cramer in April 2010, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **GRANTED**, subject to legal privilege. |

| | | | Struik, Cramer and Tchelet. | BSGR is relevant to a supposed lack of reliance on BSGR's actual representations, but this is self-evidently absurd, as it would make any claimant's interest in entering into a transaction a defence to fraud by its counterparty in inducing it to do so, and would open the gates to precisely the kind of limitless discovery that BSGR has proposed.  Vale indisputably had an interest in Simandou, but whether Vale's interest happened to be hesitant, moderately keen or very keen, provides no plausible basis for BSGR's Request.  BSGR is seeking to elevate normal business interest to collusion or acquiescence in corruption simply in order to support its own "fishing expeditions." **Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents discussing the interview of Messrs. Avidan, Struik, Tchelet and Cramer in April 2010, subject to its General Objections, and to the extent such documents exist.** | | |

| 25. | All documents prepared for the purpose of, or referring to, the conference call involving representatives of BSGR, Vale and Mr Thiam. | SoC, para 74<br><br>AM I, para 16, 17 | Vale relies on a conference call with Mr Thiam in March 2010 during which he confirmed that "*BSGR has legal rights to the Mining Areas*". Mr Monteiro explains that he thought Mr Thiam's confirmation was of particular value because he was a third party and had not been involved in the issuing of the rights in question.<br><br>Other than to say that Mr Thiam confirmed the legality of BSGR's rights, Vale provides no further information on the content of the call.<br><br>The documents requested are therefore relevant and material to the content of the conference call, what Vale thought about it at the time and whether it was significant in relation to Vale's decision to enter into the Framework Agreement and the Shareholders' Agreement. They are consequently relevant to the issue of Vale's reliance on representations made by BSGR in deciding to enter into the joint venture (SoC, paras 26 and 284; SoD, para 251). | **Vale agrees to produce reasonably responsive, non-privileged, internal documents, discussing the conference call involving representatives of BSGR, Vale and Mr. Thiam, subject to its General Objections, and to the extent such documents exist.** | BSGR notes Vale's agreement to produce the requested documents. As above, the caveats in Vale's proposed formulation should not form part of the final order. | **NO DECISION** is required in relation to at least part of this Request. The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents, discussing the conference call involving representatives of BSGR, Vale and Mr. Thiam, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad and unduly burdensome in accordance with Vale's general objections one and four. |

| 26. | All documents passing between Vale (including VBG Guernsey and VBG Guinea) and the Government of Guinea and/or the CPDM between 30 April 2010 and 28 April 2014 in relation to:<br><br>(a) the Government of Guinea's failure to respond to VBG Guinea's feasibility study for Simandou Blocks 1 and 2 (SoC para 114);<br><br>(b) the Government of Guinea's order that VBG Guinea cease works in Guinea, including on the Conakry-Kankan railway;<br><br>(c) indications from the Government of Guinea that it would not allow VBG Guinea to export iron ore via Liberia;<br><br>(d) the decision of the Government of Guinea to evaluate the relationship with VBG Guinea, communicated by the letter from the Minister of Mines | SoC, para 102 et seq.<br><br>SoD, para 134 and 135<br><br>RS I, paras 49 to 51<br><br>Exhibit C-63<br><br>Exhibit C-64<br><br>Exhibit C-78<br><br>Exhibit C-215<br><br>Exhibit R-73<br><br>Exhibit R-75 | Vale alleges that the decision to suspend all work at both Zogota and Simandou Blocks 1 and 2 "*was initially due to the Guinean government's reversal of its approval for export … through Liberia*" and that "*in relation to Simandou, the government never responded to the feasibility study*" (RS I, para 49).<br><br>Vale also alleges that the Technical Committee investigation "*was the primary reason the operation remained suspended from 2012 until …April 2014*" (RS I, para 50).<br><br>Vale does not appear to have provided evidence of all of the communications by which it was made aware of the alleged decisions of the Government of Guinea referred to in paragraphs (a)-(e) of this request.<br><br>The documents requested are relevant and material to Vale's compliance with its obligations under the Framework Agreement and the Shareholders' Agreement, and in particular, whether, as alleged by BSGR, from 2011 Vale sought a way out of the joint venture (SoD, paras 174 – 177).<br><br>The documents requested will also evidence the extent to which Vale complied with its duty to mitigate its loss (SoD, paras 267, 269), and whether, as alleged by BSGR, Vale has failed in that duty (SoD, paras | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objection 1.  BSGR's request for "all documents" is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Vale also objects to this Request because, by definition, any relevant documents relating to VBG would be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6. | BSGR denies that the request lacks specificity, is excessively broad or is unduly burdensome.  The request relates solely to documents passing between Vale (or its subsidiaries) and the Government of Guinea and an agency of that government and in relation to a series of very specific matters, all of which are addressed in the submissions filed by both parties.  It is, in BSGR's submission, unlikely that the volume of documents covered by this request would be excessive.  Vale has given no indication to that effect.<br><br>As regards Vale suggestion that certain documents would already be in the possession, custody or control of BSGR, responsive documents held by Vale are self-evidently not in the possession, custody or control of BSGR.  As regards the period between 30 April 2010 and 13 March 2015 (namely, between the signing of the Framework Agreement and BSGR's subsequent repurchase of Vale's shares in BSGR Guernsey) BSGR had no active involvement in the day to day management of the joint venture.  Following | The Request is **GRANTED**. |

| | | | | | |
|---|---|---|---|---|---|
| | dated 17 November 2011; and<br><br>(e) the decision of the Government of Guinea, communicated to VBG Guinea by letter dated 30 October 2012, to conduct an investigation into the manner in which BSGR and/or BSGR Guernsey and/or BSGR Guinea obtained their exploration and mining rights. | | 269, 307). | | BSGR's repurchase of shares in BSGR Guernsey, it has not had access to all electronic and hard copy records from the earlier period.<br><br>BSGR respectfully seeks an order that Vale produce the requested documents. | |
| 27. | In relation to the Government of Guinea's decision to conduct an investigation into the manner in which BSGR and/or BSGR Guernsey and/or BSGR Guinea obtained their exploration and mining rights, all internal Vale documents referring to:<br><br>(a) the decision to carry out that investigation; and<br><br>(b) Vale's (including VBG Guernsey's and VBG Guinea's) decision to cease work on the Simandou project. | SoC, para 102<br><br>RS I, paras 49 and 50 | Please see the comments above in relation to Request 26.<br><br>Vale also alleges that the Technical Committee investigation "*was the primary reason the operation remained suspended from 2012 until ...April 2014*" (RS I, para 50).<br><br>Vale has provided no evidence of its internal decision making processes in response to the Government of Guinea's decision to conduct an investigation into the manner in which BSGR and/or BSGR Guernsey and/or BSGR Guinea obtained their exploration and mining rights.<br><br>The documents requested are relevant and material to Vale's compliance with its obligations under the Framework Agreement and the Shareholders' Agreement, and in | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome. *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request would conceivably require the review of thousands of documents spanning dozens of individuals over an undefined time period.   It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Vale also objects to this Request because, by definition, any relevant documents | BSGR notes Vale's eventual agreement to produce the requested documents.  On that basis, BSGR does not propose to respond to Vale's objections in detail, save that BSGR denies that the request is non-specific, vastly overbroad and unduly burdensome.  The mere fact that Vale is able to produce documents responsive to this request proves that there is nothing unduly burdensome about this request.<br><br>In addition, for the reasons stated above in relation to Request no 26, BSGR denies that the requested documents are in its possession, custody or control.  On that basis, | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, internal documents referring to the Government of Guinea's decision to conduct an investigation and Vale's decision to cease work on the Simandou |

| | | | particular, whether, as alleged by BSGR, from 2011 Vale sought a way out of the joint venture (SoD, paras 174 – 177).<br><br>The documents requested will also evidence the extent to which Vale complied with its duty to mitigate its loss (SoD, paras 267, 269), and whether, as alleged by BSGR, Vale has failed in that duty (SoD, paras 269, 307). | relating to "VBG Guernsey's and VBG Guinea's decision to cease work on the Simandou project" would be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents referring to the Government of Guinea's decision to conduct an investigation and Vale's decision to cease work on the Simandou project, subject to its General Objections, and to the extent such documents exist.   Indeed, it is Vale's position that it was "in the best interest of [the] joint venture for BSGR to provide a complete and direct response [to the Technical Committee's allegations] with respect to events prior to Vale's investment in VBG." (SoC ¶ 245; Exhibit C-190).** | BSGR requires Vale to produce all documents responsive to this request, including those documents created by VBG Guernsey and VBG Guinea, and respectfully seeks an order to that effect.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | project, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad and unduly burdensome. |
| 28. | In relation to the US$945 million claimed by Vale, in addition to the US$500 million | SoC, para 129<br><br>SoD, paras | Vale claims to have invested around US$945 million in Simandou, in addition to US$500 million paid to | Vale objects to part (a) of this Request, to the extent it relates to depreciation or | BSGR notes Vale's agreement to produce documents in response to Request no 28(c). | **NO DECISION** is required in relation to at |

| | | | | | |
|---|---|---|---|---|---|
| | it paid to BSGR upon execution of the Framework Agreement (SoC para 129):<br><br>(a) all documents relating to the depreciation of the assets referred to in the same;<br><br>(b) all documents relating to the current location and uses for the assets referred to in the same; and<br><br>(c) all documents relating to the sale of any assets referred to in the same. | 266(iii), 267<br><br>RS I, paras 24, 31 and 52-53<br><br>Exhibit C-62, p. 5 | BSGR, and claims that amount in this arbitration.  Vale has not provided sufficient details regarding that capital expenditure (SoC, paras 125-129).<br><br>For example, Vale alleges a loss of US$119.4 million as "*Equipment for the Plant Operation*" but fails to state the current value or location of that equipment or if sold, the sale price of the equipment (Exhibit C-62, p. 5, SoD, para 266(iii)).  Any capital equipment acquired by Vale in the course of its involvement in Simandou retains a value, although Vale has failed to take account of that in its SoC. BSGR has stated that it cannot respond in any detail to the sums claimed by way of wasted expenditure until Vale provides a detailed breakdown, as well as an account showing the current value of any assets purchased (SoD, para 266(iii)).<br><br>By way of another example, Vale states that the feasibility study cost about US$85.4 million (RS I, para 31) but does not attribute a value to that feasibility study.  Vale is required to give full credit for the value of the works on the Feasibility Study (SoD, para 267).<br><br>The documents requested are relevant to the quantification of Vale's loss, by attributing appropriate values to its assets.  In addition, the documents requested will also demonstrate the extent to which | current use (other than by Vale) of assets paid for by Vale on the ground that this information is irrelevant to Vale's expenditure on these assets, which is the measure of this heading of its loss when VBG's concession was revoked as a result of BSGR's bribery and corruption.  (*See, e.g.*, SoC ¶¶ 294, 308, 332).<br><br>Vale also objects to part b) of this Request as any assets still owned by VBG are, by definition, in the possession of BSGR, and thus any relevant documents would be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Subject to these objections, Vale will produce reasonably responsive, non-privileged documents relating to the sale of any assets referred to in SoC ¶ 129 or continued use of such assets by Vale, subject to its General Objections, and to the extent such documents exist.** | As regards Request no 28(a), BSGR denies that the documents requested are irrelevant. Even if Vale was to succeed in respect of its claim, plainly it would not be entitled to recover in respect valuable assets which it continues to hold and has use of the same. Those assets must be valued accurately.<br><br>As regards Request no 28(b), for the reasons referred to in response to Request no 26, BSGR does not hold all of the documents relating to assets held by VBG Guernsey and/or VBG Guinea.<br><br>The documents falling with Request no 28(a) and (b) are both, therefore, plainly relevant to the issue of mitigation, and BSGR respectfully seeks an order for production of the same, including those documents in the possession, custody or control of Vale and generated by VBG Guernsey and/or VBG Guinea.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged documents relating to the sale of any assets referred to in SoC ¶ 129 or continued use of such assets by Vale, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as lacking sufficient relevance. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | Vale has complied with its duty to mitigate its losses (SoD, paras 267, 269 and 307). | | | |
| 29. | In relation to work carried out by Vale and/or VBG Guernsey and/or VBG Guinea in relation to the Simandou Project, including the supplemental work carried out following the work BSGR had done on Zogota and the work undertaken in relation to the Feasibility Study for Simandou Blocks 1 and 2, between 30 April 2010 and 28 April 2014, all documents containing:<br><br>(a) technical analysis;<br><br>(b) commercial analysis;<br><br>(c) financial analysis; and<br><br>(d) internal consideration of the same. | SoC, para 103 et seq<br><br>SoD, para 177<br><br>RS I, para 21 et seq | Mr Saad states that the "feasibility study [Vale] conducted for Simandou … was far more comprehensive and detailed than the report BSGR provided on Zogota.  In any case, [Vale] had to complete and supplement most of the work BSGR had done on Zogota before [Vale] could make preparations for exploiting the mine" (RS 1, para 22).<br><br>Vale has not provided documents in support of Mr Saad's allegation.  Mr Saad's statement implies that BSGR's work alone would have been insufficient to enable mining of iron ore, and that the potential for any mine exploitation was entirely a result of the work of Vale.<br><br>The documents requested are relevant to an assessment of the assertion that BSGR had not carried out adequate work prior to the joint venture with Vale and an assessment of the assertion that it was predominantly Vale's efforts which gave rise to the potential for exploitation of the Simandou and Zogota mines.<br><br>The documents requested are relevant to the quantification of Vale's alleged loss and the extent to which Vale has complied with its duty to mitigate its losses (SoD, paras 267, 269, 307).<br><br>The documents sought are relevant | Vale objects to this Request as any relevant documents relating to work carried out in relation to the Simandou Project, including the supplemental work carried out on Zogota and the work undertaken in relation to the Feasibility Study for Simandou Blocks 1 and 2 between 30 April 2010 and 28 April 2014 – i.e., following the formation of the joint venture – would, by definition, be in BSGR's possession.  See IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>Further, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas."  (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price.").  The language could not be clearer: Vale is obligated to pay the balance of the purchase price | Vale's primary objection to this request appears to be that documents generated by VBG Guernsey and/or VBG Guinea are already in the possession, custody or control of BSGR.  For the reasons explained above, even though BSGR now controls VBG Guernsey and VBG Guinea, it does not hold all of the documents generated by those entities in the period when Vale managed the joint venture.<br><br>BSGR notes that Vale has agreed to produce "invoices showing the [sic] Vale's expenditures in connection with such work between 30 April 2010 and 28 April 2014" without reference to the specifics of BSGR's request.  Vale is, in effect, agreeing to produce documents in response to a different (unasked) request.<br><br>BSGR maintains its request on the grounds that the requested documents relate both to the quantification of Vale's alleged loss and BSGR's counterclaim.  BSGR respectfully seeks an order for production of the requested | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce invoices showing the Vale's expenditures in connection with such work between 30 April 2010 and 28 April 2014, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad. |

| | | | to BSGR's submission that from about March 2011, when Mr Ferreira replaced Mr Agnelli as CEO of Vale, Vale had resolved not to pursue the Simandou "option", and "*set about extricating itself from the joint venture*" (SoD, para 177).<br><br>Vale asserts that it proceeded with the project in a diligent and timely fashion. BSGR's position is that, in breach of contract, Vale facilitated the expropriation of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's rights because, by this time, it sought an exit from the joint venture. Evidence of Vale's communications with and commitments to the Government of Brazil in this regard is central to BSGR's counterclaim. | if certain conditions are met in the future, and otherwise not. This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce invoices showing the Vale's expenditures in connection with such work between 30 April 2010 and 28 April 2014, subject to its General Objections, and to the extent such documents exist.** | documents on that basis.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | |
|---|---|---|---|---|---|---|
| 30. | All documents passing between Vale and/or VBG Guernsey and/or VBG Guinea and the Government of Guinea evidencing the allegedly repeated attempts to "*engage the Government concerning the feasibility study*". | SoC, para 114<br><br>RS 1, para 32 | Please see the comments above in relation to Request 26.<br><br>Vale provides no documents which demonstrate that it repeatedly engaged the Government of Guinea to approve the feasibility study for Simandou. The documents requested will demonstrate whether such effort was in fact made, and are relevant to Vale's efforts to protect the rights of BSGR and/or BSGR Guernsey and/or BSGR Guinea (SoD, paras 185 to 189).<br><br>It is Vale's position that it proceeded with the project in a diligent and timely fashion. It is BSGR's position that, in breach of contract, Vale | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome. *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4. BSGR's request for "all documents" is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Vale also objects to this Request because, by definition, any relevant documents passing between VBG | As above, Vale objects to the request on the grounds that it would impose an unreasonable burden on Vale; only then to indicate willingness to produce the requested documents. In light of that agreement, BSGR does not propose to respond to Vale's objections.<br><br>For the reasons explained above, BSGR requires Vale to produce those documents generated or held by VBG Guernsey and/or VBG Guinea. As above, the caveats in Vale's proposed formulation should not form part of the final | **NO DECISION** is required in relation to at least part of this Request. The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged, documents passing between Vale and the Government of Guinea between 30 April 2010 and |

| | | facilitated the expropriation of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's rights because it sought an exit from the joint venture.  Evidence of Vale's actions in this regard is central to BSGR's counterclaim (SoD, paras 174 to 189).<br><br>The documents requested are relevant and material to the extent to which Vale complied with its obligations under the Framework Agreement and the Shareholders' Agreement.<br><br>The documents requested will also demonstrate the extent to which Vale has complied with its duty to mitigate its losses (SoD, paras 267, 269, 307). | Guernsey and/or VBG Guinea and the Government of Guinea would be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, documents passing between Vale and the Government of Guinea  between 30 April 2010 and 28 April 2014 regarding Vale's attempts to "engage the Government concerning the feasibility study," subject to its General Objections, and to the extent such documents exist.** | order. | 28 April 2014 regarding Vale's attempts to 'engage the Government concerning the feasibility study,' subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad. |
|---|---|---|---|---|---|
| 31. | All activity reports sent by Vale and/or VBG Guernsey and/or VBG Guinea to the Government of Guinea on a quarterly basis (SoC, para 115). | SoC, para 115<br><br>RS I, para 8 | Please see the comments in relation to Requests 26, 29 and 30.<br><br>The documents requested are relevant and material to proving or disproving the parties' positions in their respective memorials, including the extent to which Vale complied with its obligations under the Framework Agreement and the Shareholders' Agreement. | Vale objects to this Request because any activity reports sent by VBG Guernsey and/or VBG Guinea to the Government of Guinea would have been provided to the VBG Board and thus, by definition, be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>Further, to the extent BSGR claims that certain activity reports were not provided to | In the interests of proportionality, and without prejudice to its position that this request is valid for the purposes of the IBA Rules, BSGR does not pursue this request. | **NO DECISION** is required in relation to this Request.  The Tribunal notes BSGR's reply, which provides that "BSGR does not pursue this request." |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | the VBG Board, BSGR has failed to specify a sufficiently narrow category of documents that it does not possess through the VBG Board.  Vale thus objects to this Request which as framed is non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request for "all activity reports" sent over an undefined time period is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a). | | |
| 32. | In relation to the Technical Committee's investigation into the award of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's exploration and mining rights:<br><br>(a) all documents passing between the Government of Guinea/the CPDM and BSGR and/or BSGR Guernsey and/or BSGR Guinea;<br><br>(b) all documents | SoC, para 102<br><br>RS I, para 51 | At paragraph 102 of the SoC, Vale refers to the letter received by VBG Guinea on 30 October 2012, announcing the Government of Guinea's intention to investigate the granting of the mining rights to BSGR and/or BSGR Guernsey and/or BSGR Guinea.<br><br>Mr Saad states that Vale "*engaged in correspondence with the Technical Committee and negotiations with Guinean officials … in an effort to resolve the problems that had arisen*" (RS I, para 51); however no correspondence is exhibited in support of this assertion. | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request, which fails to identify any specific individual or entity with which Vale allegedly shared documents and spans an undefined time period is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. | BSGR denies that its request is lacking in specificity or excessively broad or burdensome.  BSGR seeks documents passing between clearly defined parties.<br><br>BSGR also denies that the requested documents are within its possession, custody or control, given the difficulties experienced by BSGR in relation to documents generated or held by VBG Guernsey and/or VBG Guinea.<br><br>BSGR notes Vale's agreement | **NO DECISION** is required in relation to this Request.  The Tribunal notes that Vale has agreed to "produce any further reasonably responsive, non-privileged, documents passing between Vale and the Government of Guinea between |

| | | | | | |
|---|---|---|---|---|---|
| | establishing Vale's internal consideration of the allegations made by the Government of Guinea in relation to BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's acquisition of rights; and<br><br>(c) all documents sent to or from Vale in relation to that investigation. | | BSGR's position in its SoD is that, in breach of the Framework Agreement and the Shareholders' Agreement, Vale facilitated the expropriation of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's rights by, inter alia, failing to dispute the lawfulness of the Technical Committee review process because, by this time, it sought an exit from the joint venture "*or re-engagement with the GoG on more favourable terms*" (AA 1, para 164, SoD paras 18(iv), 20 and 329(i)).<br><br>The documents requested will demonstrate how Vale responded to the investigation, the extent to which it acted in the best interests of the joint venture during the investigation and whether, as alleged by BSGR in its counterclaim, Vale failed to promote the best interests of VBG Guernsey and VBG Guinea (SoD, paras 327 to 330). | 9(2)(a).<br><br>Vale also objects to this Request because, by definition, any relevant documents passing between BSGR and/or VBG Guernsey and/or VBG Guinea and the Government of Guinea would be in BSGR's possession.  *See* IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>Further, Vale has already produced Vale's and VBG Guinea's correspondence with the Government of Guinea referenced in Mr. Saad's statement as Exhibits in support of SoC, Section V(G)(1).  (*See* C-179 -C-187, C-192-C-194,  C-196, C-201-C-204).<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce any further reasonably responsive, non-privileged, documents passing between Vale and the Government of Guinea between October 2012 and 18 April 2014 in relation to the Technical Committee's investigation of BSGR's corrupt activities, subject to its General Objections, and to the extent such** | to provide the requested documents for the period between October 2012 and 18 April 2014.  Without prejudice to BSGR's position that responsive documents may have been created outside of that time period, in the interests of proportionality, BSGR does not at this stage seek an order from the Tribunal in relation to this request (beyond that proffered by Vale), although it reserves the right to do so if, in light of Vale's production in response to this request, it becomes apparent that further responsive documents exist and should be disclosed.  As above, the caveats in Vale's proposed formulation should not form part of the final order.<br><br>For the avoidance of doubt, BSGR objects to Vale's characterisation of the Technical Committee's work as an "*investigation of BSGR's corrupt activities*".  BSGR denies having engaged in bribery or corruption and Vale's use of that phrase in this Request to Produce is no more than a crude attempt to cause prejudice to BSGR. | October 2012 and 18 April 2014 in relation to the Technical Committee's investigation of BSGR's corrupt activities, subject to its General Objections, and to the extent such documents exist."  The Tribunal further observes BSGR's statement that it "does not at this stage seek an order from the Tribunal in relation to this request (beyond that proffered by Vale)."<br><br>In the next sentence, BSGR also states that "the caveats in Vale's proposed formulation should not form part of the final order."  Given that **NO DECISION** is required in relation to this Request, the Tribunal declines |

| | | | | documents exist. | | to rule on BSGR's latter request. |
|---|---|---|---|---|---|---|
| 33. | All documents passing between Vale and the Government of Brazil and/or its representatives and/or agencies between 2010 and 2014 in relation to:<br><br>(a) Vale's investment in Guinea; and<br><br>(b) the policy of the Government of Brazil to encourage Brazilian companies to invest in domestic industries. | SoD, paras 19 and 176, 177<br><br>DP I, para 32<br><br>Exhibit R-17<br><br>Exhibit R-18<br><br>Exhibit R-19<br><br>Exhibit R-20<br><br>Exhibit R-227<br><br>Exhibit R-228 | Vale's change of position vis-à-vis the Liberian Transport Solution occurred at about the same time as a change in Vale's management. As detailed in the SoD (paras 19 and 176) and Mr Pollak's witness statement (para 32), the new management team "*had loyalties to the President of Brazil who had an 'invest in Brazil' agenda*".<br><br>It has been reported by Bloomberg and the Financial Times that the Brazilian government had been critical of Vale's failure to invest more in domestic industries and wanted Vale to help revive Brazil's steel and shipbuilding industries (DP I, para 32 and the articles cited therein).  This suggests that there has been communication between the Government of Brazil and Vale.<br><br>The documents requested are relevant and material to Vale's evolving relationship with the Government of Brazil and consequently, to BSGR's case that the Brazilian government's agenda influenced Vale's decision to extricate itself from the joint venture (SoD, paras 176-177). | Vale objects to this Request because it is on its face irrelevant and not material to the outcome of this case and is wholly speculative.  In short, this Request is a "fishing expedition" in the guise of disclosure and as such is clearly improper.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a).<br><br>Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  BSGR's request for "all documents" passing between the Government of Brazil and/or any of its representatives or agencies is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).  BSGR has also failed to define in any meaningful way Vale's "investment in Guinea" and the Government of Brazil's policy "to encourage Brazilian companies to invest in domestic | BSGR's request is, self-evidently, relevant and material.  It is BSGR's position that, insofar as Vale allowed its decisions to be dictated by the Brazilian government and in a way which was not in the best interests of the joint venture, those documents should be produced.<br><br>BSGR also rejects Vale's objections on the grounds that the request lacks specificity, is overbroad or unduly burdensome.  BSGR seeks the production of documents passing between specific names parties, in a clearly defined date range and in relation to two narrow issues.<br><br>As Vale is aware, the "investment in Guinea" is a clear and unambiguous reference to Vale's investment in VBG Guernsey; equally clear is the reference to the Government of Brazil's policy to encourage Brazilian companies to invest in domestic industries.  No further explanation is required.<br><br>BSGR respectfully seeks an order for the production of | The Request is **DENIED** as overly broad and lacking sufficient relevance. |

| | | | | industries" and thus has failed to sufficiently particularize the scope of this Request. | the requested documents. | |
|---|---|---|---|---|---|---|
| 34. | All internal Vale documents in relation to Vale's consideration of the policy of the Government of Brazil to encourage Brazilian companies to invest in domestic Brazilian industries. | SoD, paras 19 and 176, 177<br><br>DP I, para 32<br><br>Exhibit R-17<br><br>Exhibit R-18<br><br>Exhibit R-19<br><br>Exhibit R-20<br><br>Exhibit R-227<br><br>Exhibit R-228 | Please see the comments in relation to Request 33. | Vale objects to this Request because it is on its face irrelevant and not material to the outcome of this case and is wholly speculative.  In short, this Request is a "fishing expedition" in the guise of disclosure and as such is clearly improper.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a).<br><br>Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4. BSGR's request for "all documents" passing between the Government of Brazil and/or any of its representatives or agencies is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).  BSGR has also failed to define in any meaningful way the Government of Brazil's policy "to encourage Brazilian companies to invest in domestic industries" and thus has failed to sufficiently | BSGR once again repeats its comments in relation to Request no 33.<br><br>Vale has, one suspects wilfully, confused Request nos 33 and 34.  To be clear, those requests are not duplicative, as suggested by Vale.  Request no 33 relates to documents passing between Vale and the Government of Guinea (or parties associated with the Government of Guinea). Request no 34 relates to Vale's internal consideration of the same.<br><br>For the reasons stated above, it is BSGR's position that the requested documents are relevant and material, and BSGR respectfully seeks an order for production of the same. | The Request is **DENIED** as overly broad and lacking sufficient relevance. |

| | | | | particularize the scope of this Request.

Further, Vale also objects to this Request because it is duplicative, as any arguably relevant documents would be included under Request 33. | | |
|---|---|---|---|---|---|---|
| 35. | In relation to the discussions involving Mr Agnelli/other Vale employees and Mr Soros:

(a) all documents referring to the telephone call between Messrs Agnelli and Soros;

(b) all documents referring to the meeting between Messrs Agnelli and Soros; and

(c) all documents arising from those discussions regarding Simandou. | BS I, para 74 | In his witness statement, Mr Steinmetz refers to a telephone call that he received from Mr Agnelli detailing a conversation between Messrs Agnelli and Soros, during which Mr Soros told Mr Agnelli that the issues relating to the Simandou project could be solved by paying US$500 million to the Government of Guinea (BS I, para 74).

The documents requested are relevant to BSGR's submission that the revocation of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's mining rights was not a legitimate or proper exercise of the Government of Guinea's powers, but was politically and/or financially motivated (SoD, paras 168 to 173; Sections G and H, Cramer JR witness statement at Exhibit C-78). | Vale objects to this Request because the requested documents are irrelevant to these proceedings and not material to its outcome and the Request is wholly speculative.  See IBA Rules Art. 3(b);  General Objection 2.  Whether any discussion occurred between Mr. Agnelli and other employees and Mr. Soros regarding the possibility of "solv[ing]" "the issues relating to the Simandou project . . . by paying US$500 million to the Government of Guinea" has no bearing whatsoever on the Vale's claims or BSGR's counterclaims.

**Notwithstanding these objections, and to avoid unnecessary disputes, to the extent such discussions occurred, Vale agrees to produce reasonably responsive documents discussing the purported call between Mr. Agnelli and Mr. Soros "soon after Rio Tinto had** | BSGR rejects Vale's objections to this request.  However, in light of Vale's eventual agreement to provide responsive documents, BSGR does not propose to respond to those objections in this Request to Produce.

For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive documents discussing the purported call between Mr. Agnelli and Mr. Soros 'soon after Rio Tinto had paid US$700 million to stay in Guinea,' in April 2011 (Steinmetz WS ¶ 74), subject to its General Objections, and to the extent such documents exist."

The remainder of the Request is **DENIED** as |

| | | | | | |
|---|---|---|---|---|---|
| | | | paid US$700 million to stay in Guinea," in April 2011 (Steinmetz WS ¶ 74), subject to its General Objections, and to the extent such documents exist. | | lacking sufficient relevance or materiality. |
| 36. | In relation to the replacement of Mr Agnelli by Mr Ferreira as CEO of Vale in March 2011 (SoD para 176), all documents relating to that management change where reference is also made, whether directly or indirectly, to Vale's interests in Guinea and/or Liberia. | SoD, paras 19 and 176, 177<br><br>DP I, para 32<br><br>Exhibit R-17<br><br>Exhibit R-18<br><br>Exhibit R-19<br><br>Exhibit R-20<br><br>Exhibit R-227<br><br>Exhibit R-228 | Please see comments above in relation to Requests 4, 33 and 34.<br><br>BSGR's position is that Vale set up the deal with BSGR as an option, which enabled it to keep the asset out of the hands of its competitors, including Rio Tinto, for a period of time, and that following a change of management, Vale decided not to pursue the option, and so pulled out of the Liberian negotiations and effectively acquiesced in the Government of Guinea's expropriation of the asset through the Technical Committee process, which it saw as an opportunity for an exit and a claim against BSGR or a re-engagement with the Government of Guinea on more favourable commercial terms (SoD, paras 19-20 and 174-177).<br><br>The documents requested are relevant to Vale's policies and motivations at the time it suspended work in Guinea and began extricating itself from the joint venture; the extent to which its conduct was a result of the Government of Guinea's allegations made against BSGR or, as submitted by BSGR, Vale's own management | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Further, documents relating to Vale's internal management decisions relating to the replacement of Mr. Agnelli by Mr. Ferreira are on their face irrelevant and not material to the outcome of this case, since that replacement may have been due to any number of reasons entirely unrelated to Vale's interests in Guinea and/or Liberia; this, like many of BSGR's Requests, is a "fishing expedition" undertaken in the speculative hope that something may turn up.<br><br>Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome. *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4. BSGR's request for "all | BSGR denies that the requested documents are irrelevant and immaterial. The true motivations behind Vale's apparent volte-face in respect of the joint venture relates directly to BSGR's counterclaim in this arbitration. BSGR accepts that there may have been more than one reason behind the replacement of Mr Agnelli by Mr Ferreira. Insofar as there are documents linking Mr Agnelli's departure to Vale's strategy in Guinea, those documents should be disclosed.<br><br>Given the specific names referred to in this request, and the specific list of issues arising, BSGR denies that this request is non-specific, excessively broad or unduly burdensome. This is precisely the sort of request that can be satisfied by the use of focussed electronic searches, using the names of Messrs Agnelli and Ferreira.<br><br>It is, in BSGR's submission, | The Request is **DENIED** as lacking sufficient relevance or materiality. |

| | | | decisions which were unrelated to the allegations being made against BSGR. | documents" related to this management replacement is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).  BSGR has also failed to define in any meaningful way "Vale's interests in Guinea and/or Liberia."<br><br>Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas."  (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price.").  The language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not.  This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality. | disingenuous for Vale to suggest that BSGR has failed to define Vale's interests in Guinea and/or Liberia.  Vale is well aware of what is meant by that; adding the words "Guinea" and "Liberia" to the searches will in all likelihood provide the basis for the search sought by BSGR.<br><br>On that basis, BSGR seeks an order that Vale produce the requested documents, insofar as such documents exist. | |

| 37. | In relation to the Liberian Transport Solution (SoD paras 178-184); | SoD, para 178 et seq. | The SoD and Mr Pollak's witness statement detail how the negotiations with the Government of Liberia over the Liberian Transport Solution "*had been progressing well*" during the first half of 2011 (SoD, para 178) and that on 13 August 2011, Ms Tah, Liberian Justice Minister, emailed Messrs Saad and Avidan stating that President Condé had provided confirmation to the President of Liberia permitting export of Guinean ore through Liberia by VBG Guinea (Exhibit R-98). | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome. *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4. Such Request seeking broad categories of documents would conceivably require the review of thousands of documents spanning dozens of individuals over an undefined time period. It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a). | Vale's objection to this request mirrors its objections to several other requests, without dealing with or even referring to the specifics of the request. | Requests 37(a) and (b) are **DENIED** as overly broad. Requests 37(c) through (h) are **GRANTED**. |
|  |  | SoD, paras 344 to 348 |  |  | The request arises from a specific issue, addressed in detail both in the SoD and the witness statements in support of that submission, namely the Liberian Transport Solution. The mere fact that the request relates to that specific form of words dictates that the carrying out of electronic searches in relation to that subject matter would not be unduly burdensome. The request is then refined by reference to correspondence exchanged between named individuals and in relation to particular issues. It is simply untrue for Vale to state that the review sought by BSGR involves "*dozens of individuals*". Once again, BSGR has done everything in its power to narrow down the scope of the requests and make the carrying out of searches as straightforward as possible. |  |
|  | (a) all documents passing between Vale/VBG Guernsey/VBG Guinea and the Government of Guinea which refer to the Liberian Transport Solution; | RS I, paras 14, 20 and 37 |  |  |  |  |
|  |  | BS I, paras 79-82 |  |  |  |  |
|  |  | AA I, paras 156 and 157 |  |  |  |  |
|  | (b) all documents passing between Vale/VBG Guernsey/VBG Guinea and the Government of Liberia; | DP I, paras 19-24 |  |  |  |  |
|  |  | Exhibit R-98 |  | Vale also objects to this Request because, by definition, any relevant documents relating to VBG Guernsey, VBG Guinea, and BSGR would be in BSGR's possession. *See* IBA Rules Art. 3(3)(c)(i); General Objection 6. That BSGR possesses these documents already is clearly evidenced by the fact that BSGR has cited several such documents in its SoD. *See, e.g.*, R-98, R-133, R-225, R-226, R-227, R-228. |  |  |
|  | (c) all documents sent from or to Mr Otavio, Mr Saad, Mr Ledsham, Mr Rodrigues or Minister Tah in relation to the decision not to proceed with the Liberian Transport Solution; |  | Despite the opportunity to finalise agreement on the Liberian Transport Solution and BSGR's encouragement to do so, Vale proceeded to withdraw from the negotiations on 16 August 2011, citing its concerns as to the export permission that would be granted by the Government of Guinea (SoD, paras 181-182). |  |  |  |
|  | (d) all documents relating to the First Deferred Consideration and the Additional Consideration (as defined in the Framework Agreement); |  | BSGR's position is that this was not the true reason why Vale pulled out of the negotiations. Vale pulled out of the Liberian negotiations because it no longer wanted to pursue the joint venture, and therefore wished to avoid payment of the First Deferred Consideration and the Additional Consideration (SoD, paras 183-184). |  |  |  |
|  | (e) all documents relating |  | This request is relevant to show Vale's communications with the Governments of Guinea and Liberia |  | In addition, and for the reasons explained above, documents generated or held by VBG Guernsey and/or VBG |  |

| | | | | | |
|---|---|---|---|---|---|
| | to the disagreement between Vale and BSGR in relation to whether to continue with the negotiations in July and August 2011 (AA I, paras 156-161);<br><br>(f) all documents sent from or to Mr Otavio, Mr Saad, Mr Ledsham, Mr Rodrigues or Minister Tah in relation to the collapse of negotiations over the Liberian Transport Solution, on or around 16 August 2011;<br><br>(g) all documents relating to the decision to inform Vale's management to stop works in Liberia; and<br><br>(h) all documents relating to the dispute between Vale and BSGR regarding the payment of the Additional Consideration (as defined in the Framework Agreement). | | and its true concerns, knowledge or belief at the time it decided not to proceed with negotiations for a Liberian Transport Solution. They are therefore relevant to BSGR's counterclaim for failure to promote the best interests of VBG Guernsey and VBG Guinea (SoD, paras 344-348).<br><br>It is also BSGR's case that Vale's failure to progress the Liberian Transport Solution was a contributing factor to the ease with which the Government of Guinea was able to revoke BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's mining rights (SoD, paras 174-177).<br><br>The documents requested are relevant and material because they will demonstrate the extent to which Vale complied with its obligations under the Framework Agreement and the Shareholders' Agreement, and in particular, its responsibility for the failure to conclude negotiations for a route through Liberia to allow the onward passage of iron ore from Simandou. | | Guinea are not in the possession, custody or control of BSGR.<br><br>On that basis, BSGR respectfully seeks an order for the production of the documents sought. | |
| 38. | In relation to the ABL Solution, as defined at Schedule 4 to the Shareholders' Agreement: | SoC, paras 93 to 95<br><br>SoD, paras 349 to 359 | It is BSGR's case that, in breach of contract, Vale failed to comply with the ABL Solution where a matter had arisen that fell within it (SoD, | Vale objects to this Request to the extent it purports to request documents protected by legal privilege.  See IBA Rules Art. 9(2)(b); General | Vale's sole objection to this request is on grounds of privilege.  BSGR notes that, unusually, no objection has been made on grounds of | **NO DECISION** is required in relation to at least part of this Request.  The |

| | | | | | | |
|---|---|---|---|---|---|---|
| | (a) all internal Vale documents created after 30 April 2010 for the purpose of or referring to the ABL Solution; and<br><br>(b) all internal Vale documents referring to Vale's decision not to rely on the ABL Solution (SoC, para 95). | AM I, paras 31 – 35 | paras 349-359).<br><br>Vale asserts that "*the ABL solution is inapplicable in the present circumstances where Vale was induced into entering the contract by fraud on the part of BSGR and VBG Guinea's Mining Rights were revoked because of BSGR's corrupt activities. The ABL Solution contemplated the continuing subsistence of the Vale-BSGR joint-venture*" (SoC, para 95). However Vale does not provide any reference to documents or discussions by which the general applicability of the ABL solution was determined, nor does Vale provide documentary evidence to demonstrate when and how it formed the view that it would rely upon the ABL solution.<br><br>The documents requested are relevant and material because they will demonstrate the extent to which Vale intended to comply with its obligations arising under the Framework Agreement and the Shareholders' Agreement, and the commercial issues considered by Vale's management team when deciding how to proceed in relation to the joint venture. | Objection 7. Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged documents between 17 April 2014 – when the Government of Guinea formally revoked the Mining Rights that had been given to VBG Guinea by a Presidential Decree followed by orders signed by the Minister of Mines on 18 and 23 April 2014 (the "Withdrawal Decision") because of the fraudulent means through which they were obtained (see SoC ¶ 264) – and 28 April 2014 – when Vale submitted its Request for Arbitration –"referring to Vale's decision not to rely on the ABL Solution," subject to its General Objections, and to the extent such documents exist. Documents pre-dating the Withdrawal Decision, by definition,** | relevance or scope.<br><br>BSGR notes Vale's agreement to provide certain documents in response to this request. However, Vale's agreement is limited to documents created between 17 April and 28 April 2014, a period of some 12 days. In BSGR's submission, that period of time is too narrow. The date range chosen by Vale is arbitrary, not least because insofar as Vale considered the applicability of the ABL Solution, those deliberations would not have been limited in time to the period between the Withdrawal Decision and the commencement of this arbitration. Self-evidently, Vale was giving consideration to its rights long before the commencement of this arbitration. Indeed, it is BSGR's position that Vale had, for a significant period of time prior to the Withdrawal Decision, been looking at ways to extricate itself from the joint venture with BSGR.<br><br>In the interests of proportionality, and in the hope that further common ground can be identified, BSGR is content for the date range of responsive documents to be limited to the period from 30 October | Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged documents between 17 April 2014 – when the Government of Guinea formally revoked the Mining Rights that had been given to VBG Guinea by a Presidential Decree followed by orders signed by the Minister of Mines on 18 and 23 April 2014 (the 'Withdrawal Decision') because of the fraudulent means through which they were obtained (see SoC ¶ 264) – and 28 April 2014 – when Vale submitted its Request for Arbitration – 'referring to Vale's decision not to rely on the ABL Solution,' subject to its |

| | | | | cannot bear on Vale's determination that the ABL solution was inapplicable *based on* the revocation of VBG Guinea's Mining Rights pursuant to that decision because the ABL Solution contemplated, *inter alia,* "the continuing subsistence of the Vale-BSGR joint venture [and] award of the Mining Rights remaining undisturbed." (SoC ¶ 95.) | 2012 (namely, the date on which the President of the Technical Committee wrote to the President of VBG Guinea, giving notice of the investigation) to 28 April 2014 (namely, the date on which Vale commenced this arbitration).  BSGR respectfully seeks an order that Vale produce all responsive documents generated within this refined and amended date range.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **GRANTED**, subject to privilege, and only insofar as the Tribunal directs Vale to use is best efforts to obtain and produce documents in the timeframe from 30 October 2012 to 28 April 2014. |
| 39. | In relation to the deliberations of the Technical Committee between 30 October 2012 and 23 April 2014:<br><br>(a) all submissions made by Vale to the Technical Committee;<br><br>(b) all evidence given by Vale to the Technical Committee;<br><br>(c) all documents prepared by Vale for the purpose of making submissions and giving | SoC, para 130 et seq.<br><br>SoD, para 325(i)<br><br>Exhibit C-196<br><br>Exhibit C-201<br><br>Exhibit C-202<br><br>Exhibit C-203<br><br>Exhibit C-204<br><br>Exhibit C-208 | BSGR advances a counterclaim against Vale as a result of Vale's failure to defend the mining rights originally awarded to BSGR and/or BSGR Guernsey and/or BSGR Guinea via the Technical Committee process and as a result of Vale's failure to join the action against the Government of Guinea, in breach of Vale's obligations under the Framework Agreement and the Shareholders' Agreement (SoD, paras 185, 329(i)).<br><br>In its SoC, Vale refers extensively to the Technical Committee process and exhibits some correspondence between VBG, BSGR and the | Vale objects to this Request because the submissions and evidence that Vale made to the Technical Committee were contemporaneously shared with BSGR, and accordingly made in BSGR's possession.  See IBA Rules Art. 3(3)(c)(i); General Objection 6.<br><br>Further, Vale objects to this Request to the extent it calls for "documents containing Vale's internal consideration," as such documents are protected by legal privilege. See IBA Rules Art. 9(2)(b); | BSGR notes that Vale's objections to this request are limited to questions of privilege and possession, custody or control.  In other words, Vale accepts the relevance and scope of this request.<br><br>BSGR notes Vale's agreement to provide "*reasonably responsive, non-privileged documents in relation to the Technical Committee's deliberations between 30 October 2012 and 2 April 2014*", without reference to the specifics of BSGR's | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged documents in relation to the Technical Committee's deliberations between 30 |

| | | | | | |
|---|---|---|---|---|---|
| | evidence to the Technical Committee;<br><br>(d) all documents containing Vale's internal consideration of the due process/legality of the Technical Committee;<br><br>(e) all documents containing Vale's internal consideration of evidence relied upon by the Technical Committee;<br><br>(f) all documents containing Vale's internal consideration of correspondence sent by BSGR to the Technical Committee;<br><br>(g) all documents containing Vale's internal consideration of correspondence by BSGR to Vale in respect of the Technical Committee's investigation;<br><br>(h) all documents sent by or to Mr Vidoca or other Vale representatives in relation to the proceedings of the Technical Committee; | | Technical Committee.  It is apparent, however, that additional documents would have been prepared in relation to the Technical Committee process, including extensive internal exchanges on this crucial phase in the narrative, giving rise to the eventual expropriation of rights belonging to BSGR and/or BSGR Guernsey and/or BSGR Guinea (SoD, paras 187-189).<br><br>The documents requested are relevant and material to show the extent of Vale's cooperation with the Government of Guinea in the Technical Committee process and whether Vale took any steps, as it was obliged to do pursuant to the Framework Agreement and the Shareholders' Agreement, to resist the Government of Guinea's illegal withdrawal of the mining rights via the Technical Committee process. As such, the documents requested are relevant to BSGR's counterclaim, as alleged at paragraph 329(i) of the SoD.<br><br>The documents requested are also relevant to determining the extent to which Vale complied with its duty to mitigate its losses (SoD, paras 267, 269 and 307). | General Objection 7.  Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged documents in relation to the Technical Committee's deliberations between 30 October 2012 and 2 April 2014, subject to its General Objections, and to the extent such documents exist.** | request.  This is unsatisfactory, and leaves it unclear what precisely Vale has agreed to produce.<br><br>Given the importance of the deliberations of the Technical Committee, a point apparently accepted by Vale, BSGR sought to break its request down into narrow and focussed sub-requests, in order to make it easier to produce relevant documents.<br><br>Accordingly, BSGR seeks an order from the Tribunal in accordance with its request.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | October 2012 and 2 April 2014, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Requests 39(a)-(b) and 39(h)-(j) are **GRANTED**, subject to legal privilege.  The remainder of the Requests 39(c)-(g) and 39(k)-(l) are **DENIED** as overly broad and unduly burdensome in accordance with Vale's general objections one and four. |

| | | | | | |
|---|---|---|---|---|---|
| | (i) all documents sent by or to Mr Vidoca or other Vale representatives in relation to the Technical Committee Report dated 28 March 2014;<br><br>(j) all documents sent by or to Mr Vidoca or other Vale representatives in relation to the Withdrawal Decision (as defined at SoC, para 264);<br><br>(k) all documents passing between Vale and the National Mining Commission and the Strategic Commission; and<br><br>(l) all documents passing between Vale and the Government of Guinea. | | | | |
| 40. | In relation to the tripartite negotiations for an amicable settlement between Vale, BSGR and the Government of Guinea between 2012 and 2013:<br><br>(a) all documents passing between the | SoD, para 189<br><br>RS 1, para 51<br><br>AA 1, para 185<br><br>MN 1, paras 100-107 | The (ultimately unsuccessful) negotiations for a settlement took place alongside Vale's (a) acquiescence in the face of the Technical Committee review process and (b) bilateral negotiations with President Condé to the exclusion of BSGR (SoD, para 189). | Vale objects to this Request as by definition, any documents passing between the parties to the *tripartite* negotiations would be in BSGR's possession.<br><br>Moreover, BSGR's assertion that Vale treated its joint | Vale objects to this request on the basis that BSGR holds documents passing between the parties in relation to the tripartite negotiations.  To be clear, BSGR is not in this request seeking documents "*passing between the parties*". BSGR seeks those documents | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce |

| | | | | | |
|---|---|---|---|---|---|
| | Government of Guinea (including individuals acting on behalf of the Government of Guinea) and Vale in relation to the same;<br><br>(b) all documents containing Vale's internal consideration of the negotiations;<br><br>(c) all documents containing Vale's internal consideration of updates from BSGR in relation to the status of the negotiations and the involvement of M. de Combret and any other intermediaries; and<br><br>(d) all documents generated in anticipation and for the purposes of the meetings between the Government of Guinea, Vale and BSGR in Paris in December 2012 and in London in January 2013, notes of those meetings and all documents containing an analysis of those meetings. | | It is BSGR's position that this facilitated the Government of Guinea's decision to revoke BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's mining rights (SoD, paras 185 to 189).  In addition, it is BSGR's position that Vale effectively treated the deal with BSGR as an option over the exploration and mining rights (SoD, paras 175 to 177) and that it saw the Technical Committee process as an opportunity to exit the deal at minimal cost, or to re-engage with the Government of Guinea on more commercially favourable terms, without the involvement of BSGR (SoD, paras 177 and 189).<br><br>This request – and the corresponding documents evidencing Vale's attitude to reaching a tri-partite settlement – is therefore relevant to the true motivation of Vale in acquiescing to the Technical Committee process and in pursuing its own bilateral negotiations with the Government of Guinea.<br><br>As such, the documents requested relate to BSGR's counterclaim, including its submission that Vale failed to act in the best interests of VBG Guernsey and VBG Guinea (SoD, paras 327 to 330). | venture with BSGR as an "option" is wordplay that adds nothing of substance to its position.  The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas."  (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price.").  The language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not.  This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality.<br><br>**Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged, internal documents concerning the tripartite meetings as well as any correspondence passing exclusively between Vale and the Government of Guinea, subject to its General Objections, and to the extent such documents exist.** | relating to and arising from the tripartite negotiations, and not simply documents already in the possession, custody or control of BSGR.<br><br>BSGR notes that Vale makes no objection to this request on grounds of relevance, scope or indeed anything else. On that basis, Vale appears to accept the relevance of the request and that the request otherwise complies with the IBA Rules.<br><br>BSGR notes Vale's agreement to provide responsive documents, although that agreement is limited to "*internal documents concerning the tripartite meetings as well as any correspondence passing exclusively between Vale and the Government of Guinea*".  Insofar as BSGR understands this response to the request, Vale appears to be agreeing to the production of documents in response to Request nos 40(a) and (b), but not Request nos 40(c) and (d), although no basis has been given for Vale's unilateral and arbitrary decision to limit its response to the request in that way.<br><br>Given Vale's failure to give a reason for its narrowing of BSGR's request, BSGR respectfully seeks an order | reasonably responsive, non-privileged, internal documents concerning the tripartite meetings as well as any correspondence passing exclusively between Vale and the Government of Guinea, subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **GRANTED**, subject to legal privilege and subject to the understanding that Vale is not obligated to produce documents already in the possession of BSGR. |

| | | | | | that Vale produce all responsive documents, and in particular all documents responsive to Request nos 40(a) to (d). | |
| | | | | | For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | |
| 41. | In relation to the bilateral negotiations between Vale and the Government of Guinea between 2012 and 2013 (SoD, para 20):<br><br>(a) all documents passing between the Government of Guinea (including individuals acting on behalf of the Government of Guinea) and Vale in relation to the same; and<br><br>(b) all documents containing Vale's internal consideration of the negotiations. | SoD, paras 20 and 189<br><br>RS 1, para 51<br><br>AA 1, para 164 | Please see comments above in relation to Request 40.<br><br>It is BSGR's position that, at about the same time as the tripartite negotiations referred to in relation to Request 40 above, Vale was engaged in direct bilateral negotiations with the Government of Guinea, to the exclusion of BSGR. It is Mr Avidan's understanding that "*Vale met, during the time of the* [Technical Committee] *with President Condé on at least two occasions and even negotiated an agreement about their future commitment to the project*" (AA 1, para 164). This request is relevant to that allegation.<br><br>In addition, it is BSGR's position that Vale effectively treated the deal with BSGR as an option over the exploration and mining rights and that it saw the Technical Committee process as an opportunity to exit the deal at minimal cost, or to re-engage with the Government of Guinea on more commercially favourable | Vale objects to this Request because it is on its face irrelevant and not material to the outcome of this case and is wholly speculative.  In short, this Request is a "fishing expedition" in the guise of disclosure and as such is clearly improper.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a).<br><br>Vale also objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c).<br><br>Further, Vale objects to this Request to the extent it purports to request documents protected by legal privilege.  *See* IBA Rules Art. 9(2)(b); General Objection 7. Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ | Having agreed to provide documents in response to BSGR's request in relation to the tripartite negotiations, and without making any serious objections, Vale now objects to the production of documents relating to its bilateral negotiations on a variety of bases.  Not only is Vale's approach inconsistent, it is also difficult to follow.<br><br>There is no justification for Vale's position that documents relating to the tripartite negotiations are relevant, yet documents relating to the parallel bilateral negotiations are not.  Similarly, on the assumption that Request no 40 is sufficiently specific and focussed, then there is no basis for Vale's assertion that this request, which seeks only two categories of documents and not four, is insufficiently | The Request is **DENIED** as duplicative. |

| | | | terms, without the involvement of BSGR (SoD, paras 175 to 177).

This request – and the corresponding documents evidencing Vale's attitude to reaching a settlement – is therefore relevant to the true motivation of Vale in acquiescing in the Technical Committee process and in pursuing its own bilateral negotiations with the Government of Guinea.

As such, the documents requested relate to BSGR's counterclaim, including its submission that Vale failed to act in the best interests of VBG Guernsey and VBG Guinea (SoD, paras 327 to 330). | 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so.

Vale also objects to this Request because it is duplicative, as any arguably relevant documents would be included under Request 40.

Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position. The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas." (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price."). The language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not. This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality. | specific or focussed.

This request is self-evidently not duplicative of Request no 40. Request no 40 relates exclusively to tripartite negotiations involving BSGR, Vale and the Government of Guinea (hence Vale's misconceived assertion that documents falling within that request would already be in the possession, custody or control of BSGR). Request no 41 relates instead to the bilateral negotiations ongoing at about the same time and involving Vale and the Government of Guinea only. Vale is apparently already aware of that distinction, hence its correct decision not to object to this request on the basis that responsive documents are already in the possession, custody or control of BSGR.

BSGR respectfully seeks an order requiring Vale to produce all documents responsive to this request. | |
| 42. | In relation to the Palladino Affair, referred to at SoC para 224: | SoC, para 224

SoD, para | Vale is, in its SoC, ambiguous about its state of knowledge in relation to the Palladino Affair despite exhibiting | Vale objects to this Request because the requested documents are irrelevant to | In light of Vale's eventual agreement to produce documents responsive to this | **NO DECISION** is required in relation to this |

| | | | | | | |
|---|---|---|---|---|---|---|
| | (a) all documents evidencing Vale's awareness of the Palladino Affair; and<br><br>(b) all documents relating to Vale's internal consideration and analysis in relation to the same. | 170(iii)<br><br>Exhibit C-158 | a letter from Skadden Arps (BSGR's then counsel) to Cleary Gottlieb (Vale's counsel) at Exhibit C-158 which, at page 2 of that document, details Vale's awareness of the Palladino Affair in 2012, including the reference to contemporaneous discussions involving Messrs Torres and Rodrigues.<br><br>Vale alleges that it was not aware of previous attempts to blackmail BSGR (SoC, para 224).<br><br>The documents requested are relevant and material to Vale's awareness of the Palladino Affair, and in particular, its state of knowledge, including during the Technical Committee process, and the issues considered by Vale when responding to the allegations made in the course of the Technical Committee process. | this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Documents relating to Vale's "state of knowledge in relation to the Palladino Affair" in 2012 have no bearing whatsoever on whether and the extent to which Vale relied on BSGR's representations in deciding to enter the joint venture in April 2010. In any event, and contrary to BSGR's claim that the SoC is "ambiguous about [Vale's] state of knowledge in relation to the Palladino Affair," Vale expressly states in the SoC that "Vale had never been made aware of the allegedly forged documents or blackmail threats." (SoC ¶ 224).<br><br>Further, Vale objects to this Request to the extent it purports to request documents related to Vale's "internal consideration" of the so-called "Palladino Affair," that are protected by legal privilege. *See* IBA Rules Art. 9(2)(b); General Objection 7. Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has | request, BSGR does not propose to respond to Vale's objections in detail.<br><br>BSGR denies that the requested documents are irrelevant and immaterial.<br><br>BSGR notes Vale's agreement to provide documents "*related to Vale's awareness of the 'Palladino Affair' between October 2012 and June 2013*". Vale has imposed arbitrary parameters in relation to its own search, which bear no relation to the request as put by BSGR; neither has Vale adequately explained on what basis it seeks to impose that timeline.<br><br>However, in the interests of proportionality, BSGR seeks no further order from the Tribunal in relation to this request. | Request. The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged documents, related to Vale's awareness of the 'Palladino Affair' between October 2012 and June 2013, subject to its General Objections, and to the extent such documents exist." The Tribunal further observes that BSGR "seeks no further order from the Tribunal in relation to this request." |

| | | | | no intention of doing so. | | |
|---|---|---|---|---|---|---|
| | | | | **Notwithstanding these objections, and to avoid unnecessary disputes, Vale agrees to produce reasonably responsive, non-privileged documents, related to Vale's awareness of the "Palladino Affair" between October 2012 and June 2013, subject to its General Objections, and to the extent such documents exist.** | | |
| 43. | All documents passing between Vale and representatives of the following individuals and organisations, including minutes of any meetings with representatives of the following individuals and organisations:<br><br>(a)  Revenue Watch (Exhibits C-78, C-61);<br><br>(b)  Global Witness  (SoD, paras 13, 191, 194);<br><br>(c)  Open Society Institute (Exhibits C-78, C-61);<br><br>(d)  George Soros (SoD, para 172; Exhibit R-87; Exhibit C-78, para 19.5); | SoC, footnotes 260, 261, 264, 267, 268, 270, 276-8<br><br>SoD, paras 13, 16, 174, 184, 189, 191, 194<br><br>Exhibit C-78<br><br>Exhibit R-87 | It is BSGR's position that the Government of Guinea relied on the support of the external organisations and advisors listed at (a) to (g) of this Request to cause maximum harm and prejudice to BSGR (SoD, paras 13, 172, 191, 194; paras 19.5 and 61 of Cramer JR witness statement at Exhibit C-78; p. 3 of Exhibit R-87).  BSGR pleads at paragraphs 16 and 174 of its SoD that Vale saw this as the perfect opportunity to exit its deal with BSGR which it viewed as an option. It is BSGR's case that Vale decided that its interests lay in cooperating with President Condé's campaign against BSGR rather than supporting its joint venture partner (SoD, paras 174, 187, 189).<br><br>Evidence of the extent to which Vale colluded with the advisors who assisted President Condé in | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome.  *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objection 1. This Request makes no attempt to even limit the subject matter of the requested documents allegedly passing between Vale and unidentified "representatives" of 4 organizations and 3 individuals over an undefined time period.  It is the antithesis of a "narrow and specific" category of documents, *see* IBA Rules Art. 3(a)(ii), and would impose an "unreasonable burden" on Vale, *see* IBA Rules Art. 9(2)(a).<br><br>Vale also objects to this | BSGR denies that the request is lacking in specificity, excessively broad or unduly burdensome.<br><br>BSGR notes Vale's concerns as to the subject matter of this request and the date range. Mindful of those concerns, BSGR is content to refine its request as follows:<br><br>*All documents passing between Vale and representatives of the following individuals and organisations, between 10 December 2010 and 18 April 2014 in relation to mining rights awards to BSGR and/or BSGR Guernsey and/or BSGR Guinea, including minutes of any meetings with* | The Request, including the "refined" version of it set forth in BSGR's Reply Column, is **DENIED** as lacking sufficient relevance or materiality. |

| | | | | | |
|---|---|---|---|---|---|
| | (e) Paul Collier (Exhibit R-87);<br><br>(f) The Africa Governance Initiative (Exhibit R-87); and<br><br>(g) Tony Blair (Exhibit R-87). | | expropriating rights belonging to BSGR and/or BSGR Guernsey and/or BSGR Guinea is material to BSGR's counterclaim that Vale is in breach of the Framework Agreement and/or the Shareholders Agreement (SoD, para 326(i) to (iv)).<br><br>Furthermore, Vale relies heavily on articles by Global Witness to "evidence" its allegations of bribery against BSGR. As set out at paragraph 194 of the SoD: "*Vale relies on these* [Global Witness] *articles as if they amounted to facts. See, for example, Vale's assertion that 'Another journalist was … told not to mention Mrs Touré in connection with BSGR', citing a 2014 Global Witness article as the sole source, yet without saying who said this, when, or where. Global Witness is an organisation which has campaigned against BSGR and is funded at least in part by George Soros, who also funded the Technical Committee. This is an organisation with an axe to grind against BSGR and an agenda which has consistently been publicly to criticise BSGR (just as George Soros has done through other means)*".<br><br>The documents requested are relevant and material to demonstrating the extent to which Vale sought to verify the evidence on which it relies to make out its claim in this arbitration and the involvement of Vale in the production of the documents on which it relies. | Request because it is on its face irrelevant and not material to the outcome of this case and is wholly speculative. In short, this Request is a "fishing expedition" in the guise of disclosure and as such is clearly improper. See IBA Rules Art. 3(3)(b) and Art. 9(2)(a).<br><br>Finally, BSGR's assertion that Vale treated its joint venture with BSGR as an "option" is wordplay that adds nothing of substance to its position. The parties' contract expressly provides that following Vale's payment of US$500 million, Vale would pay an additional US$2 billion "upon the fulfilment of certain milestones in the development of the Mining Areas." (SoC ¶¶ 97-98; Exhibit C 1, Section 3: "Purchase Price."). The language could not be clearer: Vale is obligated to pay the balance of the purchase price if certain conditions are met in the future, and otherwise not. This is obviously not an option as the term is legally understood, and whatever lay actors might call it does not change that reality. | *representatives of the following individuals and organisations:*<br><br>*(a) Revenue Watch (Exhibits C-78, C-61);*<br><br>*(b) Global Witness  (SoD, paras 13, 191, 194);*<br><br>*(c) Open Society Institute (Exhibits C-78, C-61);*<br><br>*(d) George Soros (SoD, para 172; Exhibit R-87; Exhibit C-78, para 19.5);*<br><br>*(e) Paul Collier (Exhibit R-87);*<br><br>*(f) The Africa Governance Initiative (Exhibit R-87); and*<br><br>*(g) Tony Blair (Exhibit R-87).*<br><br>As reformulated, this request can no longer be said to be lacking in specificity, excessively broad or unduly burdensome.<br><br>BSGR also denies that the requested documents are irrelevant. Vale makes a bald assertion that the requested documents are irrelevant, without explaining on what basis those documents can be said to be irrelevant. BSGR, on the other hand, is clear about the way in which this request relates to its | |

| | | | | | counterclaim. | |
|---|---|---|---|---|---|---|
| | | | | | Having relied on articles by Global Witness itself, Vale is not in a position to label as irrelevant Vale's dealing with that and similar organisations. | |
| | | | | | In the circumstances, BSGR respectfully seeks an order that Vale produce all documents responsive to BSGR's refined and reformulated request. | |
| 44. | All documents passing between Vale and President Condé and/or other representatives, advisors and officials of the Government of Guinea between 30 April 2010 and 23 April 2014 and notes of any meetings between representatives of the same. | SoD, paras 20 and 187<br><br>AA 1, para 164 | BSGR's position in its SoD is that, in breach of the Framework Agreement and the Shareholders' Agreement, Vale facilitated the expropriation of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's rights because, by this time, it sought an exit from the joint venture "*or re-engagement with the GoG on more favourable terms*" (AA para 164, SoD para 20).<br><br>The documents requested are relevant and material because evidence of Vale's contact with President Condé and re-engagement with the Government of Guinea (SoD, para 20) is central to BSGR's counterclaim.<br><br>The documents requested are also relevant to show the extent of Vale's cooperation with the Government of Guinea in the revocation of the mining rights, and whether Vale took any steps or made any effort to resist the Government of Guinea's | Vale objects to this Request as non-specific, vastly overbroad and unduly burdensome, spanning nearly four years. *See* IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4.  This Request, copied nearly *verbatim* from Rio Tinto's Request for Production No. 83 in connection with the RICO Proceedings, was overruled by the U.S. Court under the far broader U.S. discovery standards.  (*See Rio Tinto PLC v. Vale, S.A. et. al*, 28 July 2015 Hr'g Tr., Dkt. No. 311 at 11:1-4) (Ex. C-224). See General Objections 4 & 5. | BSGR denies that the request is lacking in specificity, excessively broad or unduly burdensome.  The objection appears to be sustained simply on the basis that the request spans a four year period.<br><br>The mere fact that the request spans four years is an irrelevance.  BSGR does not anticipate that the volume of correspondence passing Vale and President Condé (and members of the President's team) is voluminous.  For all of the reasons stated by BSGR in support of its request, the requested documents relate directly to BSGR's counterclaim.<br><br>In addition, the mere fact that a similar request was made in the context of the RICO Proceedings is also an irrelevance.  The issues arising | The Request is **DENIED** as lacking sufficient relevance or materiality. |

| | | | withdrawal of the rights, as it was obliged to do pursuant to the Framework Agreement and the Shareholders' Agreement.<br><br>The documents may also demonstrate that President Condé withdrew BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's mining rights through a process which he orchestrated to achieve his own interests. | | in those proceedings are different from the issues arising in this arbitration. In addition, even if, which is denied, there is a meaningful overlap between the request made in the context of these proceedings and the request made to the New York courts, the Tribunal is not bound to arrive at the same decision as that New York court.<br><br>BSGR respectfully seeks the production of all responsive documents. | |
|---|---|---|---|---|---|---|
| 45. | In relation to the "*additional criminal investigations into BSGR's acquisition of the Mining Rights*" (SoC, paras 230-241), all documents passing between Vale and the relevant regulatory authorities in the following jurisdictions:<br><br>(a)  the United States;<br><br>(b)  the UK;<br><br>(c)  Switzerland;<br><br>(d)  Guinea; and<br><br>(e)  Guernsey. | SoC, paras 230-241<br><br>SoD, paras 224-226 | It is BSGR's case that the regulatory investigations ongoing in various jurisdictions exist solely as a result of the requests made by the Government of Guinea and go no further than the Letters of Request issued by the Government of Guinea, which letter is itself based on flawed allegations (SoD, paras 224-226).<br><br>The documents requested will demonstrate whether Vale is justified in relying on the existence of the investigations in its SoC.<br><br>Evidence of the information and representations that Vale provided to the relevant regulatory authorities is also relevant to the extent to which Vale supported or sought to defend the withdrawal of BSGR's and/or BSGR Guernsey's and/or | **Vale agrees to produce reasonably responsive, non-privileged documents between 1 January 2005 and 30 April 2014 exchanged with the government entities in the jurisdictions listed in parts (a)-(e) in their capacity as regulators regarding the "additional criminal investigations into BSGR's acquisition of the Mining Rights," including the Grand Jury subpoena received by Vale, documents produced by Vale in response to governmental requests, and any transmittal letters subject to its General Objections, and to the** | BSGR notes Vale's agreement to produce responsive documents.  That said, Vale's agreement extends only to "*documents between 1 January 2005 and 30 April 2014 exchanged with the government entities in the jurisdictions listed in parts (a)-(e) in their capacity as regulators regarding the 'additional criminal investigations into BSGR's acquisition of the Mining Rights'…*".  Given that the investigations referred to in the request are ongoing, there is no basis upon which Vale is entitled to limit its agreement to 30 April 2014. It is unclear on what basis Vale has arbitrarily imposed that cut off point.<br><br>BSGR respectfully seeks an | **NO DECISION** is required in relation to at least part of this Request.  The Tribunal notes that Vale has agreed to "produce reasonably responsive, non-privileged documents between 1 January 2005 and 30 April 2014 exchanged with the government entities in the jurisdictions listed in parts (a)-(e) in their capacity as |

| | | | BSGR Guinea's mining rights. | **extent such documents exist.** | order that Vale disclose all responsive documents from 1 January 2005 to the date of production.<br><br>For the reasons explained in paragraph 1 of BSGR's replies to Vale's objections, the caveats in Vale's proposed formulation should not form part of the final order. | regulators regarding the 'additional criminal investigations into BSGR's acquisition of the Mining Rights,' including the Grand Jury subpoena received by Vale, documents produced by Vale in response to governmental requests, and any transmittal letters subject to its General Objections, and to the extent such documents exist."<br><br>The remainder of the Request is **DENIED** as overly broad and unduly burdensome in accordance with Vale's general objections one and four. |

| 46. | All internal Vale documents relating to Vale's decision not to participate in BSGR's ICSID claim against the Government of Guinea | SoD, paras 18(v), 189, 269(iii), 307(iii), 327 to 342 | These documents are relevant to BSGR's case that Vale has failed to mitigate its losses by its refusal to authorise VBG Guernsey and VBG Guinea to join the ICSID proceedings commenced by BSGR against Guinea (SoD para 269(iii)).<br><br>It is also BSGR's case that Vale effectively elected to terminate the joint venture with BSGR and allowed the revocation of BSGR's and/or BSGR Guernsey's and/or BSGR Guinea's mining rights by, inter alia, its refusal to join the ICSID proceedings commenced by BSGR against Guinea, seeking reengagement with Guinea on more favourable terms (SoC, para 20; AA 1, para 164).<br><br>They are also relevant to BSGR's counterclaim for breach of sections 7, 16(11) and section 3.6 of Schedule 5 of the Framework Agreement and Sections 3(1) and 17(11) of the Shareholders' Agreement, on the basis of Vale's failure to cause VBG Guernsey and VBG Guinea to join arbitration proceedings against the Government of Guinea over the illegal taking of the Mining Rights and to join BSGR in such action (SoD, paras 329(ii)-343). | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. Documents relating to Vale's decision not to participate in BSGR's ICSID claim against the Government of Guinea – which is undisputed – have no bearing whatsoever on BSGR's counterclaims. Further, Vale has already explained its decision not to participate in BSGR's ICSID claim in correspondence with BSGR, in which it laid out its position that BSGR provided no legally sufficient basis for a claim against the Government of Guinea.<br><br>Further, Vale objects to this Request to the extent it seeks production of documents protected by legal privilege. *See* IBA Rules Art. 9(2)(b); General Objection 7. Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so. | BSGR denies that the requested documents are irrelevant and immaterial. Vale simply states that its decision not to participate in the ICSID claim against the Republic of Guinea has no bearing on BSGR's counterclaims. For all the reasons stated in support of this request, it is BSGR's position that Vale's failure to join BSGR in the ICSID claim amounts to a breach of contract. Vale may now deny liability, as is its entitlement; that issue will therefore fall due for consideration at the forthcoming merits hearing. However, to suggest, as Vale seeks to do in its objection to this request, that Vale's decision not to participate in the ICSID claim has no bearing on the counterclaim is simply wrong.<br><br>Vale's comment that "*BSGR provided no legally sufficient basis for a claim against the Government of Guinea*" is not understood.<br><br>BSGR seeks an order for the production of all responsive documents. | The Request is **DENIED** based on legal privilege. |

| 47. | In relation to the potential re-awarding of licences and other rights previously held by BSGR and/or BSGR Guernsey and/or BSGR Guinea between 2010 and the date of this Request:<br><br>(a) all documents passing between the Government of Guinea (including representatives, agents and advisors of the Government of Guinea and/or President Condé and/or Mohammed Condé) and Vale in relation to the same; and<br><br>(b) all documents sent by or to Vale in relation to the same. | SoD, paras 266(i), 360 to 363 | BSGR seeks a declaration in these proceedings that Vale be prohibited from participating in a tender for Simandou Blocks 1 and 2 and/or Zogota, on the basis of the non-compete provision at clause 13.2 of the Framework Agreement (SoD, para 360).<br><br>The requested documents will show whether Vale applied for and/or was granted mining rights by the Government of Guinea in Simandou or Zogota, in breach of the non-compete provision (SoD, paras 360-363).<br><br>In addition, the documents requested also go to the quantification of Vale's claims. If it transpires that Vale has applied for and is granted mining rights by the Government of Guinea in Simandou or Zogota, sums spent by Vale in relation to exploration in that region will not on any view have been wasted and will not be recoverable in this arbitration (SoD, para 266(ii)). | Vale objects to this Request, which is based on the false premise that a new tender for Simandou Blocks 1 and 2 and/or Zogota has occurred, and because any preparation for any future tender constitutes highly sensitive commercial information whose disclosure in advance of any such tender would create severe commercial prejudice to Vale. *See* IBA Rules Art. 9(2)(e). Vale further objects to this Request as it is based on a series of hypotheticals, including (i) that Vale applies for licenses or rights to Zogota and Simandou Blocks 1 and 2, (ii) that Vale is awarded those licenses or rights, and (iii) that Vale could apply its prior expenditures in the joint venture toward whatever unknown obligations would be required under the new licenses or rights. The facts on which this Request is based are therefore non-existent.<br><br>Vale also objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome. *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2. It is beyond dispute that the non- | BSGR is not privy to the details surrounding the Government of Guinea's latest attempts to award (or re-award) the licenses previously held by BSGR and/or BSGR Guernsey and/or BSGR Guinea. BSGR is, however, concerned that Vale has participated in that process, with all of the consequences that flow from that.<br><br>Vale states, in response to this request, that "*the facts on which this Request is based are therefore non-existent*". It is unclear precisely what is meant by that; a more evasive response and objection is difficult to conceive of.<br><br>Vale's statement is not an unequivocal statement that the requested documents do not exist. If the requested documents do exist, they must be produced; if they do not exist, Vale must say so.<br><br>BSGR denies that any responsive documents should be withheld from production on the grounds of commercial sensitivity. BSGR is, of course, already aware of the commercial background and context to the mining rights. Moreover, the provisions of the LCIA Rules and the duties of confidentiality in this | The Request is **DENIED** as lacking sufficient relevance or materiality. |

| | | | | compete provision at section 13.2 of the Framework Agreement terminated "on the date on which one of the Parties and/or its Affiliates cease to be shareholder(s) in BSGR Guinea" and is therefore no longer operative and irrelevant. (See Exhibit C-1, Schedule 4, Part B, Section 13.2; Share Purchase Agreement, dated 13 March 2015, Clause 6.1).<br><br>Further, Vale objects to part (b) of this Request as non-specific, overbroad and unduly burdensome. See IBA Rules Art. 3(3)(a) and Art. 9(2)(c); General Objections 1 & 4. This Request, which fails to identify any specific individual or entity with which Vale allegedly shared documents is the antithesis of a "narrow and specific" category of documents, see IBA Rules Art. 3(3)(a)(ii), and would impose an "unreasonable burden" on Vale, see IBA Rules Art. 9(2)(a). | arbitration provide that there is no real risk associated with the production of the requested documents. Vale complains that production would cause prejudice, but does not explain what prejudice precisely would be suffered.<br><br>Vale then sets out its own "spin" on the request – unrelated to BSGR's formulation of its request – before declaring that "*the facts upon which this Request is based are therefore non-existent*". Those "facts" are Vale's formulation, as opposed to the request as stated. In other words, Vale has engineered a self-serving factual scenario which it is then able to reject as not having taken place.<br><br>BSGR denies that the requested documents are irrelevant and immaterial. Insofar as Vale has at any point in time acted in a manner that is inconsistent to its duties to the joint venture, that is relevant to BSGR's counterclaim.<br><br>BSGR also denies that the request lacks specificity, is excessively broad or unduly burdensome. BSGR is not, of course, aware of which individuals may have been in | |

| | | | | correspondence in relation to this matter.  BSGR merely seeks documents passing between Vale and the Government of Guinea (namely, whoever the responsible individual or entity may be) relating to a specific issue.  The request could not have been any narrower than it already is.<br><br>BSGR therefore seeks an order for the production of all responsive documents or, if responsive documents do not exist – based on the request as framed by BSGR and not according to Vale's artificial and self-serving reformulation of the request – an unequivocal statement that responsive documents do not exist. | |
|---|---|---|---|---|---|
| 48. | All internal Vale documents relating to Vale's decision to sell its shares in VBG Guernsey to BSGR in March 2015. | SoD, paras 360 – 363 | By a share purchase agreement dated 13 March 2015, BSGR acquired Vale's shareholding in VBG Guernsey.<br><br>Pursuant to clause 13.2 of the Framework Agreement, Vale was bound by a non-compete obligation "*unless and until it ceased to be a shareholder*" in VBG Guernsey (SoD, para 361).<br><br>BSGR seeks a declaration that Vale and each member of its group is prohibited from participating in any tender for Simandou Blocks 1 and 2 | Vale objects to this Request because the requested documents are irrelevant to this proceeding and not material to its outcome.  *See* IBA Rules Art. 3(3)(b) and Art. 9(2)(a); General Objection 2.  It is beyond dispute that the non-compete provision at section 13.2 of the Framework Agreement terminated "on the date on which one of the Parties and/or its Affiliates cease to be shareholder(s) in BSGR | BSGR denies that the requested documents are irrelevant and immaterial.<br><br>The motivation and commercial rationale behind Vale's decision to sell its shares in VBG Guernsey are plainly relevant in this arbitration.  Insofar as Vale decided to sell those shares in order to participate in the Government of Guinea's tender process, documents relating to that decision will be relevant to BSGR's | The Request is **DENIED** on the basis of legal privilege and as lacking sufficient relevance or materiality. |

| | | | | | |
|---|---|---|---|---|---|
| | | | and/or Zogota (SoD, para 363).<br><br>The documents requested will evidence Vale's reasons for selling its shares in VBG Guernsey and the extent to which the sale of those shares is connected to (a) the tender process for the licenses and other rights previously held by BSGR and/or BSGR Guernsey and/or BSGR Guinea; and (b) the non-compete provision in the Framework Agreement. | Guinea" and is therefore no longer operative and irrelevant.  (*See* Exhibit C-1, Schedule 4, Part B, Section 13.2; Share Purchase Agreement, dated 13 March 2015, Clause 6.1).<br><br>Vale also objects to this Request to the extent it purports to request documents protected by legal privilege.  *See* IBA Rules Art. 9(2)(b); General Objection 7.  Unlike BSGR, which has expressly referred to legal advice it received in its SoD (SoD ¶ 102; Steinmetz WS ¶ 78; Pollak WS ¶ 52), Vale has *not* waived privilege and has no intention of doing so. | counterclaim.  Equally, contacts between Vale and the Government of Guinea in relation to the tender process in the period prior to 13 March 2015 would amount to a breach of contract, and in particular, the non-compete provision at clause 13.2 of the Framework Agreement.  There is an apparent overlap in time between Vale's decision to sell its shares in VBG Guernsey and the press comment on the Government of Guinea's tender process in respect of licences previously held by BSGR and/or BSGR Guernsey and/or BSGR Guinea.<br><br>On that basis, BSGR respectfully seeks an order that Vale produce all of the requested documents. | |