# EXHIBIT 12

Court of Appeal

# *Frankson and others *v* Home Office

# Johns and another *v* Home Office

## [2003] EWCA Civ 655

2003 April 8; May 8 — Pill, Scott Baker LJJ and Wilson J

*Confidential information — Disclosure — Public interest — Police investigation into prisoners' complaints of assaults by prison officers — Statements of prison officers to police during interviews under caution — Prisoners bringing civil actions against Home Office and seeking third party disclosure orders requiring police to disclose statements — Public interest in maintaining confidentiality of information given to police — Whether outweighed by public interest in ensuring fair trial in civil action — CPR r 31.17(3)*

The claimants, who were prisoners, complained of assaults by prison officers. During the police investigation into the complaints prison officers were interviewed and made statements under caution. The claimants brought civil actions against the Home Office claiming damages in respect of the alleged assaults and for misfeasance in public office, and applied pursuant to CPR r 31.17[1] for third party disclosure orders requiring the police to disclose to them the prison officers' statements. The judge ordered that the officers be joined as parties to the proceedings and granted the applications subject to conditions, inter alia, limiting the use of the disclosed material to inspection, drafting of witness statements and preparation for trial.

On the prison officers' appeals—

*Held*, dismissing the appeals, that persons who made statements to, or answered questions by, the police, whether under caution or not, did so in the expectation that their confidence would be maintained unless either they waived it or it was outweighed by some greater public interest; that where, on an application under CPR r 31.17, the judge was satisfied that disclosure of statements made to the police in the course of a criminal investigation was necessary in order to dispose fairly of a claim in a civil action and that the information could not be obtained by another route, he should exercise his discretion to order disclosure if the public interest in the civil claim being tried on the basis of all the relevant evidence outweighed the public interest in maintaining the confidentiality of those who had made the statements; that the weight to be attached to the confidence would vary according to the particular circumstances in which the statements had been given; that a judge should not be required to try a civil action by a prisoner alleging assault by prison officers and misfeasance in public office without the benefit of potentially critical evidence of what the officers had said to the police when interviewed, and so the public interest in that evidence being available to him was of very great weight; that, in all the circumstances, the balance fell in favour of ordering disclosure; but that the judge had been right to impose stringent conditions on the extent and manner of disclosure in order to maintain the confidences so far as possible and to ensure that the material was used only to dispose fairly of the case and not for collateral purposes (post, paras 12, 13, 26, 35, 38–41, 55, 57–59).

*R v Secretary of State for the Home Department, Ex p Hickey (No 2)* [1995] 1 WLR 734, DC; *Taylor v Director of the Serious Fraud Office* [1999] 2 AC 177, HL(E) and *Woolgar v Chief Constable of Sussex Police* [2000] 1 WLR 25, CA considered.

[1] CPR r 31.17: see post, para 5.

The following cases are referred to in the judgments:

*Attorney General v Guardian Newspapers Ltd (No 2)* [1990] 1 AC 109; [1988] 3 WLR 776; [1998] 3 All ER 545, HL(E)
*Bunn v British Broadcasting Corpn* [1998] 3 All ER 552
*Marcel v Comr of Police of the Metropolis* [1992] Ch 225; [1992] 2 WLR 50; [1992] 1 All ER 72, CA
*R v Keane* [1994] 1 WLR 746; [1994] 2 All ER 478, CA
*R v Secretary of State for the Home Department, Ex p Hickey (No 2)* [1995] 1 WLR 734; [1995] 1 All ER 490, DC
*R (Green) v Police Complaints Authority* [2002] EWCA Civ 389; The Times, 6 May 2002, CA
*Taylor v Director of the Serious Fraud Office* [1999] 2 AC 177; [1997] 4 All ER 887, CA; [1999] 2 AC 177; [1998] 3 WLR 1040; [1998] 4 All ER 801, HL(E)
*Three Rivers District Council v Governor and Company of the Bank of England* [2002] EWHC 2309 (Comm)
*Three Rivers District Council v Governor and Company of the Bank of England (No 4)* [2002] EWCA Civ 1182; [2003] 1 WLR 210; [2002] 4 All ER 881, CA
*Woolgar v Chief Constable of Sussex Police* [2000] 1 WLR 25; [1999] 3 All ER 604, CA

No additional cases were cited in argument or referred to in the skeleton arguments.

**APPEALS** from Judge Collins sitting at Central London County Court

The claimants, Anthony Roy Frankson, Nicholas Martin Fryers and Gary Johns, brought claims for damages in the Central London County Court against the defendant, the Home Office, alleging that while they had been lawfully detained as prisoners at Wormwood Scrubs Prison they had been assaulted at various times and on several occasions by a number of prison officers, including Peter Rowe, Timothy Davies and Darren Green; that the defendant and/or its senior prison officers and/or prison service managers had known of or been recklessly indifferent to the existence of the pattern of violence, and, further or alternatively, had been negligent in relation to the claimants' treatment. On 13 December 2002 Judge Collins granted the claimants' application under CPR r 31.17 for disclosure of statements of prison officers made to the police under caution during their investigation of the alleged assaults, subject to conditions restricting the use to which the disclosed material could be put, made orders joining the prison officers as parties to the proceedings and gave the prison officers leave to appeal.

By notices of appeal dated 10 January 2003 and 2 April 2003 the prison officers appealed on the grounds, inter alia, that the judge had erred (1) in his construction of the proper approach to CPR r 31.17(3) in that he had elided the separate exercises required to be carried out under subparagraphs (a) and (b), and thus had failed to consider the separate question to be considered, namely whether it was necessary to order disclosure in order to dispose fairly of the claim and whether to exercise his discretion accordingly; (2) by failing therefore to have regard to the high importance of the public interest in maintaining confidentiality in the information which the prison officers had provided during the interviews; (3) by failing, notwithstanding his reference to the relevant authorities, to analyse properly the rationale underpinning the confidentiality of the information and therefore being in no sensible position to assess the strength of such public interest; (4) by failing to accept that, where similar allegations were made in future against prison officers by

prisoners, prison officers would be reluctant to co-operate with the police by agreeing to be interviewed and/or make statements; and (5) by wrongly finding that the statements/interviews in question went to the central issues at large in the proceedings.

The proceedings in respect of Frankson's claim were settled before the hearing of the appeal.

The facts are stated in the judgment of Scott Baker LJ.

*Philip Havers QC* for the prison officers.

*Tim Owen QC* and *Matthew Ryder* for the claimants.

The defendant and the Commissioner of Police of the Metropolis did not appear and were not represented.

*Cur adv vult*

8 May. The following judgments were handed down.

**SCOTT BAKER LJ**

1 Following complaints by prisoners at Wormwood Scrubs Prison of assaults on them by a number of prison officers, the police carried out a criminal investigation. In the course of it a number of prison officers, as suspects, were interviewed under caution. In the result some prosecutions and some convictions did follow, but not in the cases with which this case is concerned. However, several of the prisoners have pursued civil claims against the Home Office in respect of their complaints. The issue in this appeal is whether those interviews under caution should be disclosed to the relevant claimants. The issue came before Judge Collins in the Central London County Court, first in the case of *Abbey v Home Office* on 3 May 2002. Judge Collins found in favour of disclosure, but gave permission to appeal to the Court of Appeal because of the number of other pending actions and possible claims in which the same point was likely to arise. The *Abbey* case was, however, settled before the appeal was heard. The present case then came before Judge Collins on 13 December 2002. It raised the same point. Judge Collins again ordered disclosure, saying that the two judgments should be read together.

2 The Commissioner of Police, from whom disclosure is sought, has taken a neutral stance. So has the Home Office, who are the defendants in the civil actions. The appellants are three prison officers, Rowe in the case of the claim by Fryers, and Green and Davies in the case of the claim by Johns. Fryers and Johns are the respondents to the appeal. The prison officers were joined in the proceedings for the purposes of resisting the applications for third party disclosure.

3 It is necessary to begin by looking at the court's power to order third party disclosure. Section 53 of the County Courts Act 1984, as amended by article 6(c) of the Civil Procedure (Modification of Enactments) Order 1998 (SI 1998/2940) provides so far as is material:

> "(2) On the application, in accordance with county court rules, of a party to any proceedings, a county court shall, in such circumstances as may be prescribed, have power to order a person who is not a party to the proceedings and who appears to the court to be likely to have in his possession, custody or power any documents which are relevant to an

issue arising out of the said claim—(a) to disclose whether those documents are in his possession, custody or power; and (b) to produce such of those documents as are in his possession, custody or power to the applicant or, on such conditions as may be specified in the order—(i) to the applicant's legal advisers; or (ii) to the applicant's legal advisers and any medical or other professional adviser of the applicant; or (iii) if the applicant has no legal adviser, to any medical or other professional adviser of the applicant."

There is a similar provision in section 34 of the Supreme Court Act 1981.

4 Section 54(1) of the 1984 Act expressly provides that a court is not to make an order under section 53 if it considers that compliance with it, if made, would be likely to be injurious to the public interest. Section 54(2) is the rule-making power.

5 The relevant rule is CPR r 31.17. It provides:

"(1) This rule applies where an application is made to the court under any Act for disclosure by a person who is not a party to the proceedings.

"(2) The application must be supported by evidence.

"(3) The court may make an order under this rule only where—(a) the documents of which disclosure is sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings; and (b) disclosure is necessary in order to dispose fairly of the claim or to save costs."

The remainder of the rule is not relevant for the purposes of this appeal.

6 It was common ground before the judge that the interviews met the test of relevance in paragraph (3)(a) above. The issue was whether disclosure was necessary in the terms of paragraph (3)(b) and whether the judge should exercise the discretion, that was undoubtedly given by the opening words of paragraph (3), in favour of disclosure.

7 The prison officers' argument on the facts runs thus. Prison officers are particularly vulnerable to the kind of accusations that have been made in the present case. Quite frequently allegations are made against prison officers by prisoners. Sometimes individual officers are identified; sometimes not. This may result in the police interviewing all the officers who were on duty at the relevant time. Prison officers invariably agree to assist the police in their investigations and to be interviewed. It is very much in the public interest that this assistance should continue. It is said that in the vast majority of cases complaints by prisoners do not lead to prosecution of prison officers and even where charges are preferred the conviction rate is very low. In the present cases the prison officers were interviewed under caution but no charges were brought. Mr Havers, for the prison officers, pointed out that prison officers are particularly vulnerable to unfounded allegations by prisoners and that things may be said in answer to questions by the police that could support a case that a prisoner later chooses to bring, for example that the officer questioned or a colleague was on duty at the particular time. There are others too in public sector employment who are in a similarly vulnerable position, for example immigration officers or care workers. When someone is interviewed under caution the questions are answered in circumstances of confidentiality and these prison officers were entitled to believe that their answers would not see the light of day except in

the event of criminal proceedings. The words of the caution, so it was submitted, emphasise this. These are:

> "You do not have to say anything. But it may harm your defence if you do not mention when questioned something which you later rely on in court. Anything you do say may be given in evidence."

8 The contrary argument for the prisoners is that they too are in an extremely vulnerable position and it is critical that any evidence supporting their claims should be available for the court to consider. No unnecessary hurdle should be put in the way of a prisoner who may have a perfectly good civil claim. This is particularly important bearing in mind many prisoners will start with credibility problems because of the very fact that they are prisoners and that they have criminal records. Little can be read into the Crown's decision not to prosecute, because criminal charges will only be brought if there is a good prospect of conviction. What the prison officers said in interview may well turn out to be crucial to the success of a civil claim against the Home Office.

9 CPR r 31.17 applies, as paragraph (1) makes clear, when disclosure is sought by a person who is not a party to the proceedings. Many and varied circumstances are envisaged. Examples that come readily to mind are records held by local authorities about children, police accident reports in road traffic cases and documents held by bodies such as the Health and Safety Executive, hospitals and so forth. It is important to emphasise that disclosure is sought against the commissioner as a non-party to the proceedings and it is disclosure against non-parties to which CPR r 31.17 is directed. Had the prison officers been defendants instead of, or in addition to, the Home Office the ordinary rules for disclosure between parties would have applied but the prison officers could have applied to withhold disclosure or inspection under CPR r 31.19. CPR r 31.19(1) provides that a person may apply, without notice, for an order permitting him to withhold disclosure of a document on the ground that disclosure would damage the public interest.

10 The word "only" in rule 31.17(3) emphasises that disclosure from third parties is the exception rather than the rule. Disclosure will not be routinely ordered but only where the conditions there specified are met. The first condition in paragraph (3)(a) is that the documents sought are likely to support the case of the applicant or adversely affect the case of one of the other parties. In other words they must have a potentially relevant bearing on one or more of the live issues in the case. The question is whether they are likely to help one side or the other. In *Three Rivers District Council v Governor and Company of the Bank of England (No 4)* [2003] 1 WLR 210 Chadwick LJ, giving the judgment of the court, explored in some depth the meaning of the word "likely" in this rule before concluding, at p 225, para 32:

> "In those circumstances, unless there were reasons which compelled a different conclusion, we would think it right to reject the submission that the work 'likely', in the context of the threshold condition in rule 31.17(3)(a), means 'more probable than not'; and to hold that the word has, in that context, the meaning 'may well' which this court thought it should bear in rule 31.16(3)(a) and (b). We are not persuaded

that there are reasons which compel a different conclusion. Indeed, it seems to us that the reasons which led this court to reach the conclusion which it did in *Black v Sumitomo Corpn* [2002] 1 WLR 1562 have equal force in the context of rule 31.17(3)(a)."

He went on to say, at p 226, para 33:

"We think that the word 'likely', when used in the Civil Procedure Rules, connotes a rather higher threshold of probability than merely 'more than fanciful'. But a prospect may be more than fanciful without reaching the threshold of 'more probable than not'."

11 It was agreed in the present case that the necessary threshold was met and the issue was whether the second condition was satisfied and the judge's overall discretion should be exercised in favour of making an order.

12 Given agreement that the interview records passed the relevance test in sub-paragraph (a), the judge had first to consider whether disclosure was necessary in order to dispose fairly of the claim or to save costs. I think it is important to bear in mind that this condition only falls for consideration when the relevant condition in (a) has been satisfied. Condition (b) must therefore be construed in that context. In my judgment this condition is focusing on the *necessity* of disclosure because third party disclosure ought not to be ordered by the court if it is not necessary to do so. Like condition (a), condition (b) is also focusing on the particular case before the court. At this point the judge has to ask himself the question whether the disclosure is needed to dispose fairly of the claim or to save costs. There may, for example, be another route to obtain the necessary information, or making an order at the particular stage the proceedings have reached may add to the costs rather than save costs.

13 The third and final stage under rule 31.17(3) is for the court to exercise its discretion whether or not to make an order. Here, wider considerations may come into play, but the court only reaches this stage if the two conditions in (a) and (b) are met. It is at this point, in my judgment, that public interest considerations fall to be taken into account and, if necessary, to be balanced. Two competing public interests have been identified in the present case, on the one hand the public interest of maintaining the confidentiality of those who make statements to the police in the course of a criminal investigation, and on the other the public interest of ensuring that as far as possible the courts try civil claims on the basis of all the relevant material and thus have the best prospect of reaching a fair and just result.

14 These two public interests, which in this case compete, have been clearly identified in authority. In *Taylor v Director of the Serious Fraud Office* [1999] 2 AC 177, 211 Lord Hoffmann said:

"Many people give assistance to the police and other investigatory agencies, either voluntarily or under compulsion, without coming within the category of informers whose identity can be concealed on grounds of public interest. They will be moved or obliged to give the information because they or the law consider that the interests of justice so require. They might naturally accept that the interests of justice may in the end require the publication of the information or at any rate its disclosure to the accused for the purposes of enabling him to conduct his defence. But

there seems to me no reason why the law should not encourage their assistance by offering them the assurance that, subject to these overriding requirements, their privacy and confidentiality will be respected."

In the same case Lord Hope of Craighead said, at p 219:

"Those who provide information to investigators usually do so in the belief, which may or may not be expressed by them, that the information is being given out of a sense of public duty and in confidence."

And, at p 219: "I do not think that it is possible to overstate the importance, in the public interest, of ensuring that material which is disclosed in criminal proceedings is not used for collateral purposes."

15 The other public interest was identified by Sir Christopher Slade in *Marcel v Comr of Police of the Metropolis* [1992] Ch 225, 263:

"As Sir Nicolas Browne-Wilkinson V-C recognised, there is a basic public interest in ensuring a fair trial on full evidence. In his words, ante, p 239: 'Anything which prevents the full facts coming before the court may lead to injustice through failure to protect the litigants' rights'."

Sir Christopher Slade continued, at p 265:

"I of course accept that there is a public interest in ensuring a proper observance by the police of the obligation of confidentiality in respect of documents seized under relevant powers. It is the existence of this obligation which, in my judgment, alone gives rise to a cause of action at the suit of the person from whom the documents were seized in cases where the police use or propose to use them otherwise than for police purposes at a time when they are still properly retaining them. I cannot, however, see why that public interest should in all cases and in all circumstances outweigh the public interest in ensuring a full and fair trial on full evidence in cases where the police have seized documents under Part II of the Police and Criminal Evidence Act 1984 and wish to use them for the purpose of assisting the supposed victim of an alleged crime to obtain a fair trial of a claim for damages in a civil case on full evidence. Everything must depend on the circumstances of the particular case."

16 The critical question in the present case, so it seems to me, is how the court should approach balancing those competing public interests. In other words how the court should exercise its residual discretion under rule 31.17(3).

17 Some assistance is to be found in the authorities, although none of them deals specifically with both the public interests that compete in the present case. A helpful starting point is *Attorney General v Guardian Newspapers (No 2)* [1990] 1 AC 109 (the "Spycatcher" case). Lord Goff of Chieveley, when describing the principles which limit the general principle of confidentiality, put the position succinctly as follows, at p 282:

"The third limiting principle is of far greater importance. It is that, although the basis of the law's protection of confidence is that there is a public interest that confidences should be preserved and protected by the law, nevertheless that public interest may be outweighed by some other countervailing public interest which favours disclosure. This limitation may apply, as the learned judge pointed out, to all types of confidential

information. It is this limiting principle which may require a court to carry out a balancing operation, weighing the public interest in maintaining confidence against a countervailing public interest favouring disclosure."

Lord Griffiths, in the same case, likewise recognised the possibility of countervailing public interests and the need to balance one against the other. He said, at p 268:

"The courts have, however, always refused to uphold the right to confidence when to do so would be to cover up wrongdoing. In *Gartside v Outram* (1857) 26 LJ Ch 113, it was said that there could be no confidence in iniquity. This approach has been developed in the modern authorities to include cases in which it is in the public interest that the confidential information should be disclosed: see *Initial Services Ltd v Putterill* [1968] 1 QB 396, *Beloff v Pressdram Ltd* [1973] 1 All ER 241 and *Lion Laboratories v Evans* [1985] QB 526. This involves the judge in balancing the public interest in upholding the right to confidence, which is based on the moral principles of loyalty and fair dealing, against some other public interest that will be served by the publication of the confidential material. Even if the balance comes down in favour of publication, it does not follow that publication should be to the world through the media. In certain circumstances the public interest may be better served by a limited form of publication perhaps to the police or some other authority who can follow up a suspicion that wrongdoing may lurk beneath the cloak of confidence. Those authorities will be under a duty not to abuse the confidential information and to use it only for the purpose of their inquiry. If it turns out that the suspicions are without foundation, the confidence can then still be protected . . ."

18 In this regard it is of some importance to look at the terms of the orders made by the judge in the present case. These include that: (a) the transcripts are to be used solely for the purposes of inspection, drafting of witness statements and preparation for trial; (b) no one provided with the transcripts is to disclose their contents to anyone save for the above purposes; (c) there is a strict limitation on the persons to whom copies of the transcripts may be provided; (d) the transcripts are not to be treated as coming into the public domain, and no use is to be made of them that will result in their coming into the public domain without the consent of the prison officers or the order of the court. What this illustrates is that the court has retained strict control over the use to which the disclosed material can be put and has maintained, as far as possible, the confidentiality in it. The orders are drawn in such a way as to maintain the court's control over what use is made of the material at trial. The judge could, for example, control cross examination on the statements at the trial. Thus, as Mr Owen, for the claimants, put it, this is not a case of routine or uncontrolled disclosure.

19 It is also pertinent to point out that the prison officers did not, as they could have done, invite the judge to look at the material before making a decision. Had this been done, the judge would have been better equipped to decide the issues under CPR r 31.17(3)(a) (which was conceded) and (b). However, the prison officers chose to have the point decided on the question of principle. I shall return to this later.

**20** It is necessary next to look at those authorities that deal with the confidentiality of statements made to the police. The first is *Bunn v British Broadcasting Corpn* [1998] 3 All ER 552. In that case the plaintiff was tried for conspiracy to defraud. During the trial reference was made by the prosecution to admissions made by him during an interview under caution by the police. He suffered a heart attack, and the jury was discharged. There was no second criminal trial because further proceedings were stayed on the grounds of oppression and abuse of process. The first defendant made a programme about the work of the Serious Fraud Office. The scheduled broadcast made a case that there were reasonable grounds for pursuing a second trial and referred to admissions made by the plaintiff when interviewed by the police. The second defendant had already published a book that contained the statements made by the plaintiff to the police and over 2,000 copies had been sold. The plaintiff sought injunctions restraining the defendants from including in the broadcast and the book any material disclosed during the police interviews on the ground that what he had said to the police was the subject of a confidentiality obligation which precluded its use other than for the purposes for which it was provided i e in the criminal trial. The claim failed because the material was already in the public domain. Lightman J said, at p 556:

> "There is apparently no authority directly addressing the status of statements made by accused under caution to the police, but I have no doubt that by reason of the relationship between the police and the accused such a statement enjoys confidentiality. It is provided by the accused (as well as to advance the interests of the accused) to assist the police in their investigation and in the decisions to be made as to the courses to be taken in any subsequent prosecution. I do not see why any distinction is to be drawn between information provided by informants (which are clearly confidential) and information provided by accused persons. It is clearly implicit in the relationship between the parties that the information is to be used only for the purposes for which it is provided and not for extraneous purposes, e g to leak to the press or anyone else whether for valuable consideration or otherwise. The caution under which it is taken warns the accused that if made the statement may be used for the purpose of proceedings, not that the statement is to be at the free disposal for any purpose of the police or anyone into whose hands it may fall."

**21** Mr Havers relied strongly on the fact that the prison officers in the present case were interviewed under caution. I am not persuaded that this factor is as critical as he suggested. Mr Owen submitted that it is difficult to see why the fact of being interviewed under caution enhances the confidentiality. The words of the caution make no promise or representation that the contents of the interview will be used only in a criminal trial.

**22** In *Woolgar v Chief Constable of Sussex Police* [2000] 1 WLR 25 a registered nurse who was the matron of a nursing home was arrested after a patient died in her care. She was interviewed by the police under caution. At the conclusion of the investigations there was insufficient evidence to charge her with any criminal offence. The local health authority's registration and inspection unit, which was concerned with other allegations against her, however, referred the matter to the nursing regulatory body who contacted

the police for the relevant information. The police followed their ordinary practice and sought the plaintiff's authority to disclose a transcript of the interview to the regulatory body but she refused her consent. Astill J refused an injunction restraining disclosure and his decision was upheld by the Court of Appeal.

23 As in the present case, the court had to conduct a balancing exercise between two public interests that pull in different directions. One was the same public interest that arises in the present case, the need to protect the privacy and confidentiality of those giving information to the police. But the other was different. There the countervailing public interest was the protection of health and safety. Procedurally too the matter came before the court in a different way namely as an application for an injunction to prevent disclosure, whereas here the court has to apply CPR r 31.17 and in particular the discretion in CPR r 31.17(3).

24 Kennedy LJ, in the course of giving judgment with which both the other members of the court agreed, said, at p 29:

> "Undoubtedly when someone is arrested and interviewed by the police what he or she says, is confidential. Plainly it may be used in the course of a criminal trial if charges are brought arising out of that investigation, but if it is not so used the person interviewed is entitled to believe that, generally speaking, his or her confidence will be respected. If authority be required for that proposition, it can be found in *Taylor v Director of the Serious Fraud Office* [1999] 2 AC 177, but, as all of the authorities cited to us indicate, there are exceptional circumstances which justify the disclosure by the police, otherwise than in the course of a criminal trial, of what has been said by a suspect during the course of an interview in circumstances where the suspect, or former suspect, does not consent to such disclosure."

Kennedy LJ went on to say that the question that arose in that case was whether, if the regulatory body of the suspect's profession investigating serious allegations made a formal request to the police for disclosure of what was said in interview, the public interest in the proper working of the regulatory body was such as to justify disclosure of the material sought.

25 Neither counsel was able to find any other authority in which Kennedy LJ's reference to "exceptional circumstances" could be found. I do not think too much should be read into these words. All Kennedy LJ was doing was emphasising the general rule that the confidentiality should be maintained and that good reason was required to override it. Mr Havers relied on Kennedy LJ's reference to exceptional circumstances as the basis for his argument that the prison officers' right to confidentiality is of special importance where a suspect is interviewed under caution. Indeed, he submitted, the expression means what it says and that there are quite simply no exceptional circumstances in the present case. For my part I do not think Kennedy LJ was doing other than using "exceptional circumstances" as a shorthand expression for indicating that the general rule should not readily be overridden. This seems to me to be clear when one looks at the way in which he approached his conclusion [2000] 1 WLR 25, 36 where he said:

> "Essentially Mr Wadsworth's submission was and is that when the plaintiff answered questions when interviewed by the police she did so in

the reasonable belief that what she said would go no further unless it was used by the police for the purposes of criminal proceedings. The caution administered to her so indicated, and in order to safeguard the free flow of information to the police it is essential that those who give information should be able to have confidence that what they say will not be used for some collateral purpose. However, in my judgment, where a regulatory body such as the UKCC, operating in the field of public health and safety, seeks access to confidential material in the possession of the police, being material which the police are reasonably persuaded is of some relevance to the subject matter of an inquiry being conducted by the regulatory body, then a countervailing public interest is shown to exist which, as in this case, entitles the police to release the material to the regulatory body on the basis that, save in so far as it may be used by the regulatory body for the purposes of its own inquiry, the confidentiality which already attaches to the material will be maintained."

And a little later, at p 36H: "Obviously in each case a balance has to be struck between competing public interests, and at least arguably in some cases the reasonableness of the police view may be open to challenge."

**26** In my judgment the correct approach, which I believe to be consistent with Kennedy LJ's approach in the *Woolgar* case, is that one has to look and see whether there is another public interest which on the facts of the particular case assumes an even greater importance than the need to maintain the confidentiality of those who assist the police in their inquiries.

**27** In *R v Secretary of State for the Home Department, Ex p Hickey (No 2)* [1995] 1 WLR 734 the applicants had applied to the Secretary of State to refer their convictions to the Court of Appeal under section 17 of the Criminal Appeal Act 1968. The issue was whether they should have been given fuller disclosure of the information obtained from the police investigations ordered by the Secretary of State. The Divisional Court held that those in the shoes of the applicants should be able to make representations about material which had been received by the Secretary of State's inquiry in advance of his decision as to referral and that there should be sufficient disclosure to ensure that the individual could present properly his best case. Simon Brown LJ said, at p 745:

"The next public interest concern urged by the Secretary of State is that of confidentiality. This plainly goes rather to the level of disclosure required than to when it is given, although to some extent these issues overlap: the greater the disclosure the more likely it will attract a detailed and thus time-consuming response. The Secretary of State's evidence warns of grave difficulties in adopting the procedures proposed by the applicants. It is said that they would risk compromising an implicit duty of confidentiality to witnesses who assist in the Secretary of State's inquiries, that witnesses have expectations of privacy, and that 'If the Secretary of State were to operate a procedure involving, overall, a significantly greater degree of openness towards petitioners, expectations [of witnesses] would be different. Whatever formal safeguards for confidentiality were adopted under such a procedure, it seems likely that in fact potential witnesses and informants would be altogether more cautious, and that some would be reluctant to come forward or to answer

questions.' I confess to finding all this wholly unpersuasive, and certainly an insufficient basis for maintaining in place what I regard as the significantly too closed procedure presently operated. I have no doubt that fairness requires not merely prior disclosure but a substantial increase in the level of disclosure made. The Secretary of State accepts that in none of the present cases was any specific assurance of confidentiality given to anyone participating in the police inquires. As it seems to me, it seldom will be. We are told indeed that lay witnesses in these inquiries make formal witness statements: they must accordingly recognise at least the possibility of being called in further legal proceedings. A plea for some general principle of confidentiality to encourage co-operation with police inquiries is thus unconvincing. Essentially, as the applicants submit, it invites the creation of something akin to the very public interest immunity class claim which the House of Lords so recently abolished in *R v Chief Constable of West Midlands Police, Ex p Wiley* [1995] 1 AC 274."

A little later he said, at p 746:

"All that I have thus far said with regard to confidentiality goes to the vast majority of police inquires. Obviously, there may be exceptional cases where a different approach is justifiable. If, for example, information is elicited from an informer, that clearly would be protected on a conventional public interest immunity basis. Similarly if the Secretary of State perceives a real risk of intimidation, and I well recognise this will on occasions occur in an effort to persuade witnesses to change their evidence, such a risk should properly be reflected in the level of disclosure decided upon: witnesses must above all be kept safe. But these sorts of concerns should, in my judgment, be met on an ad hoc basis. I cannot accept that they arise commonly enough to justify distorting the whole process."

**28** Simon Brown LJ thus distinguished between the general and the particular. A general public interest of confidentiality in what was said to the police was clearly quite easily overridden in the circumstances with which that case was dealing, but he envisaged what he described as exceptional cases e g information supplied by informants or where witnesses might be pressurised. The strength of the confidentiality is dependent on the particular circumstances of the case.

**29** Simon Brown LJ revisited what he had said in the *Hickey* case in *R (Green) v Police Complaints Authority* [2002] EWCA Civ 389; The Times, 6 May 2002. Mr Green was hit by an unmarked police car and severely injured. He made a formal complaint which was investigated by the Police Complaints Authority ("PCA"), the basis being that the driver of the police car had been attempting to kill him. After investigation had been completed the PCA refused Mr Green's request for disclosure of various documents. These were, essentially, eye witness accounts of the incident and experts' reports based on investigations of the scene. Mr Green succeeded on an application for judicial review, Moses J holding that in principle the documents were disclosable. The Court of Appeal, however, allowed the appeal not on the issue of confidentiality but on other grounds. Simon Brown LJ said, at paragraph 40:

"True it is, as Mr Gordon and Mr Clayton point out, that a series of recent cases have tended to deprecate the value of confidentiality in witness statements. In *R v Chief Constable of West Midlands Police, Ex p Wiley* [1995] 1 AC 274 the House of Lords held that public interest immunity does not generally attach to such statements obtained during a police complaint investigation. The Divisional Court in *R v Secretary of State for the Home Department, Ex p Hickey (No 2)* [1995] 1 WLR 734 was unimpressed by the Home Secretary's plea of confidentiality in support of the procedures then governing the exercise of his power under section 17 of the Criminal Appeal Act 1968 to refer criminal convictions back to the Court of Appeal. Turner J, citing *Hickey's* case, in *R v Criminal Injuries Compensation Authority, Ex p Leatherland* The Times, 12 October 2000 likewise thought confidentiality no basis for refusing disclosure of witness statements in the context of Criminal Injury Compensation Authority proceedings. Mr Clayton relies most strongly on what I myself said in *Hickey's* case, at p 745."

30 He then cited the passage from his judgment in the *Hickey* case [1995] 1 WLR 734, 745 to which I have already referred before continuing:

"41. All that, of course, was subject to there being 'exceptional cases where a different approach is justifiable', such as informer cases and cases where 'the Secretary of State perceives a real risk of intimidation [which] will on occasions occur in an effort to persuade witnesses to change their evidence'.

"42. I see no reason whatever to depart from the view I expressed in *Hickey's* case. It is important, however, to recognise two things: firstly, as Mr Norman explains, that vulnerable witnesses gain some measure of reassurance if told that their statements will only be used in the event of a prosecution (or, presumably, disciplinary proceedings); secondly, that *Hickey's* case was decided in a very different context, namely in the interests of those claiming to have suffered a miscarriage of justice."

31 Hale LJ saw confidentiality as a particular rather than a general objection to disclosure. She said:

"83. Confidentiality is a different problem. People who give evidence to the investigating officer cannot be given a complete guarantee of confidentiality because their evidence may be needed to prove either a criminal or a disciplinary case. But a general promise of confidentiality unless their evidence is required for this purpose means that exculpatory evidence will normally be confidential while incriminating evidence will not. In other words, there is a real risk that conclusions favourable to the officer (and hence adverse to the complainant) may be based upon evidence which will not be disclosed, whereas the evidence for any proceedings against him would ultimately and correctly have to be disclosed. This is scarcely likely to serve any of the purposes for which the complaints procedure exists. What complainant, or member of the public, would be reassured by a statement that the investigating officer (or the PCA) has been satisfied, as a result of information from an anonymous source, that no action should be taken on the complaint, especially where it appeared that the anonymous source was another police officer? It is different, of course, if there are particular reasons for confidentiality,

for example, where a witness fears reprisals or has a close personal relationship with the complainant, or where disclosure would prejudice covert police operations.

"84. I would not, therefore, see confidentiality as a general rather than a particular objection to disclosure. In the present state of the criminal law, however, contamination must be regarded as a general objection to disclosure until prosecution has been ruled out or concluded."

32 Two points, in particular, arise from this passage. First, Hale LJ recognises that there may be reasons that are specific to the particular case why maintaining the confidence is of special importance to the individual who supplied the material to the police. Second, if prison officers are routinely protected from disclosure, situations could easily arise where they readily agreed to disclose in the event that disclosure might help their case but hide behind the cloak of confidentiality when it might not.

33 Mr Havers submitted that interviews of suspects play an essential part in the criminal justice system. It is in the public interest that the police should obtain the fullest information so that charges may be brought when they should be and not when they should not. Nothing should be done that is likely to discourage a suspect from answering police questions. The police need to be able to follow up all available lines of inquiry. What a suspect says will often lead the police on to consider the involvement of others in the crime they are looking into. Suspects should not be looking over their shoulders at uses outside the criminal process to which their information may be put. The caution, he argued, gives the suspect an implied assurance that the answers will not be used for any purpose outside the criminal process. A witness who is being interviewed, but not under caution, does not receive this implied assurance. In short, a public interest of the highest order arises in the need to obtain the fullest and unreserved co-operation from suspects who are interviewed under caution. That is not the end of the matter because there is also the suspect's private interest to consider. When the suspect had questions put to him there was some element of compulsion in answering them because if he did not it might harm his defence in a subsequent criminal trial.

34 Mr Havers argued that the position is comparable to the privilege of a defendant talking to his lawyers. He contended, picking up the reference from Kennedy LJ in *Woolgar v Chief Constable of Sussex Police* [2000] 1 WLR 25, that there have to be exceptional circumstances or reasons for overriding the confidentiality protection that the law otherwise gives to those interviews. Prisoners making civil claims against prison officers are, he submitted, a regrettably familiar occurrence. The interests of justice in this case do not begin to amount to exceptional circumstances. In the *Woolgar* case there were exceptional circumstances but this case falls on the other side of the line. I cannot accept Mr Havers's argument. He is elevating Kennedy LJ's reference to "exceptional circumstances" to a level beyond that which was intended.

35 It is, in my judgment, clear beyond doubt that confidentiality attaches to what is said to the police in the course of a criminal investigation and that this applies whether the person giving the information is a suspect who is interviewed under caution or merely a potential witness. For my part I cannot see any distinction in principle. However, the point may be reached

where the court has to conduct a balancing exercise between the public interest in maintaining this confidentiality and some other public interest. The weight to be attached to the confidentiality will at this point depend very much on the particular circumstances in which the material sought was obtained. Mr Owen suggested there are four categories of case. In the first category, at the top of the scale as it were, is the informer. Here the assumption is that there will be no disclosure; the public interest in maintaining confidentiality trumps most other circumstances. The next category is where the witness is willing to make a statement but only on the basis of not giving evidence. In such a case the statement goes into the unused material. The third category is what I would call the ordinary witness statement where the witness is willing for the document to be disclosed for the criminal proceedings and is aware that it may also be used for civil or regulatory proceedings. In other words the statement may become useable for purposes beyond the criminal trial. The fourth category is where a suspect is interviewed under caution. It is difficult, submitted Mr Owen, to see why this category should entail confidentiality at all. Such confidentiality as is attracted is of a low order and easily displaced. For my part I do not think any rigid categorisation is particularly helpful; the weight depends on the circumstances of the particular case.

36 As mentioned earlier, the problem that arises in this case is likely to arise also in other areas of public sector employment and indeed there will, in principle, be similar problems in entirely different situations where third parties to civil proceedings have been interviewed by the police about issues which touch on the subject matter of the action. That is why, during the course of argument I asked counsel about the situation in road traffic cases. Police attend the scene of an accident, witnesses are interviewed and make written statements. Anyone suspected of driving without due care and attention, or any other offence, is most probably interviewed under caution and yet the police report, which contains all this material is routinely disclosed to the parties. Counsel have been unable to unearth any statutory authority for such disclosure. What one asks, of the confidentiality attaching to what was said to the police? Counsel helpfully produced for the court a copy of p 418 of the "Law Society's Gazette" for August 1967 reciting a memorandum of the Joint Committee of the General Council of the Bar and the Law Society produced in March 1966, accepted by the Home Office, which endorsed routine disclosure and which, as far as I am aware, has remained the practice ever since. The existence of this practice suggests that the weight of confidentiality to be attached to statements made to the police in such circumstances is low. However, if for some reason in a particular case the weight of confidentiality to be attached to a statement was regarded as sufficiently heavy to justify withholding disclosure, then no doubt the court could be asked to rule on the matter. In my judgment the practice in road traffic cases simply emphasises that ordinarily civil actions should be tried on the basis of full and complete information and that it is necessary to consider the facts of the individual case before deciding whether the public interest in maintaining confidentiality is of overriding importance.

37 I agree with the submission of Mr Owen that section 54(1) of the County Courts Act 1984 adds nothing to the exercise of the judge's discretion in the circumstances of the present case. A public interest immunity claim under section 54(1) is ordinarily dealt with by an

application under CPR r 31.19. No such application was made here. Mr Owen submitted that it was open to the judge to have required the documents to be disclosed to him by the section 54 route but that he did not do so. Mr Havers pointed out that no application was made under CPR r 31.19 (the route for dealing with a public interest immunity claim) and did not accept that the judge was entitled to look at the material. I express no view on the matter but draw attention to Tomlinson J's observation in *Three Rivers District Council v Governor and Company of the Bank of England* [2002] EWHC 2309 (Comm) at [3] where he said he did not see any scope within CPR r 31.17 for an inspection to ascertain actual relevance when it is potential relevance which is the threshold that must be overcome. Be that as it may, the judge in the present case specifically asked counsel then acting for the prison officers to invite him to inspect the documents but counsel elected not to do so, and it was conceded that they met the test of relevance under CPR r 31.17(3)(a).

38 Tomlinson J said in the *Three Rivers* case that if disclosure of the documents in question is shown to be necessary in the interests of the litigation, then that need overrides confidentiality. However, in such a case, the court will be concerned to see whether the needs of the litigation can otherwise be satisfied, e g by considering redactions, disclosure from other sources or other appropriate means. There is to my mind no absolute rule. The public interest in ensuring a fair trial in the light of all relevant evidence is nevertheless in my judgment of the utmost importance and one that inevitably weighs heavily in any balancing exercise. However, as has been pointed out, there are circumstances in which it is overridden. Legal professional privilege, without prejudice communications and the need to protect the identity of an informer are cited as examples. Mr Havers observed that in the case of informers the underpinning factor is the desirability of maintaining a free flow of information to the police. If non-disclosure affects the integrity of a criminal trial the Crown is left with the stark choice of either disclosing the information or abandoning the prosecution. The position is different in civil cases. The trial proceeds and the judge must do his best on the information before him. The prison officers' argument is that there are already some circumstances in which the public interest of obtaining a fair trial on full evidence is overridden and that maintaining the confidentiality of interviews under caution is of such importance that it must be another. I cannot agree. In my judgment a judge should not be required to try actions by prisoners against the Home Office alleging assault by prison officers and misfeasance in public office in blinkers as to potentially critical evidence of what the prison officers said to the police when interviewed under caution. The evidence may help to establish liability or to negative it. Either way, in the present instances, it should be disclosed.

39 The court has in cases such as the present a difficult balancing exercise to perform between the two conflicting public interests. For my part, I would not put interviews under caution of suspects into any special category. It seems to me that all who make statements to, or answer questions by, the police do so in the expectation that confidence will be maintained unless (i) they agree to waive it or (ii) it is overridden by some greater public interest. The weight to be attached to the confidence will vary according to the particular circumstances with which the court is dealing. In

the present case the countervailing public interest is one which, in my judgment, is of very great weight and one which outweighs the desirability of maintaining confidentiality. In conducting the balancing exercise the judge had clearly in mind the need to maintain the confidences as far as it was possible to do so. To that end he imposed stringent conditions on the extent and manner of disclosure. This, in my view, is a course which should always be followed in similar cases where the court decides that disclosure is required.

**40** Accordingly I would dismiss the appeal.

**WILSON J**

**41** I agree.

**PILL LJ**

**42** The claimants in these actions for damages for personal injuries against the Home Office seek disclosure from the Commissioner of Police of the Metropolis of statements under caution taken by his officers from prison officers employed by the Home Office at Wormwood Scrubs Prison where torts are alleged to have been committed. The application is made under CPR r 31.17 which permits application to be made to the court for disclosure by a person who is not a party to the proceedings.

**43** CPR r 31.17(3) provides:

> "The court may make an order under this rule only where—(a) the documents of which disclosure is sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings; and (b) disclosure is necessary in order to dispose fairly of the claim or to save costs."

**44** The Commissioner of Police takes a neutral stance upon the application and has not taken part in the proceedings save to inform the court that the statements have not been disclosed to the Home Office, the defendants in the actions. Disclosure is opposed by the prison officers. On their behalf, and for the purpose of the present application, it was conceded that the requirements of CPR r 31.17(3)(a) are satisfied with respect to the statements. The prison officers seek to have a question resolved as a matter of principle. It is whether a statement made by a prison officer, under caution, to police officers in the course of criminal investigations conducted by police officers into events in a prison is disclosable in subsequent civil proceedings in which the prison officer is not a party.

**45** Mr Havers, for the prison officers, submitted that it is a public interest of the highest order that suspects agree to be interviewed by the police and answer questions fully, freely and unreservedly. That enables the police to have the fullest possible information so that criminal charges are brought in cases, and only in cases, where they should be brought. Those interviewed also have a private interest in non-disclosure. Moreover, the form of the caution amounts to an assurance that the statement will not be used for purposes other than criminal proceedings brought against the maker. Mr Havers relied on the use by Kennedy LJ, with whom Otton and Waller LJJ agreed, in *Woolgar v Chief Constable of Sussex Police* [2000] 1 WLR 25, 29, of the expression "exceptional circumstances" when considering whether disclosure should be ordered.

**46** The public and private interests involved, submitted Mr Havers, should not be overridden unless there are exceptional reasons for doing so. The word "may" in the opening part of rule 31.17(3) demonstrates that the court has a discretion to refuse disclosure even when disclosure would facilitate the fair disposal of the claim. Documents subject to legal professional privilege would not be disclosable, even though relevant to the issues in the case. The situation considered in this case is not far short of legal professional privilege, it was submitted. Mr Havers relied on the statement of Millett LJ in the Court of Appeal in *Taylor v Director of the Serious Fraud Office* [1999] 2 AC 177, 198:

> "Members of the public who volunteer information to the police are entitled to expect that it will be used only for the purpose of the investigation and subsequent criminal proceedings. Their expectations should be respected."

**47** Reliance was also placed on the statement of Lord Hope of Craighead in the *Taylor* case, at p 219D: "I do not think that it is possible to overstate the importance, in the public interest, of ensuring that material which is disclosed in criminal proceedings is not used for collateral purposes."

**48** For the claimants, Mr Owen submitted that once disclosure was shown to be necessary for a fair trial, disclosure must follow but he accepted that there could be cases, for example a statement made by an informer, where public interest immunity on a contents basis would prevail over what would otherwise be a right to disclosure. A prison is a closed world. Prisons are maintained in the interests of the public and there is a public interest in the disclosure of statements taken during police investigations at prisons. The fact that the statements were taken under caution was not material, it was submitted, the caution plainly being related to possible criminal proceedings and no explicit assurance is given as to non-disclosure if disclosure is sought in a civil action. If a prison officer was a party to civil proceedings, and had a copy of his statement under caution in his possession, it would normally be disclosable in any event.

**49** The expression "exceptional circumstances" used by Kennedy LJ in *Woolgar v Chief Constable of Sussex Police* [2000] 1 WLR 25 must be read in the light of his recognition, at p 36H, that "obviously in each case a balance has to be struck between competing public interests". In that case a regulatory body, the Central Council for Nursing Midwifery and Health Visiting, operated in the field of public health and safety and sought access to confidential material in the possession of the police. Kennedy LJ concluded, at p 36:

> "Even if there is no request from the regulatory body, it seems to me that if the police come into possession of confidential information which, in their reasonable view, in the interests of public health or safety, should be considered by a professional or regulatory body, then the police are free to pass that information to the relevant regulatory body for its consideration."

It was submitted that there is a similar public interest in disclosure of evidence about procedures and events in prisons. Mr Owen relied on the fact that the court retained control of the use to which the material could be

put and an undertaking had been given in the present cases similar to that given by Tomlinson J in *Three Rivers District Council v Governor and Company of the Bank of England* [2002] EWHC 2309 (Comm).

50 The causes of action in the present cases are of assault, misfeasance in public office by "turning a blind eye" to the use of violence by prison officers and of negligence in prison management. The circumstances in *Taylor v Director of the Serious Fraud Office* [1999] 2 AC 177 were, it was submitted, quite different from the present. An allegation of defamation was based by a claimant on the contents of a letter and file note material obtained by the police during their investigation of alleged fraud. It was properly disclosed, as unused material, to a defendant in criminal proceedings arising out of the investigation and reached the claimant.

51 Lord Hoffmann stated, at p 211:

> "In my view, this"—a view expressed in the Court of Appeal—"takes too narrow a view of the interests which require protection and too broad a view of the other rules which may be available for that purpose. Many people give assistance to the police and other investigatory agencies, either voluntarily or under compulsion, without coming within the category of informers whose identity can be concealed on grounds of public interest. They will be moved or obliged to give the information because they or the law consider that the interests of justice so require. They must naturally accept that the interests of justice may in the end require the publication of the information or at any rate its disclosure to the accused for the purposes of enabling him to conduct his defence. But there seems to me no reason why the law should not encourage their assistance by offering them the assurance that, subject to these overriding requirements, their privacy and confidentiality will be respected."

Lord Hoffmann concluded, at p 212:

> "In my opinion, therefore, the disclosure of documents by the prosecution as unused material under its common law obligations did generate an implied undertaking not to use them for any collateral purpose."

It was also held that the statements made in the letter and the file note were subject to absolute immunity from suit in respect of an action for defamation, the statements having been made in the course of a criminal investigation.

52 Claims for disclosure such as the present could arise in many situations. There is a long standing practice, researched by Mr Owen, whereby, when the police investigate road and other accidents, statements of witnesses are disclosed to parties to subsequent civil proceedings. A working party of the Central Conference of Chief Constables produced in 1966 a statement of recommended practice. It provided, amongst other things, that "statements by witnesses in such cases should as a general rule be supplied on request to parties to proceedings, without obtaining the witnesses' consent." The issue could also arise when the Health and Safety Executive investigate industrial accidents. I recall a practice whereby, by means of subpoena, the disclosure of material collected by the executive in the course of their inquiries was obtained. Counsel have not found a case, in either of

those contexts, in which the disclosure of statements has been restrained by orders of the courts.

53 Disclosure of documents to the defence in criminal proceedings is governed by the principle stated by Lord Taylor of Gosforth CJ in *R v Keane* [1994] 1 WLR 746, 751–752: "If the disputed material may prove the defendant's innocence or avoid a miscarriage of justice, then the balance comes down resoundingly in favour of disclosing it." If the public interest requires that disclosure should be withheld, the result may be that the prosecution cannot proceed. In civil proceedings the position is different in that if the judge, conducting the balancing exercise, decides that the third party material should be withheld, it does not follow that the action will not proceed. One of the parties may be prejudiced by the non-disclosure in that material which would have supported that party's case is withheld, but the other party would not generally be abusing the process of the court in proceeding with the action.

54 In *R (Green) v Police Complaints Authority* [2002] EWCA Civ 389, cited by Scott Baker LJ, both Simon Brown and Hale LJJ referred to cases in which there are particular reasons for confidentiality, such as informer cases where covert police operations would be prejudiced and cases where there is a real risk of intimidation or reprisals. While I agree with the principle stated, the difficulty it creates in the present context is that the reason for which disclosure is withheld may have no bearing upon the value and relevance of the material in the civil action. Evidence from a witness which assists one party may be disclosed whereas equally cogent evidence from another witness which assists the other party on the point at issue in the case may be withheld on the ground that its disclosure would have the collateral effect of prejudicing a police covert operation. That could create injustice. However, what is sought in this case is the statement of a general principle against disclosure and the more difficult questions which may arise in particular cases do not require determination.

55 Notwithstanding that there is a strong public interest in the public co-operating with the police in their inquiries, the occasions on which disclosure should for that reason be withheld must in my judgment be limited by the public interest in claims being disposed of fairly within the meaning of CPR r 31.17(3). Such disposal requires a scrutiny of the evidence as to what happened in the prison which is facilitated by disclosure of the statements. The court is in a position to ensure that only relevant material is disclosed and that the use to which it is put is limited to that required to dispose fairly of the case. Given those safeguards, the statement will not be used for collateral purposes, in the sense contemplated by Lord Hope in the *Taylor* case [1999] 2 AC 177, 219D.

56 The decision and reasoning in the *Taylor* case must in my view be considered in their context; material obtained by the police in their investigation of crime and properly disclosed to a defendant charged with a criminal offence as a result of the investigation. Such disclosure does not permit the use of the material by a third party in a defamation action. The present circumstances are different; a police investigation into violence in a prison and a civil action based essentially on the matters the police were investigating. The interests of justice in the civil action may be an overriding consideration, as I understand Lord Hoffmann to recognise.

57 The fact that the statements were given under caution does not confer additional protection in the present situation. The wording of the caution does sufficiently indicate the criminal context of the warning given. In a criminal investigation it may be to the advantage of a suspected person (as well as to the interests of justice) that a statement is made and it is important not to discourage such conduct. While fear of a civil action against the suspect (or his associate or employer) may sometimes deter frankness with the police, I do not regard that as a sufficient reason for hampering the fair disposal of a civil trial based on a cause of action similar in kind to, or based on the same evidence as, the potential criminal charge.

58 In the present cases it is conceded that the requirements in CPR r 31.17(3)(a) are satisfied by the claimants. I agree with Scott Baker LJ that the court cannot accede to the submission that the general ruling sought by the prison officers should be made. I also agree with Scott Baker LJ that in future cases the facts of the particular case must be considered in the light of CPR rr 31.17(3) and 31.19 when a ruling is sought.

59 I agree that the appeal should be dismissed.

*Appeals dismissed.*
*Permission to appeal refused.*

*Solicitors: Lees Lloyd Whitley; Hickman & Rose; Birnberg Pierce & Partners.*

R V R