# EXHIBIT 18

A

Court of Appeal

# *Tajik Aluminium Plant *v* Hydro Aluminium AS and others

## Practice Note

[2005] EWCA Civ 1218

B

2005  Sept 16;                                    Rix, Maurice Kay and Moore-Bick LJJ
       Oct 24

*Practice — Witness summons — Production of documents — Documents to be identified with sufficient certainty — Doubts about adequacy of description to be resolved in favour of witness — CPR r 34.2*

C

A witness summons issued under CPR r 34.2[1] requires the person to whom it is addressed to attend court on a specified occasion and to produce to the court the documents to which it refers. It is a requirement reinforced with a penal sanction. Justice demands, therefore, that the person to whom it is addressed should be told clearly when and where he must attend and what he must bring with him. Anything less is unfair to the witness; it also makes supervision and enforcement by the court extremely difficult. Ideally each document to be produced should be individually identified. If not, the documents should be identified with sufficient certainty to leave no real doubt in the mind of the person to whom the summons is addressed about what he is required to do. In general, doubts about the adequacy of the description should be resolved in favour of the witness ( post, paras 27–28, 31–32).

D

Decisions of Mann J affirmed.

E  The following cases are referred to in the judgment of Moore-Bick LJ:

*Asbestos Insurance Coverage Cases, In re* [1985] 1 WLR 331; [1985] 1 All ER 716, HL(E)
*Assimina Maritime Ltd v Pakistan National Shipping Corpn* [2004] EWHC 3005 (Comm); [2005] 1 Lloyd's Rep 525
*BNP Paribas v Deloitte & Touche LLP* [2003] EWHC 2874 (Comm); [2004] 1 Lloyd's Rep 233

F  *Harrison v Bloom Camillin* Independent, 28 June 1999
*Panayiotou v Sony Music Entertainment (UK) Ltd* [1994] Ch 142; [1994] 2 WLR 241; [1994] 1 All ER 755
*South Tyneside Borough Council v Wickes Building Supplies Ltd* [2004] EWHC 2428 (Comm)

The following additional cases were cited in argument:

G  *Hassneh Insurance Co of Israel v Mew* [1993] 2 Lloyd's Rep 243
*Marcel v Comr of Police of the Metropolis* [1992] Ch 225; [1992] 2 WLR 50; [1992] 1 All ER 72, CA
*Sunderland Steamship P and I Association v Gatoil International Inc* [1988] 1 Lloyd's Rep 180
*Three Rivers District Council v Governor and Company of the Bank of England (No 4)* [2002] EWCA Civ 1182; [2003] 1 WLR 210; [2002] 4 All ER 881, CA

H

**APPEAL** from Mann J

On 13 September 2005 Mann J made two orders setting aside witness summonses requiring Abukadir Ganievich Ermatov, Alexander Shushko, Avaz Nazarov and

---

[1] CPR r 34.2: see post, para 17.

Ashton Investments Ltd to attend the hearing of an arbitration between Tajik Aluminium Plant ("TadAZ") and Hydro Aluminium AS and to produce the documents described in the schedules to the summonses. Mann J refused TadAZ's application for permission to appeal and TadAZ renewed its application before the Court of Appeal.

The facts are stated in the judgment of Moore-Bick LJ.

*Clare Reffin* for TadAZ.
*Paul Stanley* for Mr Ermatov.
*Brian Doctor* QC and *Paul Sinclair* for Mr Shusko, Mr Nazarov and Ashton Investments Ltd.
Hydro Aluminium AS did not appear and was not represented.

*Cur adv vult*

24 October. The following judgments were handed down.

**MOORE-BICK LJ**

1  This is an application by Tajik Aluminium Plant (known as "TadAZ") for permission to appeal against two orders made by Mann J on 13 September setting aside witness summonses requiring the second, third, fourth and fifth respondents ("the witnesses") to attend the hearing of an arbitration due to begin on Monday, 19 September, and to produce the documents described in the schedules to those summonses.

2  The application came before me on paper on 15 September. In view of the proximity of the arbitration hearing I directed that it be adjourned to be renewed orally on notice to the respondents with appeal to follow if leave were granted. In the event, having heard counsel for TadAZ and the witnesses we gave TadAZ permission to appeal but dismissed the appeal itself and indicated that we would give our reasons for that decision at a later date.

3  TadAZ carries on business in Tajikistan as a smelter of aluminium. In July 2000 and September 2003 it entered into barter contracts with the first respondent, Hydro Aluminium AS ("Hydro"), under which Hydro agreed to supply raw material in the form of alumina in exchange for aluminium metal. Those agreements are said to have been negotiated and signed on behalf of TadAZ by the second respondent, Mr Ermatov, who at the time was the director of the plant and managing director of TadAZ.

4  For some time various companies owned or controlled by the fourth respondent, Mr Nazarov, have done business with TadAZ by way of procuring supplies of raw material, in particular alumina, and assisting with the disposal of refined aluminium. Since 1999 Mr Nazarov has carried on that business through a company called Ansol Ltd ("Ansol") which was incorporated in Guernsey in September 1998.

5  The fifth respondent, Ashton Investments Ltd ("Ashton"), is owned or controlled by the third respondent, Mr Shushko. It was incorporated in 1997 for the purpose of obtaining raw materials from western sources for ultimate supply to TadAZ. After Ansol had been incorporated Ashton ceased to act as a supplier of raw materials and concentrated instead on providing various kinds of commercial and administrative services to Ansol. Those services included providing assistance to Ansol in negotiating contracts for the financing of raw materials required by TadAZ in its operations and the disposal of aluminium. Among those contracts were the two barter agreements between TadAZ and Hydro.

6  A dispute has arisen between TadAZ and Hydro under the 2003 barter agreement which has been referred to arbitration in London under the rules of the London Court of International Arbitration. In that arbitration Hydro as claimant is seeking to enforce the agreement against TadAZ. TadAZ is resisting the claim on the

A   grounds that the agreement formed part of a fraudulent scheme on the part of the witnesses and others, of which Hydro was aware, to divert the profits of its business into their own hands.

7  In May of this year TadAZ began proceedings against the witnesses and other defendants in the Chancery Division of the High Court alleging fraud, breaches of fiduciary duty and conspiracy to cause damage by unlawful means in respect of which it is seeking an account, damages and other relief. On 13 May it obtained from
B   Etherton J on a without notice application in support of its claim a search and seizure order and a worldwide freezing injunction. As a result of the execution of the search and seizure order a large number of documents (we were told about 2,000 bundles in all) were seized and retained by the supervising solicitors. The matter came before Laddie J on 27 May on an application to discharge those orders. The judge gave directions for the hearing of that application in July and ordered that in the meantime the documents should remain in the possession of the supervising solicitors and that
C   TadAZ should not have access to them until the application had been finally determined. That application was heard by Blackburne J between 21 and 28 July and judgment is awaited.

8  The arbitration proceedings are much farther advanced. Some time ago a hearing to determine Hydro's claim for which five days were set aside was fixed to begin on 19 September. In order to advance its case in the arbitration TadAZ wished to call Mr Ermatov, Mr Nazarov and Mr Shushko to give evidence at that hearing. It also wished to make use of the documents which were seized pursuant to the order of
D   Etherton J. Having obtained the consent of the tribunal, therefore, on 22 August TadAZ obtained from the Chancery Registry two witness summonses addressed to each of Mr Ermatov, Mr Nazarov and Mr Shushko, one ordering him to attend the hearing on 19 September to give evidence and one ordering him to attend to produce the documents referred to in the schedule to the summons. A further witness summons was obtained addressed to Ashton ordering it to attend the hearing to produce the same documents.

E   9  The schedule to each of the summonses requiring the production of documents was in the same terms and read as follows:

"(1) Any documents relating to supplies of alumina, directly or indirectly, to the claimant by Hydro Aluminium AS ('Hydro').

"(2) Any documents relating to supplies of aluminium, directly or indirectly, by the claimant to Hydro.

F   "(3) Any documents passing between Ermatov and/or Shushko and/or Nazarov and/or Ashton and/or Ansol Ltd ('Ansol') and/or Hydro relating to the operation or performance of: (a) a barter agreement between the claimant and Hydro dated 21 July 2000; or (b) an aluminium agreement between Ansol and Hydro dated 21 July 2000; or (c) a barter agreement between the claimant and Hydro dated 25 September 2003; or (d) an aluminium agreement between Ansol and Hydro dated 25 September 2003.

G   "(4) Any documents passing between Ermatov and/or Shushko and/or Nazarov and/or Ashton and/or Ansol and/or Hydro relating to Hydro's state of knowledge as to the pricing of alumina supplied to the claimant and/or the arrangements by which alumina was supplied to the claimant."

10  On 5 September on the application of TadAZ a second set of witness summonses addressed to the same persons in the same terms was issued out of the Admiralty and Commercial Registry.

H   11  On 13 September applications were made to Mann J on behalf of the witnesses to set aside all the witnesses summonses. The judge declined to set aside the summonses to attend to give evidence, although he thought it appropriate to impose certain conditions to ensure that the interests of the witnesses were properly protected. The judge granted permission to appeal against that part of his order, but there has in fact been no appeal and I need say no more about it.

12  The applications to set aside the summonses to produce documents were made on a number of grounds, the principal ones being that they failed properly to identify the documents that the witnesses were required to produce, that they were oppressive because they required production of a very large number of documents, that many of the documents were confidential and that the summonses were an abuse of the process because TadAZ was seeking to obtain access to the documents for purposes unconnected with the arbitration.

13  The judge's attention was drawn to three recent decisions at first instance relating to witness summonses to produce documents in support of proceedings in arbitration: *BNP Paribas v Deloitte & Touche LLP* [2004] 1 Lloyd's Rep 233, *South Tyneside Borough Council v Wickes Building Supplies Ltd* [2004] EWHC 2428 (Comm) and *Assimina Maritime Ltd v Pakistan National Shipping Corpn* [2005] 1 Lloyd's Rep 525. In the light of those decisions he held that the principles that applied to the process for compelling a person to attend court to produce documents prior to the introduction of the Civil Procedure Rules, namely, the writ of subpoena duces tecum, continue to apply to a witness summons issued under Part 34, including the principle that the documents to be produced must be identified individually or by a compendious description that enables each one to be specifically identified. He held that the summonses in this case failed to comply with those requirements and therefore set them aside. He found it unnecessary to consider the other grounds of the application. The judge refused permission to appeal against that part of his order.

14  The witness summonses in this case have all been issued in support of arbitral proceedings. The right to invoke the court's power to compel the attendance of witnesses at arbitral hearings is to be found in section 43 of the Arbitration Act 1996 the material parts of which provide as follows:

"(1) A party to arbitral proceedings may use the same court procedures as are available in relation to legal proceedings to secure the attendance before the tribunal of a witness in order to give oral testimony or to produce documents or other material evidence.

"(2) This may only be done with the permission of the tribunal or the agreement of the other parties."

15  Section 43 is the successor to section 12(4) of the Arbitration Act 1950 under which a party to an arbitration agreement could obtain a writ of subpoena duces tecum to compel a person to attend the hearing to produce documents.

16  Miss Reffin for TadAZ submitted that the judge was wrong to hold that the rules that applied to a subpoena duces tecum continue to apply to a witness summons issued under Part 34 of the Civil Procedure Rules. She submitted that the Rules were intended to provide new procedures designed to do justice in each case and that they should be liberally interpreted, keeping the overriding objective in rule 1.1 firmly in mind. Part 34 itself does not prescribe the manner in which documents must be identified in a witness summons and there is no reason to impose artificial constraints by reference to the rules governing the former procedure. She submitted that since the permission of the arbitrators or the consent of the other party is always required before a witness summons can be issued, there are effective safeguards against abuse of the process. In this case the arbitrators when giving TadAZ permission to issue witness summonses had indicated that they thought the documents were relevant to the issues they had to decide and the court should seek to support them as far as it lay within its power to do so.

17  The following provisions of Part 34 are most relevant to this application:

"34.2(1) A witness summons is a document issued by the court requiring a witness to—(a) attend court to give evidence; or (b) produce documents to the court.

"(2) A witness summons must be in the relevant practice form."

"34.4(1) The court may issue a witness summons in aid of an inferior court or of a tribunal."

A   18  The practice form to which rule 34.2(2) refers informs the person to whom it is addressed that he is summoned to attend the court (or whatever may be the relevant tribunal) to give evidence in respect of the claim or to produce documents, as the case may be, and contains a space which is intended to contain a description of the documents that must be produced. At the foot of the page is a large box containing a warning that a failure to comply could lead to the imposition of a fine or to imprisonment for contempt of court.

B   19  It is clear from the terms of rule 34.2 and from the practice form that a person who obtains a witness summons invokes the power of the court to compel the person to whom it is addressed to attend court to give evidence or to produce documents to the court. Although the form of the procedure is different, therefore, a witness summons requiring the production of documents is in essence the same as the former writ of subpoena duces tecum.

20  In *BNP Paribas v Deloitte & Touche LLP* [2004] 1 Lloyd's Rep 233
C   Morison J had to consider an application by BNP Paribas for permission to issue a witness summons addressed to Deloitte & Touche requiring them to produce certain documents at the hearing of an arbitration between BNP Paribas and another company, Avis. The application notice stated that the application was made under section 43 of the Arbitration Act 1996 and CPR rr 31.14(1)(b) (documents referred to in a statement of case), 31.17 (third party disclosure) and 34.4 (witness summons in aid of a tribunal). It will be seen, therefore, that the bank attempted to bring itself within three quite different provisions of the rules in its attempt to obtain the
D   documents in question. The documents were described in a schedule to the application notice in broad terms, such as "notes memoranda and/or other documents relating to the preparation of the statutory accounts for 31 December 1999 and the adjustments included therein". Morison J concluded that in substance this was an application seeking disclosure by a third party to the arbitration and, since the claimant was attempting to invoke rule 31.17 as well as rule 34.2, I think he was fully justified in taking that view, particularly in the light of the way in which the
E   application itself and the schedule were worded. In so doing he drew a contrast between an order for disclosure and a witness summons for the production of documents, citing a passage in the judgment of Sir Donald Nicholls V-C in *Panayiotou v Sony Music Entertainment (UK) Ltd* [1994] Ch 142, 153. He concluded that section 43 of the Arbitration Act 1996 does not give the court power to make third party disclosure orders in support of arbitral proceedings.

21  In *South Tyneside Borough Council v Wickes Building Supplies Ltd* [2004]
F   EWHC 2428 (Comm) applications were made to set aside witness summonses for the production of documents issued at the request of the council in connection with an arbitration to which it was a party. The judge held that in the absence of any explicit guidance in CPR Pt 34 on the approach to be adopted on an application of that kind it was appropriate to have regard, albeit with caution, to the authorities on the former procedure. In so doing he was following an earlier decision of Neuberger J in the unreported case of *Harrison v Bloom Camillin* Independent, 28 June 1999. The
G   judge held that one principle that could be derived from the earlier authorities was that a witness summons must specifically identify the documents to be produced and must not be used as an instrument to obtain disclosure: see para 23(i) of his judgment.

22  In the present case there is no ambiguity about the procedure being adopted by TadAZ. It has obtained witness summonses under rule 34.2 rather than make an application for disclosure under rule 31.17. It was no part of Miss Reffin's submission, therefore, that section 43 of the Arbitration Act 1996 gives the court
H   power to make orders for disclosure against third parties under rule 31.17 in aid of arbitration. She did submit, however, that rule 34.2 should be construed and applied in a manner consistent with rule 31.17 so as to permit a witness summons to be issued identifying the documents to be produced in broad terms such as those used in the present case. In support of that submission she drew our attention to the discussion of the purposes behind these two rules in chapter 4 of *Documentary Evidence*, 8th ed

(2003), by Mr Charles Hollander QC. If that were correct, of course, it would enable the court to grant to parties to arbitral proceedings (with the consent of the opposing party or the permission of the tribunal) relief of similar kind to that available under rule 31.17.

23  Much of the discussion of rules 31.17 and 34.2 in *Documentary Evidence* proceeds on the assumption that the two procedures are in substance directed to the same end and it is therefore suggested in para 4-17 that the rules relating to the former subpoena duces tecum should not apply to a witness summons issued under rule 34.2. Support for that view is said to be found in the origin and development of the rules governing third party disclosure. The contrary view, however, can be found in *Phipson on Evidence*, 16th ed (2005), para 8-10, in which the editors suggest that the documents must either be individually identified, or identified by reference to a class of documents or things by which criterion the person to whom the summons is addressed can know what obligation the court imposes on him.

24  Whatever may be the origin of the present rules, there are in my view clear distinctions to be drawn between an order for disclosure made against a third party and a witness summons to produce documents. An order for disclosure normally directs the person to whom it is addressed to carry out a reasonable search for documents in his possession falling within classes which are often broadly described and to list them for the information of the parties to the proceedings. Often the documents are described in terms which call for the exercise of a degree of judgment in determining whether a particular document does or does not fall within the scope of the order. Any order of that kind, being an order of the court, is one that must be strictly obeyed, but it would be extremely unusual for a penal sanction to be attached to it or for a failure to comply in some material respect to be treated as a contempt of court, save in the case of a contumacious refusal to obey. Moreover, although disclosure is usually a prelude to production for inspection, the person giving disclosure may resist production, if he has grounds for doing so, and in any event has no obligation to do more than make the documents available to the party who has obtained the order. A witness summons to produce documents, by contrast, involves the exercise of the court's coercive powers. The person to whom it is addressed is at risk of being in contempt of court if he fails to comply in any material respect, as the summons itself makes clear. He is obliged to bring the documents to which the summons refers to court, not simply to list them or make them available for inspection. In substance a witness summons to produce documents is no different from a subpoena duces tecum and the differences between such a summons and an order for disclosure are reflected in the different procedures provided by rules 31.17 and 34.2.

25  In those circumstances I think it is appropriate, in the absence of any explicit guidance in the rules as to the manner in which documents are to be described in a witness summons, to have regard to the earlier authorities relating to the writ of subpoena duces tecum since they may provide some insights into the factors that the court needs to keep in mind when exercising a jurisdiction of this kind. Miss Reffin did not challenge the conclusion drawn by Gross J in *South Tyneside Borough Council v Wickes Building Supplies Ltd* [2004] EWHC 2428 (Comm) that those authorities support the conclusion that the documents to be produced had to be specifically identified, or at least described in some compendious manner that enabled the individual documents falling within the scope of the subpoena to be clearly identified. In my view the judge was correct in reaching that conclusion.

26  Miss Reffin did submit, however, that it would be very unfortunate if the court were to endorse an approach to witness summonses that effectively prevented arbitral tribunals from obtaining the assistance of the court in making available documents that are relevant to the issues before them. In other words, she submitted that through the mechanism of Part 34 and section 43 of the Arbitration Act 1996 parties to arbitral proceedings should, by agreement with each other or with the

A consent of the tribunal, effectively be able to obtain orders for disclosure by third parties in aid of the proceedings. Whether it would be desirable for the court to have a power of that kind or not, the fact remains that the 1996 Act curtailed the court's role in relation to arbitral proceedings in certain respects, one of which concerns disclosure. The court's power to order disclosure which was formerly contained in section 12(6)(b) of the Arbitration Act 1950 has disappeared and as a result disclosure is entirely a matter for the arbitral tribunal. One should not necessarily

B expect to find complete symmetry, therefore, between the documentary procedures that apply in arbitral proceedings and those that apply to proceedings in court. The provisions of Part 34 and rule 31.17 have to be construed as part of a body of rules designed to govern the procedure that applies to proceedings in the courts. To approach them with arbitration proceedings uppermost in one's mind is likely to lead to a misunderstanding of their nature and purpose.

27 In order to answer the question raised in this case I think it is necessary to

C return to first principles with such assistance as may be gained from the earlier authorities. A witness summons, unlike an order for disclosure, requires the person to whom it is addressed to attend court on a specified occasion and to produce to the court the documents to which it refers. It is a requirement reinforced with a penal sanction. Justice demands, therefore, that the person to whom it is addressed should be told clearly when and where he must attend and what he must bring with him. Anything less is unfair to the witness; it also makes supervision and enforcement by

D the court extremely difficult, as Miss Reffin was forced to admit. For these reasons I consider that the view put forward in *Phipson*, to which I referred earlier, is to be preferred. Ideally each document should be individually identified, but I do not think it is necessary to go that far in every case. In *In re Asbestos Insurance Coverage Cases* [1985] 1 WLR 331 the court was concerned with an application under section 2 of the Evidence (Proceedings in Other Jurisdictions) Act 1975 under which the High Court is empowered to make orders for the production of documents for use as evidence in proceedings abroad pursuant to a request from a foreign court.

E Subsection (4) of section 2 expressly provides that an order made under that section shall not require the person to whom it is addressed to state what documents are or have been in his possession, custody or power or to produce any documents other than particular documents specified in the order and subsection (5) provides for the payment of conduct money, expenses and loss of time. This strongly suggests that the draftsman was seeking to equate an order to produce documents made under section 2 with the writ of subpoena duces tecum and to draw a distinction between

F such an order and what at that time would have been an order for discovery. However, despite the express requirement that an order under this section must specify particular documents, Lord Fraser of Tullybelton, with whom the other members of their Lordships' House agreed, considered that "a compendious description of several documents" would suffice provided that the exact document in each case was clearly indicated. By way of example he drew a distinction between an order for the production of "monthly bank statements for the year 1984 relating to

G [your] current account" with a named bank, which he thought would satisfy the requirements of the Act, and "all [your] bank statements for 1984", which he thought would not: see pp 337–338.

28 Rule 34.2 does not contain any provision comparable to section 2(4) of the Evidence (Proceedings in Other Jurisdictions) Act 1975, but Lord Fraser's observations are none the less helpful because they provide an example of the ways in which, without describing them individually, it may be possible to identify the

H documents to be produced with sufficient certainty to leave no real doubt in the mind of the person to whom the summons is addressed about what he is required to do. In my view that is the test that should be applied when considering whether documents have been sufficiently identified in a witness summons. Whether it has been met is likely to depend, at least in part, on the particular circumstances of the case. It is unlikely to be met if the documents are described simply by reference to a particular

transaction or event which is itself described in broad terms, although in cases where the transaction is self-contained and sufficiently well-defined that might be satisfactory. In general, I think that doubts about the adequacy of the description should be resolved in favour of the witness.

29  In the present case the documents are described in the schedule to each of the witness summonses in broad terms of the kind that would be appropriate to an application for disclosure but which fail to identify the documents with sufficient certainty to enable the witness to know what is required of him. I am satisfied, therefore, that the judge was right to set aside the witness summonses on this ground and that it is unnecessary to consider the other matters on which the witnesses relied in support of their applications. Many of them are matters which would be relevant to an application for disclosure by a third party and which may also be relevant to an application to set aside a witness summons to produce documents. They include the burden of complying with the order, the importance of the documents for the just resolution of the dispute and the protection of confidentiality. One such matter does deserve further mention, however, and that is the order made by Laddie J, to which TadAZ consented, restricting its access to the very same documents pending the outcome of the witnesses' challenge to the search and seizure order. Mr Doctor submitted that these witness summonses were little more than an attempt by TadAZ to circumvent that order to obtain immediate access to the documents for purposes unconnected with the arbitration. Miss Reffin submitted that TadAZ would be entitled to have access to them sooner or later in any event when the time came to give disclosure in the High Court proceedings and that the effect of obtaining production under the witness summonses would merely accelerate that process. However, since Laddie J's order was designed to ensure that the process of disclosure was not accelerated, at least until the dispute surrounding the search and seizure order had been resolved, I did not find that a very satisfactory answer. It was difficult to see how TadAZ could realistically hope to make much use of such a large body of material in the arbitration if it was only presented with the documents at the opening of the hearing, which leads one to suspect that it may have had an ulterior motive for issuing the witness summonses.

30  This is just one of the matters that we should have had to consider in greater detail if we had been satisfied that the witnesses summonses contained an adequate description of the documents which the witnesses were required to produce. However, since in my view they do not, it is unnecessary to reach any conclusion on this question. I am satisfied for the reasons I have given that the judge was right to set aside these witness summonses and that the appeal should be dismissed.

**MAURICE KAY LJ**
  31  I entirely agree.

**RIX LJ**
  32  I also agree.

*Permission to appeal.*
*Appeal dismissed.*

Solicitors: *Herbert Smith; Byrne & Partners; Clyde & Co.*

J B S