# EXHIBIT 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA          :

                                               :        13 Cr. 315 (WHP)

       -against-

                                               :        MEMORANDUM & ORDER

FREDERIC CILINS,
           Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/15/14

WILLIAM H. PAULEY III, United States District Judge:

        On April 25, 2013, a grand jury indicted Frederic Cilins for witness tampering, obstructing a criminal investigation, and destroying, altering, and falsifying records in a federal investigation. (Indictment dated Apr. 25, 2013, ECF No. 3 ("Indictment") at ¶ 1–5.) These charges arise out of an investigation into a scheme to bribe government officials of the Republic of Guinea in return for valuable mining concessions in Guinea's Simandou region.

        As part of that investigation, the grand jury sought production of documents from Mamadie Touré, a former wife of Lansana Conté, deceased President of Guinea. Specifically, the grand jury subpoena directed Touré to produce "[a]ny and all documents – including but not limited to contracts, bank or other financial records, records of cash payments or gifts, transaction records, . . . and any other records – reflecting or otherwise concerning: the Simandou concession . . . ." (Compl. ¶ 10.) According to the Government, after the grand jury issued that subpoena, Cilins attempted to bribe Touré to destroy documents purportedly granting Simandou mining concessions to Beny Steinmetz Group Resources ("BSGR").

        Cilins moves to compel production of the original BSGR contracts for inspection and forensic testing. The Government moves to prevent Cilins from testing the original contracts

and to preclude Cilins from offering evidence as to the authenticity of those contracts. For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

During the course of the grand jury investigation, Toure became a cooperating witness. She described several contracts she signed with BSGR that offered her money in exchange for help in securing Simandou mining concessions. (Compl. ¶ 12.) At that time, the Government obtained copies of those contracts. (Compl. ¶ 13.)

Thereafter, Cilins contacted Toure and attempted to purchase the original contracts from her. (Compl. ¶ 15.) In March 2013, the Government recorded multiple phone calls between Cilins and Toure in which Cilins offered to buy documents relating to Toure's role in obtaining mining concessions for BSGR. (Compl. ¶ 16.) The Government also recorded an in-person meeting between Cilins and Toure in which Cilins explained his offer of payment in exchange for destruction of certain documents. (Compl. ¶ 18.)

On April 11, 2013, Cilins met Toure at the Jacksonville, Florida airport. (Compl. ¶ 19.) As instructed by the Government, Toure informed Cilins that FBI special agents had told her there was a grand jury investigation of bribery in Guinea and that the FBI had asked for the documents she possessed and had warned her that if she did not turn them over, a grand jury would compel her to do so. (Compl. ¶ 20.) Anticipating one of Cilins's possible defenses, FBI agents gave Toure a document explaining, in French, the nature and functions of a grand jury. (Compl. ¶ 20.) FBI agents observed Cilins reading that document. (Compl. ¶ 20.) During this airport rendezvous, Cilins insisted repeatedly that the documents Toure possessed, including the original contracts and all copies, had to be destroyed and that it was critical that he witness their destruction. (Compl. ¶ 20.) Cilins also asked Toure to execute an affidavit ("the Attestation")

averring, inter alia, that she never signed a contract with BSGR, never intervened with Guinean officials in favor of BSGR, and never received any money from BSGR. (Compl. ¶ 20.) Cilins promised Toure $1 million for her cooperation and an additional $5 million if BSGR retained its interests in Guinea. (Compl. ¶ 20.) Three days later, the FBI arrested Cilins. (Compl ¶ 23.)

Following his indictment, Cilins moved to compel the Government to produce the original contracts—the ones that the Government alleges Cilins bribed Toure to destroy—for inspection and forensic testing.[1] Cilins claims they are forgeries. Initially, the Government opposed Cilins's application on the ground that it did not possess the original contracts.[2] But after the Government obtained the original Contracts, it moved to preclude any evidence about their authenticity—or, in the alternative, to limit such evidence to Cilins's mental state at the time of the charged conduct.[3]

## DISCUSSION

"Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). The bar for admissibility is not a high one. "Unless an exception applies, all relevant evidence is admissible[,]" and "evidence is relevant when it has any tendency to make a [material] fact more or less probable than it would be without the evidence." United States v. White, 692 F.3d, 235, 246 (quoting Fed. R. Evid. 401, 402). Therefore, if the authenticity of the original contracts has any tendency to make a material fact more or less

---

[1] (Mot. Compel Production Original Documents and Mot. Inspect, Examine, and Test Physical Evid. dated June 28, 2013, ECF No. 20 ("Mot. to Compel") at 1–2.)
[2] (Government's Mem. Opp'n Defendant's Mot. Compel. Production Original Documents and Mot. Inspect, Examine, and Test Physical Evid. dated June 30, 2013, ECF No. 21 ("June 30 Opp'n") at 1.)
[3] (Government's Mot. Preclude dated July 24, 2013, ECF No. 28 ("Mot. to Preclude") at 3.)

3

probable, then Cilins should be allowed to test them, and the Government's in limine motion should be denied.

I. **The Government's Motion In Limine**

The Government contends that evidence relating to the authenticity of the original contracts is inadmissible because it is irrelevant to the obstruction charges: it is a crime to corruptly attempt to destroy documents sought by a grand jury even if the documents are false. (See Mot. to Preclude at 2–3.) Cilins offers several theories as to why the authenticity of the original contracts is relevant.

A. **Direct Evidence**

1. Defects in the Subpoena

If the original contracts were forgeries, and the grand jury knew they were forgeries, then Cilins argues he may advance two defenses based on defects in the subpoena. (Mot. in Opp'n at 11–12.) First, he argues that he cannot be prosecuted for subverting a subpoena requesting original contracts when Toure only possessed forgeries. This argument assumes that if the original contracts between BSGR and Toure never existed except as forgeries, then Toure could not comply with the subpoena. However, as a factual matter, the subpoena did not request only original or valid contracts but "[a]ny and all documents – including but not limited to contracts . . . reflecting or otherwise concerning the Simandou concession, . . . [BSGR] and related entities." (Compl. ¶ 19.) Thus, it was possible—indeed obligatory—for Toure to comply with the subpoena by providing to the grand jury the contracts in her possession, whether authentic or not. Therefore, authenticity is irrelevant to this argument.

Next, Cilins argues that the subpoena was a strategic ploy by the Government to manufacture obstruction charges. (Mot. in Opp'n at 12.) This argument relies on a Second

4

Circuit decision criticizing the use of a grand jury investigation to obtain a "luxury" perjury charge. United States v. Jacobs, 547 F.2d 772, 775 (2d Cir. 1976) (affirming pretrial dismissal of perjury count where it appeared to be a superfluous count obtained through improper means). But Jacobs involved the Government's failure to advise a witness summoned before a grand jury that she was the target of a criminal investigation. See United States v. Jacobs, 531 F.2d 87, 89 (2d Cir. 1976), judgment vacated, Jacobs, 547 F.2d 772 (2d Cir. 1976); cf. United States v. Del Toro, 513 F.2d 656 (1975) ("There is no duty on the prosecution to tell a Grand Jury witness what evidence it has against him or to give him repetitive warnings that it is his duty to tell the truth when he has sworn upon his oath to tell the truth."). Here, by contrast, the subpoenas were directed at Toure with the intent "to discover and procure evidence," Okla. Press Pub. Co. v. Walling, 327 U.S. 186, 201 (1946), not to pressure a target to commit perjury or admit his crime.

2. Cilins's Mens Rea

Cilins argues that evidence the original contracts were forged would be relevant to his defense that he lacked the requisite mens rea. Charges relating to the destruction of documents require the Government to prove that Cilins acted "corruptly." See 18 U.S.C. §§ 1512(b)(2)(B), 1512(b)(3), 1512(c)(2). "Corrupt" under the statute means "wrongful, immoral, depraved, or evil." Arthur Andersen LLP v. United States, 544 U.S. 696, 705 (2005). According to Cilins, "[i]f the jury determine[d] his intent was to prevent extortion . . . rather than to thwart justice . . ., then it might conclude that his actions were not 'wrongful, immoral, depraved, or evil.'"[4]

---

[4] (Resp. to Government's Mot. Preclude and Mr. Cilins' Mem. Further Supp. Product. "Original" Contracts dated Aug. 7, 2013, ECF No. 32 ("Mot. in Opp'n") at 15.)

The Government counters that a subjective belief that documents were fraudulent is not a defense to the document destruction charges—allowing defendants to substitute their judgment as to authenticity for the grand jury's would "nullify much of the obstruction statute." (See Mot. to Preclude 16–19). This Court need not decide the issue, however, because even if a defendant's subjective belief provided a defense, there is a logical disconnect between Cilins's subjective belief in April and forensic test results today. Assuming the original contracts were revealed as forgeries, that fact would not make it any more or less likely that Cilins subjectively believed they were forgeries when he attempted to pay for their destruction. Thus, the authenticity of the original contracts is irrelevant to Cilins's mens rea under this theory.

3. False Attestation

Cilins also argues that evidence the original contracts were forged would be relevant to the false attestation charges against him. Count Five alleges that "Cilins provided to an individual, for that individual's signature, a document containing false statements, knowing that those false statements related to a criminal investigation . . . ." (Indictment at ¶ 5.) One statement the Government identified as false is that "[Toure] never signed a single contract with [BSGR], neither directly [n]or indirectly through anyone else." (Compl. at ¶ 21.) If forensic testing revealed that the original contracts were forgeries, then such results would make it somewhat more likely that the statement in the Attestation that Toure never signed a contract with BSGR was actually true.[5]

In response to Cilins's argument, the Government agrees not "to make any issue of the contracts whatsoever" as part of the false attestation charges and "will not proceed" on the

---

[5] Cilins further contends that he could escape liability by proving that he believed the statements to be true, (Mot. in Opp'n at 7–8,) but as with the document destruction charges, the authenticity of the original contracts is not probative of Cilins's subjective beliefs about the documents.

6

portion of the Attestation stating Toure had never signed a contract with BSGR.[6] Because the Government is not proceeding on that portion of the Attestation, the authenticity of the original contracts is irrelevant.

B. **Impeachment Evidence**

1. Credibility

Cilins suggests he will use evidence the original contracts are forged to impeach Toure at trial, specifically to undercut her averment that she signed the original contracts with BSGR. (Compl. at ¶ 12.) Cilins may cross-examine Toure on her statements, but he is bound by whatever answers she gives. Rule 608(b) prohibits the introduction of extrinsic evidence, such as forensic test results, to attack a witness's character for truthfulness. Fed. R. Evid. 608(b).

2. Other Grounds

Notwithstanding Rule 608(b), extrinsic evidence is generally admissible to show bias, interest, or capacity. See United States v. James, 609 F.2d 36, 46 (2d Cir. 1979) ("[B]ias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.") (internal quotation marks and citations omitted); Committee Notes on Rules—2003 Amendment ("By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment . . . to Rules 402 and 403."). Counsel for Cilins suggests that the authenticity of the original contracts may be relevant to establishing Toure's bias. (See Sept. 12 Tr. at 33.) A cooperating witness's credibility is anchored in her agreement with the Government, which requires her to testify truthfully or forfeit all the potential benefits of the cooperation agreement. If Toure testifies that she signed the original contracts with BSGR, and

---

[6] (See Tr. of Oral Arg. dated Sept. 12, 2013 ("Sept. 12 Tr.") at 5–6.)

7

forensic testing reveals those contracts to be forgeries, that may tend to suggest Toure has some other, more powerful motive for testifying against Cilins. The authenticity of the Contracts is therefore potentially relevant impeachment evidence.

C.     **403 Balancing**

The Government argues that evidence of the original contracts' authenticity has little or no probative value and has great potential to confuse the issues, mislead the jury, or cause undue delay. (See Mot. to Preclude at 21.) But any balancing under Rule 403 must await the results of forensic testing and is more appropriate at trial.

II.    **Cilins's Motion to Compel**

Cilins moves under Rule 16 to compel the Government to produce the original contracts for inspection and forensic testing. (Mot. to Compel 3.) The Government has permitted Cilins to inspect the original contracts, but opposes forensic testing that would risk damaging or destroying the documents, (Sept. 12 Tr. at 3–4, 29.)

Under Federal Rule of Criminal Procedure 16, a party is entitled to inspect a document when "the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). "Evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Stein, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007) (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)).

For the reasons set forth in this memorandum and order, the original contracts are material to Cilins's defense. To the extent Cilins can test the original contracts' authenticity

8

without destroying them, he may do so. If Cilins believes that destructive testing is required, he may make a further application to this Court.

## CONCLUSION

For the foregoing reasons, the Government's motion in limine to preclude evidence concerning the authenticity of the original contracts is granted in part and denied in part, and its motion to prevent forensic testing of the original contracts is denied. Frederic Cilins's motion to compel production and forensic testing of the original contracts is granted in part and denied in part. The Clerk of Court is directed to close the motions pending at ECFs Nos. 20, 28, and 29.

Dated: January 15, 2014
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

9

*Counsel of Record:*
Elisha J. Kobre, Esq.
United States Attorney Office, SDNY
1 St. Andrew's Plaza
New York, NY 10007

Stephen Spiegelhalter, Esq.
U.S. Department of Justice, Criminal Division, Fraud Section
1400 New York Avenue, NW, Bond Building, 11th Floor
Washington, DC 20530
*Counsel for Government*

William J. Schwartz, Esq.
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036

Bruce H. Lehr, Esq.
Sherleen M. Mendez, Esq.
Lehr, Fischer & Feldman
1401 Brickell Ave.
Miami, FL 33131

Michelle Patrice Smith, Esq.
Law Office of Michelle P. Smith, P.A.
87 Menendez Ct.
Orlando, FL 32801
*Counsel for Defendant*