# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA    :

  -v.-         :  S1 13 Cr. 315 (WHP)

FREDERIC CILINS,      :
   a/k/a "Frédéric François
     Marcel Cilins,"    :

      Defendant.   :

-------------------------------------------------------------x


## THE GOVERNMENT'S MOTIONS IN LIMINE


             PREET BHARARA
             United States Attorney
             Southern District of New York
             Attorney for the United States of America


Elisha J. Kobre
Assistant United States Attorney

Tarek Helou, Trial Attorney
Criminal Division, Fraud Section

- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 2

BACKGROUND ................................................................................................... 3

ARGUMENT ......................................................................................................... 7

    I.    THE COURT SHOULD PRECLUDE CILINS FROM INTRODUCING
        EVIDENCE OR ARGUMENT THAT CILINS BELIEVED THE CONTRACTS
        WERE FAKE. ................................................................................................ 7

            A.    Relevant Law .................................................................................. 9

            B.    Supreme Court and Second Circuit Law Interpreting Section
                   1512(b) Make Clear That Cilins's Purported Belief That the
                   Contracts Were Fake Is Irrelevant to Whether He Had the
                   Requisite Intent .......................................................................... 10

            C.    The Legislative History of Section 1512(b) Further Shows That
                   Cilins's Alleged Belief That the Contracts Were Fake Does Not
                   Negate His Corrupt Intent ........................................................... 13

            D.    Cilins's Alleged Belief That the Contracts Were Fake Should Also
                   Be Precluded Under Federal Rule of Evidence 403 ..................... 14

    II.    THE COURT SHOULD ORDER CILINS TO PROVIDE NOTICE TO THE
        GOVERNMENT AT LEAST THREE WEEKS BEFORE TRIAL OF ANY
        PORTIONS OF THE TRANSCRIPTS NOT DESIGNATED BY THE
        GOVERNMENT THAT THE DEFENSE PURPORTS TO BE PERMITTED TO
        OFFER AT TRIAL. ...................................................................................... 16

            A.    Relevant Facts .............................................................................. 16

            B.    Applicable Law ............................................................................ 16

            C.    Discussion .................................................................................... 18

    III.    THE COURT SHOULD PRECLUDE CILINS FROM ARGUING THAT HE
        DID NOT COMMIT ANY OF THE UNDERLYING OFFENSES BECAUSE
        THAT IS NOT RELEVANT TO WHETHER HE COMMITTED THE
        OBSTRUCTION CRIMES CHARGED IN THE INDICTMENT. ..................... 19

CONCLUSION ..................................................................................................... 22

# STATUTES

18 U.S.C. § 1512 ............................................................................................. 7, 8, 13, 14, 19

18 U.S.C. § 1512(b) ........................................................................................ 9, 10, 11, 12, 13

18 U.S.C. § 1512(b)(1) .................................................................................................... 9, 19

18 U.S.C. § 1512(b)(2)(B) ............................................................................................... 9, 19

18 U.S.C. § 1512(b)(3) ............................................................................................... 9, 19, 20

18 U.S.C. § 1512(c)(1) ................................................................................................. 10, 19

18 U.S.C. § 1512(f)(2) ........................................................................................................ 14

18 U.S.C. 1519 ......................................................................................................... 7, 8, 9, 20

# LEGISLATIVE HISTORY

S. Rep. No. 97-532 (1982) ................................................................................................... 13

# FEDERAL RULES OF EVIDENCE

Federal Rule of Evidence 106 ............................................................................................. 17

Federal Rule of Evidence 401 ................................................................................... 12, 14, 21

Federal Rule of Evidence 402 ............................................................................................. 21

Federal Rule of Evidence 403 ....................................................................................... 14, 15

Federal Rule of Evidence 611 ............................................................................................. 17

Federal Rule of Evidence 801 ............................................................................................. 17

Federal Rule of Evidence 901 ............................................................................................. 14

# CASES

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) ......................................... 10, 11, 12

*United States v. Blair*, 250 U.S. 273 (1999) .......................................................................... 13

*United States v. Alvarado*, 882 F.2d 645 (2d Cir. 1989) ...................................................... 17

*United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999) ................................................. 20

*United States v. Baldyga*, 233 F.3d 674 (1st Cir. 2000) ....................................................... 20

*United States v. Cilins*, 2014 U.S. Dist. LEXIS 7123 (S.D.N.Y. Jan. 15, 2014)..................... 8, 13

*United States v. Cobb*, 905 F.2d 784 (4th Cir. 1990) ................................................. 20

*United States v. Glover*, 101 F.3d 1183 (7th Cir. 1996) .............................................. 18

*United States v. Gray*, 642 F.3d 371 (2d Cir. 2011) ............................................... 9, 20

*United States v. Holmquist*, 36 F.3d 154 (1st Cir. 1994) ............................................. 14

*United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999) ............................................... 17

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ............................. 10, 11, 12, 15

*United States v. Marin*, 669 F.2d 73 (2d Cir. 1982) ................................................. 17

*United States v. Pluta*, 176 F.3d 43 (2d. Cir. 1999)................................................. 14

*United States v. Rivera*, 61 F.3d 131 (2d Cir. 1995)................................................. 18

*United States v. St. John*, 267 Fed. App'x 17 (2d Cir. Feb. 22, 2008) ........................ 12

*United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998)............................................. 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA          :

    -v.-                                 :        S1 13 Cr. 315 (WHP)

FREDERIC CILINS,               :
      a/k/a "Frédéric François
         Marcel Cilins,"         :

                    Defendant.       :

------------------------------------------------------------x

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law to seek the following rulings *in limine*. First, the Government seeks a ruling precluding Cilins from introducing evidence or argument that he allegedly believed that the documents he is charged with seeking to destroy were fake and that he was therefore entitled to destroy them. As explained below, Cilins's alleged belief regarding the authenticity of these documents is irrelevant under the obstruction statutes because, regardless of what Cilins now claims to have believed about whether the documents were real, Cilins's knowing destruction of the documents for the admitted purpose of making them unavailable to the grand jury meets the intent requirement of "knowing[] . . . corrupt[ness]." In addition to being totally irrelevant, evidence or argument of Cilins's belief as to the authenticity of these documents seriously risks confusing the issues, misleading the jury, and needlessly lengthening the trial.

Second, the Government intends to offer portions of certain consensual and wiretap audio recordings, which contain non-hearsay statements of the defendant, and has provided the defense with full draft transcripts of the recordings. In addition, pursuant to the Court's direction, the

2

Government has designated portions of the transcripts the Government currently intends to offer at trial. The remaining portions not designated by the Government are largely hearsay if offered by the defense and are, for the most part, irrelevant. To the extent the defense disagrees and seeks to offer any portions of the transcripts not designated by the Government, the Government respectfully asks the Court to order the defense to identify any such portions three weeks before trial so that the Court may address the admissibility of any such defense cross-designations.

Third, the Government seeks to preclude argument about whether Cilins or others actually committed the underlying FCPA and money laundering offenses being investigated by the FBI and grand jury because that question is not relevant to whether Cilins committed the obstruction crimes with which he is charged.

## **BACKGROUND**

The defendant, Frederic Cilins, is charged in a six-count superseding indictment (the "Indictment") with obstructing federal grand jury, FBI, and Guinean investigations into allegations that a mining company (the "Entity") obtained valuable mining concessions in Guinea's Simandou region (the "Simandou Mine") as a result of unlawful payments to the wife of a former president of Guinea who is cooperating with the government (the "CW"). Among other things, the investigations were attempting to determine whether a series of contracts between the CW and the Entity and affiliated companies and agents of the Entity (the "Contracts") were part of the bribery scheme.

Evidence at trial is expected to include transcripts of translations of French-language audio recordings of phone calls and meetings in which Cilins blatantly and with urgency sought to obstruct the FBI and grand jury investigations. Because the Court is already familiar, from prior filings, with many of the facts of this case, the following is merely a brief summary. Transcripts of the recorded phone calls and meetings between Cilins and the CW in March and

3

April 2013 demonstrate that Cilins expressed urgency and was both explicit and emphatic about destroying the Contracts and urging the CW to lie to the FBI about the CW's involvement with the Entity and to sign an "Attestation" containing false statements regarding the bribery scheme. By way of example, as reflected in the draft translations, the following exchange, among others, occurred between Cilins and the CW on April 11, 2013:

> CW:  They're [the FBI] going to give me a subpoena, summon me to appear in front of the judge, in court – in front of a grand jury in court [noise] and testify and give all the-uh-documents to court.
>
> CILINS:      The documents – you told them there was – that you had no documents!
>
> CW:   Yes!
>
> CILINS:      This must be destroyed – urgent-urgent-urgent ... [sic] You must destroy this – very urgent – very, very urgent [sic]. . . .
>
> *        *        *
>
> CW:   I think that, Frederic ... it seems that the same document [noise] we want to destroy is the same the American government is looking at . . .
>
> CILINS: But I know – but it's –
>
> CW:   I don't know what to do . . .
>
> CILINS:      But everything must be destroyed! Well, I told you this, a long time ago, 'Do not keep anything here . . .' [Whispering] Make sure you're not keeping anything here, not even a [unintelligible]. . .  You must destroy everything, everything, everything . . .

(Bates 001271-001272).

Later, during this same conversation, Cilins repeatedly stressed the urgency of destroying the documents, for example directing the CW: "we need to urgently, urgently, urgently destroy

all of this; but it's extremely urgent for us; ex-extremely urgent!" (Bates 001282). And at a subsequent meeting later that day, Cilins stated, referring to photocopies of the Contracts the CW had provided: "I myself am going to destroy all that. . . . I'm not going to destroy it here at the airport but as soon as I get there I have a paper shredder. I can destroy everything. . ." (Bates 001329). (*See also* Bates 1290) ("It's necessary to find a place for the . . . to-to destroy, destroy them completely; to burn them. But don't do that at home!").

Importantly, Cilins made clear during these meetings that he was not working alone in his efforts to obstruct the grand jury proceeding and FBI investigation:

> "I went just to see him [CC-1]. In order to have spoken about all that very clearly. I've always told him, I've always told him. Just last week, I told him . . . 'She'll never betray you. She'll never betray you. She'll never hand over any document whatsoever . . .' He said to me 'Listen, that's good, but I want you to go see and I want you to destroy those documents.' He told me 'Fine, you go. Do what you want, but I want you to tell me that 'I saw that the documents were destroyed. It's over. There are no more documents.'"

(Bates 014399).

Cilins later reiterated that he was acting at the direction of others, telling the CW, by way of example, that: ". . . what I was asked, was to see it myself when the documents are destroyed. That's why asked you whether you wanted us to go there together. To see, to be one hundred percent sure that everything has been destroyed . . . So, if you want us to do that today, we can definitely do it today." (Bates 014390).

As reflected in the transcripts, Cilins not only urged the destruction of the Contracts, he also presented the CW, during an April 11, 2013 meeting monitored by the FBI, with a one-page document titled "Attestation," containing false statements within the scope of the grand jury investigation, for the CW's signature. Cilins moreover explicitly directed the CW to "lie" to the

FBI, threatening that if the CW was truthful the CW would not be able to remain in the United States:

> Now, let's get back to our conversation of a short while ago when you told me, you told me you've got to lie. Well of course you've to lie. You can't tell them… If you tell them, I guarantee you… You need to understand that. If you tell them "Yes, I got paid…" anything from anyone . . . you've got a very big problem! Not a little problem. A very, very big problem! You can say goodbye to the… to the United States. You can say goodbye to the United States. And, and, it's serious.

(Bates 014429).

Cilins was clear about what the CW would receive in exchange for the destruction of documents under subpoena by the grand jury and for lying to the FBI – $1 million, with $200,000 paid up front and $800,000 at a later date.  Cilins further told the CW that, once the Guinean investigation is complete and the Entity retains its rights to the Simandou Concession, the CW will receive "five" – i.e., an additional $5 million – if the Entity retains its rights to the Simandou Concession after the Guinean corruption investigation is complete.  (Bates 014399-014400) ("I'll repeat it, so it's really clear in your head. The five that is planned . . . you'll get it if they [the Entity] aren't ejected. If they're still in the project. What you'll get, no matter what happens, the… one million. That is, two hundred plus eight hundred, you'll get that . . . That, in any case, that's . . . it's, you'll get it whatever happens.").  Cilins later reiterated that the CW will receive $5 million if the Entity was not kicked out and the $1 million regardless of the outcome. Cilins later agreed to try "to get fifty" – $50,000 – immediately for the CW.  (Bates 014426).

Cilins moreover repeatedly attempted to persuade the CW to leave the United States to avoid questioning by the FBI and being required to appear before the grand jury.  (Bates 014469) ("CILINS: It's good to leave. That way you've got peace of mind and there's no risk of them coming to see you, asking you, ask you questions and those sorts of things.");  (Bates 014472)

6

("If I were in your shoes, I'd leave within the week. I'd leave at the beginning of the week. Because at least, you'll go to Sierra, you'll be in… in Freetown, you'll rest easy. In Freetown nobody will bother you . . ."); (Bates 014531) ("CW: . . . What's a grand jury"; "CILINS: It's a… a jury that's uh… for, for all those deals . . . But… listen, that's why I'm telling you it's good to leave. ).

## ARGUMENT

### I. THE COURT SHOULD PRECLUDE CILINS FROM INTRODUCING EVIDENCE OR ARGUMENT THAT CILINS BELIEVED THE CONTRACTS WERE FAKE.

The Court should preclude Cilins from introducing evidence or argument, including through cross-examination, regarding his alleged belief that the Contracts were fake because any such alleged belief is no defense to the crimes with which Cilins is charged. As such, Cilins's alleged belief is irrelevant and, in addition, seriously risks confusing the jury and needlessly prolonging the trial. As discussed below, the deliberate destruction of documents for the purpose of making those documents unavailable to the grand jury satisfies the intent requirements under Sections 1512 and 1519 regardless of what Cilins allegedly believed about the authenticity *vel non* of the Contracts.

In previous defense submissions and argument, Cilins has suggested that he intends to raise the putative defense that he believed the Contracts were fakes that were being used to extort himself and others and that his efforts to destroy the Contracts were therefore not undertaken with the required intent under the obstruction statutes. *See, e.g.,* Defense Response to Gov't Motion to Preclude at 15 ("If the jury determines that [Cilins's] intent was to prevent extortion by the CW . . . rather than to thwart justice in the U.S., it may conclude that his actions were not "wrongful, immoral, depraved, or evil."); September 12, 2013 Argument Transcript at 16 (suggesting as a defense that "what [Cilins] did was come to the United States to try to stop,

7

finally stop a series of extortions that had taken place. He thought there were extortions and wrongful extortions because he believed that the contracts were in fact inauthentic.").

This Court has already held that the actual authenticity vel non of the Contracts is not a basis for a defense to the charges in the Indictment. In other words, even if Cilins somehow proved that the Contracts were fake, that is no defense to the charges in the Indictment because what was sought by the FBI and grand jury were *all* documents on the subject matter – "whether authentic or not." *United States v. Cilins*, 2014 U.S. Dist. LEXIS 7123, at *7 (S.D.N.Y. Jan. 15, 2014) (holding that "it was possible—indeed obligatory—for [the CW] to comply with the subpoena by providing to the grand jury the contracts in her possession, whether authentic or not."). The Court, however, left open the question whether Cilins's alleged belief that that the Contracts were fake negates the required state of mind necessary under Section 1512. *See Cilins*, 2014 U.S. Dist. LEXIS 7123, at *9 (noting the Government's argument "that a subjective belief that documents were fraudulent is not a defense to the document destruction charges – allowing defendants to substitute their judgment as to authenticity for the grand jury's would "nullify much of the obstruction statute.").

Under established Supreme Court and Second Circuit law, it does not. Cilins's alleged belief that the Contracts were fake is no defense to the crimes charged in the Indictment because such a belief would not negate the mens rea required under any of the charged statutes. As set forth below, a belief – mistaken or otherwise – that one is entitled to destroy documents for the purpose of making them unavailable in an investigation is the very essence of corruptness as required under Section 1512, and easily satisfies the lesser intent requirement under Section 1519 as charged in the Indictment.

### A. Relevant Law

Counts One and Six of the Indictment charge, respectively, a conspiracy to violate Section 1519, and a substantive violation of Section 1519, which provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . .

18 U.S.C. § 1519.

Section 1519 does not require "corrupt" intent. Indeed, "[b]y the plain terms of § 1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime." *United States v. Gray*, 642 F.3d 371, 378 (2d Cir. 2011); *id.* at 376 ("[I]n enacting § 1519, Congress rejected any requirement that the government prove a link between a defendant's conduct and an imminent or pending official proceeding."). Rather, Section 1519 merely requires "the intent to impede, obstruct, or influence the investigation or proper administration of any matter . . ." Plainly, the destruction of documents for the purpose of making them unavailable in an investigation meets this intent requirement.

Counts Two through Four of the Indictment charge Cilins with violating three separate provisions of Section 1512(b) – Sections 1512(b)(1), (b)(2)(B), and (b)(3) – all of which require that a defendant act with knowing corruptness:

> (b)     Whoever *knowingly . . . corruptly* persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> (1) influence, delay, or prevent the testimony of any person in an official proceeding;
> (2) cause or induce any person to—
>     (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

> > (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding . . . or
> >
> > \* \* \*
> >
> > (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .

18 U.S.C. § 1512(b) (emphasis added).

Count Five charges Cilins with a violation of Section 1512(c)(1) which makes it a crime to "corruptly" alter, destroy, mutilate, or conceal a record, document, or other object with the intent to impair the object's integrity or availability for use in an official proceeding. 18 U.S.C. § 1512(c)(1).

**B. Supreme Court and Second Circuit Law Interpreting Section 1512(b) Make Clear That Cilins's Purported Belief That the Contracts Were Fake Is Irrelevant to Whether He Had the Requisite Intent.**

The mens rea required under Section 1512(b) was explained in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) and more recently by the Second Circuit in *United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007). In *Arthur Andersen*, Andersen's management repeatedly encouraged Andersen employees to comply with the firm's "document retention policy" knowing that a formal SEC investigation into Andersen's conduct had been opened and that formal proceedings were likely. Andersen was charged with violating Section 1512(b). The Supreme Court reversed Andersen's conviction because the jury instructions failed to convey that Section 1512(b) requires the defendant to be "conscious of wrongdoing." *Arthur Andersen*, 544 U.S. at 706. *Arthur Andersen* emphasized that, because it is generally "not wrongful . . . to comply with a valid document retention policy," *id.* at 704, Andersen could not be guilty absent proof that the purpose of the document destruction truly was the improper one of obstructing the

10

investigation, rather than compliance with a longstanding document retention policy.  Absent such a showing, held the Court, a defendant might be found guilty for entirely lawful conduct – such as innocent compliance with an entirely lawful document retention policy.

*Arthur Andersen* is predicated on the existence of some *lawful reason* for destroying documents such as, in that case, a company's otherwise routine compliance with a document retention policy, as opposed to the plainly unlawful and improper purpose of keeping non-privileged documents from the grand jury that sought them.  Because Andersen had raised a lawful purpose for the document destruction – compliance with a valid company policy under which documents are destroyed at regular intervals – the jury could properly find that Andersen destroyed documents in compliance with the policy and not to obstruct the investigation.  However, where, as here, a defendant offers no lawful basis for the document destruction, only the plainly wrongful one of making the documents unavailable to the grand jury, the defendant is properly deemed "conscious of wrongdoing."  Indeed, in such a case the very essence of wrongdoing, destroying non-privileged documents to make them unavailable for the grand jury, is the stated purpose.

That destroying non-privileged documents for the purpose of making them unavailable for the grand jury is "knowingly corrupt" under Section 1512(b) is further demonstrated by jury instructions upheld by the Second Circuit in a post-*Arthur Andersen* case.  In *United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007), the Court affirmed a jury instruction which makes clear that a mistaken belief that the destruction of documents for the very purpose of making them unavailable to the grand jury is no defense to the obstruction charges in Section 1512(b).  The jury instruction approved in *Kaplan* stated:

11

> The first element the government must prove is that the defendant corruptly persuaded a person, or attempted to do so.
>
> . . . .
>
> *The word "corruptly" simply means having an improper purpose. An intent to subvert or undermine the factfinding ability of an official proceeding is an improper purpose . . ."*

*Kaplan*, 490 F.3d at 125-126 (emphasis added); *see also United States v. St. John*, 267 Fed. Appx. 17, 22-23, 2008 WL 482300, at *3 (2d Cir. 2008) (2d Cir. Feb. 22, 2008) (unpublished summary order) (affirming conviction under Section 1512(b) holding that *Arthur Andersen*'s requirements were satisfied where the district court instructed the jury that the jury could convict "only if it found that each defendant acted with an 'improper purpose' and 'had the purpose of corrupt persuasion,' the latter phrase defined as 'includ[ing] an attempt to induce a witness to become unavailable to testify or to testify falsely'").

This jury instruction, which *Kaplan* upheld under *Arthur Andersen*, clearly states that "an intent to subvert or undermine the factfinding ability of an official proceeding" is by definition an "improper purpose" and therefore "corrupt." This instruction plainly does not permit as a defense the belief – mistaken or otherwise – that the grand jury simply is not entitled to the documents or that the defendant is entitled to decide which documents should or should not be available to the grand jury.

Here, even if Cilins truly believed that the Contracts were fake, he would still be guilty of violating Section 1512(b) since making the non-privileged Contracts unavailable to the grand jury is plainly an "improper purpose" under Second Circuit law. *Kaplan*, 490 F.3d at 125-126; *St. John*, 267 Fed. Appx. at 22-23. Such evidence or argument is irrelevant and inadmissible under Federal Rule of Evidence 401. Indeed, unlike *Arthur Andersen*, where a lawful purpose

for the document destruction existed, Cilins's alleged belief that the Contracts were fake is *not*, even if he were correct that the Contracts were fake, a lawful reason to destroy the Contracts. This Court has already so held. *See United States v. Cilins*, 2014 U.S. Dist. LEXIS 7123, at *7 (S.D.N.Y. Jan. 15, 2014) (holding that the documents sought included all the Contracts "whether authentic or not" and therefore the authenticity *vel non* of the Contracts is not a defense). Cilins should not now be permitted to bring through the backdoor the issue of the authenticity of the Contracts when this Court has already ruled it irrelevant.

### C. The Legislative History of Section 1512(b) Further Shows That Cilins's Alleged Belief That the Contracts Were Fake Does Not Negate His Corrupt Intent.

This interpretation of Section 1512(b) is not only borne out by the text and case law interpreting Section 1512(b), but also comports with the legislative history of Section 1512. In enacting Section 1512, Congress made clear that questions as to a document's authenticity have no bearing on whether one can withhold the document from the grand jury. As set forth in a Senate Report analyzing what was to become Section 1512, Congress explicitly stated that it is not up to the statute's "violator to determine what is, or is not, legally privileged evidence or what evidence may prove to be legally inadmissible. Those findings are made by the court, not someone who seeks to withhold the evidence." S. Rep. No. 97-532, at 14 (1982), reprinted at 1982 U.S.C.C.A.N. 2520, 2525 (quotation set out under heading "Defenses Precluded"); *see also Blair v. United States*, 250 U.S. 273, 282 (1919) (holding, with respect to a witness before the grand jury, that "[h]e is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his.").

Congress chose to preclude such a defense for good reason. Allowing individuals to decide on their own what documents should or should not be available to the grand jury would be an open invitation to obstruction. Subpoena recipients would be privileged to engage in

wholesale document destruction, relegating courts and juries to making post-destruction determinations about the legitimacy of the destroyer's alleged and often baseless beliefs about the documents' authenticity or relevancy.[1]  Section 1512 allows no such absurd result.

For these reasons, the Court should preclude Cilins, under Federal Rule of Evidence 401, from introducing evidence or argument regarding his alleged belief that the Contracts were fake because such a purported belief is not a defense under Section 1512 and is therefore irrelevant.[2]

### D.  Cilins's Alleged Belief That the Contracts Were Fake Should Also Be Precluded Under Federal Rule of Evidence 403.

Moreover, Cilins should be precluded from introducing evidence about his purported belief regarding the authenticity of the Contracts under Federal Rule of Evidence 403 because, given that such evidence is irrelevant for the reasons set forth above, it poses a serious risk of confusing the issues, misleading the jury and needlessly lengthening the trial.  That is, Cilins's alleged belief regarding the authenticity of the Contracts is not only irrelevant because it does not constitute a defense, it also is likely to confuse the important issue of Cilins's intent to obstruct the grand jury proceeding with the irrelevant one of Cilins's alleged belief about the authenticity of the Contracts.  Such evidence is also likely to mislead the jury into thinking that Cilins's belief

---

[1] Notably, Congress criminalized the destruction of evidence, even where the document in question was "not admissible in evidence." 18 U.S.C. § 1512(f)(2). This provision is a telling one, as well-established case law shows that the issues of admissibility and authenticity are intertwined. Physical evidence is admissible at trial only if authenticated. *See, e.g., United States v. Pluta*, 176 F.3d 43, 49 (2d. Cir. 1999). But, even at trial, the standard for proving authenticity is a forgiving one: the proponent of particular evidence need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Evidence is admissible, even where the proponent cannot positively rule out that the evidence is something other than what it purports to be. *Pluta*, 176 F.3d at 49, citing *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994) (holding evidence admissible, even where court could not exclude possibility that evidence "had been doctored, or constituted an instrument through which [the authenticating witness], for whatever reason, aspired to carry out an elaborately staged hoax").

[2] Cilins may, of course, elicit facts showing that he did not have the necessary intent to commit the charged crimes.  For example, he might be able to show that he lacked the necessary intent to commit the charged crimes if he believed that the Government was not seeking the documents that he sought to destroy.

14

that the Contracts were fake is a valid defense to the charges in the Indictment.  As discussed above, it is not.

In addition, such evidence or argument raises the specter of lengthy testimony about the underlying bribery scheme spanning eight years and several continents and Cilins's involvement in it, when this case is truly about a much narrower set of facts bearing upon Cilins's obstruction of the ensuing investigations.  For these reasons, evidence or argument of Cilins's beliefs regarding the authenticity of the Contracts should be precluded under Federal Rule of Evidence 403.

The document destruction alleged in the Indictment is in this regard different from the charges regarding the false "Attestation."  With respect to document destruction, Cilins's alleged belief that the documents were fake does not provide a defense because the law does not permit the destruction of even fake documents and, as set forth above, Cilins's mistaken view of the law is not a defense.  With respect to the false "Attestation," on the other hand, if Cilins truly believed that the Attestation is true, then Cilins's conduct with respect to the "Attestation" does not meet the intent requirement of "knowing[] . . . corrupt[ness]" because creating a document with true statements is, of course, not an "improper purpose."  *Kaplan*, 490 F.3d at 125.  For this reason, and to further streamline the issues at trial, if the Court grants this motion and precludes Cilins from offering evidence or making argument, through cross-examination or otherwise, regarding his belief as to the authenticity or non-authenticity of the Contracts, the Government will agree not to proceed on the basis of the false Attestation.[3]

---

[3] The validity of Cilins's proposed defense based upon his alleged belief of the inauthenticity of the Contracts is particularly crucial prior to trial.  Should the Court grant the Government's motion, the issues at trial will be substantially narrowed as Cilins's participation in the underlying bribery scheme will become largely irrelevant.  If, on the other hand, Cilins's belief regarding the authenticity of the Contracts is relevant, Cilins's conduct in the larger bribery scheme will become relevant circumstantial evidence to prove Cilins's knowledge regarding the Contracts.

## II. THE COURT SHOULD ORDER CILINS TO PROVIDE NOTICE TO THE GOVERNMENT AT LEAST THREE WEEKS BEFORE TRIAL OF ANY PORTIONS OF THE TRANSCRIPTS NOT DESIGNATED BY THE GOVERNMENT THAT THE DEFENSE PURPORTS TO BE PERMITTED TO OFFER AT TRIAL.

The Court should order Cilins to provide notice to the Government at least three weeks before trial of any portions of the transcripts not designated by the Government that the defense believes it may properly admit or should otherwise be admitted, so that the Court may address the admissibility of any such defense cross-designations. As discussed below, the portions of the recordings and transcripts not designated by the Government are, for the most part, hearsay if offered by Cilins and, in any event, largely irrelevant.

### A. Relevant Facts

The Government intends to offer at trial translated transcripts of portions of certain audio recordings of phone calls and meetings in which Cilins and his co-conspirators participated. These include translated transcripts of consensually recorded phone calls and meetings between Cilins and his co-conspirators and the CW and others, and recorded phone calls obtained by a court-authorized wiretap on Cilins's cellular telephone. The audio recordings are largely in French though some include small parts spoken in an African dialect.

The Government has produced in discovery all of these recordings and draft transcriptions and translations of these audio recordings. As directed by the Court, the Government has moreover provided Cilins with a list of the designated portions of each of the audio recordings the Government intends to offer at trial.

### B. Applicable Law

A defendant's statement may be offered into evidence by the Government on two possible bases:

16

> When the government offers in evidence the [ ] statement
> of a defendant it commonly does so for either of two
> reasons.  It may wish to use the statement to establish the
> truth of the matter stated.  In these circumstances, under
> Rule 801(d)(2)(A) the statement is not hearsay, because it
> is simply a statement of the opposing party.  On the other
> hand, the government may wish to offer the statement to
> show that the defendant made false representations to the
> authorities, from which the jury could infer a consciousness
> of guilt, and hence guilt.

*United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).

The defendant does not have a parallel ability to offer his own out-of-court statements into evidence.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.  When the defendant offers his own statement simply to show that it was made, rather than to establish the truth of the matter asserted, the fact that the statement was made must be relevant to the issues in the lawsuit."  *Id.*

Nevertheless, there are certain instances when a defendant may require the admission of certain portions of a defendant's statement when the Government offers excerpts of the statement.  Federal Rule of Evidence 106 provides that: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."  Rule 106 "is stated as to writings . . . , but Fed. R. Evid. 611(a) renders it substantially applicable to oral testimony."  *United States v. Alvarado*, 882 F.2d 645, 650 n.5 (2d Cir. 1989).  "Under this principle, an omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion. . . . The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages."  *United States v. Jackson*,

180 F.3d 55, 73 (2d Cir. 1999), on reh'g, 196 F.3d 383 (1999); *United States v. Rivera*, 61 F.3d 131, 135 (2d Cir. 1995) (rejecting rule of completeness challenge because there was "no way in which the Stipulation was essential for the jury's understanding of Rivera's plea agreement, or to place it in context, or correct misleading impressions from it.").

The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer. *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

### C. Discussion

The Government's proposed excerpts of the transcripts of the audio recordings comply with the rule of completeness. The undesignated portions are not necessary to explain the admitted portions, to place the admitted portions in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portions. Cilins's explicit statements regarding his attempts to destroy documents he knew were sought by United States authorities and his efforts to persuade the CW to lie to the FBI and to leave the United States to avoid questioning by the FBI and a grand jury – stand on their own and do not require other statements for context. And none of Cilins's other statements do anything to "clarify" or render "complete" the designated statements made by Cilins. Moreover, the balance of the undesignated portions consist of material that is not relevant to the charges in this case.

Accordingly, the Court should order Cilins to provide notice to the Government, at least three weeks before trial, of any portions of the recordings or transcripts not already designated by the Government that the defense intends to offer at trial, or otherwise believes should be

admitted, to permit the Government sufficient time to move to exclude those portions on the basis of hearsay, relevance or any other applicable ground.

### III. THE COURT SHOULD PRECLUDE CILINS FROM ARGUING THAT HE DID NOT COMMIT ANY OF THE UNDERLYING OFFENSES BECAUSE SUCH ARGUMENT IS NOT RELEVANT TO WHETHER HE COMMITTED THE OBSTRUCTION CRIMES CHARGED IN THE INDICTMENT.

Because Cilins was charged with obstruction, not with the underlying FCPA or money laundering offenses being investigated as part of the grand jury investigation Cilins attempted to obstruct, argument related to whether Cilins or others are actually guilty of committing those underlying offenses is irrelevant. The jury's fact-finding duties will be limited to determining whether Cilins obstructed that investigation as charged in the Indictment. The jury will not have to decide whether Cilins or anyone else committed other crimes being investigated by the grand jury. Therefore, the Court should preclude argument related to the merits of the underlying grand jury investigation.

Sections 1512(b)(1) (Count Two), (b)(2)(B) (Count Three), and (c)(1) (Count Five) criminalize interfering with "official proceedings," including grand jury proceedings such as the government's FCPA investigation into bribery in Guinea. For the jury to convict Cilins of those crimes, the government must prove only that he attempted to interfere with a grand jury proceeding as set forth in Section 1512 and that he did so with the required mens rea. The government does not, under Section 1512, have to prove that Cilins or anyone else actually violated the FCPA or committed the other crimes that the grand jury was investigating.

Likewise, no requirement to prove a violation of the underlying offenses exists under Section 1512(b)(3). That provision criminalizes the obstruction of an investigation into "the commission *or possible commission* of a Federal offense." 18 U.S.C. § 1512(b)(3) (emphasis added). Therefore, proving that Cilins violated § 1512(b)(3) "does not require that the defendant

be convicted of the federal offense" that he was trying to prohibit federal officials from investigating. *United States v. Baldyga*, 233 F.3d 674, 681 (1st Cir. 2000). Instead, "the dispositive issue is the federal character of the investigation, not guilty verdicts on any federal offenses that may be charged." *Id.* This is because § 1512(b)(3) "does not depend on the existence or imminency of a federal case or investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." *United States v. Veal*, 153 F.3d 1233, 1250 (11th Cir. 1998). Therefore, "proof of an actual commission of a federal offense is not a necessary prerequisite to, or an essential element of, the crime of obstruction of justice." *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990); *see also United States v. Applewhaite*, 195 F.3d 679, 687 (3d Cir. 1999) ("[I]f the investigation or prosecution a defendant tries to hamper turns out to be federal, the witness is guilty of tampering with a federal witness even if the prosecution is unable to establish the facts necessary to establish a violation of federal law.").

Finally, Section 1519, charged in Counts One (conspiracy) and Six, does not even "require the existence or likelihood of a federal investigation." *United States v. Gray*, 642 F.3d 371, 379 (2d Cir. 2011). Therefore, it applies even if federal proceedings had not yet occurred or were not yet pending and, *a fortiori*, does not require proof of the existence of the commission of an actual federal crime. Consequently, because Section 1519 does not require that the government prove that Cilins or someone else committed one of the underlying offenses being investigated, the jury need not consider such argument.

For these reasons, the Court should preclude Cilins from making arguments relating to whether the offenses being investigated in the underlying grand jury investigation were actually

committed as such argument is irrelevant and inadmissible.  *See* Federal Rules of Evidence 401,

402.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that its motions *in limine*

be granted in all respects.

Dated: New York, New York
February 25, 2014

Respectfully submitted,

PREET BHARARA                        JEFFREY H. KNOX
United States Attorney               Chief
                                     Criminal Division, Fraud Section
                                     United States Department of Justice

By:   s/ Elisha J. Kobre       By:   s/ Tarek Helou
      Elisha Kobre                   Tarek Helou
      Assistant United States Attorney    Trial Attorney
      Telephone: (212) 637-2599      Telephone: (202) 307-3611

22

## **CERTIFICATE OF SERVICE**

I, Elisha J. Kobre, hereby certify that, on February 25, 2014, I caused a copy of the attached Government's Motions *In Limine* to be sent via electronic notification ("ECF") to:

William J. Schwartz, Esq.
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036

Bruce H. Lehr, Esq.
Lehr, Fischer & Feldman
1401 Brickell Avenue
Miami, FL 33131

Michelle Patrice Smith, Esq.
Law Office of Michelle P. Smith, P.A.
827 Menendez Court
Orlando, FL 32801


_____/s/_____
Elisha J. Kobre
(212) 637-2599

23