UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF BENJAMIN STEINMETZ FOR AN ORDER TO TAKE DISCOVERY FROM VALE S.A., VALE AMERICAS INC., RIO TINTO PLC, AND RIO TINTO LIMITED PURSUANT TO 28 U.S.C. § 1782

Case No.  1:20-MC-00212 (AJN)

**REPLY MEMORANDUM OF LAW TO RIO TINTO PLC AND RIO TINTO LIMITED'S OPPOSITION TO BENJAMIN STEINMETZ'S APPLICATION FOR <u>AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for Applicant
Benjamin Steinmetz*

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... iii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** ............................................................................................................................... 2

    I.    RIO TINTO IS "FOUND" IN THIS DISTRICT ............................................................. 2

    II.    THE DISCOVERY SOUGHT IS FOR USE IN THE UK PROCEEDINGS ................. 5

    III.    GRANTING THE APPLICATION IS A PROPER EXERCISE OF DISCRETION .... 5

        A.  The First Intel Factor Weighs in Favor of the Application, Not Against It. ............. 6

        B.  It is Appropriate for Mr. Steinmetz to Seek Discovery from Rio Tinto to Show What Vale Believed about Him and BSGR. .......................................................... 7

        C.  Rio Tinto's Speculation about a Possible Grand Jury Investigation is Inappropriate and Not a Basis on which to Deny the Application. ................................................. 8

        D.  The Possible Location of the Documents and Scope of the Requests are Not a Basis on which to Deny the Application. ............................................................................. 9

**CONCLUSION** ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
  No. 1:17-mc-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) .................................. 2

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) .................................................................................................... 2

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................................ 2

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) .................................................................................................... 2

*In re ALB-GOLD Teigwaren GmbH*,
  No. 1:19-mc-01166 (ST), 2020 WL 122943 (E.D.N.Y. Jan. 10, 2020) ..................................... 3

*In re Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992) ...................................................................................................... 6

*In re Catalyst Managerial Servs., DMCC*,
  680 F. App'x 37 (2d Cir. 2017) ................................................................................................ 6

*In re del Valle Ruiz*,
  342 F. Supp. 3d 448 (S.D.N.Y. 2018) ...................................................................................... 2

In re del Valle Ruiz,
  939 F. 3d 520 (2d Cir. 2019) ............................................................................................ 3, 4, 9

*In re Ex Parte Application of Kleimar N.V.*,
  220 F. Supp. 3d 517 (S.D.N.Y. 2016) .................................................................................. 2, 9

*In re Fed. Republic of Nigeria*,
  No. 1:20-mc-00169 (LGS) (S.D.N.Y. May 7, 2020) ................................................................ 9

*In re Fornaciari*,
  No. 1:17-mc-00521 (WHP), 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) ................................. 2

*In re Hansainvest Hanseatische Inv.-GmbH*,
  364 F. Supp. 3d 243 (S.D.N.Y. 2018) .................................................................................... 10

*In re Mangouras*,
  No. 17-mc-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ................................................. 6

*In re Metallgesellschaft AG*,
  121 F.3d 77 (2d Cir. 1997) ...................................................................................................... 8

*In re Sveaas*,
   249 F.R.D. 96 (S.D.N.Y. 2008) .................................................................................................. 8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) .............................................................................................................. 6, 8

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ..................................................................................................... 9

**Federal Statutes**

28 U.S.C. § 1782 ............................................................................................................... passim

**Federal Rules**

Federal Rule of Civil Procedure 45(d)(1) ........................................................................... 10

## PRELIMINARY STATEMENT

Both Rio Tinto entities likely have information that is relevant to Mr. Steinmetz's defenses in the UK Proceedings, including information about what Rio Tinto plc and Rio Tinto Limited (together, "Rio Tinto") learned about BSGR and Mr. Steinmetz and what they communicated to Vale before Vale entered the JV Agreement with BSGR. Rio Tinto's series of meetings with Vale in this District featured prominently in the RICO complaint Rio Tinto plc filed with this Court in 2014, so it is ironic that Rio Tinto now minimizes the significance of those meetings, as well as the New York nexus of the discovery sought by Mr. Steinmetz.

Rio Tinto claims that since Mr. Steinmetz seeks discovery about what information Vale had when it entered the JV Agreement, "he should obtain it from Vale." However, it is common practice to seek discovery about a counterparty's knowledge from other witnesses. That approach is all the more sensible here because Vale likely no longer has all the discovery Mr. Steinmetz seeks due to its document destruction practices, about which Rio Tinto itself has complained. Moreover, Vale's conduct as described in Mr. Steinmetz's Application gives rise to a reasonable belief that Vale will not be forthcoming in its discovery. Nor should the Application be denied because some of the discovery may be stored in England or because Mr. Steinmetz may be able to obtain some of the discovery from non-parties in the UK Proceedings, which is far from clear. Those arguments have already been rejected by the Second Circuit.

Finally, Rio Tinto's speculation about a *possible* grand jury investigation is irrelevant to whether this Application should be granted. Mr. Steinmetz seeks discovery that is important to his defenses in the UK Proceedings, and the media interviews that Rio Tinto distorts in its brief are not to the contrary. The statutory elements of Section 1782 are satisfied and the Court should grant the Application in its discretion.

**ARGUMENT**

**I.    RIO TINTO IS "FOUND" IN THIS DISTRICT**

The New York contacts the court considered relevant in *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016) establish general personal jurisdiction over Rio Tinto, a non-resident company, insofar as that is necessary to be "found" in New York for purposes of Section 1782.[1]  Rio Tinto's affiliations with New York are indeed "so continuous and systematic" as to render it "essentially at home" here, regardless of the location of its principal place of business and headquarters.  *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (citations omitted).[2]

---

[1] Rio Tinto's contacts with New York include: (i) Rio Tinto plc trades ADRs on the NYSE; (ii) Rio Tinto plc has significant ties to three indirect wholly-owned subsidiaries, all registered to do business in New York; (iii) Rio Tinto plc did not contest jurisdiction in a recent action filed against it in this District; (iv) Rio Tinto plc's subsidiary maintains an office in New York City; and (v) Rio Tinto availed itself of this District's jurisdiction by commencing a lawsuit against Vale and BSGR regarding facts at issue in the UK Proceedings.  *See* Steinmetz Br. at 20–21, ECF No. 3.  Further, a "substantial shareholder" of both Rio Tinto plc and Rio Tinto Limited is New York-based investment firm BlackRock Inc.  Sanderson Decl., Ex. 1 at 294, ECF No. 42-1.  Rio Tinto plc also has a designated "authorized representative," billions of dollars' worth of assets, and thousands of employees in the U.S., and earns billions of dollars in annual revenue from systemic and regular business operations in the U.S., including at least two mining facilities.  Steinmetz Br. at 20–21, ECF No. 3.

While most of those contacts involve Rio Tinto plc, the two Rio Tinto entities "operate together as a single economic enterprise" and, in any event, Rio Tinto plc has access to "all Rio Tinto documents, whether stored at Rio Tinto plc or Rio Tinto Limited."  Opp. at n.1, 3, ECF No. 37.

[2] Rio Tinto's New York contacts are more extensive than merely having a branch office or registering to do business in New York; thus, most of the cases cited by Rio Tinto are inapposite.  *Cf. Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (branch); *In re Fornaciari*, No. 1:17-mc-00521 (WHP), 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (branch); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 1:17-mc-00216 (VEC), 2017 WL 3841874, at *4 (S.D.N.Y. Sept. 1, 2017) (branch); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 626 (2d Cir. 2016) (registration to do business).  While in *del Valle Ruiz* the respondent's New York contacts were more comparable to (but still less than) Rio Tinto's, the district court's finding of no general personal jurisdiction does not require this Court to reach the same conclusion.  *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 455 (S.D.N.Y. 2018), *aff'd* 939 F.3d 520 (2d Cir. 2019).

Even if Rio Tinto is not subject to general personal jurisdiction, it is subject to specific personal jurisdiction and is thus "found" in this District for purposes of Section 1782. As Rio Tinto acknowledges (*see* Opp. at 10–11, ECF No. 37), the applicable standard is set forth in *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).[3] Here, because Rio Tinto's contacts with New York are extensive (*see supra* n.1) Mr. Steinmetz "need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Del Valle Ruiz*, 939 F.3d at 530. The series of meetings between Rio Tinto and Vale in New York are of particular interest because Rio Tinto itself has claimed that at those meetings it provided information to Vale about alleged efforts by Mr. Steinmetz and BSGR to misappropriate the Simandou mining rights.[4]

To support his defenses in the UK Proceedings, Mr. Steinmetz seeks to know what information Rio Tinto provided to Vale at those meetings or in follow-up communications, how Vale reacted, and what information Vale may have provided to Rio Tinto about Mr. Steinmetz or BSGR in return. Rio Tinto attempts to minimize the meetings by claiming "Rio Tinto personnel briefly visited Cleary Gottlieb's office in New York," but Rio Tinto's own RICO Action describes those meetings as being of great significance.[5] Discovery about what was said and done at those meetings in New York or in follow-up meetings "would not be available but for the respondent's

---

[3] *See also In re ALB-GOLD Teigwaren GmbH*, No. 1:19-mc-01166, 2020 WL 122943, at *4 (E.D.N.Y. Jan. 10, 2020) (applying standard to find respondent was found in the district).

[4] Rio Tinto alleged in its RICO action that due to "information provided by Rio Tinto . . . Vale was on notice that Steinmetz's and BSGR's efforts to misappropriate Rio Tinto's Simandou Concession included *bribery and other acts of political corruption*." Am. Compl. at ¶ 82, *Rio Tinto PLC v. Vale S.A. et al*, No. 1:14-cv-03042 (RMB) (S.D.N.Y.), ECF No. 83 (emphasis added) ("RICO Compl."). *See also* Decl. of Dr. Avi Yanus at 12–14, ECF No. 4 (quoting statements by former Vale executive that Rio Tinto investigated BSGR and provided the resulting information to Vale).

[5] Rio Tinto alleged that "[t]he negotiations between Rio Tinto and Vale occurred over a period of months, and involved a series of key meetings in New York City at the headquarters of Vale's legal counsel, Cleary Gottlieb Steen & Hamilton LLP." RICO Compl. at ¶ 58.

3

forum contacts." *Del Valle Ruiz*, 939 F.3d at 530.

Moreover, Rio Tinto elected to bring its RICO Action in this District. Undoubtedly Rio Tinto conducted extensive investigations of BSGR, Mr. Steinmetz, and Vale in this District in preparation for that action. And once the action was filed, the parties, including Rio Tinto, engaged in extensive discovery before the case's dismissal. *See* Joint Letter re: Status of Discovery, *Rio Tinto PLC v. Vale, S.A. et al,* No. 1:14-cv-03042 (RMB), ECF No. 246 ("RICO Discovery Letter"). The information and materials gathered by Rio Tinto for the RICO Action would be unavailable but for Rio Tinto's forum contacts.

Thus, Rio Tinto likely has a wealth of information responsive to Mr. Steinmetz's document requests in its possession, custody, or control with a sufficient nexus with New York to satisfy the standard for specific personal jurisdiction. Rio Tinto claims, without any evidence, "[t]he overwhelming majority of what Steinmetz seeks are documents created overseas that would have existed whether or not Rio Tinto had abortive sale negotiations in New York and whether or not there had been prior litigation." Opp. at 11–12. But whether the documents were created in New York is beside the point, and simply saying they would have existed absent Rio Tinto's activity in New York does not make it so. Rio Tinto's extensive contacts with New York are central to Mr. Steinmetz's discovery requests and due process is therefore satisfied.[6] Rio Tinto is thus found in this District for purposes of this Application.

---

[6] Indeed, many documents responsive to the proposed discovery requests have a New York nexus, such as those relating to: (i) meetings between Rio Tinto and Vale at which BSGR and Mr. Steinmetz were discussed, including the meetings in New York, and investigations into BSGR and Mr. Steinmetz (*see* Request Nos. 2–4, 6–8, 13); (ii) discussions with Vale regarding any alleged wrongdoing in the procurement of the mining rights (*see* Request Nos. 5, 9–11, 14); (iii) Vale's activities in Guinea during which time Rio Tinto and Vale held meetings in New York and Rio Tinto conducted due diligence in preparation of, and discovery in the course of, its RICO Action brought in this District (*see* Request Nos. 1, 12, 15–17); and (iv) Vale's destruction of evidence, which Rio Tinto learned about during discovery in the RICO Action (*see* Request No. 18).

4

**II.    THE DISCOVERY SOUGHT IS FOR USE IN THE UK PROCEEDINGS**

There is no basis for Rio Tinto's contention that Mr. Steinmetz's "true purpose" is to use the requested discovery "in aid of arbitration," instead of in the UK Proceedings.  Opp. at 12.  Rio Tinto points to what it alleges are quotes by Mr. Steinmetz in two media articles that supposedly show his intent to use the discovery sought to reverse or reopen the arbitration brought by Vale against BSGR.  *Id.*  That is demonstrably false.  Not only are the cited statements *not* quotes by Mr. Steinmetz (but instead reporters' characterizations of what Mr. Steinmetz told them),[7] but the articles discuss how Mr. Steinmetz thinks he can use the *information gathered for him by Black Cube*,[8] which is information he already possesses and forms the basis for his belief that Vale and Rio Tinto have relevant information for use in the UK Proceedings.  The articles do not discuss how Mr. Steinmetz intends to use the discovery *being sought in this Application*.  Mr. Steinmetz's purpose in seeking discovery here is exactly what is stated in this Application: to support his defense in the UK Proceedings.

**III.   GRANTING THE APPLICATION IS A PROPER EXERCISE OF DISCRETION**

In his opening brief Mr. Steinmetz explained why the discretionary *Intel* factors favor granting the Application, and Rio Tinto cannot show otherwise.  Instead, Rio Tinto advances a hodgepodge of reasons—most relating only loosely to the *Intel* factors, if relevant at all—for why it claims, wrongly, that the Application should be denied.

---

[7] *See* Sanderson Decl., Exs. 25, 26, ECF Nos. 42-25, 42-26 (showing quotes relied upon by Rio Tinto are *not* quotes by Mr. Steinmetz).

[8] *See* Sanderson Decl., Ex. 25 ("BSGR has filed documents . . . which it said shows that Vale was aware of potential bribery or 'red flags' when the companies partnered to develop Simandou . . . ."); Ex. 26, ECF No. 42-26 ("The new evidence cited by Mr Steinmetz was gathered by Black Cube . . . in an undercover operation that targeted former Vale executives.").

5

### A. The First Intel Factor Weighs in Favor of the Application, Not Against It.

Under the first *Intel* factor, discovery requested from a non-party weighs in favor of granting the Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Rio Tinto's alternative interpretation of this factor, whereby discovery sought from a non-party within the foreign court's jurisdiction "strongly weighs" against granting a 1782 application (Opp. at 14), has been rejected by the Second Circuit. In *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 40 (2d Cir. 2017) (summary order) the Court concluded that the cases cited for that proposition—one of which Rio Tinto also cites here (*In re OOO Promnefstroy*)—"do not support its reading of this factor." *Id.* at 40. Instead, the Second Circuit made clear the first *Intel* factor "asks whether the party from whom discovery is sought is a participant in the foreign proceeding." *Id*. Here, the answer to that question is no, as Rio Tinto is not a party to the UK Proceedings.

As Rio Tinto acknowledges, there is no requirement that a 1782 applicant first try to obtain the discovery in the foreign court. Opp. at n.10. In fact, the Second Circuit has specifically rejected a "quasi-exhaustion" requirement on the basis that imposing this "additional burden" would undermine one of the statute's twin goals of "improving procedures for assistance to foreign and international tribunals." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992); *accord In re Mangouras*, No. 1:17-mc-00172 (PKC), 2017 WL 4990655, at *6 (S.D.N.Y. Oct. 30, 2017) ("[T]he Second Circuit has emphasized that section 1782 does not require an applicant to exhaust foreign discovery channels.").

In any event, England would not be a "far more convenient forum" for Mr. Steinmetz to seek the discovery, as Rio Tinto claims. Opp. at 16. This is evidenced by Rio Tinto's own English law expert, who describes "two potential routes" for a party to English proceedings to obtain documents from a non-party (Mance Decl. at ¶ 12, ECF No. 38), none of which are

6

straightforward: in the first route (CPR 31.17), the court's "jurisdiction is discretionary" (*id*. at ¶ 17) and requires showing "(i) the documents sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to proceedings; and (ii) their disclosure is necessary in order to fairly dispose of the claim or save costs" (*id*. at ¶ 25); the second route (CPR 34.2) requires that "the documents to be produced [have] to be specifically identified" (*id.* at ¶ 36), rendering it "less attractive . . . for an applicant such as Mr. Steinmetz" (*id.* at ¶ 37).  It is by no means clear Mr. Steinmetz would be able to obtain discovery from non-party Rio Tinto in the UK Proceedings, let alone if Rio Tinto opposed discovery as it does here.  Combined with the fact that Mr. Steinmetz seeks discovery urgently, whereas the discovery phase in the UK Proceedings is still many months away (*see* Steinmetz Br. at 24, ECF No. 3), it is an appropriate exercise of this Court's discretion to grant the Application.

### B. It is Appropriate for Mr. Steinmetz to Seek Discovery from Rio Tinto to Show What Vale Believed about Him and BSGR.

Rio Tinto argues that because Mr. Steinmetz seeks evidence about what information Vale had or what Vale believed at the time it entered the joint venture, Mr. Steinmetz must seek discovery from Vale *instead of* Rio Tinto.  But it is logical and reasonable that Mr. Steinmetz seeks this evidence from *both* Vale and Rio Tinto, as Rio Tinto may have evidence that Mr. Steinmetz is unable to obtain from Vale.  Rio Tinto may have records of the information about Mr. Steinmetz and BSGR it gave to Vale, whereas Vale may have different records or none at all, particularly given the passage of time and the fact that Vale has destroyed documents belonging to its former executives involved in the decision to enter the joint venture.  Rio Tinto itself brought this to the attention of the Court in its RICO Action, asserting that Vale has destroyed documents from "eight key custodians" who were "the masterminds of Vale's entry into Simandou and the key intermediaries with Mr. Steinmetz and BSGR."  RICO Discovery Letter at 4.  Indeed, Mr.

7

Steinmetz has reasonable concerns about Vale's good faith approach to discovery. *See* Steinmetz Br. at 24, ECF No. 3.

Further, it is common practice to use Section 1782 to take discovery from non-parties to the foreign proceeding.[9] The cases on which Rio Tinto relies are not to the contrary. For example, in *In re Metallgesellschaft AG*, the Second Circuit merely observed that "if it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative . . . ." 121 F.3d 77, 79 (2d Cir. 1997). Here, the discovery is not equally available in the UK Proceedings, so the Second Circuit's observation is of no moment.

### C. Rio Tinto's Speculation about a Possible Grand Jury Investigation is Inappropriate and Not a Basis on which to Deny the Application.

Rio Tinto speculates that Mr. Steinmetz "*may potentially* be evading this Court's jurisdiction" in connection with a grand jury investigation that it admits may not even exist. Opp. at 18, 20 (emphasis added). This is a thinly disguised attempt to smear Mr. Steinmetz with a gloss of impropriety. Such rife speculation is not a basis on which to deny this Application.

Nor is the third *Intel* factor implicated here. Rio Tinto proclaims Mr. Steinmetz's Application "offends public policy" (Opp. at 18), but it does not articulate how the Application supposedly "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 244–45. And in each of the cases Rio Tinto cites (Opp. at 19–20), which do not involve Section 1782, the court found that a *fugitive* cannot seek discovery in the U.S. for use in the criminal case (or a related civil case) against him. Mr. Steinmetz is not a fugitive, as Rio Tinto well knows.

---

[9] *See, e.g.*, *In re Sveaas*, 249 F.R.D. 96, 103 (S.D.N.Y. 2008) ("[A] district court should treat requests for discovery in aid of foreign proceedings, under section 1782, permissively, especially where, as here, the discovery is sought from a non-party to the foreign actions.").

8

### D. The Possible Location of the Documents and Scope of the Requests are Not a Basis on which to Deny the Application.

Rio Tinto's assertion that responsive information gathered in connection with the RICO Action in this District may be "archived on hard drives stored initially in Australia and now in England" (Opp. at n.13) is not a basis to deny the Application, as Section 1782 authorizes extraterritorial discovery "so long as the documents to be produced are within the subpoenaed party's possession, custody, or control." *Del Valle Ruiz*, 939 F.3d at 533. The fact that Rio Tinto already gathered and stored information which is likely to be responsive to Mr. Steinmetz's requests should only facilitate the discovery process.[10]

Nor do Rio Tinto's complaints about the scope of the discovery requests weigh against granting the Application. As Rio Tinto recognizes, the Second Circuit has instructed that "issuing a closely tailored discovery order" is "far preferable" to "simply denying relief outright." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). Mr. Steinmetz has proposed document requests intended to capture information that may be useful for his defenses in the UK Proceedings. However, if the Court finds the requests are not closely tailored, it may narrow the requests or order Mr. Steinmetz and Rio Tinto to confer in good faith to do so—which Mr. Steinmetz is prepared to do.[11]

Further, there is no reason for the Court to order Mr. Steinmetz to pay the costs of compliance with the subpoenas, as Rio Tinto demands. *See* Opp. at 23–24. It is highly unusual

---

[10] Mr. Steinmetz is not seeking to "bypass the restrictions" of the protective order issued in the RICO Action. Opp. at n.13. If Rio Tinto has responsive information that also happens to be covered by the protective order in the RICO Action, Rio Tinto and Mr. Steinmetz can discuss whether a protective order in this proceeding may be appropriate.

[11] *See, e.g.*, *Kleimar*, 220 F. Supp. 3d at 522 ("[G]iven Kleimar's willingness to address Vale's concerns so as to make the subpoena less burdensome to respond to, the subpoena does not place an undue burden on Vale."); Order, *In re Fed. Republic of Nigeria*, No. 1:20-mc-00169 (LGS) (S.D.N.Y. May 7, 2020), ECF No. 18 (granting application as well as respondent's request that "Applicant be directed to meet and confer . . . on the scope of the proposed subpoenas").

9

for a court to do so when deciding a Section 1782 application. Rio Tinto cites only one case where that was done to defray the expenses of complying with data protection laws.[12] Rio Tinto, which reported over US $11 *billion* in operating profit for 2019 (Sanderson Decl., Ex. 1 at 86, ECF No. 42-1), does not present any evidence that it would incur significant expenses in complying with data protection laws, yet asserts that responding to the subpoenas "would likely cost Rio Tinto millions of dollars." Opp. at 23. This is speculative, as Rio Tinto bases that figure only on counsel's "belie[f]" following "preliminary inquiries" with Rio Tinto. Sanderson Decl. at ¶¶ 32–33, ECF No. 42.[13]

Finally, there is no basis for Rio Tinto to request attorney's fees, and Rio Tinto cites no Section 1782 case where such a request was granted. While Federal Rule of Civil Procedure 45(d)(1) permits a court to impose reasonable attorney's fees if a party or attorney fails to take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena, Mr. Steinmetz filed his Application in good faith based on his well-founded belief that Rio Tinto has information that may be helpful to his defense in the UK Proceedings. Mr. Steinmetz is prepared to confer with Rio Tinto in good faith about the issue of reasonable expenses and the scope of the subpoenas if ordered by the Court or if Rio Tinto raises objections to specific requests. Accordingly, Rio Tinto's request for attorney's fees should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Steinmetz respectfully requests that the Court grant the Application as against Rio Tinto.

---

[12] *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018).
[13] It is ironic that Rio Tinto says the Court should not "make Rio Tinto subsidize litigation between Steinmetz and Vale" (Opp. at 24, ECF No. 37), when apparently Rio Tinto already collected responsive information through its RICO Action (Sanderson Decl. at ¶ 33, ECF No. 42)—a litigation Rio Tinto imposed on Mr. Steinmetz, BSGR, and Vale.

Dated: July 10, 2020  
New York, New York

Respectfully submitted,

/s/ Michael S. Kim
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022

Michael S. Kim
+1 212 488 1201
michael.kim@kobrekim.com

Josef M. Klazen
+1 212 488 1216
josef.klazen@kobrekim.com

Robin Rathmell
+1 202 664 1941
robin.rathmell@kobrekim.com

Victoria R. Morris
+1 305 967 6131
victoria.morris@kobrekim.com

Carolina Leung
+1 212 488 4948
carolina.leung@kobrekim.com

*Attorneys for Applicant Benjamin Steinmetz*