UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF BENJAMIN STEINMETZ FOR AN ORDER TO TAKE DISCOVERY FROM VALE S.A., VALE AMERICAS INC., RIO TINTO PLC, AND RIO TINTO LIMITED PURSUANT TO 28 U.S.C. § 1782

Case No.  1:20-MC-00212 (AJN)

MEMORANDUM OF LAW IN OPPOSITION TO VALE S.A.'S
CONDITIONAL CROSS-APPLICATION
TO COMPEL RECIPROCAL DISCOVERY
<u>PURSUANT TO 28 U.S.C. § 1782</u>

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for Applicant
Benjamin Steinmetz*

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ......................................................................................................... iii

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** ................................................................................................................................. 2

    I.    VALE'S CROSS-APPLICATION FAILS TO MEET THE STATUTORY REQUIREMENTS OF § 1782 ............................................................................................. 3

    II.   VALE'S CROSS-APPLICATION SHOULD BE DENIED BECAUSE IT DOES NOT FURTHER THE TWIN AIMS OF § 1782. ..................................................... 6

    III.  VALE'S CROSS-APPLICATION SEEKING EXPANSIVE DISCOVERY FROM MR. STEINMETZ AND DR. YANUS IS NOT "RECIPROCAL." ..................... 10

    IV.  VALE'S ALLEGATIONS REGARDING BLACK CUBE ARE IRRELEVANT .......... 12

**CONCLUSION** .......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*,
    No. 1:11-mc-00354 (P1), 2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012) ...................... 6, 11

*Application of Esses*,
    101 F.3d 873 (2d Cir. 1996) ........................................................................................ 11

*Application of Gianoli Aldunate*,
    3 F.3d 54 (2d Cir. 1993) ............................................................................................... 6

*Eco Swiss China Time Ltd. v. Timex Corp.*,
    944 F. Supp. 134 (D. Conn. 1996) ............................................................................... 6

*Euromepa S.A. v. R. Esmerian, Inc.*,
    154 F.3d 24 (2d. Cir. 1998) .......................................................................................... 5

*In re Aenergy, S.A.*,
    No. 1:19-mc-00542 (VEC), 2020 WL 615108 (S.D.N.Y. Feb 7, 2020) ...................... 10

*In re Application of Auto-Guadeloupe Investissement S.A.*,
    No. 1:12-mc-00221 (P1), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ...................... 4

*In re Application of Gorsoan Ltd. & Gazprombank OJSC*,
    No. 1:13-mc-00397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014),
    *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016) ...................... 9

*In re Benetton Int'l., N.V.*,
    No. 1:97-cv-01345 (JG), 1997 WL 1068669 (E.D.N.Y. Apr. 25, 1997) ..................... 6, 9

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ...................................................................................... 4, 5

*In re Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ...................................................................................... 6, 9

*In re Furstenberg Fin. SAS*,
    334 F. Supp. 3d 616 (S.D.N.Y. 2018), *aff'd* 785 F. App'x 882 (2d Cir. 2019) .............. 3

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
    No. 1:15-mc-00127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015) .............................. 8

*In re Imanagement Servs., Ltd.*,
    No. 1:05-mc-00089 (FB), 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) .......................... 4

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992) ........................................................................................ 6, 9

*In re Porsche Automobil Holding SE*,
    No. 1:15-mc-00417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ....................... 11

*In re Rep. of Ecuador*,
    No. 3:10-mc-80225 (CRB), 2011 WL 736868 (N.D. Cal. Feb. 22, 2011) ............... 5, 9, 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) .............................................................................................. passim

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
    No. 1:08-cv-00269 (RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ...................... 10

*Sampedro v. Silver Point Capital, L.P.*,
    958 F.3d 140 (2d Cir. 2020) ...................................................................................... 6, 7

*Victoria, LLC v. Likhtenfeld*,
    791 F. App'x 810 (11th Cir. 2019) ................................................................................ 11

**Federal Statutes**

28 U.S.C. § 1782 ............................................................................................................ passim

**PRELIMINARY STATEMENT**

Vale's unusual "conditional cross-application" for discovery ("Cross-Application") is seemingly Vale's attempt to extract some form of consolation prize if Mr. Steinmetz's Application is granted. But Vale's Cross-Application fails on multiple fronts. It does not satisfy the statutory requirement under Section 1782 that the discovery targets be "found" in this District. Vale requests discovery from two individuals who reside in Israel and the UK, respectively. Vale does not even attempt to argue that the statutory requirements for evaluating requests for reciprocal discovery are satisfied. Nor does Vale's Cross-Application further the twin aims of Section 1782 reflected in the discretionary factors that the Supreme Court set forth in *Intel*. All four factors weigh against granting Vale's request for discovery.

Instead of providing the Court with an analysis of statutory requirements and *Intel* factors, Vale invokes "principles of fairness and parity" in seeking discovery for use in the UK Proceedings. But even under this vague, concocted standard, Vale's application should still be denied. Vale has already been granted vast discovery in this District under Section 1782 for use in the same UK Proceedings. In that Section 1782 action, Vale sought broad discovery from over 30 real-estate companies in New York, through which Vale hopes to trace the money that it paid to BSGR as part of the JV Agreement. As to Mr. Steinmetz, Vale is already seeking discovery from him about his assets in the UK Proceedings; on May 29, 2020, Vale applied to the UK Court for permission to cross-examine Mr. Steinmetz about his assets.

Vale's Cross-Application cannot even properly be considered a request for "reciprocal" discovery, as Vale seeks substantially broader discovery than Mr. Steinmetz seeks in his Application and on topics that are unrelated to Mr. Steinmetz's requests. Of the 34 proposed document requests directed to Mr. Steinmetz, more than half (19) seek information about Mr. Steinmetz's assets—including a request for "[a]ll documents concerning the transfer of [Mr.

Steinmetz's] assets between January 1, 2010 and today"—in addition to the entire investigative file from Black Cube, rather than on issues material to the Application.  *See* Decl. of Jeffrey A. Rosenthal in Supp. of Opp. to Steinmetz Br. and in Supp. of Cross-Appl. ("Rosenthal Decl."), Ex. 1 (Proposed Subpoena Directed to Benjamin Steinmetz), ECF No. 31-1.  Vale's characterization of its discovery requests as "very narrow" (Cross-Appl. at 8, ECF No. 30) is an unusual use of those words as understood by most English speakers.

Finally, Vale's shrill accusations that Mr. Steinmetz has tried to "conceal evidence related to the Black Cube investigation" and has made "untrue" representations to the Court are simply unfounded (aside from being irrelevant to Vale's Cross-Application).  *Id* at 5.  Although he was under no obligation to do so, at Vale's request Mr. Steinmetz voluntarily handed over full recordings and transcripts of the conversations with two Vale executives and a consultant that Dr. Yanus described in his declaration.  Mr. Steinmetz never represented to Vale or to the Court that he had given Vale *all* recordings and transcripts that were prepared in the investigation, and Vale's assertion to the contrary is disingenuous.   Similarly beside the point is Vale's criticism about Black Cube's investigative methodologies—their propriety or lack thereof is not a factual question at issue in the Cross-Application.

Accordingly, the Court should deny Vale's Cross-Application for discovery.

## ARGUMENT

Reciprocal discovery under Section 1782 is rarely granted, as shown by the paucity of authority cited by Vale, and Vale's Cross-Application fails for a number of reasons.  First, it does not meet the statutory prerequisites of Section 1782.  Second, Vale's request for discovery does not further the twin aims of Section 1782, and there should be no concerns about parity or fairness in this matter given the broad discovery Vale has already been conducting in relation to the UK Proceedings.  Third, Vale's discovery requests here seek evidence well beyond that sought by Mr.

Steinmetz (including from an additional third party) and is therefore not "reciprocal." Finally, Vale's complaints about Black Cube are irrelevant to the discovery applications before this Court and seem designed solely to cast Mr. Steinmetz in a negative light and to distract from the seismic revelations in Black Cube's investigation.

### I. VALE'S CROSS-APPLICATION FAILS TO MEET THE STATUTORY REQUIREMENTS OF § 1782.

Vale's Cross-Application fails to address the requirements of Section 1782, let alone meet them, and for this reason the application should be denied. Reciprocal discovery applications pursuant to Section 1782 must still satisfy the statutory prerequisites of Section 1782, otherwise the application fails. *See, e.g.*, *In re Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 620–21 (S.D.N.Y. 2018) (upholding denial of request for reciprocal discovery "because it was insufficiently supported" and "did not meet the statutory requirements" under Section 1782), *aff'd* 785 F. App'x 882 (2d Cir. 2019).

Vale ignores these requirements altogether. Through its Cross-Application, Vale seeks discovery from a resident of Israel, Mr. Steinmetz, and a resident from the UK, Dr. Avi Yanus. Neither person resides or is found in this District. Nor does Vale make any attempt to claim otherwise. *See* Vale Opp. at 11, ECF No. 28 ("Steinmetz is Israeli and French"); Decl. of Dr. Avi Yanus at ¶ 1, ECF No. 4 (Dr. Avi Yanus is a UK and Israeli citizen). This alone provides grounds to deny Vale's Cross-Application.

For example, in *Furstenberg*, the Court denied a request for reciprocal discovery where "the movant made no attempt in the original request to make the requisite showing under § 1782, and indeed, on this motion, the movant admits that its discovery targets . . . are not located within this District." 334 F. Supp. 3d at 620–21. That is the exact case here. Vale makes no attempt to meet the statutory requirements, as it well knows that both respondents are not located within this

3

District.  *See also In re Application of Auto-Guadeloupe Investissement S.A.*, No. 1:12-mc-00221 (P1), 2012 WL 4841945, at *11 (S.D.N.Y. Oct. 10, 2012) (denying a request for reciprocal discovery because the requesting party "failed to identify any documents or witnesses that are within this Court's jurisdiction and for which it might seek discovery"); *In re Imanagement Servs., Ltd.*, No. 1:05-mc-00089 (FB), 2005 WL 1959702, at *6 (E.D.N.Y. Aug. 16, 2005) (rejecting reciprocal discovery for failure to identify documents or witnesses in the district and directing the movant to "file its own request for discovery under § 1782" "in the event [movant] does identify such evidence").  Accordingly, this Cross-Application should be dismissed.

Nor are Mr. Steinmetz and Dr. Yanus "found" in this District under the standard for specific personal jurisdiction.  Vale does not attempt to show that the Court has specific personal jurisdiction over Mr. Steinmetz or Dr. Yanus for purposes of this Section 1782 application.  Nor could Vale make such a showing.  The controlling Second Circuit test for establishing specific jurisdiction in the context of a Section 1782 application requires that "the discovery material sought proximately resulted from the respondent's forum contacts," such that "the respondent's having purposefully availed itself of the forum [is] the primary or proximate reason that the evidence sought is available at all."  *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019).  Vale cannot satisfy that test here.

Vale seeks three categories of documents from Mr. Steinmetz: (i) "essentially the same categories of documents that Steinmetz seeks from Vale"; (ii) "categories related to the Yanus Declaration"; and (iii) "categories related to . . . Steinmetz's assets." Cross-Appl. at 8.  The second and third categories, which comprise more than half of Vale's requests, are plainly outside the scope of the discovery sought by Mr. Steinmetz, which, as discussed further below, means that Vale's Cross-Application is not actually "reciprocal" discovery.  In any event, none of Vale's

requests have the required New York nexus insofar as Mr. Steinmetz has responsive information. For example, Mr. Steinmetz seeks discovery from Vale relating to information Vale received during or in connection with a series of meetings it had with Rio Tinto in New York; however, Mr. Steinmetz did not attend any of those meetings, so it is difficult to see how Mr. Steinmetz could have any relevant discovery that Vale seeks which "would not be available but for [Mr. Steinmetz]'s forum contacts." *del Valle Ruiz*, 939 F.3d at 530.  Nor does Vale point to any other forum contacts of Mr. Steinmetz that could provide the required nexus to the categories of discovery Vale seeks.  Similarly, Vale does not point to any forum contacts of Dr. Yanus, whom it seeks to depose.

It is also questionable whether Vale's request for information about Mr. Steinmetz's assets satisfies the statutory "for use" requirement, because to the extent Vale is seeking to identify assets for execution of the arbitration award it has against BSGR or the judgment it seeks against Mr. Steinmetz in the UK Proceedings, that is not adjudicative. *See Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d. Cir. 1998) (denying asset discovery under Section 1782 as "nothing [was] being adjudicated" in the foreign proceedings).

Thus, the statutory requirements of Section 1782 are not met and reciprocal discovery is inappropriate here.  *See In re Rep. of Ecuador*, No. 3:10-mc-80225 (CRB), 2011 WL 736868, at *10 (N.D. Cal. Feb. 22, 2011) (denying reciprocal discovery that fails to satisfy 1782 requirements and directing movant to, instead, file its own 1782 applications, holding, "[t]he Court rejects [movant]'s attempt to shoehorn wide ranging discovery against parties to a foreign proceeding

under the guise of 'reciprocal discovery' because it would circumvent to statutory scheme under § 1782 established by Congress").[1]

## II. VALE'S CROSS-APPLICATION SHOULD BE DENIED BECAUSE IT DOES NOT FURTHER THE TWIN AIMS OF § 1782.

While it is true that courts can "condition [Section 1782] relief upon [an applicant's] reciprocal exchange of information," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004), "section 1782 does not contain any requirement that the district court supervise reciprocal discovery." *Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) (internal citations omitted). Indeed, Courts in this Circuit routinely reject reciprocal discovery requests because, although Section 1782 "grants wide assistance to others," it "*demands* nothing in return." *In re Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992); *see also In re Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) (same); *In re Benetton Int'l., N.V.*, No. 1:97-cv-01345 (JG), 1997 WL 1068669 (E.D.N.Y. Apr. 25, 1997) (denying a target's request for reciprocal discovery under Section 1782, holding that "[a]lthough district courts are apparently empowered to order reciprocal discovery. . .Section 1782 was enacted as a one-way street" which "grants wide assistance to others, but demands nothing in return") (internal citations and quotations omitted).[2]

---

[1] Vale relies on *Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 1:11-mc-00354 (P1), 2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012), in which the court granted reciprocal discovery in part because—unlike here—the movant's discovery requests were "closely related to the [foreign] Actions" and "[t]here is apparently no process by which [movant] can seek and obtain documents from [target] in the [foreign] proceedings." *Id.* at *3–4. The court also relied on the fact that reciprocal discovery was sought from a party that was "not found in any district in the United States" and therefore the movant could not initiate its own Section 1782 action. *Id.* at *4. However, the court did not expressly consider whether the movant should satisfy the statutory requirements of Section 1782 and, as discussed above, courts in other cases have found that to be important. In any event, as the Second Circuit has pointed out, the court's decision in *Consorcio Minero* is not "binding authority." *Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 145 n.3 (2d Cir. 2020).

[2] *See also Eco Swiss China Time Ltd. v. Timex Corp.*, 944 F. Supp. 134, 138 (D. Conn. 1996) ("[T]he defendant's suggestion that the court require the plaintiff to request the discovery sought from Benetton in the foreign proceeding before making the instant request upon Timex and to condition relief upon reciprocal discovery in that proceeding is inconsistent with the relevant case law.") (internal citations omitted).

6

Thus, just because Mr. Steinmetz may obtain discovery in this District does not dictate that Vale must also receive discovery here.  Rather, the Court has "broad discretion to grant or deny reciprocal discovery," which discretion should be exercised "consistent with the 'twin aims' of" Section 1782.  *Sampedro,* 958 F.3d at 145 ("Congress granted district courts broad discretion to grant or deny reciprocal discovery.").

The U.S. Supreme Court has articulated four factors that indicate when discretion weighs in favor of discovery under Section 1782, and all four weigh against granting Vale's Cross-Application.  *Intel*, 542 U.S. at 264–65.  Those factors are: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the discovery sought is "unduly intrusive or burdensome."  *Id*.

Here, with respect to the first, second and fourth factors: (i) Vale seeks discovery from a party to the UK Proceedings, who has already produced information about his assets in the UK Proceedings (*see* Decl. of Samuel L. Levander, Ex. A (December 30, 2019 Letter from Asserson to Cleary Gottlieb Steen & Hamilton), ECF No. 26-1) and, unlike Mr. Steinmetz, Vale has no urgency such that it cannot wait to take further discovery from Mr. Steinmetz as part of the UK Proceedings; (ii) the UK Court already has before it an application from Vale for permission to cross-examine Mr. Steinmetz about his assets (*see* Letter from Vale to Magistrate Judge Ona T. Wang at 2, *In re Application of Vale International S.A. et al.*, No. 1:20-mc-00199 (JGK) (OTW) (S.D.N.Y. July 7, 2020)), so Vale's request to depose him about his assets here is plainly

duplicative; and (iii) Vale's discovery requests impose an undue burden on Mr. Steinmetz insofar as most of Vale's 34 document requests relate to topics beyond those about which Mr. Steinmetz seeks discovery from Vale.[3]

Further, with respect to the third *Intel* factor (circumvention of foreign proof-gathering restrictions or other policies), this Court previously denied a request for discovery based on that factor where the Court was concerned that the petitioner sought information about its adversary's assets in order to support an attachment application in the U.S. and also "as a fishing expedition to determine if it should file additional [award] confirmation and enforcement proceedings" in other jurisdictions. *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 1:15-mc-00127, 2015 WL 4040420, at *7 (S.D.N.Y. June 29, 2015) (Nathan, J.). As in that case, it seems likely that here Vale is fishing for information in large part to identify jurisdictions where it can bring proceedings to enforce its arbitration award against BSGR or to enforce the judgment it is seeking against Mr. Steinmetz in the UK Proceedings. Indeed, Vale acknowledges that "[w]ith respect to the requests directed to Steinmetz's assets, they are relevant to multiple issues in the English Proceedings, including . . . enforcement of any judgment." Cross-Appl. at 9. Thus, the third discretionary factor weighs against Vale's Cross-Application as well.

Rather than addressing the discretionary factors under *Intel* that guide a court's determination as to whether discovery would further the twin aims of the statute, Vale argues that this is a matter of "fairness and parity." But those principles do not favor Vale here for two reasons.

First, Vale has already sought—and been granted—extensive discovery from over thirty respondents in this District for use in the same UK Proceedings, and so there is no discovery

---

[3] It is ironic that Vale complains mightily about how Mr. Steinmetz's subpoenas would impose an undue burden on Vale (*see* Vale Opp. at 21–25, ECF No. 28) but then seeks *substantially more and entirely unrelated discovery* in its Cross-Application.

8

"imbalance." In fact, courts have found that where the party seeking reciprocal discovery has already obtained discovery in the U.S. through its own Section 1782 proceedings, "parity is not a genuine issue." *See e.g. Ecuador*, 2011 WL 736868, at *10 ("For their part, Applicants argue that Chevron's request goes far beyond their own, and point out that Chevron has already received extensive discovery via § 1782 in other proceedings, such that parity is not a genuine issue.").

Second, there is a process by which Vale can obtain much of the same discovery from Mr. Steinmetz through the UK Proceedings, and Vale has already taken advantage of that process by (i) obtaining asset disclosure from Mr. Steinmetz in connection with the Worldwide Freezing Order ("WFO") (*see* Rosenthal Decl., Ex. 8 (December 3, 2019 WFO), ECF No. 31-8) that Vale obtained against Mr. Steinmetz, and (ii) applying for permission to cross-examine Mr. Steinmetz about his assets in the UK Proceedings.[4]

Because the discovery Vale seeks from Mr. Steinmetz can be sought in the English High Court in the UK Proceedings, reciprocal discovery is not appropriate here. *See, e.g. In re Application of Gorsoan Ltd. & Gazprombank OJSC*, No. 1:13-mc-00397 (PGG), 2014 WL 7232262, at *11 (S.D.N.Y. Dec. 10, 2014), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016) ("Because there is no suggestion that the discovery procedures in Cyprus are inadequate, or that Bullock cannot obtain documents from Gorsoan in the Cyprus Proceedings, Bullock is not entitled to reciprocal discovery."); *Benetton*, 1997 WL 1068669, at *2 (denying

---

[4] In addition, Mr. Steinmetz has recently produced documents in response to requests from Vale in the Chapter 15 bankruptcy proceeding of BSGR. *See* Joint Administrators' Letter Report re: Status of Discovery and Document Production, *In re BSG Resources Ltd.*, No. 1:19-bk-11845 (SHL) (Bankr. S.D.N.Y. Dec. 3, 2019), ECF No. 78.

request for reciprocal discovery, noting the request does not "instill in [the judge] even the slightest concern that it will be unable to gain access to analogous disclosures from [applicant] in Europe").[5]

### III. VALE'S CROSS-APPLICATION SEEKING EXPANSIVE DISCOVERY FROM MR. STEINMETZ AND DR. YANUS IS NOT "RECIPROCAL."

In its Cross-Application, Vale seeks discovery well beyond that sought by Mr. Steinmetz in his Application, which makes this an improper request for "reciprocal" discovery. The majority of Vale's document requests are "related to the Yanus Declaration" or to "Steinmetz's assets." Cross-Appl. at 8; *see* Rosenthal Decl., Ex. 1 (Proposed Subpoena Directed to Benjamin Steinmetz). The same applies to the requested deposition of Dr. Avi Yanus, whom Vale presumably seeks to question about the investigation that his company Black Cube carried out for Mr. Steinmetz.

With respect to the Yanus Declaration and the investigation described therein, they are not the subject matter of Mr. Steinmetz's Application. Instead, they are the impetus of Mr. Steinmetz's Application because it was through Black Cube's investigation that Mr. Steinmetz discovered that Vale has lied all along about being an innocent victim of alleged wrongdoing by him and BSGR. *See* Steinmetz Br. at 10–13, ECF. No. 3. Vale's attempt to obtain discovery about the investigation (beyond what Mr. Steinmetz has already voluntarily given to Vale) is not a proper request for reciprocal discovery. *See, e.g. In re Aenergy, S.A.*, No. 1:19-mc-00542 (VEC), 2020 WL 615108

---

[5] Vale relies on *Euromepa S.A., v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995), but there the Court did not grant reciprocal discovery. Rather, the Court held that, generally speaking, the district court "could have conditioned relief upon the parties' reciprocal exchange of information" if parity concerns exist. *Id.* at 1102. The court in *Euromepa* cited *In re Malev Hungarian Airlines*, 964 F.2d at 101–02 & n.4 (2d Cir. 1992) for the proposition that "although a district court is 'free to grant [a section 1782] request without assuming responsibility for supervising' reciprocal discovery arrangements, a district court 'can, of course, accept [a party's] offer to engage in reciprocal discovery." Likewise, in *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-cv-00269 (RFT), 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008), another case relied on by Vale, the court granted reciprocal discovery because "[Applicant] acknowledges that this Court has the authority to issue a reciprocal discovery order and, therefore, consents to this possibility." Here, Mr. Steinmetz and Dr. Avi Yanus—neither of whom resides or is found in this District—have not consented to reciprocal discovery, although Mr. Steinmetz has already produced documents to Vale in various other proceedings, including the RICO action and the LCIA arbitration.

(S.D.N.Y. Feb 7, 2020) (rejecting a reciprocal discovery request that sought documents relied on in the Section 1782 application). Similarly, Vale's detailed requests about Mr. Steinmetz's assets (beyond what he has already produced in the UK Proceedings) is entirely unrelated to the subject matter of Mr. Steinmetz's Application for discovery, and plainly an attempt by Vale to push on what it (wrongly) perceives to be a point of pressure for Mr. Steinmetz.

When courts have granted reciprocal discovery, it has been narrowly tailored to the issues raised by the 1782 application, which is not the case here with regards to Vale's requests. *Compare Ecuador*, 2011 WL 736868, at *10 (denying request for "a wide range of reciprocal discovery" from Applicants that "goes far beyond" the Applicant's request and where the party "has already received extensive discovery via § 1782 in other proceedings, such that parity is not a genuine issue."), *with Consorcio*, 2012 WL 1059916, at *3 ("Renco's discovery requests are closely related to the Peruvian Actions, whereas Chevron in *In re Republic of Ecuador* had already received extensive discovery in other Section 1782 actions, concerns existed regarding sovereign immunity in that case, and Chevron's request for reciprocal discovery was untimely.").

Thus, where the reciprocal discovery sought "could not bear" on the topics for which the Applicant seeks discovery, courts have rejected reciprocal discovery as, in fact, not being reciprocal. *See In re Porsche Automobil Holding SE*, No. 1:15-mc-00417 (LAK), 2016 WL 702327, at *11 (S.D.N.Y. Feb. 18, 2016).[6] Here, Vale has not demonstrated that the discovery it seeks with respect to the Black Cube investigation and Mr. Steinmetz's assets could bear on the

---

[6] This case thus differs from *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996), where the Second Circuit affirmed reciprocal discovery in a dispute between two siblings who were both seeking appointment as administrator of a deceased third sibling's estate in Hong Kong. While the court did not address the grant of discretion in detail, both siblings were parties to the foreign proceeding and the discovery and reciprocal discovery would be used therein.

11

topics about which Mr. Steinmetz seeks discovery. Thus, Vale's Cross-Application is not properly a request for reciprocal discovery.

For the same reasons, Vale's discovery requests are unduly burdensome because most of them relate to topics completely unrelated to Mr. Steinmetz's own requests and because Vale is seeking to take depositions of two individuals who reside in Israel and the UK, respectively. *See Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 819 (11th Cir. 2019) (upholding the district court's "refus[al] to grant reciprocal discovery" because, as the Magistrate Judge found, "it 'would do nothing but delay this [proceeding]'" and appeared to be requested to determine matters that were "not at issue in the § 1782 proceedings").

## IV. VALE'S ALLEGATIONS REGARDING BLACK CUBE ARE IRRELEVANT.

Vale devotes much of its Cross-Application to asserting in a conclusory fashion that Black Cube is engaging in "illegal" and "illicit" tactics and accusing Mr. Steinmetz of having "conceal[ed] evidence" relating to Black Cube's investigation. Cross-Appl. at 1–6.[7] Vale does not actually substantiate its conclusory allegations. Those allegations (and the factual questions raised thereby as to whether Black Cube is acting lawfully or not in the jurisdictions where the events took place) also are not a reason for this Court to order reciprocal discovery, and Vale cannot point to case law suggesting otherwise.

Yet because Vale improperly accuses Mr. Steinmetz of misconduct before this Court, specifically of making "untrue" representations, Mr. Steinmetz feels compelled to respond. *Id*. at 5. After Mr. Steinmetz filed his Application and the Declaration of Dr. Yanus on May 21, 2020, Vale immediately responded by requesting (through a barrage of letters and emails sent over

---

[7] For example, Vale provides no evidence that Black Cube has engaged in any illegal activity, let alone in the investigation conducted for Mr. Steinmetz. Vale only cites two media articles that generally describe Black Cube's methodology. *See* Cross-Appl. at 4.

Memorial Day weekend) that Mr. Steinmetz provide Vale with copies of the recordings made by Black Cube of conversations with Vale representatives. Although he was under no obligation to provide any information to Vale, on May 26, 2020, Mr. Steinmetz voluntarily provided Vale with full audio recordings and transcripts of the meetings that Dr. Yanus had described in his Declaration, namely three meetings with former Vale executive Jose Carlos Martins, a meeting with former Vale executive Alex Monteiro, and two meetings with Vale consultant Denis Thirouin. *See* May 26, 2020 Kobre & Kim Letter to Judge Alison J. Nathan, Ex. A (Correspondence to counsel for Vale producing transcripts and audio files of transcribed conversations), ECF No. 13-1. As Mr. Steinmetz informed the Court: "[I]n response to Vale's request, Mr. Steinmetz has shared the full recordings of the conversations described in the Declaration of Dr. Yanus with Vale." May 26, 2020 Kobre & Kim Letter to Judge Alison J. Nathan at 2, ECF No. 13.

Mr. Steinmetz never represented that he had provided Vale with the "entire universe of transcripts and recordings" prepared as part of Black Cube's investigation, and Vale's assertion that he made "untrue" representations is baseless. Cross-Appl. at 5. Indeed, two days later, Mr. Steinmetz told Vale that he "does not intend to share other recordings/materials from the investigation at this time but might choose to do so later." Rosenthal Decl., Ex. 34 (May 28, 2020 Letter from Kobre & Kim to Cleary Gottlieb Steen & Hamilton), ECF No. 31-34. Because Mr. Steinmetz was and is under no obligation to produce materials from Black Cube's investigation—which in any event is not the subject matter of his discovery requests under Section 1782—he also has not sought to "conceal evidence" as Vale claims.

In addition to being factually incorrect, Vale's rhetoric concerning Mr. Steinmetz and Black Cube is misplaced and irrelevant to Vale's improper request for "reciprocal" discovery.

## **CONCLUSION**

For the foregoing reasons, Mr. Steinmetz respectfully requests that the Court denies Vale's conditional Cross-Application for reciprocal discovery.

Dated: July 27, 2020
New York, New York

Respectfully submitted,

/s/ Michael S. Kim
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022

Michael S. Kim
+1 212 488 1201
michael.kim@kobrekim.com

Josef M. Klazen
+1 212 488 1216
josef.klazen@kobrekim.com

Robin Rathmell
+1 202 664 1941
robin.rathmell@kobrekim.com

Victoria R. Morris
+1 305 967 6131
victoria.morris@kobrekim.com

Carolina Leung
+1 212 488 4948
carolina.leung@kobrekim.com

*Attorneys for Applicant Benjamin Steinmetz*