UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Benjamin Steinmetz for an Order to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited pursuant to 28 U.S.C. § 1782 | Case No. 20-mc-212-AJN |

**MEMORANDUM OF LAW IN REPLY TO STEINMETZ'S OPPOSITION TO VALE S.A.'S CONDITIONAL CROSS-APPLICATION TO COMPEL RECIPROCAL <u>DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A. and Vale Americas Inc.*

# **TABLE OF CONTENTS**

                          **PAGE**

Table of Authorities .................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

I.    Steinmetz's Efforts to Impose Additional Restrictions on Vale's Cross-Application Fail Under the Law ........................................................................................................ 1

II.   In Any Event, Were The Court to Reach It, Vale's Conditional Cross-Application Satisfies the § 1782 Statutory and Discretionary Factors ............................................... 2

      A.    S%TATUTORY% F%ACTORS% ................................................................................ 2

      B.    D%ISCRETIONARY% F%ACTORS% ........................................................................ 5

III.  Vale's Requests are Reciprocal and Relevant to the English Proceedings .................... 7

IV.  Vale's Allegations Regarding Black Cube ..................................................................... 8

Conclusion ................................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**Rules and Statutes**

28 U.S.C. 1782 .................................................................................................................. passim

English Fraud Act ..................................................................................................................... 9

Fed. R. Civ. P. 13 ...................................................................................................................... 3

N.Y. Gen. Bus. L. § 70 ............................................................................................................. 9

**Cases**

Application of Consorcio Minero, S.A. v. Renco Grp., Inc.,
No. 11 MC 354, 2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012) ........................................... 1, 2

Daimler AG v. Bauman,
571 U.S. 117 (2014) ............................................................................................................ 3-4, 9

Euromepa S.A. v. Esmerian Inc.,
51 F.3d 1095 (2d Cir. 1995) ...................................................................................................... 7

In re Aenergy, S.A.,
No. 19-mc-00542-VEC, 2020 WL 615108 (S.D.N.Y. Feb. 7, 2020) ........................................ 7

In re Del Valle Ruiz,
342 F. Supp. 3d 448 (S.D.N.Y. 2018) ....................................................................................... 4

In re del Valle Ruiz,
939 F.3d 520 (2d Cir. 2019) ...................................................................................................... 4

In re Ecuador,
No. C-10-80225-CRB (EMC), 2011 WL 736868 (N.D. Cal. Feb. 22, 2011) ........................... 7

In re Esses,
101 F.3d 873 (2d Cir. 1996) ...................................................................................................... 2

In re Furstenberg Fin. SAS,
334 F. Supp. 3d 616 (S.D.N.Y. 2018) ....................................................................................... 2

In re Malev Hungarian Airlines,
964 F.2d 97 (2d Cir. 1992) ........................................................................................................ 7

In re Porsche Automobil Holding SE,
No. 1:15-mc-00417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ......................... 7

In re Vale S.A.,
No. 20-mc-199 (JGK) (OTW), 2020 WL 4048669 (S.D.N.Y. July 20, 2020) .................... 3, 4, 8

Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004) ................................................................................................... 1, 5

Meyer v. Kalanick,
212 F. Supp. 3d 437 (S.D.N.Y. 2016) ........................................................................... 9

Minatec Finance S.A.R.L. v. SI Group Inc.,
No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .................................... 2

Schmitz v. Bernstein Liebhard & Lifshitz, LLP,
376 F.3d 79 (2d Cir. 2004) ........................................................................................... 2

**PRELIMINARY STATEMENT**

Steinmetz's Opposition[1] to Vale's Cross-Application goes through great contortions to explain why *his* Application for an Order Under 28 U.S.C. § 1782 to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto PLC, and Rio Tinto Limited for Use in Foreign Proceedings ("Application" or "MOL") should be approved while Vale's Conditional Cross-Application should be denied. Vale's Cross-Application should be denied for one reason alone: as moot because Steinmetz's Application is hopelessly defective. If Steinmetz's Application were to be granted, however, equal treatment would warrant reciprocal discovery, for the reasons set forth below, in order to level the playing field and prevent the kind of unjust advantage Steinmetz is seeking.[2]

I. **STEINMETZ'S EFFORTS TO IMPOSE ADDITIONAL RESTRICTIONS ON VALE'S CROSS-APPLICATION FAIL UNDER THE LAW**

Had Steinmetz made out a case for § 1782 discovery from Vale, even though both are parties to the English Proceedings in which full party discovery is available, it is indisputable that the Court would have broad discretion to award reciprocal discovery on the basis of fairness and parity.[3] Steinmetz simply invents a requirement that, in this special context, Vale must meet all of the § 1782 statutory factors; this invention is inconsistent with the broad discretion afforded to courts to provide reciprocal discovery in the interest of parity and § 1782's "twin

---

[1] Memorandum of Law in Opposition (the "Steinmetz Opposition" or "Cross-App. Opp.") to Vale S.A.'s ("Vale") Conditional Cross-Application to Compel Reciprocal Discovery Pursuant to 28 U.S.C § 1782 (the "Cross-Application" or "Cross-App."). Unless otherwise indicated, capitalized terms not defined herein have the meaning ascribed to them in the Cross-Application.
[2] See Application of Consorcio Minero, S.A. v. Renco Grp., Inc., No. 11 MC 354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012).
[3] See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 262 (2004) ("[A] district court could condition relief upon . . . reciprocal exchange of information" if the court has "[c]oncerns about maintaining parity among adversaries in [the] litigation."). As Steinmetz concedes, "Congress granted district courts broad discretion to grant or deny reciprocal discovery." Cross-App. Opp. at 7 (quoting Sampedro v. Silver Point Capital, L.P., 958 F.3d 140, 145 (2d Cir. 2020)).

aims" of "providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts."[4]

Consistent with this discretion, in the event that a party is entitled to § 1782 discovery at all, many courts in this Circuit have consequently granted reciprocal discovery to its adversary in the interest of fairness and parity without considering the § 1782 statutory and discretionary factors in their analysis.[5]

## II. IN ANY EVENT, WERE THE COURT TO REACH IT, VALE'S CONDITIONAL CROSS-APPLICATION SATISFIES THE § 1782 STATUTORY AND DISCRETIONARY FACTORS

The only reasons why Vale's Conditional Cross-Application does not satisfy the § 1782 statutory and discretion factors are equally (if not more) fatal to Steinmetz's Application. If the Application passes muster, then the Conditional Cross-Application necessarily does as well.

### a. STATUTORY FACTORS

Section 1782 has three statutory prerequisites, two of which Steinmetz challenges here: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, [and] (2) that the discovery be for use in a proceeding before a foreign tribunal."[6] Ironically, Steinmetz's own arguments in favor of his misconceived § 1782 Application against Vale, if accepted, would defeat these challenges.

---

[4] See In re Esses, 101 F.3d 873, 876 (2d Cir. 1996) (holding that the district court "acted well within [its] discretion in ordering [reciprocal] discovery" because "so long as the district court fashions its order in accordance with the 'twin aims' of § 1782 . . . it acts within its discretion").

[5] See, e.g., Application of Consorcio Minero, 2012 WL 1059916, at *4; Minatec Finance S.A.R.L. v. SI Group Inc., No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008). In the sole case from this District cited by Steinmetz to the contrary, Cross-App. Opp. at 3 (citing In re Furstenberg Fin. SAS, 334 F. Supp. 3d 616, 620-21 (S.D.N.Y. 2018)), the applicant itself argued mistakenly that it needed to meet § 1782's statutory requirements to obtain such discovery. See In re Furstenberg Fin. SAS, No. 18-mc-00044 (JGK), ECF No. 48 (S.D.N.Y. July 26, 2018).

[6] Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (citation omitted).

Steinmetz asserts that Vale, a Brazilian resident, "conducts systematic and regular business in the United States" based on its in-forum commercial activities and "New York City-based lawyers." MOL at 17. While these allegations are neither well-pled nor sufficient to confer general jurisdiction over Vale under Daimler AG v. Bauman, 571 U.S. 117, 122 (2014), Vale Opposition to MOL ("Vale Opp.") at 10, the same allegations are present with respect to Steinmetz; indeed, Magistrate Judge Wang recently ordered § 1782 discovery of *dozens* of New York entities and individuals "associated with separate joint ventures entered into with Beny Steinmetz" regarding his acquisition and ownership of New York real estate, and he obviously has New York City-based lawyers.[7]

Moreover, Steinmetz's dubious argument to this Court that "[j]ust as one party in a civil action opens itself up to a potential counterclaim or crossclaim if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, *see* Fed. R. Civ. P. 13, so too should a party to a foreign proceeding who seeks discovery under Section 1782 expect that another party to the same foreign proceeding will likewise avail itself of Section 1782 to seek discovery from it," MOL at 19, if accepted, applies with even greater force to him. While Vale disagrees with Steinmetz's assertion that Vale's § 1782 application *against third parties* to the English Proceedings who are undeniably present in this District subjects Vale to *party* discovery under the auspices of § 1782, Steinmetz's own argument logically must apply *a fortiori* with respect to discovery requests between the parties.

Steinmetz's specific jurisdiction argument concerning Vale applies equally to himself and Yanus, if not more so. Steinmetz relies on meetings held in New York between Vale and a third party more than a decade ago as his jurisdictional hook, but overlooks that, as Steinmetz himself

---

[7] See In re Vale S.A., No. 20-mc-199 (JGK) (OTW), 2020 WL 4048669, at *1 n.1, 5 (S.D.N.Y. July 20, 2020).

concedes, a number of Vale's document requests are related to the Yanus Declaration or to Steinmetz's assets.[8]  Cross-App. Opp. at 10.  The Yanus Declaration swears to, *inter alia*, Black Cube's meetings earlier this year *in New York* after luring a former Vale executive to this district (under false pretenses).  Yanus Decl. ¶ 27.  Thus, if Vale's discovery requests are not sufficiently tied to New York to satisfy the requirements of specific jurisdiction for purposes of § 1782, Steinmetz's requests (just a few of which concern the alleged meetings in New York) unquestionably are not as well.[9]  Indeed, applying Steinmetz's own argument, much of the Black Cube evidence submitted to this Court by Steinmetz and Yanus would not exist but for Black Cube having lured Mr. Martins to New York to secretly record their interactions.[10]

As to the second statutory requirement – "for use in a foreign proceeding" – Steinmetz's own case is that "[n]o doubt the Black Cube evidence will play a central role in the UK Proceedings," Reply to Vale Opp. ("Reply") at 10, and thus the discovery Vale seeks through its Cross-Application concerning "the Black Cube evidence" will necessarily be for use in the English Proceedings.  Similarly, Steinmetz does not challenge that Vale's discovery into his assets is for use to advance its proprietary claim in the English Proceedings.[11]

---

[8] In re Vale S.A., 2020 WL 4048669, at *1-2.

[9] Likewise, Steinmetz's assertion that Vale is subject to personal jurisdiction in New York because of the unrelated activities of its affiliates, MOL at 18-19, which Vale asserts is legally deficient, nonetheless applies equally to Steinmetz insofar as Vale alleges that Steinmetz has made hundreds of millions of dollars of investments in New York real estate through local joint ventures.  See Memorandum of Law in Support of Ex Parte Application for An Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings, No. 1:20-MC-00199-JGK-OTW (S.D.N.Y.), ECF No. 2, at 7-13.  The *sole* argument Steinmetz made with respect to Vale that would not apply equally to himself is that Vale has SEC reporting requirements, an allegation that is plainly insufficient to confer personal jurisdiction in New York.  Notwithstanding Steinmetz's tortured arguments to the contrary, the Petrobras court's findings were entirely consistent with the Second Circuit's holding in In re Del Valle Ruiz, where the Second Circuit held that the district court correctly determined that none of Santander's alleged forum contacts, including submitting filings to the SEC, meeting with analysts and investors in New York, and retaining investment banks in New York, were sufficient to confer specific jurisdiction over Santander.  See In re Del Valle Ruiz, 342 F. Supp. 3d 448, 458 (S.D.N.Y. 2018) (discussing Santander's supposed forum contacts).

[10] See In re del Valle Ruiz, 939 F.3d 520, 530 (2d Cir. 2019) ("[T]he respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all.").

[11] See In re Vale S.A., 2020 WL 4048669, at *3-4 (holding that discovery into Steinmetz's and his corporate affiliates' assets to advance Vale's proprietary claim in the English Proceedings is "for use" in those proceedings).

Steinmetz argues, without basis, that Vale really seeks this discovery for use in connection with its more than $2 billion arbitration award against BSGR. But, in fact, it is Steinmetz who improperly seeks to use § 1782 in aid of his affiliate's desired further challenge to that award. While claiming that this use is merely a reporter's interpretation of his remarks, Steinmetz ignores that he told this Court the same. See Vale Opp. at 15, 17; MOL at 9.

### b. DISCRETIONARY FACTORS

The discretionary factors set forth in Intel, 542 U.S. at 264-65, likewise only weigh against Vale's Cross-Application to the extent they defeat the Application.

*First*, Steinmetz asserts that "there is a process by which Vale can obtain much of the same discovery through the UK Proceedings" and that "[b]ecause the discovery Vale seeks from Mr. Steinmetz can be sought in the English High Court in the UK Proceedings, reciprocal discovery is not appropriate here." Cross-App. Opp. at 9. This statement, of course, hopelessly dooms his own Application – there is a process by which Steinmetz can seek the same discovery through the English Proceedings, and thus § 1782 discovery of Vale is neither necessary nor appropriate. Indeed, Steinmetz has *already* obtained this discovery. Steinmetz was a party to the Rio Tinto action, and Vale has consented to Steinmetz's use in the English Proceedings of documents from the LCIA arbitration.[12]

The Court will not find any effort to distinguish between Steinmetz and Vale in his Opposition, but rather only Steinmetz's Reply concerning his own Application. There, Steinmetz offers two entirely baseless assertions.

---

[12] Second Declaration of Jeffrey A. Rosenthal, Ex. 1, Letter from Cleary Gottlieb Steen & Hamilton LLP to Asserson Law Offices (Mar. 24, 2020) ("We have confirmed that Vale S.A. does not object to your client [Steinmetz] (or any of the Defendants) relying on the Arbitration Documents in [the English Proceedings] . . . .").

*First*, Steinmetz claims a unique need for discovery a mere two months earlier than it would commence in England because of the allegedly onerous effect of the WFO. Reply at 6-7. But while Steinmetz offers a declaration from his English counsel concerning the English discovery schedule, Declaration of Trevor Asserson in Support of Reply to Vale Opp., ECF No. 46 at 2-3, conspicuously absent from that declaration is any disagreement that the deadline to set aside, discharge or vary the WFO passed, without any action by Steinmetz, six months ago on February 7, 2020; the WFO therefore cannot justify Steinmetz getting an early jump on discovery through § 1782.

*Second*, Steinmetz claims that Vale may destroy documents if he is forced to wait two months until October, when discovery begins in the English High Court.[13] Steinmetz's sole support for this offensive accusation is a non-sequitur: "new evidence obtained by Black Cube, which for the first time reveals Vale believed BSGR procured the mining rights wrongfully and nonetheless entered the JV Agreement." Reply at 6. Steinmetz's only basis for this assertion is that prior to a document hold being put into place *in 2013*, Vale did not preserve documents from executives who departed the company. This plainly has nothing to do with Vale's document preservation obligations today, with which it has faithfully complied in the English Proceedings since their commencement last year and in the prior U.S. litigation involving it and Steinmetz in 2014-15.[14]

---

[13] The English High Court has scheduled a case management conference for October 22, 2020, when it is expected to give orders for discovery. Even if, as Steinmetz's counsel asserts, actual production of documents in England will not occur for a few more months thereafter, see Asserson Decl. at 3, there is no reason to believe the process of objections, review and production would be any swifter here.

[14] Steinmetz, by contrast has flouted his recent discovery obligations in this Court, including defaulting on discovery requests served earlier this year in Vale's enforcement action pending before Judge Broderick, and on letters rogatory issued by U.S. Bankruptcy Judge Lane and served in connection with BSGR's Chapter 15 petition. See Order Granting Application for Issuance of International Letters of Request (Letters Rogatory), No. 19-11845 (SHL), ECF No. 87 (S.D.N.Y. Bankr. Feb. 27, 2020); Ex. 2, Vale S.A. First Request for Production of Documents to Beny Steinmetz, No. 19-CV-3619 (S.D.N.Y. Mar. 31, 2020). Thus if there is any reason to believe that any party might evade its disclosure obligations in the English Proceedings, it is Steinmetz.

The other discretionary factors need little discussion, and would also support the Cross-Application were the Court to reach them. Were there any reason for § 1782 discovery between foreign litigants to burden this Court when the English Court is quite capable of regulating discovery between them, issues of receptivity of the English Court, foreign proof-gathering procedures and the like would obviously not be any more of an issue with respect to Vale's Cross-Application as Steinmetz's Application.

### III. VALE'S REQUESTS ARE RECIPROCAL AND RELEVANT TO THE ENGLISH PROCEEDINGS

Steinmetz also invents a requirement that if his Application is granted, reciprocal discovery would limit Vale to the precise categories of documents requested by Steinmetz.[15] But Steinmetz is no more allowed to draft Vale's requests than Vale is permitted to draft Steinmetz's. Reciprocity means that if Steinmetz were permitted discovery into Vale's claims and his defenses, Vale would be likewise permitted discovery into its claims and Steinmetz's defenses.[16]

Steinmetz does not dispute that all of the documents Vale seeks are directly related to disputes in the English Proceedings. Vale conditionally requests three categories of reciprocal

---

[15] No such requirement is articulated in the cases on which Steinmetz relies for this spurious assertion. Cross-App Opp. at 11-12. Rather, those cases acknowledge that reciprocal discovery should allow access to information relevant to a parties' claims and defenses, and deny reciprocal discovery where the movant was not a party to the underlying foreign proceeding. See In re Porsche Automobil Holding SE, No. 1:15-mc-00417 (LAK), 2016 WL 702327, at *11 (S.D.N.Y. Feb. 18, 2016) (denying reciprocal discovery where the parties seeking such discovery were not all parties to the foreign proceeding and where the discovery sought was not relevant to the claims and defenses of the parties to the foreign proceeding); In re Aenergy, S.A., No. 19-mc-00542-VEC, 2020 WL 615108, at *2-3 (S.D.N.Y. Feb. 7, 2020) (denying reciprocal discovery where the movant was not a party to the foreign proceeding, was not seeking discovery for aid in a foreign proceeding, and requested the production of a single non-public court filing which raised comity issues with the Angolan Supreme Court). The additional case relied on by Steinmetz, In re Ecuador, No. C-10-80225 MISC CRB (EMC), 2011 WL 736868, at *10 (N.D. Cal. Feb. 22, 2011), is likewise inapposite. In that case, the movant had already received extensive discovery through a separate § 1782 application and thus the court found that "parity [was] not a genuine issue" that merited granting the request. Id. (noting further that Chevron's application for reciprocal discovery was untimely). For the reasons set forth by Vale here and in its Cross-Application, parity requires granting of the reciprocal requests if Steinmetz's Application is granted.

[16] See Euromepa S.A. v. Esmerian Inc., 51 F.3d 1095, 1102 (2d Cir. 1995) (reciprocal discovery should allow "access to analogous . . . documents or testimony") (emphasis added); In re Malev Hungarian Airlines, 964 F.2d 97, 102 n.4 (2d Cir. 1992) (finding that a district court can engage in reciprocal discovery, which "means making witnesses and documents available in the United States to the same extent [Respondent] is required to do so").

discovery: (1) categories of documents that mirror Steinmetz's own requests; (2) documents related to Steinmetz's assets; and (3) documents related to the Yanus Declaration and the Black Cube "investigation" described therein. With respect to the first category, Steinmetz does not contest that Vale's requests are reciprocal and analogous to his own. See Cross-App. Opp. at 10. As to the second category, Magistrate Judge Wang ruled last month that discovery pertaining to Steinmetz's assets are relevant to Vale's proprietary claim in the English Proceedings, which "would allow Vale to trace and recover the proceeds of the fraud received" by Steinmetz.[17] Finally, as to the third category, Steinmetz himself claims that "evidence" from Black Cube "will play a central role in the UK Proceedings." Reply at 10. As such, and given that some of these documents were created recently in New York, § 1782 discovery, if available at all, would be particularly appropriate of Steinmetz.

## IV. VALE'S ALLEGATIONS REGARDING BLACK CUBE

Finally, and again ironically, while Steinmetz's Application appeared primarily intended to publicize his Black Cube-related allegations of "evidence" on an absurd argument that Steinmetz's corrupt company BSGR already made to, and was rejected by, the LCIA tribunal, Steinmetz now argues that "Vale's allegations regarding Black Cube are irrelevant." Cross-App. Opp. at 12. Not so.

*First*, as noted above, Black Cube's conduct in New York as Steinmetz's agent would render Steinmetz subject to specific jurisdiction in New York to the extent that reciprocal discovery under § 1782 requires Vale to establish jurisdiction.

*Second*, as also noted above, Steinmetz has trumpeted to this Court that the documents created by his agent Black Cube (over which he plainly has possession, custody or control) "will

---

[17] In re Vale S.A., 2020 WL 4048669, at *2.

play a central role in the UK Proceedings." Reply at 10. Their discovery would therefore undeniably be "for use" in the English Proceedings.

*Third*, consideration of the legality of Black Cube's activities on behalf of Steinmetz in seeking § 1782 discovery may be relevant to the Court's discretion on these applications. In this regard, Steinmetz makes no attempt actually to dispute or defend the following:

- Black Cube recorded former Vale employees and a consultant without their knowledge, set up fictitious websites and created false identities to deceive Vale employees and a consultant. See Vale Opp. at 26-27. Despite the self-congratulatory testimony of Yanus that Black Cube follows legal advice, Black Cube's actions violated at least the following laws of four separate jurisdictions:

    o The English Fraud Act makes it a criminal offense "for a person to make a false representation with intent to (i) gain for himself or another, or (ii) cause loss to another or to expose another to a risk of loss." See Vale Opp. at 27.

    o The French Blocking Statute and Articles 226-1 and 226-2 of the French Penal Code prohibit making false statements to obtain evidence from a witness located in France (here, Denis Thirouin), to record a phone call without a participant's consent, and to use such evidence in court. See Vale Opp. at. 27.

    o Article 307 of the Brazilian Criminal Code makes it illegal to assume a false identity "to obtain an advantage, personal or of another, to cause harm." See Vale Opp. at 27.

    o Black Cube likely also violated New York's licensing laws by conducting an investigation and collecting information in New York for use in court proceedings without a license. See Yanus Decl. ¶¶ 27-28 (describing Black Cube's clandestine surveillance and recording in New York).[18]

---

[18] Section 70(2) of the New York General Business Law prohibits any person, firm, company, partnership, limited liability company, or corporation from "engag[ing] in the business of a private investigator" without a license. See N.Y. Gen. Bus. L. § 70(3); Meyer v. Kalanick, 212 F. Supp. 3d 437 (S.D.N.Y. 2016). Section 70(3) further prohibits "engag[ing] in the business of furnishing or supplying for . . . any consideration . . . information as to the personal character or activities of any person, firm, company, or corporation, . . ." without a license. See N.Y. Gen. Bus. Law § 70(3). Acting as a "private investigator" includes "the making [. . .] for any consideration of any investigation, or investigations" for the purpose of "the securing of evidence to be used before any . . . board of award, board of arbitration, or in the trial of civil or criminal cases." See N.Y. Gen. Bus. L. § 71(1). Any violation of these provisions is a Class A misdemeanor. See N.Y. Gen. Bus. L. § 70(4). The Yanus Declaration contains no indication that Black Cube complied with New York's licensing requirements when meeting with Martins in New York under false pretenses and surreptitiously recording his statements concerning Vale and Vale's activities. Indeed, the New York Department of State's registry of licensed private investigators contains no entry for "Black Cube," "B.C." or "BC" that corresponds to a Black Cube entity. Black Cube's unlicensed activities in New York are therefore in violation of the plain language of § 70.

- The Yanus Declaration contains no exhibits or supporting documentation and does not even identify any individuals with first-hand knowledge of the conversations, despite Mr. Yanus's references to "comprehensive research," contact with "a number of individuals," and video and/or audio recording that Black Cube preserves.  Cross-App. at 1, 4.

- The conversations described in the Yanus Declaration were distorted and taken out of context in their presentation to this Court.  Cross-App. at 3.

- Steinmetz's representation to this Court that "Mr. Steinmetz has shared the full recordings of the conversations described in the Declaration of Dr. Yanus with Vale" was untrue.  Cross-App. Opp. at 13.  While Yanus chose to quote from conversations with only three persons, his declaration references numerous conversations (which Steinmetz does not dispute) and therefore, Steinmetz's statement of a complete production of the "full recordings" was misleading at best.

## CONCLUSION

For the foregoing reasons, if the Court grants Steinmetz's Application in any respect pursuant to 28 U.S.C. § 1782 notwithstanding the numerous reasons for denial set forth in Vale's Opposition, Vale respectfully requests that such Order require Steinmetz to provide reciprocal discovery as set forth in the proposed subpoenas attached as Exhibits 1 and 2 to the Declaration of Jeffrey A. Rosenthal, ECF No. 31.

Dated: August 10, 2020
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Jeffrey A. Rosenthal*
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

*Attorneys for Vale S.A. and Vale Americas Inc.*
