UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/22
```

*In re Application of Benjamin Steinmetz for an Order to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited Pursuant to 28 U.S.C. § 1782,*

20-mc-212 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Benjamin Steinmetz's application for an order to take discovery from Respondents Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited pursuant to 28 U.S.C. § 1782, Vale Respondents' conditional cross-motion to compel discovery, and Vale Respondents' motion to seal. For the following reasons, the Court DENIES Steinmetz's Application. Accordingly, the Court also DENIES Vale's conditional cross motion. Finally, the Court GRANTS the motion to seal.

I.   BACKGROUND

The present application stems from a dispute arising out of an April 30, 2010 Joint Venture Agreement between BSG Resources Limited ("BSGR") and Respondent Vale S.A. In 2008, BSGR obtained the rights to develop iron ore mining concessions in the Simandou region of Guinea. *See* Dkt. No. 31-3. Applicant Benjamin Steinmetz was an adviser to BSGR. As part of the 2010 Joint Venture Agreement, Vale S.A. acquired a 51% stake in a venture that held mining rights in the Simandou region of Guinea.

In 2012, the Guinean Technical Committee for the Review of Mining Titles and Agreements began an investigation into how BSGR acquired its mining licenses after it became

1

aware of credible information supporting the possibility that BSGR had acquired certain rights through bribery of Guinean government officials. *Id*. at 77. The Committee published its findings in 2013, indicating that the licenses had been procured by bribery; as a result, the Government of Guinea withdrew BSGR's mining licenses in April 2014. Dkt. No. 31-4 at 44.

Shortly thereafter, Vale S.A. commenced arbitration proceedings against BSGR in the London Court of International Arbitration ("LCIA"). Dkt. No. 31-3 at 18–21. In April 2019, the Tribunal presiding over the arbitration found BSGR liable for fraudulent misrepresentations made during the joint venture negotiation process and awarded Vale over $2 billion in damages, interest, and costs. *Id.* at 280. After prevailing before the LCIA Tribunal, Vale applied for recognition and enforcement of the Award in the High Court of the United Kingdom under the UK Arbitration Act as well as in the Southern District of New York under the Federal Arbitration Award. The Award was recognized in both jurisdictions. *See* High Court Judgment, *Vale S.A. v. BSG Resources Ltd.*, Claim No. CL-2019-00269 (May 9, 2019); *Vale S.A. v. BSG Resources Ltd.*, No. 19-cv-3619-VSB (S.D.N.Y. Mar. 5, 2020), Dkt. No. 51.

Meanwhile, in August 2014, Respondent Rio Tinto plc filed an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") in the Southern District of New York against Steinmetz, BSGR, and Vale S.A., alleging that Vale conspired with Mr. Steinmetz and BSGR to fraudulently steal Rio Tinto plc's mining rights. *See Rio Tinto plc v. Vale, S.A., et al.,* No. 14-CV-03042 (RMB). The lawsuit was eventually dismissed as time-barred. *Id.*, Dkt. No. 408.

On November 20, 2019, Vale filed an application with the UK High Court for a worldwide freezing order against Steinmetz and other defendants in preparation for the commencement of proceedings against them before the UK High Court. The High Court granted

the worldwide freezing order on December 3, 2019.  Dkt. No. 31-8, *Vale S.A. & Ors v. Steinmetz & Ors*, No. CL-2019-000723, Freezing Order (Dec. 3, 2019).  Vale then initiated the proceedings that are at the core of the present application.  In the UK litigation, Vale alleges, among other things, that Steinmetz and the other defendants induced Vale to enter into the Joint Venture through fraudulent misrepresentations.  Dkt. No. 31-4 at 44–76.  Steinmetz denies the allegations, and the UK litigation is ongoing.  Dkt. No. 5–7.  Steinmetz filed the present application in order to take discovery in support of his efforts to defend himself in the UK litigation.

Steinmetz seeks this discovery on the basis that he believes that Respondents have information that is relevant to what Vale S.A. knew when it entered into the Joint Venture Agreement.  *See* Dkt. No. 4 at 9–26.  Steinmetz believes that Vale S.A. and Vale Americas have documents that directly support his defenses in the UK litigation, and he believes that, due to the 2014 action before the Southern District of New York, Rio Tinto plc and Rio Tinto Limited have information regarding the mining rights, including its investigation into how BSGR procured the licenses.

### A.  Procedural Background

Steinmetz filed the application on May 21, 2020.  Dkt. No. 1.  All Respondents filed their oppositions on June 26, 2020.  Dkt. Nos. 27, 37.  Vale Respondents also moved to redact the memorandum of law in support of its opposition to Steinmetz's Application and to seal one of the declarations in support of that memorandum.  Dkt. No. 24.  Steinmetz filed his reply as to the Rio Tinto Respondents' opposition and the Vale Respondents' opposition on July 10 and July 27, 2020, respectively.  Dkt. Nos. 43, 44.

Concurrently with their opposition, Vale Respondents cross-moved to compel reciprocal discovery in the event the Court granted Steinmetz's application. Dkt. No. 29. Steinmetz opposed the cross motion on July 27, 2020, Dkt. No. 47, and Vale Respondents filed a reply in support on August 10, 2020, Dkt. No. 48.

The parties have also filed letters apprising the Court of the status of the underlying foreign proceeding. *See* Dkt. Nos. 50–54, 56. Most recently, the parties informed the Court the nine-week trial in the UK Proceedings is scheduled to begin on January 24, 2022, and end by April 7, 2022. Dkt. No. 56.

For the following reasons, the Court DENIES Steinmetz's application for an order under 28 U.S.C. § 1782 to take discovery from Respondents. Accordingly, it DENIES Vale Respondents' cross-motion to compel discovery. Finally, the Court GRANTS Vale Respondents' motion to redact and motion to seal.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." The statute imposes three requirements: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made; (2) that the discovery be for use in a proceeding before a foreign tribunal; and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *See In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (quoting *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)).

"Once a district court is assured that it has jurisdiction over the petition, it 'may grant discovery under § 1782 in its discretion.'" *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d

4

238, 244 (2d Cir. 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 97 (2d Cir. 2015)).  In making that determination, courts consider four non-exhaustive factors first outlined by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): (1) whether the target of discovery is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and its receptiveness to U.S. federal court assistance; (3) whether the application is attempting to "circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome."  *See id.* at 264–65.  In considering these factors, a district court may exercise its discretion in determining whether to grant discovery under § 1782.

### III. DISCUSSION

#### A. Steinmetz's Application for An Order to Take Discovery from Respondents

The Court concludes that the statutory requirements of § 1782 are not met as to Vale Americas and Rio Tinto Limited.  And although the Court concludes that the statutory requirements of § 1782 are met as to Vale S.A. and Rio Tinto plc, the Court concludes that discretionary considerations do not warrant relief in this case under the *Intel* factors.  Thus, the Court denies Steinmetz's Application.

#### 1. Statutory requirements

As noted above, before a district court decides whether to grant discovery under § 1782, it must assure itself that it has jurisdiction over the petition by assessing whether the three statutory requirements are met.  *See Kiobel*, 895 F.3d at 244.

The first requirement is that "the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made."  *In re Edelman*, 295 F.3d at 175 (emphasis omitted).  The Respondents contend that Steinmetz's application fails on this first prong.  It is undisputed that none of the Respondents "reside" in New York; Vale

5

Americas is incorporated in Delaware, while Vale S.A., Rio Tinto Limited, and Rio Tinto plc are all foreign corporations incorporated outside of the United States. Dkt. No.27 at 15; Dkt. No. 37 at 8, 15. Thus, the Court must determine whether Respondents are "found" in this district for purposes of the statute.

The Second Circuit has instructed that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019). The constitutional limits of personal jurisdiction allow for a showing of either general or specific jurisdiction over each respondent. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017); *see also In re del Valle Ruiz*, 939 F.3d at 528 & n.9. The Court concludes that general jurisdiction is inapplicable to all respondents; however, it finds Vale S.A. and Rio Tinto plc subject to specific jurisdiction.

      **a.  Whether Respondents are "found" in the district**

            **i.  General jurisdiction**

A corporation is subject to general jurisdiction in a forum "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks and alterations omitted). As a general matter, this typically refers to "the place of incorporation and principal place of business"— the "paradigm bases for general jurisdiction." *Id.* at 137 (alterations omitted); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (noting that a corporation is "essentially at home" only in its place of incorporation and principal place of business "except in a truly 'exceptional' case"). The Second Circuit has further explained that "even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a

6

forum." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 138).

Steinmetz does not allege that the Respondents are either incorporated in New York or have their principal place of business here. Rather, he argues that Vale S.A. and Vale Americas have "significant contacts" in New York by relying on *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016), which determined that "Vale has significant contacts with New York such that Vale resides or is found in New York for purposes of Section 1782." The Court is unpersuaded. The parties in that case did not meaningfully contest personal jurisdiction (or its § 1782 equivalent). And, as noted in *In re Del Valle Ruiz*, *Kleimar*'s analysis is difficult to square with the import of *Daimler*. *See In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 453 (S.D.N.Y. 2018), *aff'd sub nom. In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019). Second, this is not an "exceptional case" meriting a departure from the general rule that a corporation is "at home" only in its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137; *Lockheed Martin Corp.*, 814 F.3d at 627. The connections that Steinmetz ascribes to Vale S.A.—including that it trades ADRs on the New York Stock Exchange, that it has ties to Vale Americas, which is registered to do business in New York, that it did not contest jurisdiction in different litigation within this District, that it has designated Vale Americas as its agent for service in SEC filings, and that it conducts systematic and regular business in the United States and New York—fall short of an "exceptional case." *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014); *Lockheed Martin Corp.*, 814 F.3d at 626; *In re Del Valle Ruiz*, 342 F. Supp. 3d at 455.

Like with his arguments regarding Vale, Steinmetz's attempts to argue that Rio Tinto is subject to general jurisdiction in this District are without merit. This is not an "exceptional case"

7

meriting a departure from the general rule that a corporation is "at home" only in its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137; *Lockheed Martin Corp.*, 814 F.3d at 627.

Accordingly, general jurisdiction is inapplicable to all Respondents.

### ii. Specific jurisdiction

Thus, the question is whether specific jurisdiction exists. For purposes of specific jurisdiction, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *In re del Valle Ruiz*, 939 F.3d at 528 (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). "[T]he touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, . . . that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 528–29 (quoting *Gucci Am., Inc.*, 768 F.3d at 134). And as a result, "adjudicatory authority" only exists "over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Id.* (quoting *Gucci Am., Inc.*, 768 F.3d at 134).

The Second Circuit thus instructs that courts should follow a two-step analysis. First, the court must determine whether "the entity has 'purposefully directed his activities at the forum and the litigation arises out of or relates to those activities.'" *Id.* at 529 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (cleaned up). Next, the Court must "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476). "Relevant factors at this second step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the

defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief. . . ." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (citation and internal quotation marks omitted).

Finally, since neither of the Rio Tinto Respondents are parties to the UK Litigation, "to account for [their] nonparty status," the Court must assess whether "the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery," or, if the Court determines that "the respondent's contacts are broader and more significant," that "the evidence sought would not be available but for the respondent's forum contacts." *In re del Valle Ruiz*, 939 F.3d at 530.[1]

The Court concludes that there is specific jurisdiction as to Vale S.A. and Rio Tinto plc. Citing the Amended Complaint in the since-dismissed Rio Tinto RICO Action, Steinmetz argues that the Court has specific jurisdiction over these Respondents based on a series of meetings that took place in late 2008 and early 2009 in New York between representatives from Rio Tinto plc and representatives from Vale. *See* Dkt. No. 3 at 22–23 (citing Amended Compl. ¶¶ 58–62, 78, 159, *Rio Tinto plc v. Vale, S.A. et al.*, No. 1:14- CV-03042 (RMB) (S.D.N.Y. Aug. 15, 2014)). The 2008 and 2009 meetings are sufficient contacts for the first step of the analysis. The meetings related to the Simandou mining rights, and those rights are at the core of the UK Litigation and, by consequence, the present application. For purposes of personal jurisdiction, the meetings "relate" to the activities at issue in the UK Litigation, including the Joint Venture Agreement, even if the meetings themselves were about a different transaction that never came to fruition. *See In re del Valle Ruiz*, 939 F.3d at 529.

---

[1] The parties dispute whether Steinmetz needs to show proximate causation or but for causation. Because the Court ultimately denies the application as to all Respondents, the Court need not address this issue.

Specifically as to Rio Tinto plc, the Court agrees with Steinmetz that the meetings could be construed as a causal hook for the evidence sought. In addition, Steinmetz represents that the majority of the other evidence he seeks entails "information and materials gathered by Rio Tinto for the RICO Action [that] would be unavailable but for Rio Tinto's forum contacts." Dkt. No. 43 at 8. These connections between the evidence requested and the forum contacts that Steinmetz has established meet the causal relationship threshold for purposes of the first statutory element. While the requested evidence is substantial—as discussed below—for jurisdictional purposes Steinmetz has established the requisite relationship between the evidence sought and Rio Tinto plc's activities in New York.

Having concluded that the meetings establish the requisite contacts for personal jurisdiction as to Vale S.A. and Rio Tinto plc, the Court must turn to the next step of the analysis: "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *In re del Valle Ruiz*, 939 F.3d at 529 (citation omitted). The Court concludes that constitutional notions of fair play do not preclude this Court from asserting personal jurisdiction over Vale S.A. and Rio Tinto plc. As already noted, it is undisputed that Vale S.A. and Rio Tinto plc are foreign corporations, and Steinmetz is a foreign citizen. The interests of New York in this litigation—which involves entirely foreign litigants disputing the fallout of a Joint Venture Agreement to profit from mining rights in a foreign country—are relatively "slight." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 114 (1987). And the Court credits the general proposition that, as Vale S.A. and Rio Tinto plc are foreign entities, there are greater burdens with the present application than there might be for an entirely domestic party. However, "the conveniences of modern communication and transportation ease" the burdens associated with having this Court supervise discovery. *Licci ex*

*rel. Licci*, 732 F.3d at 174. The Court also does not cast doubt on Steinmetz's interests in obtaining relief. Accordingly, there is specific jurisdiction as to Vale S.A. and Rio Tinto plc, satisfying the first statutory requirement of § 1782.

In contrast to Vale S.A., Steinmetz barely mentions Vale Americas in his briefing. He makes no mention of whether Vale Americas attended any of the meetings in question, and thus the 2008 and 2009 meetings are insufficient to conclude Vale Americas is subject to specific jurisdiction. *See* Dkt. No. 3 at 10. Rather, he argues that "[b]y virtue of its position as the U.S. representative of a foreign corporation listed on the New York Stock Exchange, Vale Americas is expected to have information about matters which Vale S.A. has filed or has considered filing with the SEC, including any information in connection with the JV Agreement." *Id*. But the SEC filings provide no meaningful basis from which the Court could conclude that this litigation "arise[s] out of or relate[s] to those activities." *In re del Valle Ruiz*, 939 F.3d at 529 (citation omitted). The SEC filings themselves have no connection to the present litigation or to the UK Litigation, and Steinmetz's claim that "evidence of Vale's internal deliberations about what to disclose about the JV Agreement in its SEC reports . . . would not be available but for Vale's being listed on the New York Stock Exchange" is tenuous at best. *See* Dkt. No. 44 at 7. Steinmetz's argument would render the specific jurisdiction test a nullity for any corporations that made any SEC filings and whose disclosures would relate to a wide variety of litigation unrelated to the SEC filings themselves; citing no case law to the effect that the doctrine stretches that far, Steinmetz's claim rings hollow. Because the Court concludes that the SEC filings provide too tenuous a hook to assert specific jurisdiction, Steinmetz has not established specific jurisdiction over Vale Americas. Accordingly, the Court denies Steinmetz's Application as to Vale Americas.

As to Rio Tinto Limited, Steinmetz alleges no forum contacts at all. The Court is unpersuaded that it can assert specific jurisdiction over Rio Tinto Limited merely because Rio Tinto plc and Rio Tinto Limited operate under a dual listed companies structure, as Steinmetz argues. *Cf. Bristol-Myers Squibb Co.* 137 S. Ct. at 1783 (noting that "[t]he requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction" (citation omitted)). And Steinmetz provides no authority for the proposition that personal jurisdiction may be exercised over a respondent based on the forum contacts of an affiliated company. The Court thus concludes that Steinmetz has not established the first statutory requirement as to Rio Tinto Limited. And for similar reasons, exercising jurisdiction over Rio Tinto Limited would not comport with notions of "fair play;" the burden of hailing a foreign corporation into this Court despite that corporation's lack of any forum contacts would not comport with constitutional notions of due process. *See Asahi Metal Indus. Co.*, 480 U.S. at 114. Accordingly, the Court denies Steinmetz's Application as to Rio Tinto Limited.

### b. Remaining statutory requirements as to Vale S.A. and Rio Tinto plc

The other two statutory requirements are satisfied for Vale S.A. and Rio Tinto plc. "Discovery is 'for use' in a foreign proceeding 'if it is relevant to the subject matter of the proceeding,' and if the evidence would 'increase [the applicant's] chances of success' in the proceeding." *Ayyash v. Crowe Horwath LLP*, No. 17-MC-482 (AJN), 2018 WL 2976017, at *2 (S.D.N.Y. June 13, 2018) (quoting *In re Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) (cleaned up). However, "discovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Vale's argument that Steinmetz's request is merely pretextual is unpersuasive. *See* Dkt. No. 31-12, Neil Hume, *Beny*

12

*Steinmetz Seeks to Reverse $2bn Arbitration Award to Vale*, Financial Times (May 24, 2020). Accordingly, the Court concludes that there is little basis to conclude that Steinmetz's interests are pretextual and Steinmetz has established that the evidence he seeks is "relevant" to the UK Litigation.

Finally, it is undisputed that the third requirement is established—as a participant in the UK Litigation, Steinmetz is an "interested" person for purposes of § 1782.  *See Intel*, 542 U.S. at 256, 258.  Thus, the Court concludes that the statutory requirements of § 1782 are met as to Vale S.A. and Rio Tinto plc.

### 2. Discretionary considerations

Even if the jurisdictional requirements are met, however, the Court must still assess whether discretionary considerations warrant relief, keeping in mind the four non-exhaustive *Intel* factors.  To reiterate, those factors include: (1) whether the target of discovery is a participant in the foreign proceeding, (2) the nature of the foreign tribunal and its receptiveness to U.S. federal court assistance, (3) whether the application is attempting to "circumvent foreign proof-gathering restrictions," and (4) whether the request is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 264–65.  "The *Intel* factors are not to be applied mechanically," and a "district court should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel*, 895 F.3d at 245.

The Court will bypass extended discussion of the first three factors—the first of which weighs heavily against granting relief as to Vale S.A. and weighs in favor of granting relief as to Rio Tinto plc, and the second and third of which are neutral—to consider the fourth factor because it heavily weighs against approval and therefore counsels against granting the application as to Vale S.A. and Rio Tinto plc.

13

"Whether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the documents, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Koch v. Pechota*, No. 10-CV-9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012). The document requests in Steinmetz's application are overly broad and insufficiently tailored. They include, among other things, "[a]ll documents and communications concerning Vale's activities in Guinea" between June 2005 and December 2014; "all" documents relating to Simandou; "all" documents relating to BSGR and/or Steinmetz; and so on. Dkt. No. 5-2 at 7–9. Granting the application would be unduly burdensome, and Steinmetz has not given the Court sufficient reason to conclude that such broad requests are necessary. Moreover, while this is not dispositive, the Court notes that the requests also go far beyond the scope of the 2008 and 2009 meetings that provide the requisite contacts for purposes of the first statutory element; the requests seek an incredible amount of information regarding Vale and Rio Tinto plc's operations, and in their framing would reach documents entirely unrelated to the UK Litigation or to the proffered reasons for seeking discovery by way of § 1782. Furthermore, the burdens are exacerbated by the fact that many of these documents are held abroad, the employees who worked on the Simandou matter are located abroad, and gathering that information would on the whole be incredibly onerous. *See* Dkt. No. 42 ¶¶ 31–32; *see also* Dkt. No. 28 at 28 n.13.

Nor would it be possible for the Court to "issu[e] a closely tailored discovery order [instead of] simply denying relief outright." *Mees*, 793 F.3d at 302 ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order than by simply denying relief outright."). The requests are so overbroad that the Court lacks visibility as to what a more

tailored discovery order could look like.  Furthermore, given that Steinmetz seeks documents that would fall under a protective order entered in the RICO action, to grant the requested relief would "undermine confidence in protective orders," *Kiobel*, 895 F.3d at 247.  And any narrower order would still require Respondent Rio Tinto plc to expend significant sums of money to review what may be produced consistent with the order; those burdens would be exacerbated by the fact that many of the documents and relevant employees live in different countries.  *See* Dkt. No. 42 ¶¶ 31–32.

The Court determines that, notwithstanding § 1782's twin aims of providing "efficient means of assistance to participants in international litigation" and "encouraging foreign countries by example to provide similar means of assistance to our courts," *In re WinNet R CJSC*, No. 16-MC-484 (DLC), 2017 WL 1373918, at *6 (S.D.N.Y. Apr. 13, 2017), denial of the request is proper based on the Court's discretionary assessment of all of the factors.[2]

## B.  Vale's Conditional Cross-Application to Compel Reciprocal Discovery

After Steinmetz filed this application, Vale Respondents filed a conditional cross-application to compel reciprocal discovery pursuant to 28 U.S.C. § 1782.  Dkt. No. 29.  As explained in its memorandum of law, Vale Respondents' request turned on the concept of "procedural parity."  Dkt. No. 30 at 4 (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)).  Vale Respondents thus argues that "if this Court grants the Application to any extent, Vale respectfully requests that consistent with principles of fairness and parity, Steinmetz be ordered to provide reciprocal discovery to Vale."  *Id.*  Because the Court denied Steinmetz's application, it denies Vale Respondents' as well.

---

[2] Even if the statutory requirements were met as to Vale Americas and Rio Tinto Limited, the Court would also deny the application as to these Respondents on this basis.

### C. Motion to Seal

Vale Respondents request that this Court grant it leave to file a redacted version of its memorandum of law in opposition to the Application and leave to seal the Declaration of Samuel L. Levander in support of its memorandum. Dkt. No. 24. Steinmetz consents to Respondents' request. *Id.* at 1. The Levander Declaration is a copy of Steinmetz's State of Assets dated December 30, 2019. Respondents seek to file that Declaration under seal and redact the portions of their memorandum of law that refer to the Declaration to comply with a consent order in the UK Litigation. *Id.* at 2 (citing *Vale S.A. v. Steinmetz*, No. CL-2019-000726, Consent Order (June 22, 2020)). Accordingly, the Court concludes that redaction and sealing are proper. The Court will enter Respondents' proposed Order separately.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Steinmetz's application to conduct discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782. Because it denies Steinmetz's application, it DENIES Vale Respondents' cross-application to compel reciprocal discovery. The Court GRANTS Vale's motion to redact its memorandum of law in opposition and seal the Declaration of Samuel L. Levander.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: January 19, 2022
      New York, New York

_____
ALISON J. NATHAN
United States District Judge